# United States District Court
## FOR THE
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

**Brian A. Carter,**

*Plaintiff,*

v.

**Foundation of Appalachian Kentucky, Gerry F. Roll** in her individual capacity, and her official capacity as Executive Director, *et al,* **Housing Development Alliance, Russell Scott McReynolds,** In his individual capacity, and in his official capacity as Director of **FOA** and **HDA**, *et al,* **Public Protection Cabinet, Kenneth Browning, Alan Walters, Peter Ervin, Mike Haney, Ronald Hacker** in their respective individual capacities, and in their official capacities as state officials, *et al* **City of Hazard, Tony Eversole, Paul R. Collins, Daniel Roll, Donald Mobelini,** in their individual capacities, and in their official capacities as city officials, **Balis Campbell Construction, Steve Campbell,** in his individual capacity, and in his official capacity as owner of Balis Construction, **Economic Development Alliance, Betsy Clemons** in her individual capacity, and her official capacity as executive of **Economic Development Alliance, Denise Davidson,** in her individual capacity, and in her official capacity as legal representative and/or board of director of all of the above entities, **Payton Morton,** in his individual capacity, **WYMT, Kentucky Bar Association, Kentucky Office of the Courts, Kentucky Appellate Courts, Kentucky State and local agencies, offices,** *et al,*

*Defendants.*

Case No. 6:26-cv-112-REW

**COMPLAINT**

DEMAND FOR TRIAL BY JURY

RELIEF BY MANDAMUS ORDER OF THE COURT

RELIEF BY PROTECTIVE ORDER OR INJUNCTION OF THE COURT

Eastern District of Kentucky
FILED

MAR 1 6 2026

AT LONDON
Robert R. Carr
CLERK U.S. DISTRICT COURT

Comes the Plaintiff, Brian A. Carter ("***Carter***"), in his individual capacity *pro se,* brings forth his Civil Multi-Count Complaint of Deprivation of Rights and Destruction of Commercial Property by

1

Organized Criminal Conspiracy (RICO), for the unjust enrichment of various "non profit entities" *et al*, therefore a Demand for Trial by Jury against the Defendants, Foundation of Appalachian Kentucky ("*FOA*"), Gerry F Roll, ("*Roll*") Housing Development Alliance, ("*HDA*"), Russell Scott Reynolds, ("*Reynolds*") Betsy Clemons, ("*Clemons*") Economic Development Alliance ("*EDA*"), *et al*, with their proxy representatives, City of Hazard, Kentucky ("*Hazard*"), Tony Eversole ("*Eversole*"), *et al*, and Public Protection Cabinet ("*Cabinet*"), Kenneth Browning ("*Browning*"), and hereby states as follows:

## INDEX

PRELIMINARY STATEMENT ................................................................................pg 004

PARTIES..............................................................................................................pg 006

JURISDICTION AND VENUE.................................................................................pg 011

FACTUAL ALLEGATIONS.....................................................................................pg 012

CAUSES OF ACTION...........................................................................................pg 109

    COUNT ONE (I) RETALIATION AGAINST RIGHTS..............................................pg 109

    COUNT TWO (II) CONSPIRACY.........................................................................pg 118

    COUNT THREE (III) VIOLATION OF THE RICO ACT............................................pg 133

    COUNT FOUR (IV) OBSTRUCTION OF JUSTICE..................................................pg 158

    COUNT FIVE (V) DEPRIVATION OF RIGHTS UNDER COLOR OF LAWFUL AUTHORITY.........................................................................................................pg 164

    COUNT SIX (VI) DEPRIVATION OF RIGHTS BY UNLAWFUL CONVERGENCE....pg 175

    COUNT SEVEN (VII) BREACH OF CONTRACT....................................................pg 186

    COUNT EIGHT (VIII) BREACH OF COVENANT OF GOOD FAITH DEALINGS......pg 192

    COUNT NINE (IX) BREACH OF FIDUCIARY DUTY...............................................pg 202

    COUNT TEN (X) DEPRIVATION OF RIGHTS BY FELONY EXTORTION..............pg 212

    COUNT ELEVEN (XI) FELONY EXPLOITATION OF PERSONAL RESOURCES......pg 218

    COUNT TWELVE (XII) FRAUD UPON THE COURT...............................................pg 223

    COUNT THIRTEEN (XIII) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS............................................................................................................pg 230

    COUNT FOURTEEN (XIV) SLANDER OF TITLE...................................................pg 238

COUNT FIFTEEN (XV) DEFAMATION……………………………………………...pg 247

COUNT SIXTEEN (XVI) ABUSE OF DISCRETION………………………………….pg 258

COUNT SEVENTEEN (XVII) ABUSE OF JUDICIAL PROCESS………………….…..pg 263

COUNT EIGHTEEN (XVIII) FELONY APPLICATION OF LIEN…………………..…pg 268

COUNT NINETEEN (XIX) CONSPIRACY TO COMMIT ARSON OF COMMERCIAL

PROPERTY…………………………………………………………………………..…pg 273

COUNT TWENTY (XX) TORTIOUS INTERFERENCE WITH ADVANTAGE………..pg 288

COUNT TWENTY ONE (XXI) TORTIOUS INTERFERENCE WITH PROSPECTIVE

ADVANTAGE……………………………………………………………………….…..pg 295

COUNT TWENTY TWO (XXII) DESTRUCTION OF PROPERTY BY CRIMINAL

NEGLECT……………………………………………………………………...……….pg 304

COUNT TWENTY THREE (XXIII) FELONY LIBEL ON OFFICIAL GOVERNMENT

DOCUMENTATION……………………………………………………………….....pg 309

COUNT TWENTY FOUR (XXIV) MALICIOUS PROSECUTION……………….…..pg 316

COUNT TWENTY FIVE (XXV) UNEQUAL APPLICATION OF LAW OR LAWFUL

AUTHORITY……………………………………………………………………….…..pg 323

COUNT TWENTY SIX (XXVI) UNJUST ENRICHMENT………………………….....pg 331

COUNT TWENTY SEVEN (XXVII) FAILURE TO PROVIDE JUST

COMPENSATION……………………………………………………………….…..pg 338

COUNT TWENTY EIGHT (XXVIII) HARASSMENT, STALKING AND

MENACING…………………………………………………………………….....pg 349

COUNT TWENTY NINE (XXIX) FLAGRANT DENIAL OF DUE PROCESS………..pg 356

COUNT THIRTY (XXX) VIOLATION OF FOURTEENTH AMENDMENT………..…pg 362

COUNT THIRTY ONE (XXXI) VIOLATION OF THE SIXTH AMENDMENT……….pg 372

COUNT THIRTY TWO (XXXII) VIOLATION OF THE WHISTLEBLOWER ACT…...pg 381

RELIEF SOUGHT/WHEREFORE…………………………………………………….pg 387

CERTIFICATES………………………………………………………………………..pg 389

## PRELIMINARY STATEMENT

1. The Plaintiff brings this civil action to seek redress of $46,620,360 or forty six million, six hundred twenty thousand, three hundred sixty dollars (conservatively estimated) in real calculable damages excluding emotional distress and punitive damages *et al* against the defendants, for criminal conspiracy to commit arson, fraud, and many other illicit means, summarily, in simplest of terms, by a RICO conspiracy, in highly coordinated, collaborative efforts to physically destroy, and deprive all manner of righteous beneficial usage of the plaintiffs once historic, thriving and prosperous shopping center formerly consisting of seven (7) independently ran businesses that once had sublet from the plaintiff, by unjust destruction of his fifty (50) unit (total) apartment complex that had once provided quality, low cost housing *alternatives* to the defendants own Housing Development Alliance (HDA), and commercial business leasing *alternatives* to the defendants own Economic Development Alliance (EDA), with various state and local agencies functioning as *proxies* on behalf of their donor masters of the deeply intertwined "non profit" known as The Foundation of Appalachian Kentucky (FOA), to step far above and beyond the limits and scope of their authority discretion, to achieve their collective ends of eliminating the plaintiff as a competitive economic and commercial real estate developer in his community, to the collective benefit and enrichment of the defendants and their donor masters of FOA, HDA, EDA, and by their affiliations with the Gorman and Roll families, cliques, and conglomerates, who control the town, known as the City of Hazard, in Perry County Kentucky.

2. This case comes at the crux of a near decade long (10 year) deeply intertwined state level case(s) of *Public Protection Cabinet vs Brian Carter 15-CI-00259, (2015), (Brian Carter vs City of Hazard, 16-CI-0020,* and currently *Carter Realty vs FOA 22-CI-00166,* starting of approximately mid June of 2012 until present, in an ongoing effort to deprive all manner of righteous beneficial usage of property, above and beyond the limits of lawful authority, abuse of state circuit court process with empty, defamatory rhetoric, narratives without substance, no evidence based foundation, to damage the plaintiff irreparably, of which, the state circuit judge currently presiding over those cases, is recently discovered to represent Foundation of Appalachian (FOA)'s board of directors, heavily conflicted.

3. The defendants collective efforts have been remarkably successful, exhausting no limits of both state and federal crimes to achieve their ends of destroying the plaintiff, his business and his buildings, involving multiple felonies involving arson, 18 U.S.C § 81, KRS 513.020 attempted murder

4

of his residential tenants by arson, conspiracy to defraud the United States, 18 U.S.C § 371, exploitation KRS 209.990, KRS 365.245, extortion, 18 USC § 1951,  KRS 514.080, intentional misrepresentation of material facts, 33 USC § 931, violation of civil rules 9.02, 60.02, fraudulent concealment of material fact and false statements, 18 USC § 1001, 34 USC § 10272, 18 USC 1031, 18 USC § 1341, 18 USC chapter 47, violation of the RICO act, 18 USC (chapter 96), 18 USC § 1961-68, obstruction of justice 18 USC §1511, 18 USC (chapter 73) and conspiracy to obstruct justice, 42 USC § 1983 & 1985, 18 USC § 241, 242, and many others, all to achieve their ends of destroying the plaintiffs buildings, businesses, to unjustly deprive the plaintiff of any and all forms of benefit, care, usage, and /or enjoyment of his otherwise beautifully renovated, prosperous, economically and tax contributing facilities the plaintiff, and the community he was once honored to serve, had once enjoyed.

4. The defendants intentional and collective deprivation of all of the plaintiffs rights as a tax contributing and economically productive citizen of the United States, thereby entitles the plaintiff to relief under 18 USC § 1961-68 and 42 USC § 1983, § 1985, state law, and various other compensation pursuant to supplemental jurisdiction 28 USC § 1367(a), *et al*, in the name of righteous justice.

5. Various State Bar Associations, namely that of the Kentucky Bar Association, Kentucky Office of the Courts, Kentucky Appellate Courts, Kentucky State and Local agencies, entities, etc are not known to be subject to the conspiracy, but are however, currently prohibiting the plaintiffs *pro se* representation in the intertwined state level case of *Carter Realty vs FOA 22-CI-0166* by denying the admittance of the plaintiffs new evidence based on a "well established principle," not law, doing so in direct contradiction to federal preemptive controlling case law firmly established in *Faretta vs California 422 U.S. 806 (1975)*, and many other United States Supreme Court precedents, state law, most recently in *Netchoice vs Paxton 603 U.S. 707 (2024)*, as *pro se* representation, albeit *directly, indirectly, expressedly, or impliedly,* is a *"6ᵗʰ Amendment right to be exercised by the party, and not the right to have counsel forced upon them,"* as this, and many other supremacy clause/doctrines apply, the plaintiff is kindly requesting by *writ of mandamus* or injunction that commands the lower level state courts to obey the supreme law of land regarding the plaintiffs right to *pro se* representation as outlined, that Kentucky Office of the Courts be further commanded to permit access to state e-filing for *pro se* litigants, as is similarly allowed in federal court via its PACER system, and to grant any and all other relief for the citizens of the Commonwealth of Kentucky, in the name of righteous, amicable justice.

## PARTIES

6. Plaintiff, Brian Carter, is a natural person and resident of Perry County, Kentucky.

7. City of Hazard is a "home rule" city in Perry County, Kentucky.

8. Commonwealth of Kentucky is established as a "pay for play" state.

9. Foundation of Appalachia Kentucky (FOA) is known as a "non profit entity."

10. Foundation of Appalachia Kentucky (FOA) controls the City of Hazard by proxy.

11. Defendant, Gerry Roll, is a natural person and resident of Perry County, Kentucky.

12. Gerry Roll is the executive director, or former executive director, of the defendants of FOA.

13. Carter seeks a final judgment against Gerry Roll in her individual capacity.

14. Carter seeks a final judgment against Gerry Roll in her direct or indirect capacity as the current and/or former executive director of FOA.

15. The defendants have publicly advertised that Gerry Roll has abruptly resigned from her position as executive director of FOA, in an attempt to evade answering interrogatories from Carter in the state related case of *Carter Realty vs FOA 22-CI-0166,* however, recent evidence contradicts this.

16. Kristin Walker Collins, while not a named party to this suit, is the daughter in law of Paul Randall Collins, of whom is a party to this suit.

17. Kristen Walker Collins has allegedly replaced Gerry Roll as the executive director of FOA.

18. Carter seeks a final judgment against the defendants of FOA, and affiliated, universally.

19. Defendant, Russell Scott McReynolds, is a natural person and resident of Perry County, Kentucky.

20. Russell Scott McReynolds is on the board of directors, representing FOA, and is a leading representative of the defendants of FOA.

21. McReynolds also holds the top ranking position of the defendants inter-related Housing Development Alliance (HDA).

22. Housing Development Alliance (HDA) controls City of Hazard and State Public Protection Cabinet by proxy and donor influence.

23. Carter seeks final judgment against McReynolds in his individual capacity.

24. Carter seeks final judgment against McReynolds in his official capacity as director of HDA.

25. Carter seeks final judgment against McReynolds in his official capacity as board member of

6

FOA.

26. Defendant, Kenneth Browning, is a natural person and resident of Perry County, Kentucky.

27. Kenneth Browning is employed by the Public Protection Cabinet with his official position as state fire marshal.

28. Carter seeks final judgment against Browning in his individual capacity.

29. Carter seeks final judgment against Browning in his official capacity as state fire marshal official of the Public Protection Cabinet.

30. Defendant, Alan Walters, is a natural person and resident of Pulaski County, Kentucky

31. Defendant, Walters, is employed by the Public Protection Cabinet with his official position as state fire marshal.

32. Carter seeks final judgment against Walters in his individual capacity.

33. Carter seeks final judgment against Walters in his official capacity as state fire marshal official of the Public Protection Cabinet.

34. Defendant, Peter Ervin, is a natural person and resident of Franklin County, Kentucky

35. Defendant, Ervin, is employed by the Public Protection Cabinet with his official position as legal counsel.

36. Carter seeks final judgment against Ervin in his individual capacity.

37. Carter seeks final judgment against Ervin in his official capacity as legal counsel of the Public Protection Cabinet.

38. Defendant, Mike Haney, is a natural person and resident of Franklin County, Kentucky

39. Defendant, Haney, is employed by the Public Protection Cabinet with his official position as leading state fire marshal representative.

40. Carter seeks final judgment against Haney in his individual capacity.

41. Carter seeks final judgment against Haney in his official capacity as leading representative of the Public Protection Cabinet.

42. Defendant, Ronald Hacker is a natural person and resident of Clay County, Kentucky

43. Defendant, Hacker, was employed by the Public Protection Cabinet with his official position as state electrical inspector.

44. Carter seeks final judgment against Hacker in his individual capacity.

7

45. Carter seeks final judgment against Hacker in his official capacity as electrical inspector of the Public Protection Cabinet.

46. Defendant, Tony Eversole, is a natural person and resident of Perry County, Kentucky.

47. Defendant, Eversole, is employed by the City of Hazard with his official position as city manager.

48. Carter seeks final judgment against Eversole in his individual capacity.

49. Carter seeks final judgment against Eversole in his official capacity as city manager.

50. Defendant, Paul R Collins, is a natural person and resident of Fayette County, Kentucky.

51. Defendant, Paul Collins, is or was employed by the City of Hazard with his official position as legal counsel.

52. Carter seeks final judgment against Paul Collins in his individual capacity.

53. Carter seeks final judgment against Paul Collins in his official capacity as legal counsel for the City of Hazard.

54. Defendant, Daniel Roll, is a natural person and resident of Perry County, Kentucky.

55. Defendant, Dan Roll, is employed by the City of Hazard with his official position as city building inspector and office of zoning and permits.

56. Carter seeks final judgment against Dan Roll in his individual capacity.

57. Carter seeks final judgment against Dan Roll in his official capacity as city building inspector and office of zoning and permits for the City of Hazard.

58. Defendant, Donald Mobelini, is a natural person and resident of Perry County, Kentucky.

59. Defendant, Mobelini, is employed by the City of Hazard with his official position mayor of the City of Hazard.

60. Carter seeks final judgment against Mobelini in his individual capacity.

61. Carter seeks final judgment against Mobelini in his official capacity as mayor of the City of Hazard.

62. Defendant, Steve Campbell, is a natural person and resident of Perry County, Kentucky.

63. Defendant, Campbell, is employed by the City of Hazard with his official position as preferred contractor due to his martial relations with the Gorman and Roll families, also known to weld

considerable influence and control over the City of Hazard.

64. Defendant Steve Campbell owns the construction company, Balis Campbell Construction

65. Carter seeks final judgment against Campbell in his individual capacity.

66. Carter seeks final judgment against Campbell in his official capacity as City of Hazard contractor.

67. Carter seeks final judgment against Campbell in his official capacity as owner of Balis Campbell Construction Inc.

68. Defendant, Denise Davidson, is a natural person and resident of Perry County, Kentucky.

69. Defendant, Davidson, is employed by the City of Hazard with her official position as legal counsel, in particular, for the interests of its mayor, Donald Mobelini.

70. Defendant, Davidson, is employed by the Public Protection Cabinet with her official position as legal counsel.

71. Defendant, Davidson, is employed by FOA, with her official position as legal counsel.

72. Defendant, Davidson, is employed by FOA with her official position as a ranking board of directors member, alongside with Perry Circuit Judge Alison Wells, and Russell Scott McReynolds, also as ranking board members of FOA.

73. Carter seeks final judgment against Davidson in her individual capacity.

74. Carter seeks final judgment against Davidson in her official capacity as City of Hazard legal counsel.

75. Carter seeks final judgment against Davidson in her official capacity as Public Protection Cabinet legal counsel.

76. Carter seeks final judgment against Davidson in her official capacity as legal counsel for FOA.

77. Carter seeks final judgment against Davidson in her official capacity as a member of the board of directors of FOA.

78. Defendant, Payton Morton, is a natural person and resident of Perry County, Kentucky.

79. Defendant, Morton, is self employed as owner and lead retail supplier to FOA and HDA.

80. Defendant, Morton, obtained unjust enrichment by constructing the first of many barriers to

block safe egress to Carter's commercial building complex, at the whims of FOA, to benefit HDA.

81. Carter seeks final judgment against Morton in his individual capacity.

82. WYMT is a local news station previously owned by the Gorman family, known to promote defamatory rhetoric of the plaintiff to discourage his advantageous business relationships with others.

83. Carter seeks relief against WYMT under its official business as a private corporate owned entity.

84. Carter seeks final judgment against WYMT in is official business capacity.

85. Kentucky Bar Association is a private entity known to manage attorney bar licenses in Kentucky.

86. Carter seeks relief against the Kentucky Bar Association under its official business as a private entity.

87. Carter seeks final judgment against the Kentucky Bar Association in its official capacity.

88. Kentucky Office of the Courts is a public entity known for administering access to courtnet.

89. Carter seeks relief against the Kentucky Office of the Courts under its official business as a public entity.

90. Carter seeks final judgment against Kentucky Office of the Courts in its official capacity.

91. Kentucky Appellate Courts is a public state entity known for hearing appellate cases from state circuit courts.

92. Carter seeks relief against Kentucky Appellate Courts to uphold the rights of citizens of the Commonwealth and within United States under its official business as a public entity.

93. Carter seeks final judgment against Kentucky Appellate Courts in its official capacity

94. Kentucky State and local governments, agencies, and administrative offices are widely known for a universally adopted practice that violates the protected rights of *pro se* litigants within it's boundaries.

95. Carter seeks relief against Kentucky State and local governments, agencies, and administrative offices by mandamus or injunctive order under its official capacity as a public entity.

96. Carter seeks final judgment against Kentucky State and local governments, agencies, and administrative offices in their official capacities.

97. Economic Development Alliance (EDA) is known as a "non profit entity."

10

98. Economic Development Alliance (EDA) controls the City of Hazard by proxy.

99. Defendant, Betsy Clemons, is a natural person and resident of Perry County, Kentucky.

100. Betsy Clemons is the executive director, or leading representative, of the defendants of EDA.

101. Carter seeks a final judgment against Betsy Clemons in her individual capacity.

102. Carter seeks a final judgment against Betsy Clemons in her direct or indirect capacity as a current and/or leading representative of EDA.

103. Carter seeks a final judgment against colleague defendant Donald Mobelini of EDA.

104. Carter seeks a final judgment against colleague defendant Paul Collins, due to his ties with Drinkard Development and EDA.

## JURISDICTION AND VENUE

105. This Court has subject matter jurisdiction over this civil action under 28 U.S.C § 1331, 28 U.S.C. § 1343(a), 42 U.S.C. § 1982, 42 U.S.C. § 1983, Title 18 U.S.C § 242, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C. § 1988(a), 28 U.S.C § 1491, and others cited forthwith, based upon the newly discovered evidence acquired beginning on March 18th 2024 thru May 19th 2025.

106. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), and as cited in 28 U.S. Code § 1343(a)(3).

107. This Court has jurisdictional authority supremacy over the states immunity pursuant to *ex parte Young, 209 U.S 123 (1908), Harlow vs Fitzgerald, 457 U.S 800, (1982), Griffin Industries Inc vs Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007) et al,* for the states actions that are contrary to federal law and contrary to supreme constitutional authority provided by this court.

108. This Court has jurisdictional authority supremacy over the states administrative policy and procedures pursuant to *Youngstown Sheet & Tube co v Sawyer 343 U.S. 579 1952, et al,* cited in support of the plaintiffs right to bring suit for judicial review, when facing unconstitutional government directives, *"before compliance, when irreparable harm may result."*

109. This Court is the proper venue for this civil action under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claims occurred" in this Judicial District.

110. This Court is duly notified, that upon recent discovery State Circuit Judge Alison Wells presiding over the interlocutory and intertwined cases of *Carter Realty vs FOA 22-CI-0166, Public*

*Protection Cabinet 15-CI-0256,* and *Brian Carter vs City of Hazard 16-CI-0020,* Judge Wells is revealed by evidence as a sitting board member of the Defendants of FOA, and a donor of HDA, therefore, the plaintiff stands no chance of receiving a fair trial at the state level.

111. This Court is duly noticed, that as of this filing, the aforementioned state circuit judge has ruled against the plaintiffs *pro se* representation of his company, based on *"well established principle,"* in order to prevent plaintiffs new evidence from being allowed into record as judicially noticed facts.

112. As the circuit and state appellate courts traditionally do not observe any of the federally supreme controlling case laws cited by the plaintiff that would defend his *pro se* representation, the plaintiffs odds of receiving a trial at the state level is extremely unlikely, due to influence from the bar.

113. While it could be argued that most of the newly discovered causes of action could be addressed at the state level, the majority of them fall within exclusive federal jurisdiction.

114. The current state level remedies, up to the State Supreme Court have been exhausted, Feb 9th 2025, *Carter Realty vs FOA(supra),* therefore, cannot advance without intervention from this Court.

115. 28 U.S.C § 1331, 28 U.S.C. § 1343(a) based cases are generally known or understood to be exclusive to this Court.

116. As the plaintiff asserts tortious interference with advantageous business relationships by the collective, organized criminal conspiracy of the defendants combined efforts, originating from the state of Kentucky, has also directly resulted in permanent irreparable destruction of businesses and interstate commerce beyond the limits of the state of Kentucky, the authority of this Court is proper.

117. The said permanent losses beyond the limits of the state of Kentucky lie within the state of southern Florida, thus the jurisdictional authority of this Federal District Court is proper.

## FACTUAL ALLEGATIONS

118. In the defendants official capacities, the City of Hazard, particularly mayor Donald Mobelini and city manager Tony Eversole, have a well established, pervasively known reputation to commit egregious acts of physically destroying properties randomly, by criminal mischief without consent from property owners, *see Steven Vires vs City of Hazard 20-CI-00245,* among many others.

119. The City of Hazard is well known to commit various other crimes involving menacing, bullying, harassment, deprivation of the rights of its citizens, and then retaliating against their free speech when attempting to seek redress of grievances, *see Lauren Jacobs vs City of Hazard 23-*

12

*CI-0173, JB Eversole vs City of Hazard 230 S.W 2d 921 1950, Dallas Campbell vs City of Hazard DBA Hazard Police Department, Donald Mobelini, Darren Williams 24-CI-0034, Jessica Cornett vs City of Hazard, Darren Williams, Tony Eversole, 24-CI-00154, Bill Gavin Fugate, Martha Sizemore vs City of Hazard 6:2025 CV 00055, Jessica Cornett vs City of Hazard 6:24-cv-00171-CHB-HAI,* and others.

120. The above cases as aforementioned serve as evidentiary examples of the policies and practices of demonstrating extreme indifference to the general well being prosperity of its citizens, with disregard of the City of Hazard officials core fiduciary duties of honoring the rights of its people.

121. The defendants in their official capacities have a well known policy/practice to exacerbate the extremity of poverty conditions for its community citizens, by all to often senseless harassment from their officials, to close down their businesses, stifle job growth, slander and vilify their struggling small business owners of those that "aren't well received" to "hand pick the winners and losers" in local business, whilst operating under the common guise of "safety" and "protecting the public."

122. The defendants of the City of Hazard and the state Public Protection Cabinet openly employs said "pay for play" practices to "shut down those that aren't well received" only to punish said constituents further for their subsequent inability to effectively provide basic financial care for their properties, to deprive all rights of its citizens to use, enjoy, and benefit from ownership of property.

123. The defendants of the City of Hazard openly and habitually punish its citizens by randomly razing or destroying the properties of their own citizens, without permission, due to what "the city" perceives as "eyesores" or what they perceive as "visually unappealing" as a direct result of said policies to undermine the prosperity of its citizens *see Steven Vires vs City of Hazard 20-CI-245* and *Brian Carter vs City of Hazard 16-CI-0020,* among at least two other cases of said acts.

124. The defendants of the City of Hazard employ said mechanisms of denying rights to property of its citizens by having the citizens properties randomly razed and hauled off, again at the expense of the taxpayers themselves, for the benefit or unjust enrichment of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, (HDA), and Economic Development Alliance (EDA), their "well capitalized non profits," respectively.

125. An endless obsession with punishment, along with "hand picking the winners and losers" in the local business community, often has the defendants, particularly official representatives of the Public Protection Cabinet, engaging in a "pick the person, find the crime, (or find the violation)"

13

mentality, to fraudulently justify its extreme actions against select individuals, whilst turning their heads at the trespasses and violations of others that are "well connected," favorable to the donor cliques and conglomerates of the defendant donors of FOA, EDA, HDA and other related "non profit entities."

126. The citizens of Perry County Kentucky, often find themselves financially incapable of defending their own interests against the City of Hazard's practice of destroying property without permission, therefore, many instances do not see a courtroom.

127. Commonwealth of Kentucky, as well as its Kentucky state court systems, has a well established policy/practice to *mandate* that business owners recruit counsel as in *Flynn vs Songer 399 S.W. 2d 491, 494 (Ky App. 2018, Wison vs Russell L62 S.W.3d 91L, 91.3 (Ky 2005)* and others.

128. The mentioned policies and practices of Kentucky Courts, to *force counsel* upon its citizens is well known to limit *pro se* litigants abilities to petition grievances directly with their government and its courts, that often results in unfavorable outcomes for said constituents.

129. The practice to *force counsel upon its citizens,* is also contrary to federally superior law that normally protects against such practices pursuant to *Faretta vs California 422 U.S. 806 (1975),* which establishes the sixth (6th) amendment right to counsel as *"discretionary right to be exercised, not a right to have counsel forced upon them."*

130. Non government agencies, (NGO's), such as the defendants of FOA, HDA, and EDA, are are known to exert considerable influence over local and state government policy, in part due to their donor based influence with political figures.

131. Among the donor support of FOA, HDA, and EDA, state congressman Hal Rogers and Governor Andy Beshear are well known to provide "financial assistance" to said entities.

132. The defendants of FOA and HDA often market themselves as a "charitable non profit organization providing housing for flood families."

133. The defendants of FOA, HDA, and EDA are known to use their influence to gain favorable advantage over that of other most other real estate developers, such as that of the plaintiff.

134. The defendants of HDA are well known to collect payments in support from Kentucky Power, while Kentucky Power is well known to raise electric rates for the remainder of citizens of Perry County Kentucky, effectively providing a level of subsidies to HDA and FOA.

135. The Defendants of FOA, EDA, and HDA are well known to utilize their influence with

14

local and state governments, such as the City of Hazard and the Public Protection Cabinet, to unfairly scrutinize other developers, such as the plaintiff.

136. The Gorman and Roll controlled cliques and conglomerates are well known to exert considerable influence over the town of Hazard Kentucky, over several decades.

137. Among the Gorman and Roll controlled cliques and conglomerates are defendants Daniel Roll, Gerry Roll of FOA, and Steve Campbell, married into the Gorman family of the late LD Gorman.

138. Kentucky Housing Authority/Kentucky Housing Corporation are well known to provide financial services for Housing Development Alliance, (HDA).

139. To the majority, known by American citizens, the defendants of FOA, EDA, and HDA, and other similarity structured non government operations (NGO's) throughout the United States, utilize their influence to pay politicians to send money to their preferred non profit organization(s).

140. Much of said funding sent by politicians to said organizations, the defendants then publicly market their housing development business as "building safe affordable housing for flood families" primarily for the benefit of FOA and HDA.

141. After receiving funds from various government entities and/or "donors" the defendants of FOA and HDA are well known to then sell the houses they build at market value, to said flood families.

142. It is commonly known that the United States Department of Justice under the former Biden administration has indited approximately seventy (70) individuals in an alleged Housing Authority of New York on the allegations of bribery or "kickbacks" *United States vs Angela Williams 24 MAG 318 et al,* as reported on Tuesday, February 6th 2024.

143. Among said cases, among total of 70 housing authority of New York defendants are alleged to have concealed several non bidding practices for personal enrichment with federal dollars under the guise of "helping low income families obtain homes."

144. The defendants of the City of Hazard are well known policy to publicly advertise "taking bids for work" but also claims "to hire who it wants to hire."

145. The defendants of the City of Hazard are well known to not respect the plaintiff's right to hire who he wanted to hire during the course of his former ownership of his 446 Grand Hotel property *Brian Carter vs City of Hazard 16-CI-00020 (2016) (remains unadjudicated).*

146. The defendants in their "non profit" capacities, such as FOA, have a well known, publicly

advertised method of operation which consists of initiate several 501 3c non profit or charitable organizations, alias's many of them in the same facility located at 420 Main Street, Hazard Kentucky.

147. The Defendants of FOA are known utilize the practice of establishing several alias's or alternate entities to tactfully evade the legal obligation that would otherwise prohibit family members of the same entity from operating within the same facility, primarily located at 420 Main Street, Hazard KY, which neighbors the plaintiffs former 426 building.

148. The defendants of FOA and HDA are well known to obtain millions in grants, leverage political influence with its subservient co-conspirator proxy representatives of the City of Hazard and the Public Protection Cabinet under the guise of "helping flood victims."

149. The defendants of FOA and HDA use the said millions in grant funding to build new houses, marketed to the public as "helping flood families."

150. The defendants of FOA and HDA are well known to *sell* the newly constructed houses built with various "grants" to "flood and storm families," at market value.

151. The Defendants of FOA and HDA are well known to obtain said grants to build and then sell houses at market value, whilst evading tax obligations as a 501 3c "non profit organization."

152. The Defendants of FOA and HDA publicly identify themselves as "inc" or "incorporated," whist evading tax obligations as a 501 3c "non profit organization."

153. The would be purchasers of said houses are well known to obtain loans from "USDA home loan financing" and others, for each home sold.

154. USDA is a well known government organization that normally handles agriculture.

155. It is well known that the former USDA administrator that worked the former Biden administration was terminated under the new incoming 2nd Trump administration January 29th 2025.

156. It currently remains unclear if the termination of said former federal USDA director under the Biden administration was in part due to the non agricultural grant scandal with FOA and HDA.

157. The defendants of said FOA, HDA, are known to use the above profits to pay themselves high salaries, primarily to their main administrators.

158. The defendants of FOA and HDA are well known to obtain thousands in "donations" from various businesses/individuals, to build the same house or set of houses.

159. In addition to federal grants, FOA and HDA are also well known to get millions from the

16

current state governor Andy Beshear administration, to build the same houses as aforementioned above.

160. HDA is well known to also receive government funds on its residential rental properties by receiving subsidies due to its influence with Kentucky Housing Authority/Kentucky Housing Corporation.

161. FOA is well known to receive donated assistance from the City of Hazard in the form of various fundraisers due to its influence.

162. FOA is well known to receive donated worker assistance from the City of Hazard's workers/staff and other resources due to its influence at taxpayers expense.

163. HDA is well known to receive donated worker assistance from Hazard Community College due to their influence.

164. HDA is well known to receive donated "volunteer workers" to assist them in building houses to sell at market value.

165. HDA is well known to receive marketing assistance for its housing development business from various news organizations such as WYMT, NPR radio, local radio, NBC, and from Governor Andy Beshear.

166. The Public Protection Cabinet is known to operate at the service of Governor Andy Beshear.

167. It is widely known that the defendants of FOA, HDA, and EDA have utilized their influence with the City of Hazard and the Public Protection Cabinet to undermine the efforts of the plaintiff to improve, use, enjoy and benefit from his former ownership of his former, now destroyed apartment complex and shopping center once consisting of three (3) commercial use buildings.

168. It is well known the defendants of FOA, HDA, and EDA stood to benefit from the destruction of the plaintiffs former fifty (50) unit apartment complex and seven (7) business shopping center, by shifting the community dependency of commercial business and residential subletting to the defendants for their own enrichment, at the detriment expense of the plaintiff from 2015 until present.

169. The defendants of FOA, HDA, and EDA are well known to utilize their influence over the City of Hazard and the Public Protection Cabinet to eliminate the plaintiff as "unauthorized competition" to their "non profit economic development efforts."

170. Commencing in June 18th 2015, The City of Hazard and the Public Protection Cabinet

17

commenced, and ultimately achieved, with the aid of their co-conspirator proxies of FOA, HDA, EDA, said affiliated "board of directors, executives, etc" to physically destroy and deprive the plaintiff of all manner of righteous, beneficial usage and right to use and enjoy property by committing a plethora of felonies and other criminal statutes, to suit their personal goals to vacate, "shut down," burn down, and physically destroy the commercial buildings and businesses previously owned by the plaintiff, formerly located on 446 Main Street, 426 Main Street, and 67 Whitaker Way of Hazard KY.

171. The defendants representatives of City of Hazard and Public Protection Cabinet achieved said objectives to physically destroy and deprive all manner of righteous, beneficial usage of the aforementioned commercial buildings above and beyond the limits of known authority jurisdiction while acting under the color of lawful authority, by committing said crimes as aforementioned.

172. The defendants in their non profit capacities, receive an astonishing amount of governmental paid "support" for their FOA EDA, and HDA preferred commercial and housing development business operations.

173. Among the stated support of marketing on behalf of FOA, EDA, and HDA, includes in particular, local mayor Donald Mobelini, state representative Chris Fugate, congressman Hal Rogers, Governor Andy Beshear, state senators Brandon Smith and Robert Stivers, among many others.

174. The state public representatives as aforementioned all involve investing countless hours of public promotion far above and beyond that of other private developers *insofar,* such as the plaintiff.

175. The amount of aforementioned political support as also aforementioned, that said level of publicity comes at tremendous financial incentive to those promoting said FOA, EDA, and HDA, thus becomes self-evident.

176. The City of Hazard, is known to purchase various privately owned buildings, one of such, being from its well connected former city attorney, defendant Paul Collins, December 15th of 2021, located at 486 Main Street, Hazard KY.

177. Defendant Paul Collins is known to continue to reap benefit from his formerly owned law office building, now owned by the City of Hazard, by his continued unfettered business usage at 486 Main Street, Hazard, KY 41701.

178. Defendant Paul Collins continues running his various business interests as "authorized agent" of his own real estate development "interests" still located at 486 Main Street, Hazard KY,

41701, owned by the City of Hazard.

179. Among the business interests of Paul Collins, "MTN of Alabama" is known to operate at 486 Main Street, Hazard KY

180. Another realty company, known as Drinkard Development, is also known to be located 486 main street, with Paul Collins holding a position as "authorized agent."

181. Another Realty company, known as Town Square LP is also located at 486 Main Street of which Paul Collins remains "authorized agent."

182. Another Realty company, known as Kadima LP real estate, is also located at 486 Main Street of which Paul Collins remains "authorized agent."

183. Another Realty company, known as Hazard development partnership LTD "real estate industry" is also located at 486 Main Street of which Paul Collins remains "authorized agent."

184. Another Realty company, known as Hazard RJ LLC real estate is also located at 486 Main Street of which Paul Collins remains "authorized agent."

185. Drinkard Development and Economic Development Alliance (EDA) is well known to be in a deeply intertwined business relationships with each other, specifically with regard to development of Drinkard Developments shopping center located on Black Gold Boulevard, Hazard KY.

186. Economic Development Alliance (EDA) is known to be administered by City of Hazard mayor Donald Mobelini, among others, such as defendant Betsy Clemons.

187. EDA's "executive director" Zach Lawrence is known to advertise development of Drinkard Developments shopping center, leasing of their commercial buildings, while promoting "tourism" within the City of Hazard.

188. Defendant Steve Campbell of the Gorman family is known to be a primary contractor over Drinkard Development/EDA with regard to the work performed on Black Gold Blvd Hazard KY.

189. WYMT news is known to promote "economic development" advertising "16-20 million dollar development" of the EDA/Drinkard shopping center located on Black Gold Blvd Hazard KY.

190. The defendants of the City of Hazard are well known for imposing a "tourism tax" alongside Scott Alexander, a director of EDA alongside defendant Donald Mobelini, also of EDA.

191. The "City of Hazard Tourism Building," is known to have a recently developed "visitor center" located at 1133 North Main Street Hazard KY, as well as addresses for "Perry County Tourism

19

Commission" located at 601 Main Street Hazard KY, and "Perry County Tourism" located at 124 Corporate Drive, Hazard KY.

192. The owner of the "Tourism" business is known to be either owned or ran by Edith Campbell, a member of the "Campbell" family.

193. The defendants of Public Protection Cabinet are well known to give the defendants of Drinkard/EDA exclusive favoritism with permitting requirements regarding the completion of said demolition/construction of new commercial buildings within the Drinkard Development shopping center complex located off Black Gold Blvd Hazard KY.

194. Carla Combs Napier is well known in the City of Hazard community as close family member of Defendant Donald Mobelini, the city's mayor.

195. On or about October 27th 2023, Charla Combs Napier publicly advertised on her Facebook social media that she "had bought a building, a big building" formerly known as the Dawahares/Hoovers home furnishings building, located at 480 High Street and 439 High Street, Hazard KY, essentially representing the same building at the two addresses.

196. In the said advertisement from Ms Napier, stated that "demolition and construction work would be going on for a few months."

197. The official purchaser of the said 480/439 High Street building, previously advertised as purchased by Charla Combs Napier, was purchased by the City of Hazard, thereafter referred to as "city of hazard public improvement."

198. Defendants of the Public Protection Cabinet are known to provide exclusive favoritism of treatment with regard to construction permits of said construction of 480/439 High Street building for the financial benefit of Charla Combs Napier, family member of Donald Mobelini, Hazard mayor.

199. The defendants of the Public Protection Cabinet are known to establish "rules" that allow government agencies an "exemption" with regard to application of said standards/rules.

200. Over the proceeding months, EDA, Donald Mobelini, and others announced the development of three businesses subsequently operating under Charla Combs Napier, thereafter named Southern Blessings, Copper Lantern, Belcher and Bordeaux, Positive Energy Acquisitions LLC operated by Lori M Reynolds.

201. The City of Hazard maintaining ownership of the 480/439 High Street building tactfully

allows Carla Combs Napier to evade property taxes on her business.

202. Lori M Reynolds is known to be related to Housing Development Alliance (HDA) executive director Scott McReynolds. defendant of this lawsuit.

203. The City of Hazard maintaining ownership of the 480/439 High Street building tactfully allows Lori M Reynolds to evade property taxes on her business.

204. The City of Hazard is well known to utilize City of Hazard resources, workers and other staff to benefit Paul Collins at 486 Main Street and Donald Mobelini's family member(s) Carla Combs Napier and others, located at 480/439 High Street in Hazard KY, by developing said properties at taxpayers expense, whist deriving personal benefit or enrichment of themselves.

205. The City of Hazard maintaining ownership of the 486 Main Street building to tactfully allows Paul Collins to evade property taxes on his business.

206. Lori M Reynolds is also known to be in association with Lynn Lee Inc, an entity that is known to benefit Housing Development Alliance (HDA).

207. The City of Hazard is known to pay certain individuals to run personally preferred businesses within the buildings that it purchases to create the illusion of real businesses, whilst destroying legitimate businesses that are not in alignment with its local clique/club/conglomerates of FOA, EDA, HDA, Chamber of Commerce, and others.

208. Chamber of Commerce is known to primarily represent HDA, specifically Betsy Clemons.

209. Betsy Clemons is also known to have her own office within the 486 Main Street building, shared by defendant Paul Collins, under the umbrella of the City of Hazard's ownership.

210. The City of Hazard, specifically Donald Mobelini and Denise Davidson, are known to force a transaction of sale of the plaintiffs former 446 Grand Hotel, Newberrys Lot, and approximately 80% of all remaining parking the plaintiff had once enjoyed, in order to allow the defendants of FOA free unfettered tax free usage/benefit of FOA and Gerry Roll, its primary representative.

211. Donald Mobelini and Denise Davidson are well known to force said transaction via threat of eminent domain against the plaintiffs said 446, and Newberry's building lots, after exploiting the plaintiffs personal resources toward improvements to said properties, under the guise/promise that he would have been allowed to restore his 446 Grand Hotel facility.

212. Defendant Paul Collins is known to covet the said 446 and Newberrys lots "as we think

21

our well capitalized non profit has the best chance to succeed at that location" exhibit 7.

213. It is commonly known that leaving south eastern Kentucky to seek opportunities elsewhere is a common practice among the youth of south eastern Kentucky, as opportunities are generally known to be scarce.

214. Upon the unexpected death of his mother, the night of August 2nd 2009, it is known that the plaintiff had decided to invest in a building within Hazard Kentucky, and went into debt to make his first purchase of the 426 main street building, well known to have recently housed a beautiful sports bar on the first two levels previously named "Skybox Sports Bar and Grill."

215. The previous owner, Cecilia Richie, was in distress on her loan with Peoples Bank for the 426 Building, in part due to her commercial tenant Skybox Sports Bar, having closed its operations, thus unable to maintain payments on the mortgage, due to lack of payments made, for lack of receipt of lease payments of the Skybox restaurant to Richie, creating a default of said loan.

216. The 426 building also neighbors the 420 main street building, which previously was owned by the Gorman family, which housed Hazard Insurance Company, it was later sold to Gerry Roll and Foundation of Appalachian Kentucky, (FOA), which is now owned by the defendants.

217. The Gorman and Roll families are historically well known to weld considerable influence over town affairs, primarily due to their family positions as mayor and assistant city commissioner.

218. The defendants of FOA, and Gerry Roll, had allegedly obtained a grant in the total amount of $450,000.00 to purchase real estate, with $300,000.00 allegedly going to the Gorman family to complete the purchase of the 420 FOA building, leaving the defendants $150,000.00 residual to "purchase other real estate."

219. Just prior to his purchase of the 426 building on or about August 30th 2010, the plaintiff had the structure evaluated by a structural engineer as structural defects were visually identified, who then made recommendations to repair the north east rear facing area of the structure, to shore the foundation with "push piers" in order to "ensure the structural integrity of the facility."

220. The 426 building/facility also had three (3) upper floors above the two (2) story sports bar/restaurant, suitable for new offices or apartments, of which had primarily stood largely empty and vacant upon the plaintiffs acquisition.

221. After consulting with the former City of Hazard building inspector, B.J. Yeung, just prior

22

to said purchase, official permission was obtained from this gentleman to install the structural push piers around the outside of the building, and to commence construction of the new apartments in the upper floors, "provided that the structural repair documents are stamped by the engineer, and that they will be licensed professionals constructing the apartments." -verbatim.

222. Subsequently, Mr Yueng was rumored to have come up with a cancer diagnosis, and allegedly had "committed suicide" following said diagnosis, in any case, currently stands deceased.

223. The former Skybox II sports bar, previously located within the said 426 building on main street in Hazard KY, was well known to also serve various alcoholic beverages.

224. It is long well known that the Alcoholic Beverage Commission (ABC) does not give out alcoholic beverage licenses without a certificate of occupancy issued by the Public Protection Cabinet, also known as The Office of the State Fire Marshal, one of its alias's.

225. A license to sell alcohol was required of the 426 facility to have an occupancy certificate around the time of said purchase from on or about August 30th 2010 through 2015.

226. At the time of the plaintiffs acquisition of the 426 main street building, the plaintiff was still employed by Sykes/AT&T contract as his primary employment, with said contract eventually ending with Sykes and AT&T, due to said jobs being outsourced to a group in the Philippines.

227. The resulting layoff as a direct result of said contract losses, the plaintiff then diverted all of his time and attention to his 426 building as an alternate means of income.

228. The plaintiffs former 426 buildings restaurant use portions involved commercial use tenants, beginning with Brian Amburgy of Skybox II Sports Bar, Dennis Cress of 5th Amendment Sports Bar, and finally Jennifer Noble of Tree house Cafe and Bakery, respectively, from August 2010 until the date of its closure by the Public Protection Cabinet on or about July 18th of 2015.

229. Structural code/loading requirements for commercial buildings are traditionally well known to be "essentially the same" with regard to office space/residential usage space, respectively.

230. The plaintiff proceeded to develop the various residential use apartments in the upper three (3) floors of the 426 Tree house Cafe building, with most of said apartment units being completed construction as of approximately early to mid 2011, as "permitted" by City Inspector BJ Yeung.

231. The third and final commercial tenant of the 426 Tree house Cafe restaurant became instantly popular, selling gourmet sandwiches, health foods, custom made bakery cakes and cupcakes,

23

which the general public had once enjoyed.

232. While the Tree house Cafe was operating, the plaintiff continued to make improvements to the upper floors of the 426 buildings residential use portions/sections.

233. William Hall, of Hall Properties LLC, previously owned the adjacently located apartment building from the said 426 building, formerly located at 67 Whitaker Way, Hazard Kentucky, as well as the concrete slab located directly behind the plaintiffs former 426 Tree house Cafe building, the vacant Newberrys building lot (which had once consisted of the Newberrys Main Street building, located beside the 426 building), the 446 Grand Hotel/Main Street Mall building formerly located between the vacant Newberrys Lot and formerly attached to the 470 Main Street Payton Morton Building/Public Defenders Building, and parking lot located directly behind the plaintiffs former 446 Grand Hotel building, beside the 67 Whitaker Way White apartment building, prior to the plaintiffs 2013 later acquisition of said properties.

234. At some point during the said renovations/improvements to the 426 buildings residential use portions, the plaintiff was observed by Mr Hall while bringing in various building materials through the rear entrance of the 426 building steel staircase and steps to the residential use portions, the first building subject to this suit.

235. During this first meeting with Mr Hall, it was discovered that Hall was the owner of the adjacent 446-1/2 main street building, a large 17 unit apartment building with white vinyl siding, as well as the concrete slab located directly behind the plaintiffs former 426 building.

236. At some point the 911/postal address of the 446-1/2 main street building was later changed by the postal service/911 to 67 Whitaker Way building as its new official address sometime in 2017.

237. It was also disclosed during said conversation with Mr Hall, that he had also owned the vacant empty lot beside the 426 building, which once housed a building called the Newberrys Building, which was previously demolished by Mr Hall after an "order from the City of Hazard" to Mr Hall, to "demolish" said 434 Newberrys building itself, thereby making said area a vacant lot, thereafter commonly known as the 434 Newberrys parking lot, now known as "Grand Park" by the defendants.

238. At some point in the 426 buildings history, a fire was alleged to have occurred within the former Newberrys building, prior to the ownership of William Hall.

239. The said fire alleged to have occurred within said Newberrys building had allegedly

24

"leeched" into the upper fourth (4th) floor of the 426 Treehouse Cafe building, causing significant damage to that floor, thereafter creating a need for repairs to that floor.

240. Of said damages to said fourth (4th) floor of the 426 building that was in need of repair, the damaged portions of that floor was later cut away, and had exposed a significant part of the third floor beneath it, this damage was also prior to the plaintiffs ownership.

241. Despite the said damage to its fourth (4th) floor, it is known that the Public Protection Cabinet, also known as the Office of the State Fire Marshal, still allowed the 426 building to be occupied prior to the plaintiffs ownership.

242. The plaintiff had later completed repairs to said damaged fourth (4th) floor section upon his acquisition of the 426 building on or about August 30th 2010.

243. From the date of acquisition of said 426 Tree house Cafe building in August 30th 2010 until the date of its forced liquidation August 7th 2023, there is no known record of fires, or random fires, taking place within, or originating within, the 426 Tree house Cafe building itself.

244. Mr Hall further disclosed that he also owned the large 446 Grand Hotel building that sat on the opposite side beside the vacant Newberrys lot, and was attached to the 470 Payton Morton building.

245. Mr Hall also disclosed that the 446 Grand Hotel/shopping Mall building had once consisted of approximately 19 residential use portions and 6 commercial spots in the lobby areas of the building, subletting to various commercial businesses within.

246. Mr Hall lastly disclosed that he also owned the land that the attached 426 buildings steel staircase was encroaching upon Halls property, of which was a previously known encroachment.

247. Due to various concerns regarding various mutual interest between the plaintiff and William Hall, an agreement was eventually made to purchase/acquire the aforementioned properties of 446 Grand Hotel, Newberrys Lot, 67 Whitaker Way building, and all enjoining lots, at high debt, high payments, secured by the plaintiffs collateral (Properties in Naples FL) to complete said transactions.

248. On or about March 21th 2013, the plaintiff completed the first purchase of the 446 Grand Hotel building and vacant parking lot directly behind said building.

249. Approximately six (6) months after the plaintiff purchased the 446 Grand Hotel building, William Hall extended an offer to purchase the remaining 67 Whitaker Way white apartment building

25

and remaining lots around the 426 Tree house Cafe building on or around October 1st 2013.

250. Despite drastic accomplishments/improvements to the 426 building, the two newly acquired buildings of 67 Whitaker Way and 446 Grand Hotel were initially discovered to be in far worse condition than the 426 main street building.

251. The somewhat dilapidated conditions of the said 446 Grand Hotel and 67 Whitaker Way apartment buildings, primarily significant roof leaks, plumbing repairs and other such needs of the two larger buildings recently obtained from Mr. Hall in March 2013, often mandated the plaintiffs priorities.

252. Over the initial two and a half years of ownership of the stated 446 Grand Hotel and 67 Whitaker Way buildings, the plaintiff had accomplished many improvements to said facilities, that quickly became visually noticeable to the general public.

253. At some point the visually noticeable improvements to said facilities of 426 Main Street, 446 Main Street, and 67 Whitaker Way buildings had lured the envious coveting desires of the defendants, particularly Gerry Roll of FOA, Paul Collins of Drinkard Development, Donald Mobelini of EDA, collectively, as "we believe our well capitalized non profit will do better at that location" (Exhibit 7, *et al*).

254. As a direct result of the defendants subsequent attempts to "get the coveted properties on the cheap" the defendants of FOA, EDA, and HDA, primarily Betsy Clemons and Gerry Roll, of the above named entities, embarked on establishment of a well known policy/practice with the City of Hazard and the Public Protection Cabinet of "if we can't have his properties he won't benefit from them either" in order to deprive the plaintiff of all manner of beneficial enjoyment or usage of the buildings subject to this suit as outlined, by conspiracy to destroy the above named properties.

255. With the initiation of the stated policies/practices from the defendants as aforementioned, beginning on or about mid 2012 a call from one of the residential tenants of the 426 buildings residential use portions reported that "a fire marshal is in the building," at which the plaintiff then ventured over to the said building to meet with the said official from Public Protection Cabinet.

256. Upon meeting the fire marshal for the first time, the plaintiff introduced himself to the fire marshal, who was later identified as the defendant Kenneth Browning.

257. Mr Browning expressed that he was upset, by declaring "I told Cecilia she couldn't have apartments up here! Who gave you permission to build these?" In an angry, confrontational tone with

the plaintiff.

258. Calmly, the plaintiff informed the defendant Mr Browning, that "the city building inspector gave us the approval, Mr Yeung."

259. The defendant Mr Browning responded "well I told her (Cecilia) that she couldn't have apartments up here, so this is going to have to be shut down."

260. Cecilia Richie was known as the former owner of the 426 Main Street, Tree house Cafe building, prior to the plaintiffs acquisition of said building/property.

261. During the first initiating encounter between the plaintiff and Kenneth Browning, wasn't a mention, state, or cite "code deficiencies" or "violations" of the 426 building itself other than voice his personal dissatisfaction that "they weren't supposed to be any apartments up here."

262. Upon observing that new apartments had been constructed in the upper floors of the plaintiffs 426 building, defendant Kenneth Browning expressed he was upset, based on Browning's personal perception that Browning's "authority" was "maliciously circumvented" by the plaintiff.

263. Based on the initiating encounter between the plaintiff and defendant Kenneth Browning from this point forward, Mr Browning had then expressed a clear, unwavering commitment to "shut down Brian Carter" as outlined in #257(supra).

264. Several days had followed, defendant Kenneth Browning then brought a colleague, defendant Allan Walters, to "evaluate" the plaintiffs 426 building, restaurant, and apartments.

265. Mr Walters was then later identified as Mr Browning's immediate field supervisor.

266. At the time of the initial encounters with Browning and Walters, the 426 building had an old freight elevator throughout its floors, consistent with its original construction in 1938.

267. It is not uncommon for older buildings of said era in or around the Hazard KY area to have older freight elevators within the City of Hazard, City of Whitesburg, and other local small communities, generally located in southeastern Kentucky.

268. Among other buildings within the City of Hazard and City of Whitesburg, are also well known to possess older freight elevators similar to that formerly located within the plaintiffs former 426 building, consistent with said buildings original design(s).

269. The said other buildings known to have older freight elevators include the old Hazard Furniture building located in Hazard KY and the city hall building located in Whitesburg KY, among

27

many other historic buildings of similar construction.

270. During the initiating encounters with Kenneth Browning and Alan Walters, Walters did not cite personal dissatisfaction with discovering apartments, did not initially cite "code deficiencies" or "violations" with the 426 building, but did state that the buildings former freight elevator shaft "could be a chimney flue" and "had to be shut down" in support of Browning's objective to do the same.

271. Defendants Mr Walters and Mr Browning then sat down in the restaurant portion of the 426 building after their first official conversation with the plaintiff, where they declared that said building "had to be shut down,"and gave contact information to speak with William Swope further.

272. Upon receiving direction from Alan Walters about contacting William Swope, the top supervisor of the Public Protection Cabinet, also known as the Office of the State Fire Marshal, the plaintiff promptly called Mr Swope at his office in Frankfort to discuss the new encounter with Browning and Walters as outlined in #271(supra) sometime in mid to late 2012.

273. Upon phone calling the head of the Public Protection Cabinet William Swope, an initiating conversation with defendant Mike Haney, who responded to the phone call.

274. Defendant Mike Haney at the time held a position as "assistant state fire marshal" under William Swope during the initiating events with Kenneth Browning and Alan Walters.

275. Initially, defendant Mike Haney was vague on specifics, simply cited the necessity to "shut down the building" while loosely repeating/mimicking the generally hateful attitude/verbal rhetoric of Kenneth Browning, his named subordinate.

276. It is generally known at the Public Protection Cabinet that Kenneth Browning and Mike Haney overall "share the same attitude."

277. After speaking briefly with Haney, the plaintiff was eventually allowed to talk to William Swope, who then declared "we need to make sure exit signs, hand rails, and smoke detection is in place, and we will see what we can do about issuing occupancy" the call then concluded.

278. It was at some point in time during these introductory events that the 426 Buildings owner of the restaurant serving portions of the building, Jennifer Noble of Treehouse Cafe, reported to the plaintiff that "the fire marshal came in and jerked her occupancy certificate from the wall."

279. The alleged removal of Jennifer Nobles occupancy certificate from her Treehouse Cafe restaurant directly lead to her having issues with obtaining a restaurant alcohol (ABC) license with the

state, a state agency that is well known to issue licenses to sale beverages for businesses.

280. The alleged removal of Jennifer Nobles occupancy certificate from her Treehouse Cafe restaurant created a tortious interference in the business advantage between Noble and her customers, as a direct result of her limitation of ability to provide product her customers often desired.

281. The Public Protection Cabinet's repeated "visits" from Browning and Walters to said 426 building restaurant use portions created a tortious interference between Noble and her customers, by creating an intimating, harassing/menacing based presence for Noble's customers of her restaurant.

282. As a direct result in the impairment of Jennifer Nobles advantageous business relationships with her customers as outlined by the Public Protection Cabinet, a likewise subsequent interference with the advantageous business relationships also occurred between Noble and the plaintiff, due to Nobles impaired abilities to meet her restaurant lease obligations to the plaintiff.

283. Among a first series of subsequent "visits" from defendants Kenneth Browning and his colleague Alan Walters, Mr Browning initially cited a relatively small list of "code discrepancies," or what he perceived as "code violations" with the 426 building in their official "reports" to their cabinet.

284. Among the later of the cited "code discrepancies" from Kenneth Browning, or "citations," stated that the "interior staircase was in extremely unsafe condition," the "steel staircase outside of the building had rusted hand rails," that "the building did not have a fire sprinkler system," and that "fire extinguishers weren't properly tagged," that "there was no fire separation," and, that the "exit signs were in disrepair throughout the building."

285. Upon receiving initial copies of the aforementioned "reports" from defendants Kenneth Browning and Alan Walters, the plaintiff then contacted the Public Protection Cabinet, again requesting to speak with head state fire marshal William Swope or assistant State Fire Marshal and defendant Mike Haney, to discuss the issues cited by Browning in his report(s).

286. After further consult with defendant Mike Haney by phone, Mr Haney declared that "they weren't qualified to make determinations about the building," and was "sending state building inspector Steven Hammock to further evaluate" the plaintiffs 426 building.

287. As the "citation reports" from defendants Kenneth Browning and Alan Walters also stated "a response is required within 10 days from receipt of this notice," the plaintiff complied by drafting and sending written responses to the Public Protection Cabinet department heads, namely to William

29

Swope and defendant Mike Haney, of the Office of the State Fire Marshal, providing a typewritten statement in rebuttal stating that "the exit signs appear to be well lit and working" contrary of Kenneth Browning's written statements that "the exit signs are in disrepair throughout."

288. In addition to providing said rebuttal, the plaintiff also provided, in essence, a declaration that the "other concerns" from Browning would be addressed with State Inspector Steven Hammock.

289. A few days followed, upon invite, the plaintiff met and enjoyed a lunch at the local Circle T restaurant with Wallace Campbell Jr, the same contractor that he had worked with the plaintiff over the years performing various contract labor work, primarily with regard to the restoring of the plaintiffs mothers fire damaged home located at 65 Doctors Row, Chavies KY.

290. It was commonly known by most that the plaintiff had lost his own mother in a house fire that claimed her life the night of August 2nd 2009.

291. The plaintiff discussed with Wallace Campbell Jr at said Circle T restaurant about the unpleasant nature of visits with Kenneth Browning, it was during these discussions that it was then disclosed that Kenneth Browning was also the former son in law of Wallace Campbell Jr.

292. It was per a subsequent conversation with Wallace Campbell Jr, that he had at one point spoken to Kenneth Browning, during of which, disclosed to Browning that Wallace Campbell and the plaintiff had already established a working relationship with regard to the 426 building.

293. The aforementioned working relationship with the plaintiff and Wallace Campbell Jr gave defendant Kenneth Browning additional incentive to be personally aggrieved with the plaintiff, due to Browning's divorce of Wallace Campbell's Jr's daughter.

294. Allegations regarding issues with infidelity on the part of Kenneth Browning were alleged to be a determining factor of the termination of marital relations with Wallace Campbell Jr's daughter.

295. At some point during subsequent conversations with Wallace Campbell Jr, Wallace Jr introduced the plaintiff to Jerry Herald, an individual who claimed to have worked at the City of Hazard Water plant.

296. When further discussing the "deficiency" cited from Mr Browning's reporting that the historic 1938 426 Main Street Treehouse Cafe building lacked a fire sprinkler system with Mr Herald.

297. The plaintiff then discussed with Mr Herald directly regarding the possibility of having a fire sprinkler tap installed in the 426 building, at which Mr Herald then promptly replied "whatever

30

water supply you've got going in there now, that's all you're going to get." -Verbatim.

298. At the time of said discussion with Jerry Herald, the only water supply coming into the plaintiffs 426 building from main street was a ¾ size water supply inlet.

299. It was later discovered that common fire sprinkler installations often require a 4" to 6" water supply main minimum, commonly with pressure booster system inlet at the front of said building(s), as needed, in additional support of such a system.

300. A few days later after the plaintiff met with Jerry Herald, the plaintiff then met the aforementioned state building inspector Steven Hammock at his 426 building for Hammock's evaluation of the 426 building and apartments for the first time.

301. While escorting Mr Hammock throughout the building to make his own evaluation of the 426 building and apartments, the plaintiff largely stayed silent, allowing the said inspector to make his own determinations regarding the 426 building.

302. Once former State building inspector Steven Hammock had concluded his walkthrough inspection of the 426 building, Hammock did not agree with defendant Kenneth Browning and Alan Walters prior evaluations that the building "needed to be shut down or vacated."

303. State building inspector Steven Hammock also strongly disagreed that the 426 building was "especially susceptible to fire loss," that the building had an "eminent risk of loss of life or limb," that "entry into the facility could result in death or serious injury,"among other negatively charged defamatory rhetoric, promoted from Kenneth Browning and his colleague Alan Walters.

304. At the time of aforementioned events with Browning, Walters and Hammock, Steve Hammock was determined to be the Public Protection Cabinets expert in building construction.

305. When asked, State building inspector Steven Hammock did not agree with defendant Kenneth Browning's evaluation that "the interior wooden staircase is extremely dangerous and unsafe," instead he declared, "the stairs creek and groan a bit when you walk up them but they do that at my house" -verbatim.

306. When asked, State building inspector Steven Hammock gave instruction to "submit a variance request to Gary Feck and Ric Mcnees for the fire sprinkler system requirement, based on what you were told from the city."

307. Gary Feck and Ric Mcnees are also representatives of Public Protection Cabinet during

31

the initiating events as aforementioned with Hammock, Walters, and Browning.

308. At the time of the initiating events as aforementioned, Gary Feck held a position as "commissioner of housing" under the former Steve Beshear administration, with Ric Mcnees known to hold a similar but lesser ranked title under the umbrella of the state government entity known as Public Protection Cabinet, in which the Office of the State Fire Marshal, also operates under said Cabinet.

309. In a follow up via phone conversation with defendant Mike Haney, Mr Haney directed the plaintiff to "have the (426 building) apartments inspected for electrical safety and provide reports" in which the plaintiff hired a follow up inspection from state electrical inspector Calvin Saum.

310. After hiring, evaluating, and obtaining Calvin Saum's electrical inspection reports regarding the "electrical fire safety of the apartments" of the 426 main building, the subsequent reports affirmed the facilities general electrical safety regarding the 426 building apartments constructed within the said building on or about January 30th 2013.

311. Upon receiving the said reports as requested from Haney, at the plaintiff then provided the copies to the above individuals, Mike Haney, Swope, Feck, and McNees via US postal mail to the Public Protection Cabinet around the same or similar time frame.

312. The plaintiff began the process of sending all such aforementioned electrical safety documentation as instructed via certified mail, so he could have some measure of proof of sending the requested correspondence shortly after January 30th 2013.

313. At some point after the above mentioned events, the plaintiff ran into Alan Walters in the upper floors of the plaintiffs former 426 building, and appeared to be making another "report" or "write up" over the building.

314. The plaintiff then inquired with Walters about the determinations of the Public Protection Cabinet inspector Steve Hammock, where Walters then declared "we didn't receive Hammock's report" the encounter concluded.

315. Following the plaintiffs new acquisition of the 446 Grand Hotel on or about March 2013, defendant Kenneth Browning continued to visit the new office of the plaintiff, by this time, was located within the plaintiffs newly acquired 446 Grand Hotel/Main Street Mall building with new "citation reports" or "write ups" with regard to the neighboring 426 building.

316. Upon receiving the first of these subsequent copies of the "reports" from defendant

32

Kenneth Browning, the plaintiff asked Mr Browning "if they received the variance request and other paperwork from me?"

317. Mr Browning replied "yeah I think they got some stuff up there."

318. The plaintiff then asked Browning "are they going to grant my variance for the fire sprinkler?"

319. Mr Browning again replied, "yeah I think they're going to, I think they're going to," while handing the plaintiff another "report" essentially verbatim of his previous reports.

320. Immediately the plaintiff reiterated that "Kenny we've already addressed this with the state building inspector, and he said everything was fine."

321. Mr Browning then responded "fine I'll just tell them you're refusing to cooperate."

322. The plaintiff then stated "I'm not saying that, the inspector said the building was fine."

323. Mr Browning then turned and left the plaintiffs office expressing a displeased personal demeanor with the plaintiff.

324. On or about October 10th 2013, the plaintiff acquires the adjacently located 446-1/2 main street building via purchase and land contract with its previous owner William Hall of Hall Properties Inc, a large, three story, seventeen unit apartment building with white vinyl siding, resting near the river bank, and beside a road named Whitaker Way in Hazard Kentucky exhibits 1 thru 51.

325. The address of the said White Apartment building was later re-addressed by the postal service aka "911" during the plaintiffs term of ownership as 67 Whitaker Way sometime in 2017.

326. Approximately one calendar month after obtaining ownership of the said 67 Whitaker Way building, a fire is known to have "broke out" on the third floor of the 67 Whitaker Way apartment building, Apartment #7, located in the middle of the building, on the north facing side towards the plaintiffs former parking lot in the evening hours on or about November 23rd 2013.

327. The said 2013 fire occurred a short time later after Pats Pest Control had just provided pest control services for said apartment unit #7 in the 67 Whitaker Way building.

328. The said 2013 fire of the 67 Whitaker Way building is known to have fully engulfed said apartment unit #7 in fire causing significant damage to said unit.

329. The said 2013 fire is known to have penetrated into the ceiling and entered a large area between the ceiling and roof rafters, typically referred to by the City of Hazard as a "void."

33

330. At the time of said 2013 fire, Sam Stacey is well known to have held a position as fire chief of the City of Hazard Fire Department.

331. Acting with bold, prompt, and overall quick, decisive action, former fire chief Sam Stacey and his team of fire fighters brought multiple 1-1/2" sized hoses into said 67 Whitaker Way Apartment building, quickly found their way to the third floor of said apartment building, to the unit that was fully engulfed, and promptly extinguished all remnants of fire of said facility in 2013 in very short order.

332. At the time of said 2013 fire, no special scrutiny was ever known to be exercised by Kenneth Browning or his Public Protection Cabinet of said 67 Whitaker Way facility.

333. The said 2013 fire of the 67 Whitaker building also left some soot and flames reaching partially into the hallway near the third floor interior staircase, causing light to moderate damage.

334. The stated engulfed apartment #7 of the 67 Whitaker building was fully destroyed by fire with subsequent efforts to extinguish it, however, the remainder of the building was largely saved.

335. Shortly after said 2013 Whitaker Way fire was extinguished, Public Protection Cabinet also known as Office of State Fire Marshal, Kenneth Browning, was summoned to the scene, where he claimed to have performed an inspection of the 67 Whitaker Way facility, primarily the said fire damaged apartment unit within said building.

336. After a short discussion over the phone with the plaintiff, Kenneth Browning allowed the plaintiff and his residential tenants to make prompt repairs and reoccupy the facility immediately.

337. Immediately following said the 2013 67 Whitaker Way building fire, Kenneth Browning, specifically his Public Protection Cabinet, gave no special "permitting requirements," restrictions, or other such scrutiny regarding the plaintiffs regarding the plaintiffs significantly fire damaged facility.

338. Immediately following said 67 Whitaker Way building, 2013 fire, no special scrutiny was ever known to be exercised by Kenneth Browning or his Public Protection Cabinet, regarding "safety conditions" or any other such concerns, of said 67 Whitaker Way facility.

339. As the plaintiff had newly acquired the 446 Grand Hotel/Main Street Mall building and 446 ½ main street aka 67 Whitaker Way white apartment buildings from William Hall of Hall Properties in 2013, those buildings were not known to ever be given any measure of prior scrutiny as the plaintiffs 426 building.

340. The 426 Main Street, formerly known as Treehouse Cafe building, was not previously

known, prior to 2015, of being deemed "a distinct fire hazard" by the Public Protection Cabinet.

341. The 426 building is not known throughout the course of its century old lifespan to have fires, or fires spontaneously originating as a direct result of its "conditions."

342. The former 446 Grand Hotel/Main Street Mall building, and the former adjacently located 67 Whitaker Way Apartment building, were each known to have a history of fires over their approximately century old lifespans.

343. Being personally dissatisfied over the initial outcome at not "having Brian Carter shut down," specifically due to his efforts at targeting the plaintiffs former 426 Treehouse Cafe building, Browning would eventually resume his "push" over the course of the following 2-1/2 years, (approximated) with the assistance of his colleague, Alan Walters, to "shut down Brian Carter."

344. Over the course of approximately 2-1/2 years from mid 2012, defendant Kenneth Browning, in his ongoing efforts to "shut down Brian Carter," specifically with regard to his former 426 Treehouse Cafe building, would consistently fail, Mr Browning would either, resort to making material false statements, misrepresent material facts, or fraudulently conceal material facts regarding the conditions of the 426 building in an effort further his goals of "shutting down Brian Carter."

345. Over the course of said 2-1/2 years, defendant Kenneth Browning would place said libelous statements into his official reports, submit said "citations" to his superiors, such as Mike Haney, and William Swope, in order to cast the plaintiff in as much of a negative, unfavorable light as possible to further his goals of "shutting down Brian Carter" with regard to the 426 building.

346. Defendant Kenneth Browning would utilize said libelous statements in said reports to strengthen his case to "shut down Brian Carter" with regard to the 426 building.

347. Defendant Alan Walters would uphold his subordinate Kenneth Browning by providing libelous statements of the 426 buildings condition in order to strengthen Browning's case against the plaintiff "to have Brian Carter shut down."

348. Over the course of approximately 2-1/2 years from mid 2012, until June 18th 2015, Kenneth Browning would engage in various "inspector shopping" in order to seek contradiction with inspector Steven Hammocks previous findings that the 426 building should have remained open.

349. Over the course of approximately 2-1/2 years from mid 2012, until June 2015, Kenneth Browning would bring to the plaintiffs former 426 building various teams of electrical and plumbing

35

inspectors seeking negative opinions regarding the 426 buildings condition.

350. Whenever said opinions of the various teams of inspectors did not bear fruit for Kenneth Browning's efforts to "shut down Brian Carter," Browning's continued efforts would eventually find and recruit former state electrical inspector Ronald Hacker, to aid in Browning's personal goals to "shut down Brian Carter."

351. Kenneth Browning knew that his continued visits with various parades of state officials would create a harassing, stalking, menacing, or overall intimidating presence for the customer base of Jennifer Noble, thereby creating a tortious interference with the advantageous business relationship of Jennifer Noble, the plaintiff, as well as the restaurants customers formerly operated at 426 Main Street.

352. Defendant Kenneth Browning, over the course of approximately 2-1/2 years from mid 2012, until June 2015, Browning would take no notice, or very little notice, of improvements the plaintiff had faithfully made to said 426 main street building, particularly with regard to its residential use portions, in furtherance of his personal objective to "shut down Brian Carter."

353. Defendant Kenneth Browning, over the course of approximately 2-1/2 years from mid 2012, until June 18th of 2015, Browning would continue to claim that the newly constructed residential apartment units "had holes in the walls, floors and ceilings everywhere just everywhere."

354. Defendant Kenneth Browning, over the course of approximately 2-1/2 years from mid 2012, until 2015, Browning would continue to claim that the 426 building "had no fire separation," "exit signs in disrepair throughout" among other "statements" or "claims" of the buildings overall condition, to further Browning's personal goals of "having Brian Carter shut down."

355. The aforementioned statements from Browning, supported by Alan Walters, declaring "the 426 building had no fire separation," "exit signs in disrepair throughout," "holes everywhere," among other "claims," were evidentiary libelous and not based on material fact of the 426 buildings condition.

356. Defendant Ronald Hacker, former state electrical inspector of the Public Protection Cabinet, misrepresented material fact by citing the 426 buildings residential use portions "didn't meet 2014 electrical code standards" knowing, or should have known, the said apartments were constructed prior to 2014.

357. During the time of said mid 2012 until June 18th 2015, the Public Protection Cabinet has, or did have, rules established for "pre-firm" structures, meaning *construction methods previously used*

36

*prior to imposition of said rules/regulations shall be maintained as previously permitted"* otherwise known as *"grandfathering"* clauses within the Kentucky Building Code.

358. It is well known, upon best knowledge and belief, that the defendants of the Public Protection Cabinet as aforementioned, primarily Kenneth Browning, promoted his own narratives of "Brian Carter is just building more apartments instead of doing safety work to the (426) building like we asked," promoted to his colleagues and superior representatives of the Public Protection Cabinet.

359. Kenneth Browning promoted his own narratives about the plaintiffs intent by defaming the plaintiff as "prioritizing his own enrichment above the safety of others" in order to achieve Browning's personal goals to deprive the plaintiff of "benefit" of ownership the 426 Main property.

360. During the time of said mid 2012 until June 18th 2015, several subsequent attempts to contact the state fire marshal aka Pubic Protection Cabinets senior staff to discuss the issues with defendant Mr Browning and his efforts to "shut down Brian Carters building" was consistently met by defendant Mike Haney, declaring "to not dare challenge the honor of his department."

361. On or about the dates of mid May to June 18h 2015, Kenneth Browning and Ronald Hackers began various "stop work order" initiatives, in order to prevent the plaintiff from making further improvements to the 426 Main Street building.

362. On or about the dates of mid May to June 18th 2015, Kenneth Browning's continued efforts to promote his narrative of "Brian Carter just building more apartments instead of doing safety work" to his senior staff of his Public Protection Cabinet, eventually prompted a visit the plaintiffs office at the 446 Grand Hotel/Main Street Mall building nearby the 426 Building.

363. The stated crew of men consisted of former commissioner Gary Feck under the former Steve Beshear administration, Jack Coleman, the former deputy commissioner, Phil Craig, the former director of housing, and William Swope, the former head state fire marshal, all men operating under the umbrella of "sub departments" of the "Public Protection Cabinet" on or about early June of 2015.

364. The stated men then asked the plaintiff to view the 426 building, of which the plaintiff then promptly took them to inspect the said building, without objection.

365. During the stated walk through the 426 building with the aforementioned senior staff, Mr Swope stated that the end of the 3rd floor entryway corridor "should have a door here," of which the plaintiff then asked, "would you like us to install a door here?" To which Mr Swope then quickly

37

replied "oh no, no no."

366. During the stated walk through the 426 building with the aforementioned senior staff Mr Feck made vague mention of "fire separation" on three (3) separate occasions.

367. "Fire Separation" is as generally well known, "fire separation" represents *"any material that slows the spread or augmentation of fire."*

368. Based on the above information of fire separation the plaintiff asked Mr Feck, each time Mr Feck mentioned, "would you like us to install an additional layer of drywall, or fire rated based drywall, over the existing drywall?" as an offer to increase the fire resistance rating of the walls and hallways, if it were such that existing construction was to be "deemed unsatisfactory."

369. Each time Mr Feck was asked about the plaintiffs offer (368 supra) to "upgrade to the fire separation," the only response was met with an empty "deer in the headlights" look from Mr Feck,

370. Without a direct answer to the question, Gary Feck indicated that he had no actual idea what "fire separation" really was, due to said "deer in the headlights" response to the plaintiffs question on direction of "fire separation" of the said 426 building.

371. Upon visiting the 5ᵗʰ floor of the 426 building, the floor where new corridors were previously being framed for new "drywall," at which the aforementioned "stop work orders" were posted by Ronald Hacker, Mr Feck then stated "you did a really great job on your framing up here."

372. Upon leaving the building following the senior staffs inspection, the plaintiff asked Mr Feck what their intentions were, Mr Feck replied, "well I feel a whole lot better about it now that I've seen it myself, but you don't have fire separation, so we're going to have to discuss what we're going to do next" the cabinet officials then left the property.

373. Approximately four (4) days later, the plaintiff received a phone call from commissioner Gary Feck, "Mr Carter we've discussed, and we're going to be issuing an order to vacate your building, thank you."

374. Within the next day or two, head state fire marshal William Swope arrived at the plaintiffs office in the 446 Grand Hotel/Main Street Mall building, escorted by defendant Kenneth Browning with his hands on his hips, sporting an aggressive, angry look on his face, and a compliment of City of Hazard Police department police officers.

375. Mr Swope gave the plaintiff a paper with an administrative order from his department to

38

vacate the 426 building, reciting the previous "violations" cited by Kenneth Browning, and a few "electrical code violations" also cited from Ronald Hacker.

376. After quickly reviewing the information in the "administrative order to vacate" from William Swope, the plaintiff refuted the allegations, "wait a minute these statements are not true."

377. Mr Swope in response simply rolled his eyes, took the paper back and stated "we're vacating your building" and left the plaintiffs office.

378. Later that evening the residential tenants of the 426 building brought back various "blue signs" or "placards" back to the office that were apparently posted by Kenneth Browning, declaring "entry may result in death or serious injury."

379. The residential tenants, were outraged at the said blue colored notices or "placards," stating "we wouldn't stay here if we didn't think this was safe!"

380. After the residential tenants of the 426 building voiced their outrage, the plaintiff then attempted to file or request an "administrative hearing," with regard to information posted online regarding said Cabinets decision to "vacate" the plaintiffs former 426 building.

381. While attempting to request an "administrative hearing" with the Public Protection Cabinet regarding its decision to issue "vacate order(s)" of the plaintiffs 426 building, approximately two (2) days later after Mr Swopes previous visit, residential tenants returned to the office stating "They're over there next door putting us out."

382. The plaintiff then ventured over to the 426 building where he confronted defendant Kenneth Browning regarding his attempt to "enforce his orders to vacate" said 426 building.

383. Upon said confrontation, Kenneth Browning again had a compliment of City of Hazard Police officers accompanying him.

384. Upon approaching said Kenneth Browning the plaintiff stated his objection with having his residential tenants of his 426 building removed from the property, at the same time, Browning had his supervisor, Mr Swope on the speaker phone of his cell phone, verbally upset at the plaintiffs intervention with his orders to vacate the plaintiffs 426 building.

385. At a tone audible to Mr Swope, the plaintiff quickly informed Swope that "Bill you can't vacate my building based on false statements!" At which Browning then took his boss back off speaker phone.

39

386. Unwavering in his position, The plaintiff stood against Browning in defiance, gave Browning a very stern look of his own, with Mr Browning replying "I had nothing to do with this."

387. Nervously, and after a several seconds, Mr Browning left the 426 building, with the City of Hazard police officers following suit a brief time later.

388. The next day or so after the above encounter, on or about June 18th 2015, counsel for the Public Protection Cabinet came down with an "emergency injunction order" filed in Perry Circuit Court, *State Fire Marshal vs Brian Carter 15-CI-00259.*

389. In response, the plaintiff then quickly sought out attorney James Hampton across the street for legal assistance, out of last minute necessity, timing and convenience for the said 2015 hearing.

390. At the said 2015 injunction hearing, former commissioner Gary Feck and head state fire marshal William Swope were the witnesses appearing on behalf of the Public Protection Cabinet.

391. At the injunction hearing, former commissioner Gary Feck arrived with legal Counsel defendant Peter Ervin and William Swope.

392. At the injunction hearing Gary Feck took the stand, but refused to acknowledge receipt of the compliance documentation the plaintiff had previously sent him via certified mail, as was previously instructed from state inspector Steven Hammock.

393. At the 2015 injunction hearing, former commissioner Gary Feck testified under oath "the apartments was the worst he'd ever seen" in direct contradiction to his previous on site opinion stating that "I feel a lot better now that I've seen them for myself."

394. At the injunction hearing, former commissioner Gary Feck would not give any specifics or particulars regarding fire safety issues, nor cite any "code issues" of the plaintiffs 426 building.

395. At the injunction hearing, former commissioner Gary Feck openly denied that he received any of the certified mail correspondence from the plaintiff regarding issues of the 426 building.

396. At the injunction hearing, the plaintiff affirmed, produced evidence and testified that he sent his correspondence to Mr Feck and Ric McKnees of the Public Protection Cabinet.

397. At the injunction hearing, the plaintiff affirmed, produced evidence, and testified that he obtained electrical safety inspections of the said residential usage floors of said 426 building conduced by licensed state electrical inspector Calvin Saum.

398. At the injunction hearing, defendant Peter Ervin objected to the plaintiffs evidence of

40

electrical safety of the 426 building, by declaring "Mr Carter could have forged evidence" at which the plaintiff quickly rebutted that Calvin Saum is a licensed state inspector by the state, with circuit judge Alison Wells, thereafter allowing the evidence.

399. At the injunction hearing defendant Peter Ervin questioned the plaintiff during cross examination "Mr Carter, you didn't update the fire separation when you were told is that right?"

400. The plaintiff responded "yes" as a direct answer in acknowledgment that he did not perform such a task to "update the 426 buildings fire separation."

401. At the 2015 injunction hearing Public Protection Cabinet defendant Peter Ervin willfully concealed material fact by refusing to disclose that the said direction of the buildings fire separation was based on material false statement from Kenneth Browning previously claiming that "the building had no fire separation."

402. At the injunction hearing Public Protection Cabinet defendant Peter Ervin utilized the aforementioned tactic of a purely conjectural line of questioning to the plaintiff regarding said instruction or direction from the Public Protection cabinet to "update the 426 buildings fire separation" in an effort to fraudulently conceal important material fact to the state Circuit Court.

403. At the injunction hearing defendant Peter Ervin utilized said conjectural based line of questioning in order to abuse the state circuit courts process outside his limits of authority discretion of the Public Protection Cabinet otherwise defined in KRS 227.330.

404. At the injunction hearing Public Protection Cabinet defendant Peter Ervin gave his own testimony during closing arguments as a firsthand witness of the 426 building (rule 701).

405. At the injunction hearing Public Protection Cabinet defendant Peter Ervin gave his own testimony during closing arguments as an expert in building construction (rule 702).

406. At the conclusion of the said injunction hearing, defendant Peter Ervin gave said testimony as both an expert in building construction and as a lay witness knowing he was not qualified pursuant to state and federal rules 701-702 respectively.

407. At the June 2015 injunction hearing, former head state fire marshal William Swope also gave his own testimony, providing vague generalities about the "importance of fire safety."

408. At the June 18th 2015 injunction hearing, former head state fire marshal William Swope would not give any specifics nor cite particulars regarding fire safety "issues" nor cite any "code

41

issues" concerning the plaintiffs 426 building.

409. At the conclusion of the said 2015 injunction hearing, defendant Peter Ervin gave flagrantly defamatory testimony stating "Mr Carter is just building more apartments instead of doing safety work like we asked" finishing by questioning Perry Circuit Court Judge Alison Wells "how long are we going to allow Mr Carter to make profits at the safety expense of others?" With Judge Wells simply responding "ok" as acknowledgment of the rhetoric before giving her ruling.

410. At the conclusion of the injunction hearing, June 18ʰ 2015, state circuit judge Alison Wells issued her ruling granting Peter Irvin of the defendants of the Public Protection Cabinet their sought injunction to vacate the residential units of the plaintiffs former 426 building on the grounds of "Brian Carters failure to comply with a direction from the Cabinet to update to the buildings fire separation."

411. The action of obtaining the June 18th 2015 injunction to vacate the plaintiffs former 426 building based on material false statements from Kenneth Browning, is outside the limits of authority jurisdiction of the Public Protection Cabinet.

412. Immediately after the Perry Circuit Court judge Alison Wells issued her ruling to vacate the residential use portions of the plaintiffs 426 building, the defendants of the City of Hazard responded by shutting off all gas and water utilities to the restaurant serving portions of the plaintiffs former 426 building, the same day, June 18th 2015.

413. Immediately after the defendants of the City of Hazard shut off its city provided utility services to the 426 building, the defendants of the Public Protection Cabinet, specifically the state fire marshal Kenneth Browning, responded yet again to the City's action by placing "order to vacate notices" on the restaurant serving portions of the 426 building.

414. Approximately the next day after the 426 building was effectively vacated or deprived of any benefit or usage on or about June 19th 2015, as a direct result of said collective, collaborative efforts of the City of Hazard and the Public Protection Cabinet, a news article was then published, stating "Treehouse Cafe will not reopen."

415. In the stated local news article, Jennifer Noble stated "the water was cut off after some upstairs apartments were condemned."

416. The defendants of the Public Protection Cabinet sent a response email to the plaintiff when asking for an explanation as to why the restaurant serving portions were now also being vacated, the

response from the Cabinet was "the separate order issued from department of housing applies to the whole building."

417. Shortly after the June 18th 2015 injunction hearing, for reasons that still remain unclear, the plaintiff was left to to pursue his subsequently scheduled "administrative hearing" with the Public Protection Cabinet, unrepresented, a short time later on or about July 2st 2015.

418. At the 2015 administrative hearing, defendant and former electrical inspector Ronald Hacker, openly refused to answer any questions from the plaintiff on his expert opinion if any of his cited "electrical code deficiencies" had attributed, or was related to a lack of safety of the 426 building.

419. At the July 2nd 2015 administrative hearing, defendant and former electrical inspector Ronald Hacker produced documentation showing the plaintiffs former electrical contractor, Kevin Hogan, was indeed licensed with the state as an electrician with Hogans license number revealed on Hackers own paperwork.

420. At the 2015 administrative hearing, the issue was raised as to allegations from Ronald Hacker implying a lack of electrical fire safety with the plaintiffs former 426 Main building, as was previously used as further justification for obtaining the order to vacate the said 426 building.

421. At the administrative hearing, defendant and former electrical inspector Ronald Hacker was questioned by the plaintiff about the qualifications of his electrical contractor Kevin Hogan, at which point the "hearing officer" Mike Wilson, refused to allow any such line of questioning, declaring "you can't ask that, that isn't relevant" repeating that "it wasn't relevant" over and over, talking above the plaintiff, not allowing the plaintiff to question Mr Hacker further regarding electrical safety qualifications of the plaintiffs electrical contractor.

422. At the administrative hearing, defendant and Public Protection Cabinet official Kenneth Browning testified "that there were holes in the walls, floors and ceilings everywhere just everywhere" and "others have seen the building" when the plaintiff questioned Browning about his "citations."

423. Due to a large lack of legal expertise at the time, and personal emotional disgust of Kenneth Browning's highly disingenuous answers at best, the plaintiff declined to ask any further questions of defendant Kenneth Browning, and was then dismissed from the administrative hearing.

424. At the administrative hearing, the plaintiff questioned former head state fire marshal and Public Protection Cabinet representative, William Swope, asking him to confirm for the record that he

43

in fact did not want a new door to be installed in the plaintiffs 3rd floor corridor, in which Mr Swope replied with a smirk "I didn't say that."

425. At the administrative hearing, the plaintiff questioned former state building inspector Steve Hammock, asking limited set of questions on his opinion as to the plaintiffs former 426 buildings safety, at which Hammock rebutted Browning's claims that "the exit signs were in disrepair," as well as provided a rebuttal to Browning's claims of "the building staircase as unsafe."

426. At the said 2015 administrative hearing, the plaintiff lacked the legal expertise necessary to properly ascertain the credentials, expertise, or curriculum vitae to appropriately evaluate or scrutinize the expertise of Kenneth Browning, Ronald Hacker or any other "representatives" of the Public Protection Cabinet.

427. At the said 2015 administrative hearing, the hearing officer Mike Wilson openly disregarded the plaintiffs electrical safety inspection reports from licensed state electrical inspector Calvin Saum that were previously just entered into circuit court record in *State Fire Marshal vs Brian Carter 15-CI-00259*, on the grounds that *"the inspector didn't appear to be approved by DHBC."*

428. DHBC, is otherwise known as "Department of Housing, Buildings, and Construction" a sub alias, or sub department that operates within the Public Protection Cabinet, alongside the "Office of the State Fire Marshal," "Department of Building Codes Enforcement" and others, operating under the umbrella of the Public Protection Cabinet.

429. The said Public Protection Cabinet is known to operate at the pleasure of the office of the Kentucky State Governors Office, with the current governor known as Andy Beshear.

430. It is well known that Kentucky Power also known as AEP or American Electric Power, does not connect electrical services to its power grid unless approved by a licensed state electrical inspector.

431. At the time of the aforementioned actions taken against the plaintiffs 426 building, the name of the state electrical inspector that approved electrical services for the 426 buildings residential use portions was state electrical inspector Jack Bowling.

432. At the time of the aforementioned actions taken against the plaintiffs 426 building, Jack Bowling and Calvin Saum were well known electrical inspectors approved by said cabinet.

433. At the said 2015 administrative hearing, the hearing officer Mike Wilson was given reason

44

to question the credibility of Kenneth Browning's findings based on the rebuttal testimony of Steve Hammock, but chose to disregard it, stating instead that "defendant Kenneth Browning provided convincing testimony" without substance to support such a finding.

434. Of the hearing officer Mike Wilson, in the July 2015 administrative hearing regarding the plaintiffs 426 building, *admitted* that State Inspector Steve Hammock visited said 426 facility, *admitted* that Hammock had performed a limited inspection of said facility, but then *denied* that he inspected the facility "when asked if he did so" contrary to Hammock's intended purpose of said visit to the facility.

435. Mike Wilson, the then stated 2015 "hearing officer" is, or at least was also a representative of the Public Protection Cabinet during the aforementioned administrative proceedings.

436. At the 2015 administrative hearing, Mike Wilson made no measure to evaluate or scrutinize his "experts" called to testify on behalf of the Public Protection Cabinet, yet "found them qualified as experts" as a matter of personal discretion.

437. At the 2015 administrative hearing, Mike Wilson cited "Mr Carter had no proof of his qualifications as expert," but required no such evidence of his own Public Protection Cabinet staff.

438. Ultimately, Mike Wilson, as hearing officer at the aforementioned 2015 administrative hearing, as would be naturally expected, issued his findings in favor of his Public Protection Cabinet, on the grounds that the plaintiff, in summation, "had failed to prove his innocence regarding safety of the 426 building."

439. Mike Wilson, the appointed "hearing officer" of the Public Protection Cabinet, made his findings based purely on a presumption of guilt of the plaintiff, rather than presumption of innocence.

440. Mike Wilson, was "appointed" by the Public Protection Cabinet, purporting to be the "neutral arbiter of justice" as "hearing officer" of said cabinet regarding the matter of the July 1nd 2015 orders to vacate said 426 Main Street, or 426 Treehouse Cafe building.

441. Administrative hearing officer Mike Wilson also cited "Kentucky Standards of Safety" in his final decision, declaring that the stated 815 KAR 10:060 *"overridden any other conflicts with the building code."*

442. Kentucky Standards of Safety, 815 KAR 10:060 essentially declares that the Public Protection Cabinet can set rules for standards of safety, it does not include any specifics of a declaration or designation of preemptive authority for any other rule, law, controlling case law, or regulation.

45

443. Finally Mike Wilson, the appointed hearing officer of the Public Protection Cabinet alleged that the 426 building "wasn't subject to grandfathering regulations outlined in 815 KAR 10:060 section 3,(3) because there was no proof that previous construction had ever been approved."

444. Mike Wilson used the above rhetoric as a basis to justify Kenneth Brownings claims that "the said 426 building is especially susceptible to fire loss, and there is a present such hazard to human life or limb that the public safety imperatively requires emergency action" pursuant to KRS 227.330.

445. The said allegation claiming "the construction was never approved" is not relevant to prove a lack of safety condition exists or did exist with the 426 main building at the time of the Public Protection Cabinets decision to order said building vacated on or about June 18th 2015.

446. Upon the conclusion of the 2015 administrative hearing, the plaintiff attempted to contact said defendants of the Public Protection Cabinet, specifically the State Fire Marshals office, seeking direction to move forward to reopen said 426 building.

447. The Public Protection Cabinet thereafter declared "the building had to go through building and code enforcement to be reopened," which is stated to be another "sub division" of the Public Protection Cabinet.

448. Several notices previously issued to the plaintiff have also stated "conditions remedied to the satisfaction of the state fire marshal in order for the 426 building to be reopened."

449. The tactfully evasive structure at which the Public Protection Cabinet as aforementioned between its "sub departments," such as "Building Code Enforcement" and "Office of State Fire Marshal" is often utilized to tactfully "pass the buck" of accountability regarding is otherwise dutiful obligation of good faith to treat the plaintiff amicably, with due process under law.

450. The Public Protection Cabinet is known to engage in said "passing the buck" tactics to evade accountability for the actions of its staff.

451. Most government agencies such as the Public Protection Cabinet are well known to structure its entity in an overall flagrantly dysfunctional manner to serve no other purpose, or to serve very little other purpose, but to conceal illegal or unethical actions under plausible deniability.

452. It was well generally well known as a matter of Public Protection Cabinet policy or practice around 2015 that, "if the fire marshal took the occupancy certificate he'd have to be the one to give it back" – pursuant to former state building inspector Steven Hammock.

46

453. Prior to the 2015 court ordered closing of the plaintiffs 426 building, the policy or practice of the Public Protection Cabinet was "issuance of certificates of occupancy are issued from the state fire marshals office."

454. The aforementioned 2015 events that transpired with the plaintiffs former 426 Treehouse Cafe main street building was the first of several subsequent events that eventually permanently ended the plaintiff of all forms enjoyment, usage or benefit, of all three of the plaintiffs formerly owned commercial buildings with adjoining parking lots located at 426 Main Street, 446 Main Street, and 67 Whitaker Way in Hazard Kentucky, as a direct result of the collective, collaborative, coordinated, concentrated efforts of the defendants of FOA, HDA, EDA, their affiliate representatives, and their proxy representatives of the City of Hazard and the Public Protection Cabinet.

455. After the plaintiffs former 426 building's was vacated in 2015 as aforementioned, several "remedy or demolish" notices was then issued to the plaintiff regarding the vacature orders of the former 426 Treehouse Cafe building, from the defendants of the Public Protection Cabinet.

456. Various representatives of the defendants of the Public Protection Cabinet, specifically members of its staff, primarily its former commissioner of housing Gary Feck, would communicate that the (426 building) "never had evidence of ever having a certificate of occupancy" in 2015.

457. When the defendants of the Public Protection Cabinet were contacted by the plaintiff over telephone regarding said "remedy or demolish" notice(s), the stated "remedy" option cited on the notices was formally taken off the table upon speaking with the defendants representatives, Mike Haney and Gary Feck, and former "director of housing" Phil Craig.

458. Instead of being "allowed to remedy" any "conditions" alleged by the Public Protection Cabinet, namely those cited by Kenneth Browning and Ronald Hacker, the defendants of the Public Protection Cabinet, namely former commissioner Gary Feck, then directed the plaintiff to "submit plan drawings in order to demonstrate how compliance is to be achieved."

459. In response to the direction to "provide plan drawings" as directed by Mr Feck, the plaintiff sought and recruited the services of William Richardson and Associates architect firm of Whitesburg, Kentucky.

460. In addition to the recruitment of William Richardson, BFMJ, the previous structural engineering firm that provided previous services for the plaintiffs 426 building, of Lexington Kentucky,

47

drafted and provide various documentation and other related services to the defendants of the Public Protection Cabinet as per their direction to do so.

461. The Public Protection Cabinet directed an assigned "plan and code reviewer" Carey Graham, in order to "evaluate" the plan submissions produced by the plaintiffs design professionals as aforementioned sometime in 2015.

462. William Richardson, architect, known to be considered a veteran of approximately thirty s ix plus (36+) year career as an established and well respected, licensed architect operating within the Commonwealth of Kentucky.

463. Despite the qualifications of William Richardson as an architect, the plan reviewer, Carey Graham, cited Mr Richardson's "submission scores different than that of the architect" in declaration from Carey Graham, in his personal labeling of William Richardson otherwise as "incompetent" or "unqualified."

464. The plan reviewer, Carey Graham also labeled the structural deficiency observations and foundational repair documentation from the plaintiffs structural engineering firm to be "inadequate" as evidence of structural safety of said 426 building/facility.

465. The plan reviewer, Carey Graham instead of accepting said structural foundation repair documentation at face value, then required a "full structural analysis of every square inch of the 426 building," of every brick, board, and steel beam throughout the building amounting to approximately $50,000 in "full structural analysis" of said 426 building/structure.

466. The directions of said "plan reviewer," Carey Graham, resulted in thousands of dollars in labor of disassembly work to the 426 building for the engineers viewing and "analysis."

467. The plan reviewer, Carey Graham initially required the 426 building "to be brought up in accordance with Chapter 16 of the building code," essentially requiring an entire new building to be built.

468. The plan reviewer, Carey Graham also required the 426 building to have plan submissions from an "electrical design systems engineer." or similar based engineer.

469. The plan reviewer, Carey Graham also required the 426 building to have plan submissions from a "plumbing systems engineer" or similar based engineer.

470. The plan reviewer, Carey Graham also required the 426 building to have plan submissions

48

for an all new NFPA 13 fire sprinkler and suppression system.

471. Several years later, date uncertain, Ethan Buel of BFMJ, was believed to have been, at some point able to speak with the plan reviewer Carey Graham, and "arrange to have the 426 building brought up in accordance to Chapter 32 of the building code for existing buildings," thereafter negating the previous "Chapter 16" requirement previously set by its representative Carey Graham.

472. The defendants of the Public Protection Cabinet, consists of various stated "sub divisions" consisting of "the state fire marshals office," "department of housing buildings and construction," "building and code enforcement," "office of legal counsel," operating under the umbrella of the Public Protection Cabinet, a single state government agency.

473. The defendants of the Public Protection Cabinet, their staff, and "sub division offices" as aforementioned primarily operate at the same "facility," in generally the same building.

474. In the subsequent months, following the June 18th 2015 injunction order of the plaintiffs former 426 building, on the day of August 31th 2015, defendants of the City of Hazard police department knowingly, and intentionally allowed trespassers to take occupancy against the permission or consent of the plaintiff, of a large vacant three bedroom apartment on the second (2nd) floor, apartment thirty one (31) of said building, located within the plaintiffs former 446 Main Street Mall otherwise well known as Grand Hotel Building.

475. The City of Hazard police department has, or did have, a well known, established policy/practice that "burglars have squatters rights" as justification for allowing said burglary, trespassing/convergence upon said 446 Grand Hotel building/facility August 31th 2015.

476. The defendants of the City of Hazard police department have or did have a well established policy of utilizing said "squatters rights" as justification of virtually every person within its "city limits" that has taken occupancy of private property without permission.

477. The name of the police officer that allowed the trespassers was identified as James East, of the defendants representative of City of Hazard police department.

478. The aforementioned "squatters rights" bestowed upon the burglars from the defendants of the City of Hazard Police department, then allowed a fire to be set within the very same apartment several hours later, into the next early morning hours of September 1st 2015.

479. The defendants of the City of Hazard fire department, is well known to have a well

49

staffed, well equipped, very well qualified, very capable fire department, as demonstrated in the earlier November 23rd 2013 fire stoppage of the plaintiffs former 67 Whitaker Way building/facility.

480. The defendants of the City of Hazard fire department, is known to be very closely located to the former 446 Grand Hotel Facility, within approximately one thousand (1,000) feet of the facility.

481. Within the century long histories of existence of all three former 446 Grand Hotel building, 426 Treehouse Cafe Building, and the 67 Whitaker Way apartment building, these buildings have had previous incidents of fire, most of which were known to be very severe or extreme in nature.

482. The extremity of the fires in particular are known to be in regard to the 446 Grand Hotel and 67 Whitaker Way buildings, of which far lesser fires of the 426 building itself are likewise known to be of lesser or far lesser occurrence.

483. Despite the severity of fire damage to the century long histories of all three former 446 Grand Hotel building, 426 Treehouse Cafe Building, and the 67 Whitaker Way apartment building, the defendants of the City of Hazard fire department have always demonstrated an outstanding capability to extinguish fires promptly, minimizing damages and preventing total loss to the said structures, prior to the foregoing 2015 and 2023 fires that had occurred during the plaintiffs ownership.

484. Upon being summoned to the scene in the very early morning hours on September 1st 2015 Grand Hotel building fire located at 446 main street Hazard KY, of which the defendants of the City of Hazard fire department arrived with fire trucks and a staff of approximately fifteen or more men.

485. The said 446 Grand Hotel building fire was known to engulf the former kitchen area of said apartment unit at which the known burglars had trespassed upon said property the early morning of September 1st 2015.

486. Instead of responding to the 2015 Grand Hotel fire in an expectantly expeditious, urgent manner, the defendants of the City of Hazard fire department demonstrated extreme indifference of their duties to protect property and preserve life by only four (4) men out of a total of fifteen (15), moved at the equivalent pace of sloths, for several initial hours of the building fire.

487. The stated four men, moving at an extremely lethargic, disinterested pace, three of the 4 men entered the side entrance of the 446 Grand Hotel building, and entered the said burning 2nd floor apartment with a water hose, at the pace mentioned, but elected to not spray any water while within the burning apartment, on the morning of September 1st 2015.

50

488. After a considerable length of time of no movement with the aforementioned water hose while inside of the burning 446 Grand Hotel apartment, the three firemen then slowly withdrew the said hose from the apartment, paused to socialize in a flagrantly meandering fashion just outside door of the burning apartment, then very slowly exited the 446 facility via the side entrance with the hose.

489. It is believed that at this point of exiting the said 446 Grand Hotel facility, the decision was then made to allow the entirety of the 446 Grand Hotel facility to be completely destroyed by fire, in a demonstration of extreme indifference of fire department duties to preserve and protect property.

490. A fourth fireman did show at least some initial sense of urgency in his pace by initially running up from the 2nd to the 3rd floor staircase inside of the 446 Grand Hotel building, only to pause mid pace up the said staircase, slowly turned, and slowly walked back out of the building, without visiting the third, fourth, or fifth floors of the building, in a deliberate refusal to ensure occupants and pets were safely vacated from the facility.

491. Over the course of several initiating hours of said September 1st 2015 446 Grand Hotel building fire, several City of Hazard fire department personnel outside of said building were visually observed meandering, socializing, or "cutting up" while arbitrarily "playing around with gear" in an extreme disinterest in faithful performance or execution of duties to protect precious life and property.

492. Over the course of several additional hours, moving in an extremely meandering, disinterested fashion, the remaining City of Hazard fire department staff proceeded to connect various hoses, to randomly spray the exterior of the burning 446 Grand Hotel facility, occasionally into its main street facing windows, opposite side of the facility from where the origination of the fire had occurred at the back river side facing portion of the facility.

493. The said City of Hazard fire department would proceed the course of several additional hours of arbitrarily spraying of the exterior of the former 446 Grand Hotel facility, with very minimum contact with the actual fire itself, inside of the 446 building.

494. The said limited direct contact with the said 446 Grand Hotel fire was partially due to the compartmentalized nature in construction of such a facility.

495. After several hours of the decision made to allow the entirety of the 446 Grand Hotel build to be willfully destroyed by fire, the said fire had eventually progressed into the neighboring 470 Main Street building, owned or previously by defendant Payton Morton, otherwise known as the Public

51

Defenders building, in Hazard KY.

496. It is generally well known that fires which occur in massive, highly compartmentalized commercial building facilities, such as the 446 Grand Hotel building previously owned by the plaintiff, are well known to take considerable length of time for said fires to progress throughout said buildings due in large part to, in accordance with, said compartmentalized based designs.

497. Defendant Payton Morton is well known to also own Home Lumber Company, is a well known colleague of the Gorman and Roll families, who've controlled the City of Hazard community via proxy of donor influence for decades.

498. Defendant Payton Morton is also well known to be a long time preferred building materials supplier for the defendants of FOA/HDA Housing Development Alliance, and others affiliated with the defendants, due to his well known influence within the community.

499. In a demonstration of highly preferential treatment, the defendants of the City of Hazard fire department quickly responded to the intrusion from the fire of the neighboring 446 Grand Hotel facility, went into defendant Payton Morton's 470 building to fight said fire directly.

500. Within a very short period of time of said intrusion into the said 470 Main Street building, the City of Hazard fire department stopped its progression, by acting quickly to stop the fires progression, thereby saving an overwhelmingly large majority said 470 Main Street facility.

501. It is generally well known that Payton Morton's 470 facility, or formerly owned by Morton, was a much smaller facility than the plaintiffs 446 facility, with generally far less compartmentalization.

502. It is generally well known, that police and/or fire departments are known to flagrantly obfuscate their otherwise honorable duties to the public under the policy that "I have immunity, so I don't have to help you" in order to punish those that said officials "don't personally like" or favor.

503. At some point, at the conclusion of the business day, it was understood that defendants of the Public Protection Cabinet, specifically the defendant Kenneth Browning, was known to have called in a "federal ATF investigation" of the plaintiffs former 446 fire damaged Grand Hotel facility.

504. Approximately two calendar weeks followed during the course of the ATF investigation of the former fire damaged 446 Grand Hotel facility.

505. During the two weeks, the plaintiff was called in to assist the ATF investigators.

52

506. At the rear parking lot of the 446 Grand Hotel facility, during the plaintiffs 2015 conduction of the investigation with the ATF, while the plaintiff was being escorted into the fire damaged 446 Grand Hotel facility, the defendants of the Public Protection Cabinet, among them being Kenneth Browning, was observed sitting in several lounge chairs all alongside the plaintiffs former 67 Whitaker Way facility, making random smirks, sneers or other snide remarks by random grumbling comments made from a local City of Hazard fire department official to said cabinet representatives.

507. On or about during the 2015 ATF investigation the plaintiff observed defendants Kenneth Browning and Ronald Hacker exchanging random smirks and sneers with each other whist having "discussions" regarding the plaintiffs third and final 67 Whitaker Way building, in the presence of the plaintiff visually observing said exchanges.

508. Following the above exchange, on or about defendants of the Public Protection Cabinet sent email correspondence to Kentucky Power representative William Bentenozzi, requesting that "power facilities be shut off to the white apartment building on behalf of state fire marshal and Hazard city entities" on or about September 4th 2015.

509. Defendants of the Public Protection Cabinet further declared "the building has code deficiencies which must be addressed before the building can be reoccupied" verbatim of treatment previously given to the adjacently located 426 building.

510. Neither the defendants of the Public Protection Cabinet, nor the defendants of the City of Hazard, had possessed any known authority jurisdiction to forcibly shut down electric utilities for services previously approved by state for the 67 Whitaker Way building.

511. Shortly thereafter the disconnection of electrical services for the entirety of the 67 Whitaker Way apartment building, the defendants of the City of Hazard immediately proceeded to shut off all water and gas based utilities to all 17 apartment units within said building, depriving the residential tenants basic utility services.

512. The treatment of "teaming up" to shut off all manner of utilities as well as deprive the plaintiff of all 2015 enjoyment, usage, or benefit of said treatment is verbatim of previous treatment recently given to the adjacent 426 building June 18th 2015, earlier that year.

513. The collective, highly coordinated efforts of the defendant representatives of the Public Protection Cabinet and the City of Hazards actions of depriving all usage and manner of utility service

of the 67 Whitaker way facility caused an intentional tortious interference with the business advantageous relationships between the plaintiff and his residential tenants of the 67 Whitaker Way apartment building.

514. Neither the defendants of the Public Protection Cabinet, nor the defendants of the City of Hazard, possessed any known authority jurisdiction to forcibly shut down water or gas services for his residential tenants/occupants of his former 67 Whitaker Way facility.

515. During the time of said 2015 interruptions of utility services of the plaintiffs formerly owned 426 and 67 Whitaker Way commercial facilities, the majority, if not all of City of Hazard provided utilities, payment of said accounts regarding the said utility services were in good standing.

516. As a direct result in having the plaintiffs 67 Whitaker Way building power disconnected, all 17 refrigerators in the 17 unit apartment building were directly destroyed due to rotted food and maggot infestation that occurred within the coming weeks.

517. During the approximately three week 2015 ATF investigation, during interruption of utility based services to the plaintiffs former 67 Whitaker Way building, the plaintiff was unable to intervene to save his facility from damage due to said disconnection of services, due to in part said local and state official restrictions to said building/facility during the said time.

518. The 67 Whitaker Way large white apartment building incurred no fire damage following the 2015 fire damage to the adjacent 446 Grand Hotel facility.

519. The directly attached facility to the plaintiffs 446 facility, the 470 Main Street building owned by Payton Morton, suffered significant fire damage to the south facing portion of his building during the September 1st 2015 Grand Hotel fire of the 446 building/facility.

520. Defendant Payton Morton was allowed to immediately evaluate, reoccupy, and commence immediate repairs to his fire damaged 470 Main Street building facility, following the eventual extinguishment of the 2015 Grand Hotel fire, contrary to the treatment given to the plaintiff.

521. Defendant Payton Morton, despite having severe fire damage to his 470 Main Street facility, no shape, form, or fashion were any utilities disconnected from Payton Morton's 470 Main Street facility by the entities of the Public Protection Cabinet or the City of Hazard.

522. Defendant representatives of the Public Protection Cabinet and the City of Hazard gave no form of scrutiny to Payton Morton's heavily fire damaged 470 Main Street building, following the 2015

54

Grand Hotel fire, directly attached to it.

523. At no point in time did the Defendant representatives of the Public Protection Cabinet or the City of Hazard make effort to identify "code discrepancies," "deficiencies" or other "code related issues" with Payton Morton's 470 Public Defenders building, following the 2015 Grand Hotel fire.

524. Over the course of several subsequent days and weeks, defendants of the City of Hazard police department, acting without any formal eviction through district or circuit court, coordinated several "meetings" with the former residential tenants at the plaintiffs former 67 Whitaker Way apartment building, to retrieve personal belongings from the facility, after said utilities were cut from the facility on or about September 4th 2015.

525. It was to knowledge and belief that James Hampton, whom previously represented the plaintiff, in the *State Fire Marshal (Public Protection Cabinet) vs Brian Carter 15-CI-00259* injunction case, was known to have officially withdrawn from the plaintiffs case on or about October 23rd 2015, without an explanation for the abrupt withdraw.

526. During the two week course of the ATF's investigation, the plaintiff contacted Public Protection Cabinet (state fire marshal) leading state representative William Swope to obtain an explanation as to why the 67 Whitaker Way building had all utilities shut off and was being evacuated.

527. During the said conversation with former Public Protection Cabinet representative, William Swope, Swope declared that "the 67 Whitaker building will have to go through building and code enforcement to be reoccupied" verbatim of the same direction as was also recently given to the plaintiffs 426 building, with very similar treatment.

528. During a two week course of the ATF's investigation, the City of Hazard cordoned off that portion of main street that housed the 446 Grand Hotel, 470 Main Street buildings, beginning at the defendant Payton Morton's 470 Main Street building, and ending at the defendant Gerry Roll of FOA's 420 building, located at 420 Main Street, to have been blocked off from street traffic on main street by the City of Hazard police department, or other government resources during the 2015 fire events.

529. After the ATF had finally concluded its approximately two (2) week investigation it then departed from the 446 Grand Hotel building site.

530. After said ATF departure, the defendants of the City of Hazard opted to continue with the blockage of the Grand Hotel portions of main street from Payton Morton's building to Gerry Rolls

55

building, citing a "collapsible hazard zone" with the Hotel building, as to the city of Hazard's official reasoning for keeping main street blocked.

531. After the ATF had departed from the 446 Grand Hotel building site, the Plaintiff was phone called, by someone identifying themselves as a city official, and summoned by the City of Hazard, to come to the City Hall building on or about the date of Friday of September 11th 2015.

532. Upon visiting the City of Hazard city hall facility, the plaintiff was escorted upstairs to a conference room, of which lies just outside of the mayors office.

533. The plaintiff was then directed to sit beside a man later identified as defendant Steven Campbell of Balis Campbell Construction.

534. Steven Campbell then declared to the plaintiff that "the building has got to come down" in a very assertive and demanding tone to the plaintiff.

535. Defendant Steven Campbell spoke to the plaintiff, with the former chief of police Minor Allen hovering over both Mr Campbell and the plaintiff, nodding his head in approval of Steven Campbell's goals to completely destroy the plaintiffs former fire damaged 446 Grand Hotel building.

536. The plaintiff then mentioned that the building should have its restoration potential evaluated by a structural engineering and design team before any "tearing down" of the 446 building.

537. Defendant Steven Campbell is well known to be a preferred contractor on behalf of the City of Hazard.

538. Defendant Steven Campbell is well known to be married into the Gorman family, who are well known to assert considerable business influence over the town, with roads named after the family.

539. After some brief "back and forth" between the conflicting goals of the plaintiff and defendant Steven Campbell, on our about the day of September 11th 2015 meeting at the Hazard City Hall building was dismissed.

540. Shortly after the said conversation at Hazard City Hall with defendant Steve Campbell, various news headlines, as well as the defendants of WYMT made various broadcasts declaring "City of Hazard officials at odds with the owner of the Grand Hotel building."

541. With great reluctance, the defendants of the City of Hazard allowed the structural engineer of the plaintiff to evaluate the property, while deciding to keep main street blocked after said meeting.

542. Within approximately a week of the aforementioned meeting with Campbell, the plaintiffs

56

structural engineering team met on the Newberry lot/site with the plaintiff, who then devised a "wall bracing plan" to "ensure the safe structural stability" of the newly fire destroyed 446 Grand Hotel building/facility, devised by the plaintiffs structural engineering team BFMJ of Lexington KY.

543. Defendant Daniel Roll, representative of the City of Hazard, upon receipt of the aforementioned wall bracing plan design documentation, thereafter directed the plaintiff "to come in and pay $45 (forty five dollars) for a phase one construction permit to brace the exterior walls and make the (446) building safe" on or about September 14h 2015.

544. The Plaintiff paid the said fee about September 18th 2015 Daniel Roll for said "wall bracing construction permit" at Hazard City Hall, of which the City of Hazard then issued a receipt of payment for the fee on said date.

545. The defendants of the City of Hazard cashed the check payment for said "permit for wall bracing construction" September 23rd 2015 at Community Trust Bank of Hazard KY.

546. Defendant, Daniel Roll, has previously labeled himself as "City of Hazard Building Inspector" as his stated position as "building official" with the City of Hazard in 2015.

547. As a direct result of some manner of strife regarding Daniel Rolls qualifications as self proclaimed "city building inspector" with the Public Protection Cabinet, Daniel Roll, re-identified himself as "office of zoning and permits" as his official title with City of Hazard.

548. Defendant, Daniel Roll also directed the plaintiff to have various "requirements" such as having the street working area erected with various fences, construction barriers, along with a requirement of the plaintiff to "have the 446 building tested for asbestos."

549. It is/was previously well known that there has never been any known history of a previous "requirement" for any fire damaged facility, on or near main street in Hazard city limits, to "have a facility tested for asbestos" following a building fire, before commencing any work demolish or repair a previously fire damaged building within the City of Hazard city limits.

550. Approximately two weeks after the ATF had departed the plaintiffs 446 Grand Hotel/Main Street Mall property, the defendants of the City of Hazard, Daniel Roll, former fire chief Sam Stacey, met with the plaintiff, the plaintiffs engineer of BFMJ, and the plaintiffs architect Bill Richardson, at the plaintiffs former Newberrys lot, to discuss implementation of the aforementioned "wall bracing and reconstruction plan" of the then recently 2015 fire damaged 446 Grand Hotel building.

551. Whilst in heavy discussion about the implementation of said exterior "wall bracing plan," defendant Payton Morton, owner of the 470 Main Street building, of which was directly connected to the plaintiffs former 446 Grand Hotel facility, stormed onto the Newberrys property to confront the plaintiff with his engineering team as aforementioned, #550(supra), on or about September 29th 2015.

552. At said confrontation, Morton immediately demanded that he plaintiff "tear down the Grand Hotel building and make his living off the other two buildings" in a very angry, hostile personal demeanor with the plaintiff on or about September 29th 2015.

553. Upon said confrontation, the plaintiff first attempted to "comfort" defendant Payton Morton regarding his then recent "inconveniences" of fire damage to his 470 Main Street building, by attempting to discuss the various remediation/reconstruction plans with regard to the plaintiffs formerly attached 446 Grand Hotel building on said date.

554. Payton Morton's only measure of response to the plaintiffs attempts to console, comfort, or otherwise pacify Morton resulted in the formal response of "don't you dare honey me" cutting the plaintiff off from speaking politely or openly, whist continuing with Morton's personal demands/desires to physically destroy the plaintiffs once historic 446 Grand Hotel/Main Street Mall building/facility.

555. As the plaintiff as well as his engineering team was thus unable to conduct, continue or complete any business with Daniel Roll nor the City of Hazard officials as a direct result of the hostile demeanor of Payton Morton, and was forced leave the site as a direct result of the encounter.

556. Defendant Payton Morton is well known to exert considerable influence over the affairs of the City of Hazard as a long standing business owner in Hazard.

557. After the said confrontation #551(supra),  Payton Morton and the defendant, Daniel Roll, subsequently declared "the City of Hazards intent to open up the alleyway" by setting a goal to demolish the said 446 Grand Hotel facility, primarily a formerly serviceable portion of the plaintiffs former 446 Grand Hotel facility, as "Mr Morton was demanding that the two buildings be separated."

558. Defendant, Payton Morton is well known to be the owner of Home Lumber Company in Hazard Kentucky, and is a primary building materials supplier of the defendants own Housing Development Alliance, otherwise known as HDA.

559. Defendant, Payton Morton is also well known as having a road named after himself with the City of Hazards blessing, thereafter named "Morton Boulevard," otherwise known as "hospital hill"

58

in which Hazard ARH Hospital sits at the apex of the road and hill mentioned.

560. Daniel Roll disregarded his due process duties of issuing said "phase one wall bracing reconstruction permit" to the plaintiff by falling silent for approximately two weeks after collecting payment from the plaintiff on or about September 15th 2015.

561. Upon the conclusions of said "confrontations" with Steve Campbell and Payton Morton, Daniel Roll then notified the plaintiff that "the city of hazard will hire its own structural engineer to further the interests of the City of Hazard" on or about September 29th 2015, later the day after Morton's confrontation with the plaintiff, at which Daniel Roll became unresponsive.

562. During the course of the aforementioned refusal of Daniel Roll to issue said "permits for reconstruction" of the plaintiffs 446 Grand Hotel facility, the defendants of WYMT commenced a series of negatively biased news reportings in order to cast the plaintiff in a negative or unfavorable light with the general public as "not responding." or "being unreasonable" with the City of Hazard.

563. During the course of the aforementioned City of Hazards refusal to issue said permits for reconstruction, the defendants of WYMT sponsored, on one particular newscast with its reporters outlining or stressing a "necessity" to have the plaintiffs 446 Grand Hotel building destroyed.

564. During the course of the aforementioned City of Hazard refusal to issue said permits for reconstruction, the defendants of WYMT sponsored a newscast with its reporters, further citing "the Grand Hotel owner wants the city to issue a **permit** to tear down the building" in order to mislead the public of the plaintiffs true intent whilst adding, with extra emphasis, the word **"permit"** to broadcast/portray the plaintiff as "unreasonable to deal with" among other negative rhetoric.

565. During the course of the aforementioned refusal to issue said permits for reconstruction, the defendants of WYMT showcased former mayor of the City of Hazard Jimmy Lindon stating "all he has to do is cooperate and let us help" in order cast the plaintiff in a negative, light with the public as "unreasonable to deal with" whist also stating "sending letters without a response."

566. Over the course of an additional week beyond the WYMT news events mentioned, the defendants of the City of Hazard continued to keep the portion of main street that housed the plaintiffs former 446 Grand Hotel facility blocked and restricted from road traffic.

567. Over the course of an additional week beyond the news events mentioned, pedestrian traffic to and from David Johnson's law office and James Hampton's law office, which resided directly

across the street from the plaintiffs former fire damaged facility, were both allowed to resume normal business operations, aside from the inconvenience of having that portion of main street blocked.

568. Over the course of the 2015 events mentioned, Defendant Payton Morton was allowed to promptly repair and reoccupy his directly attached 470 Main Street building without any interruption in utility services to his fire damaged facility located at, or formerly located at 470 Main Street, Hazard Kentucky.

569. During the course of the 2015 Grand Hotel events events mentioned, Defendant Payton Morton was allowed to repair and reoccupy his directly attached and fire damaged 470 Main Street building without any special requirement to have asbestos testing, abatement, or any other such requirements as was similarly mandated to the plaintiff for his 446 fire damaged Grand Hotel facility by the City of Hazard's "building official" Daniel Roll.

570. Over the course of the 2015 Grand Hotel fire events mentioned, defendant Daniel Roll would remain unresponsive to the plaintiffs emails regarding progress with the 446 Grand Hotel project, either for bracing, fencing, or "demolition" proposals from the plaintiff.

571. After contacting the defendant, Steven Campbell by phone, Mr Campbell described to the plaintiff that "he'd have to go inside of the 446 Grand Hotel building to cut out the steel beams in order in collapse in the exterior walls to complete a full demolition of the building."

572. During the course of the 2015 Grand Hotel fire events mentioned, with Daniel Roll remaining unresponsive to email communications, or without formerly issuing the wall bracing permit as required by law of due process, the plaintiff then contacted defendant Daniel Roll by phone, approximately noon on a Monday, to verbally request "moving forward with debris removal from inside the front of the Grand Hotel building, in order to remove said obstructions from inside the building, as per the advice given by defendant Steve Campbell, in preparation for demolition, limited demolition, or repair of the facility," as a proposal primarily to demonstrate some sense of urgency to make some measure of progress or effort with reopening main street, as was summarily proposed to defendant Daniel Roll of the City of Hazard.

573. Defendant Daniel Rolls verbal response to said proposal of the plaintiffs verbal request to commence debris removal from said 446 Grand Hotel building, on said phone conversation was for the plaintiff to "proceed with caution."

60

574. After approximately one week of debris removal from the main street facing portions of the plaintiffs fire damaged 446 Grand Hotel building, Daniel Roll arrived on scene with various members of the state Division of Air Quality, and OSHA, as well as a "cease and desist" notice having the plaintiff being issued a condescending email from the plaintiffs own structural engineer, advising the plaintiff that "his attempt at debris removal without exterior wall bracing constituted an unsafe action" and was thereafter ordered to "halt any further cleanup operations" along with a "cease and desist order" issued from Daniel Roll, stopping any further work or cleanup based operations.

575. Over the course of the 2015 events as outlined above, a man identifying himself as Bryan Johnson, a structural engineer of Poage engineers, arrived on the plaintiffs 446 Grand Hotel fire damaged site to give "the City of Hazards evaluation of the 446 Grand Hotel facility" and to take pictures for his report.

576. The Plaintiff approached the said engineer Bryan Johnson of Poage Engineers, and initiated a conversation with Mr Johnson.

577. During the first on site conversation between the plaintiff and the structural engineer Bryan Johnson, Mr Johnson stated to the plaintiff "well I don't mind giving you my opinion but keep in mind I work for them." Verbatim, with "them" referencing the defendants of the City of Hazard.

578. After receiving the City of Hazard structural engineering report from Bryan Johnson, the said engineer could not refute the plaintiffs engineering claims that the exterior walls could have simply been "braced" as originally planned.

579. After receiving the City of Hazard structural engineering report from City of Hazard engineer Bryan Johnson, the said engineer stated in his opinion that the top floors should be "demolished down to the limestone plasters in order to be made safe."

580. The City of Hazard then initiated the process of taking bids from several contractors on Bryan Johnson of Poage Engineers proposal of demolishing the upper floors of the 446 Grand Hotel facility.

581. The plaintiff, in several subsequent requirements from Daniel Roll and the various state representatives Mr Roll had summoned, the plaintiff had incurred hundreds upon thousands of dollars in expenses regarding specialized asbestos decontamination setup, specialized abatement equipment, trucks and special asbestos licensing and training of workers requirements in attempts to comply with

61

various additional requirements from those agencies, in an effort to obtain some form of "official "permission to perform subsequent abatement work" on the plaintiffs former fire damaged 446 Grand Hotel facility during the 2015 events.

582. Similar requirements of the City of Hazard itself, and its own contractors regarding "asbestos abatement" were later deemed waived, by state agencies, specifically that of the Division of Air Quality, citing "its the inspectors discretion of what to allow and what not to allow" on the plaintiffs former 446 Grand Hotel facility.

583. During the September 2015 until mid 2016 events, on October 17th 2015, the plaintiffs state licensed asbestos abatement supervisor at the time, Robert Combs, called and notified the plaintiff that "Daniel Roll had entered the asbestos containment area with a crew of men from Keith Miller Construction," against Roberts commands for them to stop.

584. As Daniel Roll ignored the commands, Robert Combs reported that Daniel Roll had removed a sheet of plywood from outside of the 446 fire damaged building, brought the contractors from Keith Miller Construction into the fire damaged 446 facility to "evaluate the structure and have contractors from Keith Miller Construction company, provide a bid to demolish the structure."

585. During the September 2015 until mid 2016 events as outlined, the plaintiff submitted several "work proposals" to the City of Hazard, including two limited demolition based proposals, all of which were either informally denied, flatly ignored, or "overlooked" by the City of Hazard.

586. After some time, to several weeks, commencing in September 2015, the plaintiff initiated a limited campaign to seek an audience with the City of Hazard "commission" often held at Hazard City Hall building, located at 700 Main Street, Hazard KY.

587. After several weeks of pleading with the City of Hazard city commissioners, specifically Ricky Steele who also is known to work as an insurance company representative of Kentucky Farm Bureau, another commissioner who also worked at the City of Hazard school system by the name of Joe Quillen, and Susan Brotherton, who also owns a store called Pantry Shelf, and is alleged to have a family relationship to defendant Steven Campbell, to request a formal meeting to speak with the city commission at the next City Hall meeting.

588. After much resistance and opposition from the defendants of the City of Hazard, the plaintiff was ultimately allowed to meet and speak openly with the City commission regarding his

62

plans to restore his former 446 Grand Hotel building from September 2015 until mid 2016 time frame.

589. On the date of speaking with the commission, defendant Paul Collins, former legal representative of the City of Hazard and former city manager Grady Varney, stopped the plaintiff by the doors of City Hall, and ushered the plaintiff aside, both of them repeatedly stating "lets just meet tomorrow and we'll talk about whatever you want to talk about ok? Ok, lets just do that, lets meet later ok."

590. The defendant Paul Collins and former city manager Grady Varney continued to insist on "lets just meet tomorrow" over and over, in an obvious effort to discourage and prevent the plaintiff from formally discussing matters pertaining to demolition of the 446 Grand Hotel building directly with the City of Hazard commissioners/leadership, sometime between Jan 1st 2016 to Jan 13th 2016.

591. The plaintiff remained strongly insistent to speak with the commission directly, and was eventually allowed to address former mayor Lindon and the city commission directly, as was originally requested September 2015 until mid January 2016 time frame.

592. At the introduction of the city commission meeting from former City of Hazard attorney Paul Collins, Paul stated "the reason nothing is getting done with the 446 Grand Hotel property is Brian Carter hasn't responded to Dan Roll." verbatim from about November of 2015 to mid January 2016.

593. Once finally given the opportunity to speak at the 2015 to mid 2016 commission meeting the plaintiff provided his own rebuttal that "Daniel Roll was the one that had not responded to Brian Carter, not the other way around," while staring directly at defendant Paul Collins, of whom would not return the gaze of the plaintiff at said meeting.

594. A the 2015 until mid 2016 city commission meeting, the plaintiff then outlined in detail of his plans for restoration of the Grand Hotel building and property, while the commission and former mayor Jimmy Lindon all appeared to be receptive, none would provide or offer feedback.

595. Other than a formal complaint to the City of Hazard Commission about a "sewage issue within the city" from another constituent, without any feedback on either issue, the said city commission meeting was thereafter dismissed.

596. James Hampton, the previous attorney who previously represented the plaintiff, filed motion to withdraw from the 2015 injunction case *State Fire Marshal vs Brian Carter 15-CI-00259* on or about October 23rd 2015.

63

597. As the plaintiff still stood unrepresented, the plaintiff sought, and eventually obtained legal services from another attorney, Ned Pillersdorf, after the withdraw of his previous attorney, James Hampton on or about the first of January 2016.

598. In continued efforts alongside newly recruited counsel, Ned Pillersdorf, the former Mayor Jimmy Lindon, former city attorney Paul Collins, the plaintiff Brian Carter and his wife Jalia Carter, eventually agreed to another formal meeting at City Hall conference room, just outside of the mayors office at the Hazard City Hall building, sometime in early January 2016.

599. At the 2016 meeting, Ned Pillersdorf offered as a solution to the conundrum with the 446 Grand Hotel building, to former mayor Jimmy Lindon and to Paul Collins, to "send Mr Carter a notice of requirements to remove the cease and desist order issued from Daniel Roll" in order to allow the plaintiff to resume some manner of work to the 446 building in some capacity, along with other proposal offers to remedy the dispute.

600. In response to the said 2016 proposals from Ned Pillersdorf, Paul Collins responded loudly, "the City isn't doing that! The City isn't doing that! We've hired our own engineer and his opinion is what we're going to go with."

601. Upon receipt of said declarations from Paul Collins, Ned Pillersdorf then took the plaintiff aside in the next room to discuss possible next steps, in which the former mayor Jimmy Lindon could be slightly overheard arguing with Paul Collins with no distinguishable words.

602. Upon reentering the conference room area, Ned Pillersdorf formerly dismissed the plaintiff from the meeting.

603. After dismissing the plaintiff as mentioned #601(supra), from City Hall, attorney Ned Pillersdorf filed petition for writ of mandamus suit against the City of Hazard, seeking an order from the court for the City of Hazard to provide the plaintiff issuance of his previously paid for "permit for reconstruction" of his 446 Grand Hotel building, along with a claim in the suit that the city was not allowed to demolish the building on its own accord *Brian Carter vs City of Hazard 16-CI-00020*.

604. In direct response to the filing of the 2016 suit, the defendants of WYMT announced "the owner of the Grand Hotel building is suing the City of Hazard after the City started taking bids to demolish the building" to cast the plaintiff in a negative, unfavorable light with the general public as 'the City is trying to take initiative to reopen main street where Brian Carter refused assistance.'

64

605. The defendants of WYMT, did allow a brief public response from plaintiffs then attorney, Ned Pillersdorf. "the city is attempting to demolish his Grand Hotel building and stick my client with a very exorbitant bill, thus main street (traffic) is still blocked (by order of the City of Hazard)."

606. During the 2015 to mid 2016 dispute with the defendants of the City of Hazard and the plaintiffs former 446 Grand Hotel continued, the plaintiff had previously arranged for a "geo-soil analysis" crew to drill in the vacant Newberrys lot, which rested between the plaintiffs former 446 Grand Hotel building and former 426 Treehouse Cafe buildings, on or about October 6th 2015.

607. The stated "geo-soil analysis" was to be performed in order to "determine the depth to bedrock" as per a "chapter 16 building code structural engineering requirement," as previously mandated by Public Protection Cabinets "plan reviewer" Carey Graham, for the plaintiffs former 426 Main Street building in Hazard KY with regard to #606(supra).

608. The stated "geo-soil analysis" was pursued in compliance with the aforementioned directive of the Public Protection Cabinet, in order to seek or obtain "official permission to reoccupy or reopen" the then recently closed 426 facility, previously ordered to be vacated by the defendants of the Public Protection Cabinet on June 18th 2015.

609. Upon arrival of the said "geo engineering team," the team was quickly directed to not perform any drilling on the plaintiffs former Newberrys property, as directed by former fire chief Sam Stacey of the City of Hazard fire department, on or about October 6th 2015.

610. Sam Stacey the then fire chief of the Hazard City Fire Department, cited a stated "collapse hazard zone" concern with the plaintiffs neighboring 446 Grand Hotel facility as to the reasoning given for the direction to not perform any drilling in the plaintiffs former Newberrys lot.

611. The intervention from former fire chief Sam Stacey effectively halted further progress with allowing the plaintiff to officially regain usage, or resume any "benefit" of said 426 building and property, due to the Public Protection Cabinets aforementioned "chapter 16 building code requirement" at the time, per Carey Graham, as well as the said intervention from the City of Hazard fire chief.

612. Despite the filing of the 2015 writ of mandamus complaint, and as outlined in the suit that asserted the defendants of the City of Hazard "had no right to demolish the plaintiffs 446 Grand Hotel building," the defendants of WYMT nonetheless televised an official statement from former mayor Jimmy Lindon, stating "nobody's telling us we can't demolish his building, so we're going to proceed."

65

613. In one of many ongoing pleas from the plaintiff to the defendants of the City of Hazard, to agree to some measure of alternative to the bids for the City of Hazards demolition of the 446 Grand Hotel building, defendant Daniel Roll did eventually reply to the plaintiffs email correspondence, declaring that the plaintiff "is welcome to attend the bid hearings but no other conversations would take place" on or about November 12th 2015.

614. Despite overwhelming favoritism for Steve Campbell, the Defendants of the City of Hazard ultimately awarded C&C construction, with a contract to "partially demolish the top levels of the plaintiffs 446 Grand Hotel building, down to the limestone pillars/pilasters," as was outlined per the City of Hazards structural engineer, publicly advertised, in the amount of forty four thousand ($44,000.00) dollars.

615. The defendants of the City of Hazard proceeded with trespass and demolish the upper floors of the structure with extreme indifference of the suit or property rights of the plaintiff.

616. Following the completion of said 2016 "partial demolition" of the plaintiffs former 446 building, the defendants primary representative Gerry Roll of Foundation of Appalachian (FOA), wife of Daniel Roll the "zoning and permits official," reached out to the plaintiff via email requesting that the plaintiff "obtain appraisals for offers to purchase the plaintiffs properties," primarily the plaintiffs former 426 Treehouse Cafe building, for "potential offers to purchase the plaintiffs property(s).

617. The defendant, Gerry Roll, during the course of the aforementioned 2015 until 2016 events as as outlined above, or along a similar time frame, had previously purchased the neighboring 420 main street building, previously owned by the Gorman family.

618. The 420 main street building owned by Gerry Roll and the defendants of FOA, directly connects to the plaintiffs formerly owned 426 building.

619. After the 2015 to mid 2016 deprivation of all forms of of usage or "benefit" by the co-conspirators of Public Protection Cabinet and the City of Hazard, the plaintiff eventually relocated his office from the former fire damaged 446 Grand Hotel building into the lobby of his then recently vacated 426 Treehouse Cafe building, where he was met with continued harassment from the defendants of FOA, namely Gerry Roll, and the Public Protection Cabinet throughout 2015 until 2023.

620. After the 2015 writ of mandamus suit was filed, defendant and former City of Hazard legal representative Paul Collins contacted the plaintiffs then attorney Ned Pillersdorf, to discuss a

66

"potential settlement," based on "obtaining grant assistance," specifically involving a "brownfields grant" on or about November 8th 2016.

621. Without directly responding to the email from Paul Collins, Ned Pillersdorf forwarded the correspondence to the plaintiff, Brian Carter for review, at which Carter replied to the email, stating that he would be interested in such options to settle the suit.

622. Paul Collins then replied to the email response from Carter, immediately contradicting his settlement offer while citing "the city's" personal disgust or displeasure with "obtaining such a grant for Brian Carter's personal benefit," adding that, "we prefer to work with our well capitalized non profit, as we think it has the best chance of success at that location."

623. The stated "well capitalized non profit" referred to by defendant Paul Collins was later identified as the defendants of the Foundation of Appalachia Kentucky, (FOA).

624. The stated "well capitalized non profit entity of FOA held defendant Gerry Roll, husband of Daniel Roll, is or was named as the entities "executive director."

625. Before the plaintiff "knew" about the new neighbors and defendants of FOA of the 420 building next door to his 426 building, the plaintiff ran out of printer paper while printing off a document, and went next door to request that the defendants of FOA make a copy 2016 to early 2017.

626. While in the 420 building, awaiting a copy of the document to be made, the plaintiff then formerly met the defendant Gerry Roll for the first time, the executive director of FOA.

627. When meeting defendant Gerry Roll for the first time, Gerry questioned the plaintiff about further "considerations" to purchase the plaintiffs neighboring 426 Treehouse Cafe building.

628. When mentioning said "considerations" to purchase said 426 building/property, an amount of "her opinion of its worth" was offered stating "it's only worth about a hundred fifty thousand ($150,000.00) dollars to me."

629. Upon hearing said "opinion" of Gerry Roll, the plaintiff then informed Ms Roll that "I cannot sell the building to you for one hundred fifty thousand dollars, ($150,000.00) as I still owe Peoples Bank roughly three hundred thirty thousand dollars for the bank loans on the building ($330,000.00)."

630. The defendant Gerry Roll, then responded to the plaintiffs pricing information of the 426 building by responding with an extremely hateful, bitter look on her face.

67

631. In observation that the defendant was upset at the pricing information of the 426 building, the plaintiff then politely left Gerry Rolls FOA 420 building without further communication.

632. It was understood that sometime after the meeting with Gerry Roll and her "non profit" FOA, the defendant, Gerry Rolls husband, Daniel Roll under his "official capacity as city building inspector or office of zoning and permits," and the City of Hazard legal representative Paul Collins, then responded to the plaintiffs declines to purchase said 426 Main Street building by placing a lien on the plaintiffs former 446 fire damaged Grand Hotel Facility in the total amount of ($78,517.00) or seventy eight thousand, approximately double of the amount of the C&C contractors partial demolition bid of $44,000.00 or forty four thousand and zero dollars June 2nd 2017.

633. It was later revealed to the plaintiff by the former City of Hazard manager Grady Varney, that "the lien placed on the fire damaged 446 Grand Hotel building was for the taxable value of the Grand Hotel property itself at that time."

634. During the 2015 until mid 2016 dispute with the City of Hazard officials regarding the forced demolition of the upper floors for the plaintiffs former 446 Grand Hotel building, the defendants of the Public Protection Cabinet undergone a "staffing change" involving formal removal of then commissioner of housing Gary Feck from his official position, removal of William Swope from his official position as head State Fire Marshal, and removal of Jack Coleman from his official position, then believed to be a "deputy commissioner" at the time, by executive order from the new Kentucky governor, Matt Bevin some time after December 15th 2015.

635. It is believed at or around the time former assistant state fire marshal, defendant Mike Haney, was then promoted in place of head state fire marshal William Swope, as position as *head or leading* state fire marshal under the Public Protection Cabinet some time after December 15th 2015.

636. Former Governor Matt Bevin was believed to have assumed office on or about December 15th 2015.

637. After several months of the plaintiff seeking answers to the September 2015 deprivation of usage or utilities of his then 67 Whitaker Way three story, seventeen unit apartment building (with white vinyl siding) the plaintiff reached out and made contact with representative of Kentucky Power, William Bentenozzi, in which Mr Betenozzi then provided to the plaintiff a copy of an email from the Public Protection Cabinet/Office of the State Fire Marshal, and "Hazard City entities" requesting that

68

"power be disconnected from the white apartment building" further citing "the building has code deficiencies which must be addressed before the building can be reoccupied."

638. After some online research regarding powers of the state fire marshal KRS 227.330, the KRS outlined no authority jurisdiction that would have granted it the powers to disconnect utility services from any facility, nor authority to remove utility services, that have been previously approved for electrical service, this information was then forwarded to William Benteniozzi for his review.

639. After former Kentucky Power representative William Bentenozzi reviewed the statute, Mr Bentenozzi then reached out to the defendants of the Public Protection Cabinet to request a path forward for the plaintiff to have his electrical services restored to his 67 Whitaker Way building/facility.

640. On or about October 14th 2015 until mid 2016 disputes over the former 446 Grand Hotel building cleaning and maintenance related services were performed from the plaintiffs contractor, Lee Russell at the neighboring 426 building site to Newberrys lot and 446 Grand Hotel.

641. While Lee Russell attempted to perform said duties to said 426 building in 2015 as mentioned, various members of the state fire marshals staff also known as the Public Protection Cabinet staff, then forced or strongly asserted their way into the building, demanding to know "why is power still on in the Treehouse??"

642. It was believed around the time of said 2015 instruction to disconnect electric services from the former 67 Whitaker Way building, services were also intended to be removed from the 426 facility as well by the office of the state fire marshal, also known as the Public Protection Cabinet.

643. After some time had passed without a response from the defendants of the Public Protection Cabinet and the State Fire Marshals office regarding the 2015 removal of electrical services for the former 67 Whitaker Way building, former Kentucky Power representative William Bentenozzi then permitted the restoration of electrical services to said 67 Whitaker building.

644. After approximately one subsequent calendar year from the 2015 conflicts regarding the 426 building, the plaintiff was unable to reach any defendant representatives of the Public Protection Cabinet.

645. It is understood that on or about April 26th 2016, the plaintiff did eventually re-establish phone contact with defendant, Mike Haney, to discuss the previous aforementioned 2015 vacature/closure and "shut off of all utility services" of the plaintiffs former 67 Whitaker Way building,

a seventeen unit, three story apartment building in Hazard Kentucky.

646. During the said April 26th 2016 phone conversations with Mike Haney regarding the vacature of the plaintiffs former 67 Whitaker Way apartment building in 2015, Mr Haney did not impose the same standards of his predecessor William Swope, regarding the "reopening and re occupancy requirements" of the said 67 Whitaker facility, in terms of any "mandate that the building needed to go through building and code enforcement to reoccupy."

647. During the said April 26th 2017 phone conversation with Mike Haney regarding the vacature of the plaintiffs former 67 Whitaker Way apartment building, Mr Haney produced a report with pictures from defendant Ronald Hacker, former state electrical inspector, which Mr Haney then stated "had deemed the facility as unsafe" and asked if the plaintiff "had any additional information."

648. After reviewing the electrical inspection report provided by former state electrical inspector Ronald Hacker regarding the 67 Whitaker Way facility, revealed that Mr Hacker fraudulently concealed and misrepresented a series of material facts to justify his actions of shutting power off to the facility, whilst doing so under the color of his lawful authority as state electrical inspector.

649. Evidence of Ronald Hacker's misrepresented facts was sent to Mike Haney in response email, at which Mr Haney then agreed to send a fire marshal to assist with reopening the plaintiffs 67 Whitaker Way facility on or about April 29th 2016.

650. Upon accepting the agreement to send a state fire marshal, the plaintiff informed Mr Haney that he could not work with his fire marshal Kenneth Browning due to his previous conflict or disingenuous conduct of Browning over the prior handling of the plaintiffs former 426 Treehouse Cafe building/facility in 2015.

651. Defendant Mike Haney, upon acknowledging such a complaint, then sent an alternative fire marshal, later identified as C.W. Cornett of the Public Protection Cabinet.

652. Upon arrival of state fire marshal C.W. Cornett, the staff member directed the plaintiff to perform a series of odd ended, largely mundane tasks, such as covering over antique hallway windows with drywall, replacing a few entry doors, and adding spring door closer hinges to other doors, among replacing the primary fire panel for the building, as the previous fire alarm panel was still located/tied to the adjacent fire damaged 446 Grand Hotel facility in 2015.

653. Upon completion of the aforementioned tasks, C.W. Cornett then gave a series of written

70

"approvals" to allow the plaintiff to reoccupy the former 67 Whitaker Way building/facility.

654. After receiving the above mentioned approval of re-occupancy, C.W Cornett called on his cellular telephone to speak with his head state fire marshal, defendant Mike Haney, in the presence of the plaintiff, regarding C.W. Cornett's approval of the 67 Whitaker Way facility, at which an argument briefly ensued, with Mike Haney immediately and audibly voicing Haney's personal displeasure at said decision, early June 5th of 2016, on or about said date.

655. The stated phone confrontation between Mike Haney and his deputy C.W Cornett concluded with Mr Cornett declaring to Haney "Mike, he's done everything we've asked him to do!" In a loud and assertive tone with Haney.

656. In a grumbling and personally displeased tone of voice, defendant Mike Haney finally agreed with his subordinate CW Cornett by stating "well alright fine then" with regard to allowing the plaintiff to regain usage and enjoyment of his former 67 Whitaker Way building/facility during the encounter on or about June 5th 2016.

657. When first attempting to re-lease on or about June 5th 2016, vacant apartments of the 67 Whitaker Way building upon its 2016 reopening, the plaintiffs first residential tenant was informed by the former city manager Grady Varney, that "the tenant is required to get authorization from the state fire marshal before city utilities can be connected" with regard to re-establishment of water/gas utilities for the 67 Whitaker Way apartment building.

658. Based on the tenants claim, and without initially confronting former City of Hazard manager directly, the plaintiff then contacted Public Protection Cabinet representative C.W. Cornett by his cell phone, whom agreed to meet with the plaintiff at City Hall, in which the plaintiff then introduced Mr Cornett to Mr Varney, along with Mr Cornett's authorization documents for the plaintiffs former 67 Whitaker Way building/facility.

659. Former City of Hazard manager Grady Varney immediately rolled his eyes while giving the plaintiff a somewhat scornful or sarcastic look in response to the aforementioned introduction with C.W. Cornett, but did get up from his seat, spoke with his billing associate in the room next door, to then allow the restoration of water and gas related city provided for the 67 Whitaker Way building.

660. During a slow and lengthy process of re-establishing utilities and a viable tenant base for the former 67 Whitaker Way apartment building, the plaintiff contacted defendant Mike Haney again

71

based upon the previous evidence of partiality by his staff, to again request that Mr Haney exercise similar discretion and treatment with regard to the similarly vacated 426 Treehouse Cafe building.

661. In response to such a request, defendant Mike Haney openly denied the request, reverting back to his previous policy in "that (426) building is out of his hands and will need to go through building and code enforcement, (also known as Public Protection Cabinet), to reoccupy."

662. After the December 15th 2015 appointment of former Governor Bevin, Bevin recruited new appointees of commissioner Steve Milby, new director of building code enforcement Duane Curry, and Mike Haney, as the newly promoted head state fire marshal, to serve under Bevin's new Public Protection Cabinet.

663. After a very lengthy period of time from mid 2017 through 2018, in speaking with the Public Protection Cabinet's new appointees, an agreement was made to meet with the plaintiff at the new location of the Public Protection Cabinet at 500 Mero Street, Frankfort KY.

664. At the said meeting in Frankfort, director Duane Curry, commissioner Steve Milby, Mike Haney, and plan reviewer Carey Graham, were present to discuss allowing the occupancy of the plaintiffs former 426 building 426 Treehouse Cafe building/facility to reopen/reoccupy, at which defendant Mike Haney declared "he wasn't a part of it," or "had nothing to do with him."

665. Eventually, due to the plaintiffs persistence, former director Duane Curry eventually gave his permission to allow the re-occupancy of the 426 building, beginning with the restaurant serving portions of his 2015 vacated 426 Treehouse Cafe building, Wednesday, Sept 13th 2017 under the "conditions that the state fire marshal will approve it" at which Mike Haney refused responses.

666. Over an extremely long period of time, defendant Mike Haney, would continue to disregard, or not respond to any email, text, or phone call attempts to reach Mr Haney until July 10th 2018 with regard to re-opening the 426 Treehouse Cafe building, after said matter was referred back to Haney's office Sept 13th 2017 again stating "until Duane's department approved it," yet would still not respond to any other follow up correspondence throughout Matt Bevin's departure December 10th 2019.

667. On or about September 29th 2017 thru October 2017, while attempting to meet with a small family consisting of a man, woman and infant child regarding a meeting with said individuals at the plaintiffs former 426 Treehouse Cafe building/facility, specifically at the former restaurant/lobby area of the building on the ground floor, defendant Gerry Roll of the neighboring 420 FOA building

72

next door, came out of her 420 building, approached the couple pointing a the plaintiffs 426 building, confronting the family, then backing away while yelling "that they couldn't do business there they're is no certificate of occupancy!"

668. The plaintiff, hearing the commotion outside, went outside where he ran directly into defendant Gerry Roll while she was walking back to her building.

669. Gerry Roll, upon seeing the plaintiff, again ran back to the plaintiff and yelled "I'm calling the fire marshal!" at the plaintiff, before again retreating again into her 420 FOA building next door.

670. Over approximately the next three calendar days following the said on or about September 29th 2017 confrontation with Gerry Roll as aforementioned, various state officials from the Public Protection Cabinet commenced a series of random "visits" to and around the outdoor perimeter of the 426 Tree house Cafe building.

671. During said October 2017 "visits" to the plaintiffs former 426 building the plaintiff observed Daniel Roll "smirking" back at the plaintiff while entering the defendant Gerry Rolls 420 FOA building next door, accompanied by the various defendant representatives of the state Public Protection Cabinet also known as Department of building codes enforcement, also known as office of the state fire marshal, also known as department of housing, buildings and construction, and other known alias(s), among them being Daniel Roll, husband of Gerry Roll, Foundation of Appalachia (FOA) Kentucky's "executive director."

672. Is is of public knowledge that Gerry Roll, was very upset with the plaintiff, Brian Carter, over his prior decline of sale of said 426 building to Gerry Roll.

673. At some point after the aforementioned October 2017 "visits" the plaintiff, attempted to reinstall a new roof line on said 426 building sometime in the summer of 2018.

674. While installing a new 2018 roof line on his former 426 Treehouse Cafe building, the plaintiff at some point thereafter received a threatening letter of correspondence from a man named "Joel Beshear, board char of FOA," stating that the plaintiff was "committing a trespass on his 420 main street building with litter from the 426 Buildings roofline," along with a "threat to bring suit" unless the plaintiff "trespassed again to remedy the problem" on or about October 14th 2020.

675. As any reasonable person would view the stated letter from said "Joel Beshear" person as an unprovoked effort to start a conflict, or entrap/ensnare the plaintiff in a legal conundrum rather than

73

to remedy an actual problem, the plaintiff declined to respond to the letter.

676.  A short time later, after the events in #674(supra), defendant of FOA's named executive director, primary antagonist Gerry Roll, made a phone call to the plaintiffs attorney at the time John Hansen, also with a threat to bring suit against the plaintiff, in which the plaintiff's attorney responded "I know you want to blame Brian, but you have no evidence to blame Brian."

677.  After the said 2020 phone conversation with John Hansen and Gerry Roll had ended, with no further mention, discussion or initiation of a "trespass suit" as was previously threatened by the FOA's alleged "representative Joel Beshear" on or about October 14th 2020.

678.  In response to the various 2017 allegations that the plaintiff, Brian Carter was "still benefiting from the usage of the apartments," the previously issued circuit court ruling to have the 426 buildings residential units vacated by temporary injunction with regard to the 426 Teehouse Cafe building, the continued altercations as direct result of Gerry Rolls complaints eventually prompted an on site inspection with the former Public Protection building inspector, Steven Hammock, to verify "if Brian Carter is still benefiting from the usage of his apartments."

679.  The said 2017 inspection from Hammock would not indicate, nor declare any intent of the Public Protection Cabinet to perform an evaluation of the 426 building facility to allow the plaintiff to regain occupancy.

680.  Following the 2017 inspection, former state building inspector Steven Hammock declared that he was going to inform Director Duane Curry that "there was nobody in the (426) building."

681.  In response to the numerous October 2017 to 2018 allegations from Gerry Roll, that "Mr Carter is benefiting from the apartments of his building," the Public Protection Cabinets attorney, under the Bevin administration David Startsman, eventually filed a motion in the existing case *State Fire Marshal vs Brian Carter 16-CI-00259* initially requesting to hold the plaintiff in contempt of court on the allegations of "Brian Carter continuing to benefit from renting out the apartments" of his vacated 426 Treehouse Cafe Building/facility on or about October 26th 2018 via a "motion for contempt."

682.  After, or along the same timeline of receiving notice that the Public Protection Cabinet was seeking an enforcement of its 2015 injunction order previously preventing the 426 buildings residential use portions from being occupied, the plaintiff again contacted former state building inspector Steve Hammock, to inquire about the motion to hold him in contempt, the response from Mr

74

Hammock was, "Director Curry said he didn't want to use me" to evaluate the 426 building.

683. The stated lack of desire to "use Hammock for his evaluations" outlined a personal desire from the Public Protection Cabinet to continue pursuing the narratives favored by Gerry Roll with extreme indifference regarding the firsthand testimony of its own trusted witness, Steve Hammock.

684. During the aforementioned rekindled controversy with the Public Protection Cabinet by Gerry Roll, the plaintiff was finally able to reach defendant and head Fire Marshal aka Public Protection Cabinet representative Mike Haney by phone, to again attempt to discuss official occupancy issues of the plaintiffs former 426 building through his department, as was previously directed by director Curry, in which the only response from Haney was to "talk to my lawyer, its out of my hands" again openly declining to assist the plaintiff further, from late 2017 to 2020.

685. As their would appear to be a legal obligation from the defendants of the Public Protection Cabinet to "remedy" any stated or aforementioned "fire safety concerns" themselves and simply bill the plaintiff for the expense with regard to the plaintiffs 2015 vacated 426 Treehouse Cafe building, KRS 227.390, no such duty or obligation was ever exercised, to assist the plaintiff in officially re-occupying or allowing usage/benefit of his former 426 Treehouse Cafe building.

686. During the said time between late September 2017 until 2020, events, former director of housing under the Public Protection Cabinet Duane Curry, as well as former commissioner of housing Steve Milby, also declined to take any phone conversations with the plaintiff, prompting the plaintiff to escalate the matter regarding the Cabinets "Motion for Contempt" to the executive director at the time, former Executive Director Harold Corder on or about October 26th 2018.

687. Upon escalating the matter to the former executive director of the Public Protection Cabinet Harold Corder, the said escalation would then grant further investigation into the matter regarding the Cabinet's contempt of court motion.

688. Counsel for the Public Protection Cabinet under former governor Bevin, David Startsman, produced "affidavits" from defendant Gerry Roll and former contractor/employee Kenneth Robinson, swearing as to the "illegal occupancy," of "the plaintiff benefiting from renting apartments," and "foot traffic observed to and from" the plaintiffs formerly vacated 426 building September 18th 2018.

689. In response to said affidavits from Gerry Roll and Robinson, the plaintiff then provided evidence in his rebuttal to David Startsman, outlining that the statements made from defendant Gerry

75

Roll were directly due to her well known personal grievance with the plaintiff over his decline of sale of his 426 Main Street building to Gerry Roll on or about November 7th 2018.

690.  The plaintiff further provided in rebuttal by producing pay stub for his former employee Kenneth Robinson, to reveal that Robinson was actually a former employee of the building and not a "tenant paying rent" at the former 426 building, likewise, on or around said November 7th 2018.

691.  The said termination from employment Kenneth Robinson was a direct result of Robinson's tendency to steal or heist tools from said 426 building, rather than focus on his work duties at said location.

692.  The said duties of Kenneth Robinson was to assist the plaintiff with drywall "upgrades" to the 426 building, specifically in an effort of "updating the fire separation" of the building, as previously required by said Public Protection Cabinet, thus Robinson was not a "tenant paying rent."

693.  On or around November 7th 2018, after some time of consult between the plaintiffs then attorney, Ned Pillersdorf and the defendants of the Public Protection Cabinet counsel David Startsman, with the aforementioned rebuttals as outlined above, the Public Protection Cabinet attorney David Startsman voluntarily withdrew his motion to hold the plaintiff, Brian Carter in contempt of court specifically, with regard to the previously used residential areas of the building/facility.

694.  Despite the limited income as a direct result of the collective efforts of the Public Protection Cabinet, Gerry Roll of the Foundation of Appalachian Kentucky, the City of Hazard to undermine the plaintiff, the plaintiff continued with "plan and design submissions" to the Public Protection Cabinet from July 2015 until August 2021 with regard to the vacated 426 building.

695.  On or about November 7th 2019 the plaintiff sought and obtained a permit through the Public Protection Cabinet for "hurricane roof straps" for the historic 426 building.

696.  The said installation of "hurricane roof straps" was well known along the time to be one of the remaining minuscule items required "in order to bring the 426 building into 100% structural code compliance" around the time of 2019 when said work was "permitted" by Carey Graham of the Public Protection Cabinet.

697.  The said "installation of hurricane roof straps would not result in the plaintiff being allowed a certificate of occupancy" to resume enjoyment, benefit or usage of the plaintiffs formerly owned 426 main street building, per Carey Graham of Public Protection Cabinet.

76

698. It is generally well known that the City of Hazard, particularly buildings located on Main Street, is known to have many historic buildings, such as the former 446 Grand Hotel building, the former 67 Whitaker Way apartment building, and the 426 main street building, formerly owned by the plaintiff, among many others.

699. It is generally well known that the plaintiffs former 426 building is essentially the only historic building on or around main street known to have "hurricane roof straps" installed within it.

700. It is generally well known that the plaintiffs former 426 building is the only historic building on main street to meet 100% modern day structural code compliance but still not be allowed to have an "occupancy certificate" or ability to be "permitted" for occupancy during the term of the plaintiffs ownership of said building from June 18th 2015 until August 7th 2023.

701. On or about March 8th 2016, Daniel Roll issued a "cleanup only" permit for the former 446 Grand Hotel building, contrary to his duty owed for the previous wall bracing/reconstruction permit to the plaintiff.

702. On or about March 8th 2016 Daniel Roll gave explicit directions of "applying for permits with the Public Protection Cabinet," and many other state agencies, to "move forward with reconstruction of the 446 Grand Hotel building.

703. Daniel Roll would later, between 2017 through 2023, primarily on or about July 26th 2022, would issue City of "Hazard building construction permits" for his wife Gerry Roll, to build her own apartments in her FOA building at 420 main street, next door to the plaintiffs former 426 building.

704. Although Daniel Roll would impose "state permitting requirements" on the plaintiffs former 446 building, Daniel Roll would not require his wife to obtain the same "construction permits" to his wife Gerry Roll, at her 420 main street FOA building.

705. Public Protection Cabinet would observe "no work being performed" at Gerry Rolls 420 FOA building, citing "nothing to see here" with regard to alterations at said building from 2017 until August 7th of 2023, as aforementioned.

706. Public Protection Cabinet would not "shut down" or vacate said 420 building, or cite any "code deficiencies" during said construction/alterations of said 420 building from 2017 until 2023.

707. The collective efforts of Gerry Roll of FOA, City of Hazard, and the Public Protection Cabinet caused a tortious interference in the much needed income for improvements due to their

77

combined efforts to close, and keep the plaintiff closed, specifically regarding the 426 main building.

708. Despite the limitation of financial resources as a direct result of Gerry Roll of FOA/HDA, the City of Hazard, the plaintiff had eventually hired a fire sprinkler contractor, May 13th 2021.

709. The fire sprinkler contractors design professional submitted plan drawings for new NFPA 13 fire sprinkler system to the defendants of the Public Protection Cabinet around August 5th 2021.

710. The plan reviewer Carey Graham, upon approving the fire sprinkler plan designs, Graham would give his firm declaration stating that "a new fire sprinkler system will not result in a certificate of occupancy being issued for the 426 building" on or about August 10th 2021.

711. The defendants of the Public Protection Cabinet, specifically Mike Haney's office would continue to refuse any direct communications with the plaintiff regarding any form or manner of plaintiffs usage or "benefit" of ownership of his former 426 Treehouse Cafe building, this style or manner of treatment would continue throughout the conclusion of the governor Bevin administration December 10th of 2019.

712. The defendants of the City of Hazard, specifically defendant Daniel Roll, would still not permit a fire sprinkler tap for the plaintiffs 426 building just off of main street, as was previously allowed for other buildings on main street in Hazard KY, on our about August 8th 2017.

713. Defendant Daniel Roll of the defendants of the City of Hazard would only permit a fire sprinkler tap approximately two hundred (200) feet away from the plaintiffs 426 building, off of a water main which rests by the river bank, off of the furthest corner of the plaintiffs former adjacent 67 Whitaker Way building/facility.

714. Upon excavating the area for installation of said water main, Gerry Roll is known to come out to harass the plaintiff "over how it looked back there," while stating that she "was going to build a fence" to further harrass the plaintiff on or about November 5th 2021.

715. It was known that said attempt for excavation was awaiting on a critical part for the 426 fire sprinkler system was allegedly stuck on a ship in the ocean, due to a well known "supply chain" issues around that time, as a large part of the said "appearances" causing said "displeasure."

716. The already existing case of Public Protection Cabinet also known *Office of the State Fire Marshal vs Brian Carter 15-CI-00259* the case stood on the active docket without activity from either party, the case was eventually dismissed due to rule 77 for no further efforts/inactivity, to prosecute the

78

case further on or about December 21st 2021.

717. On or about December 10th 2019 a new governor, Andy Beshear takes office, reappointing the previously dismissed commissioner of housing Gary Feck, as the new "director of housing" under the Public Protection Cabinet.

718. Gary Feck was dismissed by executive order under the former Bevin administration with his former role being "commissioner of housing."

719. During the course of the 2015 through 2019 events, the coordinated efforts to prosecute the plaintiff under the *Public Protection vs Brian Carter case 15-CI-00259* the plaintiffs attorney at the time Ned Pillersdorf, withdrew from the case following emails sent from the plaintiff to the defendants of the Public Protection Cabinet under the Bevin administration Wednesday, February 6th 2019.

720. The said emails from the plaintiff provided evidence that over wise proved the safe conditions of the 426 building, as well as evidence its senior staff was being mislead by Kenneth Browning on about Tuesday, January 22nd 2019.

721. Upon Ned Pillersdorfs withdraw, or about February 6th 2019, the plaintiff sought and eventually retained attorney John Hansen, who made entry of appearance in both cases of Public Protection Cabinet vs Brian Carter on July 19th 2019.

722. John Hansen also made entry of appearance in the state case of *Brian Carter vs City of Hazard 16-CI-00020* respectively, on or about July 19th 2019, or around the same time frame.

723. On or about the time of October 15th 2020, defendant Payton Morton would again confront the plaintiff, demanding that the plaintiff perform, or "to better perform," a more through "cleaning" of the newly created "alleyway" on the plaintiffs former 446 Grand Hotel property by the City of Hazard's contractors, previously conducted on Morton's behalf by the City of Hazard in February of 2016.

724. The said creation of said "alleyway" was done as a direct result of the destruction of the City of Hazards contractors upon the plaintiffs 446 Grand Hotel property on or about March 8th 2016.

725. The destruction of said Grand Hotel "alleyway" area was upon which was once part of the plaintiffs former 446 Grand Hotel building, which consisted of a roughly seven foot area that once housed offices and cooler/freezer areas for the former Pekings restaurant within said areas.

726. The second 2020 confrontation with defendant Payton Morton concluded with the plaintiff requesting that Mr Morton utilize his influence with his colleague representatives of the City of Hazard

to release its "lien" hold on the property.

727. The City of Hazards February 2016 intervention with said 446 Grand Hotel property was in part due to Mr Morton's own interference regarding Morton's personal desires to "have the buildings separated," thus created reluctance on the plaintiffs behalf to "go all out" with restoring the former 446 Grand Hotel building, immediately after the 2015 Grand Hotel fire, among other reluctance in part due to lack of "trustworthiness" with the City of Hazard, such as its "lien" of approx $78,517.00 dollars.

728. Any such propositions for Morton to use his influence for mutual benefit with the plaintiff as aforementioned was thereafter declined by Mr Morton, with a threat that the plaintiff "have 30 days to remedy the issue due to his negligence" mentioned in #723(supra), on or about October 15th 2020.

729. After the 30 days had elapsed, Payton Morton declined to pursue any legal actions against the plaintiff, Brian Carter.

730. At some point, on Friday, the plaintiff along with his attorney John Hansen, moved the defendants case of *Brian Carter vs City of Hazard* regarding the rights of the plaintiff to reconstruct or restore his former 446 Grand Hotel facility, set for trial the following Monday, January 13th 2020.

731. In its first and successful effort to *subvert* the said trial in the City of Hazard state case of *Brian Carter vs City of Hazard 16-CI-00020*, the defendants agreed to meet with the plaintiff on the friday evening January 10th 2020, after the circuit court set its trial date for the following Monday,

732. On the said evening of Friday the city verbally agreed that, "provided that the plaintiff Brian Carter cleans up the debris from the plaintiffs former Newberrys lot within approximately six (6) months or a specified allotment of time, the City of Hazard would permit the plaintiffs Grand Hotel building to be rebuilt," along with a stipulation that the lien would be released thereafter.

733. Due to time limitations, the aforementioned Friday "agreement" was verbal only, with a formal written version to be provided the following Monday January 13th 2020.

734. Attorney Jonathan Shaw, representing the City of Hazard, phone called and notified perry circuit judge Alison Wells, to "inform her that the parties have settled the case" January 10th 2020.

735. On the following Monday, January 13th 2020 the "written version" of said "agreement" was provided by the defendant counsel representing the City of Hazard, Jonathan Shaw, via email to the plaintiffs then attorney, John Hansen, for the plaintiffs review and signature.

736. After reviewing the stated written "agreement," the plaintiff quickly found that the written

version of the agreement was quickly observed to be far too vague and ambiguous to be enforceable.

737. The said written agreement would not include any language that would have obligated the City of Hazard to produce the said permit that it was already dutiful bound to providing to the plaintiff.

738. The said written agreement would not include any language that obligated Daniel Roll to rescind his prior issued "cease and desist" order imposed on said 446 Grand Hotel property, that had officially prohibited the plaintiff from "taking further actions" on the 446 Grand Hotel property.

739. The mandamus lawsuit filed in the state case of *Brian Carter vs City of Hazard 16-CI-00020* was intended primarily to obtain said "reconstruction permit" from the City of Hazard, to command said entity to issue the permit the plaintiff had already paid for regarding 446 Main Street.

740. The said agreement noted a stipulation for the plaintiff to "remove the main street fencing" as was previously ordered by the City, around the entryway of the 446 Grand Hotel building, but no mention of who would assume liability if the plaintiff had complied with said directive.

741. The said agreement stipulated "the City would release the lien placed upon the 446 Grand Hotel once the restoration project was completed" however the plaintiff observed no definition of what "completed" would mean as defined by "the City."

742. The plaintiff was given no incentive to "blindly trust the city" based on the previous 2015 agendas of Paul Collins, Daniel Roll, Steve Campbell, Payton Morton, and former city mayor Jimmy Lindon, with regard to the 2015-mid 2016 actions of destruction against the former 446 Grand Hotel.

743. Based on the inconsistency with previous late 2015 through early 2016 "orders" from the City of Hazard, specifically those issued by Daniel Roll, the plaintiff was given no incentive to "blind trust" the City of Hazard during the aforementioned events around said timeframe.

744. On or about November 12th 2015, the plaintiff was "invited to attend the bidding process for demolition of the 446 Grand Hotel building," wrote several letters as well as emails expressing the plaintiffs disagreement with the City of Hazard taking its own actions to destroy portions of the former 446 Grand Hotel building, but "no other discussions would take place" verbatim of Daniel Roll.

745. No "orders" issued from Daniel Roll from September 2015 until March 8th 2016 regarding demolition of the 446 Grand Hotel building were marked as "appeallable" nor did any said "orders" from Daniel Roll cite "appellate procedures" in violation of *Miranda vs Arizona 384 U.S. 436 (1966)*.

746. As a direct result of the allegations outlined above in 734 through 745, the plaintiff was

81

given no incentive to quickly "blind trust" the City of Hazard regarding his signature of the first "settlement agreement" from attorney Jonathan Shaw on or about January 13th 2020.

747. The plaintiff thereby declined to sign the initial settlement agreement/release based on what is alleged in allegations 734 through 746(supra) in *Brian Carter vs City of Hazard 16-CI-00020.*

748. The plaintiff, based on the allegations above as outlined in 734 through 746(supra), referred the said "settlement contract" to his attorney John Hansen and City of Hazard attorney to make the proper revisions to said "settlement agreement and release" with the City of Hazard.

749. While the plaintiff awaited the aforementioned "issues" with the stated "settlement agreement and release" to be addressed with the City of Hazard and its attorneys, Jonathan Shaw and defendant Denise Davidson, (of whom is also an attorney representative of the City of Hazard) the plaintiff nonetheless, due to the mutual understanding/covenant of good faith dealings with the verbal version of the agreement of 2020 settlement, the plaintiff proceeded and complete the cleanup/repair operations of the main street portion of the Newberrys lot and the commencement/erection of an all new roofing system over the 446 Grand Hotel building, by the original deadlines imposed, in accordance with the first verbal agreement, in continued demonstrations of good faith dealings on behalf of the plaintiff on or around March 13th 2020.

750. The defendants of the City of Hazard proceeded to publicly advertise that "the City of Hazard and the owner Brian Carter have agreed to work together to cleanup the site" while "the city" simultaneously made "complaints" to the state Division of Air Quality, to "report the plaintiff for not properly handling asbestos debris" on or about the March 13th 2020 cleanup date.

751. The work to "clean up the debris" left by the City of Hazard's 2015 Grand Hotel demolition in the former Newberrys lot, was performed by the plaintiff with no "assistance" or funding from the City of Hazard, contrary to the City of Hazard's public statement as mentioned in #750(supra).

752. Tony Eversole a short time later, quickly admitted to the plaintiffs attorney, John Hansen at the time, that "oh he knew about the complaint to the Division of Air Quality."

753. Defendant Tony Eversole, in a breach of covenant of good faith dealings with the plaintiff, "changed his mind" on settling the suit with the plaintiff *Brian Carter vs City of Hazard 16-CI-00020,* on the grounds "Brian Carter didn't sign the agreement."

754. Defendant Tony Eversole, in a further breach of covenant of good faith dealings with the

plaintiff is known to declare "we're going to try to get it (the 446 Grand Hotel building) from him (Brian Carter/plaintiff)" after the plaintiff had completed said March 2020 improvements.

755. Upon receiving said notice from Tony Eversole regarding Eversole's "new intentions" to obtain the 446 Grand Hotel building, the plaintiff would then cease further construction on the new roofline for said 446 building/structure, as was previously agreed upon.

756. Defendant Denise Davidson, counsel for the defendants of FOA, Public Protection Cabinet collectively, and legal representative of the City of Hazard, at some point declared that "we're glad Mr Carter didn't sign that agreement, as that agreement would have been disastrous for the city."

757. At some point after the March 13ᵗʰ 2020 date, a conference call was scheduled with the Public Protection Cabinet with regard to reopening the 426 Treehouse Cafe building, specifically on the subject of "updating the buildings fire separation."

758. On said conference call was Jamie Potter, the new state building inspector replacement of Steve Hammock, and the plaintiffs attorney John Hansen, along with other representatives of the Public Protection Cabinet.

759. On said conference call, Jamie Potter asked "whats with a new roof being built on the Grand Hotel building? At which the plaintiff responded, "I believe he's referring to the containment being constructed over the structure to contain asbestos, which is an EPA requirement."

760. Jamie Potter then responded upon the plaintiffs EPA explanation of the said "roofline" by declaring "oh ok that's fine then that's permitted and approved" with regard to #759(supra).

761. On said conference call, Jamie Potter did not require any other permitting or documentary requirement submissions beyond his verbal consent on said conference call regarding the former 446 Grand Hotel building/property roofline as aforementioned.

762. After an extremely lengthy process the defendants of the public protection cabinet issued a permit to install a new fire sprinkler system for the plaintiffs former 426 building, with Graham's declaration that "a fire sprinkler would *not* mean that an issuance of permit to reoccupy the 426 building would be given on or about August 10ᵗʰ 2021.

763. The defendant representatives of the City of Hazard, specifically the defendants mayor, Donald Mobelini, his legal representative and defendant Denise Davidson, had once again exhausted the plaintiffs financial resources on cleanup operations of the plaintiffs former newberrys lot, & by the

83

erection of said new partial roofline over the plaintiffs former 446 Grand Hotel facility, without honoring its covenant of good faith duties to release the illicitly placed lien, to give the plaintiff his rebuild permits as obligated by due process, or by honoring its duties of releasing it's lien on the 446 property, by the previously established covenant of good faith around the date of March 13th 2020.

764. The defendants Mobelini and Davidson then elected, at their own discretion to utilize, or threat to utilize, eminent domain proceedings to "encourage" and ultimately force, a transaction of sale of the plaintiffs improved 446 Grand Hotel building and Newberrys building lots, rather than allowing the plaintiff to continue with his pursuit of restoration of the structure as was previously committed.

765. Defendants Donald Mobelini and Denise Davidson knew or should have known that the lien placed by defendants Daniel Roll and Paul Collins on said 446 building could not be justified, yet still utilized said "lien" as what they referred to as "leverage" to "encourage the transaction."

766. Defendants Donald Mobelini and Denise Davidson also declared that "eminent domain would be utilized on all remaining facilities" previously owned by the plaintiff, "if he did not openly consent to the contract of sale" on or about June 10th 2021 of the plaintiffs Grand Hotel property and vacant Newberry building lots to the City of Hazard, with regard to the deeply intertwined writ of mandamus suit *Brian Carter vs City of Hazard 16-CI-00020* exhibits 53 thru 55.

767. As the defendants of the City of Hazard and WYMT news defamed the plaintiff with negative headlined news articles of all of the plaintiffs former main street properties, by citing "appearances as eye sores" and "condemnation of the (426 building) Treehouse, by the (Public Protection Cabinet) state," the plaintiff could not have expected recovery of his original investment on all remaining properties (67 Whitaker Way building and 426 building) due to the defendants constant interventions with the plaintiffs advantageous business relationships by diminution of the property.

768. The defendants acts of threatening eminent domain after exhausting the plaintiffs personal resources, combined with defamatory rhetoric of WYMT, destructive acts by Steve Campbell against the plaintiffs former 426 building, have directly resulted in placing the plaintiff under extreme duress or coercion to complete the "transaction of sales" against the plaintiffs desires, against the plaintiffs once prosperous business interests of his former properties, located at 426 Main, and previously located at 67 Whitaker Way, and 446 Main, respectively.

769. The plaintiff was forced to accept "blind faith" that he may still be able to recover the City

84

of Hazard  obtained properties at "a later time" after "cleanup operations were to be completed."

770.  Defendants Denise Davidson and Donald Mobelini knew well of the plaintiffs need for the vacant newberrys lot to erect an alternative steel staircase for the residential usage portions of the plaintiffs former 426 building, per the architectural drawings from his architect William Richardson, yet sought to deprive him of such a staircase regardless of moral or contractual obligations of the City.

771.  Denise Davidson denied any "easements" for a staircase for the plaintiff in the Newberrys lot once final transaction of "contract of sale" was to be completed with the City of Hazard.

772.  Defendant Denise Davidson included a stipulation in the aforementioned "contract of sale" stating "the City will *consider* selling a portion of the Newberrys lot for erection of a staircase, should the State fire marshal aka Public Protection Cabinet require it" – whist choosing such language, knowing that such a stipulation of "consider only" would be extremely unlikely to be enforceable.

773.  Defendant Denise Davidson included such stipulation of "would consider selling back" in the aforementioned "contract of sale" regarding the plaintiffs former Newberrys lot, knowing that his residential tenants and business associates were actively utilizing the said Newberrys lot for parking and enjoyment of use by the plaintiffs residential tenants, exhibit 58.

774.  Defendant Denise Davidson included a stipulation in the aforementioned "contract of sale" of adding approximately over seventy percent (70%) of all of the plaintiffs only remaining parking beside the former 67 Whitaker Way building, aside from the plaintiffs former newberrys lot, to the City of Hazard's newly would be acquired deed and "contract of sale," knowing that the plaintiffs residential tenants were making active use of that parking as well exhibit 58.

775.  Defendant Denise Davidson included a stipulation in the aforementioned "contract of sale" stating "the parking would remain as city parking" whilst adding such language to the stated contract, without additional compensation to the plaintiff for said parking exhibit 58.

776.  Defendant Denise Davidson included a stipulation in the aforementioned "contract of sale" stating "the parking would remain as city parking" without a clear need to take the parking from the plaintiff exhibit 58.

777.  Defendant Denise Davidson included a stipulation in the aforementioned "contract of sale" stating "both parties agree that the Perry Circuit Court would maintain exclusive jurisdiction should any conflicts occur" knowing that the Perry Circuit Court Judge Alison Wells is or at least was

85

on Davidson's board of directors with the defendants of FOA, heavily conflicted.

778. Denise Davidson knew that "should conflicts occur," as she stipulated in the "contract of sale," her well established relationship with circuit judge Alison Wells as a colleague board member of FOA, would very likely tip the scales of justice in Davidson's favor, due to the stated conflicts of interest exhibits 49 & 58.

779. Defendant Denise Davidson included said stipulation in the aforementioned "contract of sale" stating "both parties agree that the Perry Circuit Court would maintain exclusive jurisdiction should any conflicts occur" knowing that the Perry Circuit Court Judge Alison Wells is also the circuit judge in which Davidson holds a position as master commissioner exhibit 58.

780. The said position of "master commissioner" is a position known to "assist the circuit court in the commencement of its duties" revealing *ex parte* relationship with the circuit Judge Alison Wells, beyond their working relations as co-board of directors members of Foundation of Appalachia Kentucky (FOA).

781. Defendant Denise Davidson included stipulation in the aforementioned "contract of sale" stating "both parties agree that the Perry Circuit Court would maintain exclusive jurisdiction should any conflicts occur" knowing that favoritism of Perry Circuit Court Judge Alison Wells obvious aforementioned conflicts would likely result in decisions made in Davidson's favor, irrelevant or indifferent of merit or good faith exhibit 58.

782. Defendant Denise Davidson included stipulation in the aforementioned "contract of sale" stating "both parties agree that the Perry Circuit Court would maintain exclusive jurisdiction should any conflicts occur" can be viewed as a pre-planned intent to willfully break the "contract of sale" by having rulings issued unequally in Davidson's favor on behalf of mayor Donald Mobelini.

783. Whist Denise Davidson was outlining on site with the City of Hazard's surveying crew on the portions of land/parking she was apprehending from the plaintiff, June 2021 the plaintiff mentioned to Davidson "since I've spent hundreds and thousands on specialized asbestos licensing, the only contractor within the immediate area, to clean up and abate asbestos, I assume you'd have to hire me to do the cleanup correct?" With Davidson responding "that's riiiight" in a very sarcastic, spiteful tone.

784. Denise Davidson's tone outlined a great personal disdain with assisting the plaintiff regarding any financial endeavors or "benefit" with regard to "cleanup contracts" of the former 446

86

Grand Hotel property/facility.

785. Upon completion of the forced "contract of sale" defendants of WYMT news crew began publicly broadcasting the sale as a "final settlement" with regard to the 446 Grand Hotel building and lot, the 434 newberrys vacant lot, and over seventy percent of the plaintiffs only remaining parking.

786. The plaintiffs communication and understanding of the aforementioned "contract of sale" with regard to the 446 Grand Hotel building and lot, the newberrys vacant lot, and over seventy percent of the plaintiffs only remaining parking was previously understood as directed from the plaintiffs former attorney John Hansen as "not the final resolution of your case" on or about June 9th 2021.

787. The communication from the plaintiffs former attorney, John Hansen, outlined to the plaintiff "you will lose everything by eminent domain, as Donald (happy) Mobelini is directing Denise Davidson to initiate these proceedings now, so if you don't sign, risking everything isn't a victory" exhibit 55.

788. After the "contract of sale" was signed by the plaintiff, the defendants of the City of Hazard, specifically defendant Tony Eversole, allowed the fire sprinkler tap approximately two hundred feet away from the plaintiffs 426 building, forcing the plaintiff to excavate a path to install a new six inch water main for the plaintiffs former 426 Treehouse Cafe Building/facility.

789. After obtaining the signature of "contract of sale," defendants of the City of Hazard representatives mayor Donald Mobelini and Denise Davidson, would not take any further calls nor respond to any voice messages, text messages, or any other such communication attempts from the plaintiff, shortly after the June 10th 2021 "contract of sale" of the 446 Grand Hotel and Newberrys lots.

790. A short time after the stated "contract of sale" was completed with the City of Hazard, defendant Steve Campbell, known to be the City of Hazards most utilized contractor, deeply involved with the Gorman family, of whom have a history of influence in town affairs, began to make a series of "visits" to the Grand Hotel and Newberrys property lots, formerly owned by the plaintiff.

791. Mr Campbell would disclose to the plaintiff that "various bids were being taken to clean up" the former Grand Hotel property site.

792. As the plaintiff was the only contractor in the area trained and equipped to handle asbestos debris due to the City of Hazard's requirements with the Division of Air Quality DAQ, the plaintiff submitted his own bid for cleanup operations of the Grand Hotel site to Tony Eversole.

87

793. One of the "requirements" from Tony Eversole with the City of Hazard was to "have workers compensation insurance of $1,000 to qualify for the bidding process for the 2020 "cleanup" of the Grand Hotel site, of which the plaintiff obtained said insurance as instructed.

794. Tony Eversole claimed that he "accepted the plaintiffs bid," but posted an ad in the local newspaper "City reserves the right to hire who it wants to hire" with regard to the said "cleanup project" of the Grand Hotel property in 2020.

795. The City of Hazard included said language in said local newspaper, after openly denying the plaintiff the same discretion of "hiring who the plaintiff wanted to hire" when the plaintiff himself was the owner of the same 446 property from September 2015 until the date of "sale" June 10th 2021.

796. At some point after the "contract of sale" regarding the 446 Grand Hotel, Newberrys vacant lot, and parking behind the Grand Hotel building, Assistant manager Tim Caldwell visited the property, directing the plaintiff to "take down or demolish" the asbestos decontamination unit the plaintiff had previously erected as an attachment behind the Grand Hotel building lot, originally utilized for compliance with associated asbestos handling regulations at the time.

797. Assistant manager Tim reported to the plaintiff that "Steve Campbell has more insurance than you" in reference of "better qualifications" Steve Campbell possessed for "cleanup the Grand Hotel site" than that the plaintiff as to the reasoning given for "using Steve Campbell for cleanup."

798. A firsthand witness of the commencement of cleanup operations at the Grand Hotel with Steve Campbell's workers at the Grand Hotel building/site reported stated or said to a witness "we're going to clean up the site and build the (Grand Hotel) building back."

799. Contrary to said claim from contractors of Steve Campbell, the City of Hazard Police department would later advise the plaintiff directly during the aforementioned encounters, with Tony Eversole and Tim Caldwell regarding "cleanup contracts of the Grand Hotel" that "at City Hall, the mayor and commission declared they were going to fully demolish the former Grand Hotel Building," without formerly notifying the plaintiff of said decisions.

800. Upon receiving such notification of "full destruction of the Grand Hotel building" as aforementioned by the City of Hazard police department, the plaintiff then sent texts to Donald Mobelini, begging for the mayor to reconsider, of which such communications were disregarded, ignored, or "conveniently overlooked" by Donald Mobelini.

801. Steve Campbell then proceeded with his contractors to fully demolish the remains of the Grand Hotel, with no asbestos licensing, and no decontamination of the workers on site within an approximately three week period of time once initiated.

802. After completion of the 446 main "contract of sale," the defendants of the City of Hazard Tony Eversole allowed a tap for a fire sprinkler system of his formerly owned 426 Treehouse Cafe building, thereafter allowing for an approximately 100-150ft trench alongside the concrete area to be excavated, by the Whitaker Way river bank, all along the south facing side of the plaintiffs former 67 Whitaker way facility, to the rear of the plaintiffs former 426 Main building August 24th 2021.

803. The said completion of said outdoor work for the fire sprinkler supply line wasn't allowed to be completed for approximately eight calendar months, due to an alleged supply chain shortage, pursuant to a requirement to install a shut off valve just outside of the 426 building mid to late 2021.

804. While the plaintiff initially performed the excavation work for his fire sprinkler for his former 426 Treehouse Cafe building, defendants Payton Morton and Gerry Roll would proceed to construct a rear deck "extension" on the rear of Ms Roll's neighboring 420 FOA building in 2021.

805. While concluding the work of the deck construction/extension, the defendant Payton Morton could be overheard and seen "pointing his finger along the property line" between Gerry Roll's FOA building and the concrete slab formerly belonging to the plaintiff, as shown exhibits 1 thru 6.

806. The said "pointing along the property line" between Gerry Rolls 420 FOA building and the rear facing portions of the plaintiffs former 426 building, with adjoining lots of the former 67 Whitaker Way building, that said "pointing" was informing Gerry Roll that she could erect a barrier, wall, or fence restrict public access to and from the plaintiffs 67 Whitaker Way properties, as well as to block or restrict the rear entrances of the plaintiffs former 426 building, as outlined in 805(supra).

807. It is well known fact that the defendants of FOA and Gerry Roll never, if ever, previously used the rear parking lot owned by said organization of the 420 FOA building, prior to any barriers, walls, or fencing being erected.

808. Some time later, after the "pointing and plotting" of blocking access to the plaintiffs remaining facilities of 426, and 67 Whitaker Way, the plaintiff was working to replace a refrigerator to a residential tenant apartment number (36) thirty six, nearest the road of Whitaker Way behind the plaintiffs former 67 Whitaker Way white apartment building, the defendant Gerry Roll observed the

89

plaintiff making the said delivery to his tenant, stormed angrily to the plaintiff to start another "confrontation" sometime on or about November 5th 2021 after the plaintiff had worked to complete pipe install/excavation alongside the south facing portions of his former 67 Whitaker Way property.

809. The defendant Gerry Roll stated that she was "sick of how things looked back here" referring most particularly to the to mounds of dirt the plaintiff had excavated for his 426 buildings fire sprinkler system from approximately November 5th 2021.

810. The plaintiff explained to defendant Gerry Roll that the reasoning for the "mess" was due to a critical part to complete the outdoor portion of the (426 buildings)fire sprinkler system install was supposedly stuck on a boat in the ocean due to a "supply chain issue" of which was known to be pervasive at or around the time of November 5th 2021.

811. Defendant Gerry Roll, further responded that the plaintiffs dump truck, of which the plaintiff had originally purchased to haul construction debris away from the Newberrys lot and Grand Hotel building lots, was now being utilized in the interim, to remove random trash from the property on behalf of his residential tenants of his 67 Whitaker way facility, as the new trash services from Rumke were proven to be inadequate, around said time of November 5th 2021 confrontation with Gerry Roll.

812. Ms Roll then complained that the plaintiffs "dump truck "stunk" with the plaintiff responding to the allegation from Ms Roll that "his dump truck stunk" by stating, and reiterating that he was prompt about hauling rubbage whenever the need arose, further citing the inadequacies of the trash services provided from the City of Hazard's Rumpke contractors at higher prices.

813. During the time of said November 5th 2021 confrontations, Gerry Roll would not pay the City of Hazard for trash collection services, specifically for a dumpster of her own 420 FOA building.

814. Defendant Ms Roll concluded the said 2021 confrontation with the plaintiff stating that "that's just the cost of doing business!" and "I'm building a fence!" in a hateful tone of voice, further stating "I'd just really hate to *inconvenience* you" with a smirk, a sneer at the plaintiff, as well as a special emphasis on the word "inconvenience" in a snide or sarcastic tone of voice Nov 5th 2021.

815. At said conclusion of said confrontation, the plaintiff would not return Gerry Rolls scorn, tone, demeanor, sarcasm or looks, simply looked back at her without returning her attitude, prompting Gerry Roll to storm off and away from the plaintiff without further communication after a brief pause.

816. Given the previous 2017 evidence that the defendant Gerry Roll was upset at the plaintiff

90

for not previously selling his 426 to her at extreme losses, the plaintiff would not return Gerry Rolls hateful tone, demeanor, sarcasm or looks on the November 5th 2021 confrontation as aforementioned.

817.  In a few short days November 10th 2021 confrontation with Gerry Roll, defendant Tony Eversole city manager with the defendants of the City of Hazard sent several letters of correspondence to the plaintiffs residential tenants of his former 67 Whitaker Way apartment building declaring "Mr Carter will no longer be allowed to provide for you a truck to haul away trash on your behalf, the City will provide the property a dumpster and all tenants will be billed directly for trash service."

818.  Without objection, the plaintiff removed his truck from his former 67 Whitaker Way property and lots as demanded, leaving the property once again to its formerly, at least "somewhat inadequate" trash services provided by Rumpke, shortly after receipt of the November 10th 2021 letter.

819.  Defendant Gerry Roll has never on her own paid trash service for her 420 FOA building, nor has any such requirement been bestowed upon her by the defendants of the City of Hazard.

820.  A short time later, Rumpke, for whatever reason, despite delivering a dumpster for the residential tenants, would openly refuse to provide prompt trash service service for the tenants, prompting the tenants to make random complaints to the plaintiff, as well as a subsequent written complaint from an environmental agency regarding a trash pile up around the dumpster and just off the hillside of the plaintiffs former 67 Whitaker Way facility.

821.  In response to the written complaint from said environmental agency, the plaintiff sent the agency a reply letter stating that the plaintiff "was no longer allowed to provide trash service on behalf of the residential tenants," included a copy of the demand letter from defendant Tony Eversole declaring "the city was responsible for trash collection within city limits," and a copy of the most recent complaint from one of the former residential tenants stating that "trash hadn't been picked up in weeks on or about January 6th 2023.

822.  A short time later, various representatives of the City of Hazard arrived on site to pick up the spilled over trash debris, no further communications were received from the stated environmental agency.

823.  Eventually, the plaintiff was able to complete the outdoor installation of the 6" water supply line for the fire sprinkler system of his former 426 Treehouse Cafe building, mid 2022.

824.  After the new outdoor fire sprinkler piping and the covering over of the plaintiff and two

91

of his former residential tenants of his 67 Whitaker Way apartment building, was issued "tow notices" from defendant Gerry Roll, notifying that they were not allowed to use her FOA parking, along with notes and correspondence from City of Hazard manager Tony Eversole that stated "The Foundation of Appalachian will be performing a construction project, and to call Tony Eversole personally with any questions" on or about April 18th 2022, exhibit 27, *et al.*

825. A few short days later, defendant Payton Morton arrived on site to commence construction of an approximately one hundred thirty foot (130ft) long, eight foot (8ft) tall white metal wall thereafter referred to as "a fence" as promised by defendant Gerry Roll on or about May 4rd 2022.

826. Upon said construction of said barrier/wall/fence, Various residential tenants of the plaintiffs former 67 Whitaker Way building/facility began contacting the plaintiff, primarily former residential tenant Mary Hubbard, to report that the wall/barrier/fencing was being erected on the plaintiffs concrete slab, on or about May 3rd 2022.

827. Prior to the physical fence/wall/barrier being erected, directed by Gerry Roll had previously directed former residential tenants of to park on the plaintiffs concrete slab, which resided beside the plaintiffs former 67 Whitaker Way apartment building, and behind the plaintiffs former 426 Treehouse Cafe building, beside Gerry Rolls parking lot on the other side of said slab, exhibits 1-6.

828. During the commencement of said wall/barrier/fence construction, former tenant of the plaintiff, Mary Hubbard, was confronted on site by defendant Payton Morton, ordering her to "remove her vehicle from the (plaintiffs former) concrete slab" which resided on the plaintiffs side of the defendants first white metal wall/barrier, "or Tony's going to have you towed" quoting verbatim, and referring to city manager Tony Eversole with the City of Hazard on or about May 3rd 2022.

829. The plaintiff then contacted his then attorney, John Hansen, who quickly arrived on site upon the commencement of the first wall/barrier/fence construction to take photos (exhibits 1 thru 6) and spoke with the contractor, defendant Payton Morton, who immediately declared "no the city's got nothing to do with this John" on or about May 3rd 2022.

830. The plaintiffs attorney immediately filed complaint *Carter Realty & Associates LLC vs Foundation of Appalachian Kentucky (FOA) 22-CI-0166* with motion requesting that the Perry Circuit Court issue an emergency injunction to stop the erection of the first barrier/wall/fence on the allegation

92

of obstructing safe egress/ingress to the plaintiffs facilities.

831. The State Perry Circuit judge along the time of said filing of suit with FOA as aforementioned, is/was known as Perry Circuit Court judge Alison Wells exhibit 49.

832. The said Perry Circuit Judge Alison Wells was conveniently "made unavailable" during the week of said wall/barrier/fence construction by FOA the week of May 3rd 2022.

833. Perry Circuit judge Alison Wells was later discovered to be, or have been, a board of directors member of the defendants of FOA, subject to said suit *Carter Realty vs FOA 22-CI-00166.*

834. The said conveniently timed absence of state Circuit Judge Alison Wells during the time of initial barrier/wall/fence construction by FOA allowed the said construction to be completed without hindrance or impunity during the week in question from on or about May 2nd 2022 until May 7th 2022.

835. Shortly around the time of said initial wall/barrier/fence construction, Defendant Tony Eversole, continued to send threatening correspondence to the plaintiff and the remainder of the plaintiffs residential tenants, declaring that they were not allowed to use the plaintiffs own concrete slab for parking located between the new wall/barrier/fence by FOA and the former 67 Whitaker Way apartment building, exhibits 1 thru 6.

836. Defendant Tony Eversole also sent the plaintiff threatening correspondence that he was not allowed to use the newberrys lot for parking exhibits 44 thru 47.

837. Prior to the full destruction of the 446 Grand Hotel by Steve Campbell, defendants Tony Eversole and Donald Mobelini consulted with and recruited Balis Campbell construction, to commence and complete a series of initial "demolitions" on the plaintiffs former 446 Grand Hotel building, namely removing the steel fire escape off the south or side facing wall towards the vacant newberrys lot "to clean off that side of the building" and to "finish tearing out the alleyway" on behalf and on direction of defendant Payton Morton, as well as a new metal wall sometime from 2021 thru 2023.

838. Defendant Steve Campbell is well known to be married into the Gorman family, specifically due to his marital relations with the late LD Gormans daughter.

839. The Gorman and Roll families are both well known to exert considerable business and political influence over the City of Hazard for many decades.

840. Defendant Steve Campbell is well known to use his influence as a city policy to "get the city contracts."

93

841. Defendant Steve Campbell is well known to be often paid exorbitant sums of money from taxpayer contracts, among them being paid nearly upwards of approximately one million dollars to "install two tennis courts at Perry County Park."

842. One former residential tenant reported that the Whitaker roadway, at the end of the first fence erected by Gerry Roll of the defendants of FOA, new government fencing was then observed along the backside of the plaintiffs former 67 Whitaker Way building, blocking street traffic to said facilities of the plaintiff, exhibit 12.

843. The additional government fencing blocking said roadway, was known erected by the defendant Gerry Rolls co-conspirator City of Hazard defendant Tony Eversole, under Eversoles direction exhibit 12.

844. Prior to, as well as after, the City of Hazard "obtained" the Newberrys lot from the plaintiff, the plaintiff would receive various complaints from his former residential tenants, specifically that their children would be harassed by defendant Tony Eversole, stating that "the parking lots were prohibited from children playing or riding their bikes" by eyewitness account.

845. The plaintiff also received various complaints from his former residential tenants, specifically that the City of Hazard contractors were prohibiting parking, claiming "we have to get our equipment in there" from June 20th 2021 until June 6th 2023, primarily on or about May 25th 2022.

846. The stated requirement from said Steve Campbell contractors was to "get equipment in there" for various demolition related work to the plaintiffs former 446 Grand Hotel building.

847. As the said contractors were previously proven to simply navigate around the parked vehicles for access, exhibit 23, the said direction from said contractors declaring "we need to prohibit parking to get our equipment in there" to harass or annoy, rather than a genuine need to have said vehicles moved in order to gain access, exhibits 20 and 23.

848. As the said contractors could have also easily accessed the said Grand Hotel property for demolition related work via Main Street as well as the east facing portions of the 434 Newberrys lot, thus depriving former residential tenants from the only remaining parking "in order to gain access" was more of an excuse to harass or annoy, as well as deprive beneficial enjoyment or usage of property.

849. On December 18th 2022 the plaintiff received various complaints from his former residential tenants, specifically that "no parking was allowed anywhere," with armies of city workers

posting metal no parking signs all around the plaintiffs former properties of 67 Whitaker Way as well as the rear portions of the plaintiffs former 426 building, prohibiting parking, also during a major county wide water outage at or around the same time frame exhibits 27 thru 30.

850. The plaintiff received various complaints from his former residential tenants, specifically that city police were issuing parking citations for residential tenants in the only remaining portions of the plaintiffs usable parking beside the Whitaker way roadway exhibit 31.

851. the plaintiff received various complaints from his former residential tenants, specifically that new concrete walls were stated to be erected all around the remainder of the plaintiffs properties, to further entrap them and prohibit safe ingress and egress to the plaintiffs remaining 67 Whitaker Way building and 426 residential use areas, exhibits 10 thru 51 around June 7th 2023 through June 9th 2023.

852. Approximately two days before any or other "additional concrete wall construction" commenced, defendants Steven Campbell and Donald Mobelini at approximately 12 noon, on our about June 7th 2023, were visually observed standing in the vacant newberrys lot having a "somewhat heated discussion" involving placement of new concrete walls from the rear corner of the plaintiffs former 426 building, to the corner of where the 446 Grand Hotel building once stood, all down alongside other side of the plaintiffs north facing side of said 67 Whitaker Way facility, as observed by several "hand motions" given by Steve Campbell to Donald Mobelini on or about said date.

853. On or about Friday June 9th 2023, of commencing day said concrete walls construction, defendant Steve Campbell caught the plaintiff leaving his 426 building, while the plaintiff was attempting to have the decks and steps of his 67 Whitaker Way building pressure cleaned for his residential tenants, Steve Campbell attempted to start a confrontation with the plaintiff, yelling "I'm building a wall here!  I'm building a wall here!"  Demanding to confront the plaintiff further.

854. Initially, the plaintiff saw the attempt at "communication" as another senseless attempt to harass or provoke a confrontation, therefore, sought to avoid such confrontation by walking past defendant Steve Campbell directly to the plaintiffs vehicle, in which Campbell then pursued plaintiff to his vehicle asking "do you (plaintiff) have a problem with me? (Campbell)" to the plaintiff.

855. Without directly answering the stated question from defendant Steve Campbell, and while still attempting to leave the property, the plaintiff paused, looked over at the pile of debris that used to house his historic 446 Grand Hotel and interior Shopping Mall, and without directly answering the

question, stated "I think it's pretty terrible that they fought me in court for about ten years to serve no other purpose but to give you something else to tear down for your own profit, I think that itself is pretty terrible, and it isn't right what you're doing here, it just is not right."

856. With the plaintiff responding to Steve Campbell that "it isn't right what he's doing" the conversation between the plaintiff and Steve Campbell ended, with Campbell resuming his business of the new concrete walls construction.

857. After leaving the 67 Whitaker property, Steve Campbell would also mark all along the north facing side of the plaintiffs former 67 Whitaker way building, intending to continue constructing harassing barriers all along down the side of said structure, exhibits 34 thru 35.

858. In response to the new concrete walls being constructed all around over 70% of remaining property formerly owned by the plaintiff on or about June 9th 2023, the residential tenants of the plaintiffs former 67 Whitaker Way facility are known to have immediately began lodging a series of complaints to the defendants of the City of Hazard, specifically Tony Eversole, to protest the new concrete walls and other barrier based construction around the entirety of their homes and property.

859. In direct response to the said complaints by the plaintiffs former residential tenants #858(supra), with regard to the 67 Whitaker building, the City of Hazard quickly responded by having its contractors erect additional temporary barriers/fencing all around the remaining perimeter of the plaintiffs property, effectively prohibiting any and all remaining areas of egress/ingress to the property.

860. The City of Hazard has a well documented history of retaliating against the grievances of its citizens as seen in cases of *Steve Vires vs City of Hazard 20-CI-00245, Dallas Campbell vs City of Hazard 24-CI-0034, Jessica Cornett vs City of Hazard 24-CI-00154, et al*, in addition to the plaintiff.

861. In a perfectly timed execution consistent with its normal patterns of retaliatory based behaviors, pervasively known throughout Perry County and in Hazard, a fire is known to "mysteriously" break out in the plaintiffs former 67 Whitaker Way building/facility, the same evening at which barriers are placed around all remaining circumference of the former 67 Whitaker Way building/facility the evening of June 9th 2023.

862. For many months at a time, from June 2021 until August 2023, parking would unjustly remain physically obstructed or denied for the plaintiff or the former tenants of the plaintiff, for extended periods, without any actual work being performed at the adjacent land that formerly

96

housed the 446 Grand Hotel building or 434 Main Street Newberry's building lots or facilities.

863.   In response to the June 9ᵗʰ 2023 building fire of the plaintiffs former 67 Whitaker Way facility, the City of Hazard fire department arrived on scene, unequipped, while contending with various fencing that blocked safe egress/ingress by the City of Hazard's co-conspirators, exhibit 42.

864.   As was previously the same treatment as the September 1ˢᵗ 2015 Grand Hotel building fire, the City of Hazard fire department again, moving at a pace equivalent to sloths or at dead minimum, moving at a pace of hourly wage contractors "milking the clock" on a plumbing job, arbitrarily meandering around for several hours, the City of Hazard Fire Department would similar another demonstrations of extreme indifference of their duties to preserve both life and property, as no sense of "hussle" or "urgency" whatsoever, was ever demonstrated by the City of Hazard fire department on the evening of June 9ᵗʰ 2023 of the 67 Whitaker Way building fire.

865.   On the evening of the June 9ᵗʰ 2023 fire of the 67 Whitaker Way building, the City of Hazard lethargically, arbitrarily, in a meandering fashion began connecting various hoses over the course of several hours, in preparation of spraying the building with a very fine mist at an ineffective distance, whilst openly disregarding an obvious, immediate need to put water directly on said fire, as was before the same treatment given in the September 1ˢᵗ 2015 Grand Hotel fire exhibit 43.

866.   It was during the time of the said June 9ᵗʰ 2023 fire, several staff members of the City of Hazards fire department were visually observed to be casually walking in and out of the 67 Whitaker Way building apartments, as if the plaintiffs former 67 Whitaker Way building wasn't actually on fire, as if no need demonstrate any sense of urgency.

867.   The City of Hazard Fire Department, despite being exceptionally well equipped as well as appropriately staffed, the said fire department willfully allowed all areas of the plaintiffs former 67 Whitaker Way apartment building to be destroyed by fire, particularly the entirety of the 3ʳᵈ floor and roof-line of the building, with its lower floor areas destroyed at minimum by soot and water damage.

868.   Over the course of several hours, a group of Jakes branch fire department is known to come in to "assist" the City of Hazard fire department, leading to said 67 Whitaker Way building fire being eventually extinguished sometime after or around the midnight hours by said crew.

869.   Shortly after the June 9ᵗʰ 2023 fire of the 67 Whitaker Way building, the defendants of FOA publicly ADMITTED their involvement of heavy coordination with the City of Hazard fire

department, and *admitted* their knowledge of the origination of the 67 Whitaker Way building fire, promoted by "the City of Hazard's" favored news network, the defendants of WYMT.

870. After allowing virtually all areas of the plaintiffs former 67 Whitaker Way apartment building to be destroyed, the defendants of FOA, "instantly declared" the 67 Whitaker Way apartment building to be "condemned" within "a collapsible hazard zone" verbatim of the exact same declaration as was previously designated by City of Hazard representative Daniel Roll, husband of Gerry Roll, the named "executive director" of FOA regarding the plaintiffs former 446 Grand Hotel building in 2015.

871. The said "collapsible hazard zone" declaration was also previously given to the plaintiffs former 446 Grand Hotel facility in September of 2015, by the defendants of the City of Hazard, namely Daniel Roll, as to the reason why the plaintiff wasn't allowed to work in or around that facility.

872. The City of Hazard has previously used the aforementioned "collapsible hazard zones" classification as justification to invade the plaintiffs properties, to cause destruction to property, indifferent of the plaintiffs intended usages, desires, or "benefits" of ownership of property.

873. Immediately after allowing the 2023 fire destruction of the plaintiffs 67 Whitaker Way building, the City of Hazard fire chief Robert Keith, thereafter sent threatening correspondence to the plaintiff declaring that "the city will demolish what is left of the structure unless appealed to the state fire marshals office" aka Public Protection Cabinet, June 12th 2023 outside of any known delegation authority or authority jurisdiction, whilst repeating the rhetoric of a "collapse hazard zone."

874. Promptly the plaintiff sent the stated appeal request to all parties of the City of Hazard, and Public Protection Cabinet, respectively per the said notice of Robert Keith June 22nd 2023.

875. During the stated dispute, the defendants of the City of Hazard's favored, well connected contractor, defendant Steve Campbell, encroached in trespass, without permission from the plaintiff, several feet beyond the newly established newberrys property line to complete his construction of the new L shaped concrete wall, stopping at the L shaped corner 67 Whitaker Way building north facing wall with a "ramp" rather than continuing with construction as was previously marked, exhibits 15&48.

876. The newly erected concrete wall by Steve Campbell also caused a careless obstruction of the previously ran culvert that had previously allowed for proper drainage of rain and/or flood waters out of the newberrys lot and away from the plaintiffs newly repaired 426 Treehouse Cafe building foundation, exhibits 15, 38, 48, and 59.

877. Upon completion of said concrete walls, defendant Steve Campbell proceeded to bring loads of dirt to infill the natural slope area in the Newberrys lot that previously allowed for proper drainage of rain waters out of the Newberrys area, and towards the river bank behind Whitaker Way, stopping short of several feet of the plaintiff 426 building, thereby causing a diversion of flood and rain waters to be directly concentrated into the rear facing corner of the plaintiffs former 426 building, where this condition remained for approximately four (4) calendar months until the day the property was forcibly liquidated and sold to its new owner Jeff Norman on or about August 7th 2023.

878. The said liquidation of the plaintiffs former 426 building asset in August 2023 to Jeff Norman was completed based on previous evidence the plaintiff had obtained that no other person would be treated in the same fashion as that of the plaintiff.

879. While the plaintiffs "administrative hearing with the state fire marshals office" regarding the imminent, full destruction desires to his 2023 severely fire damaged 67 Whitaker Way building as expressed by the City of Hazard, remained "pending," the plaintiff attempted to perform some basic cleanup and care of the fire damaged facility, in which the defendants of the Public Protection Cabinet Carey Graham, the plan reviewer that was "assigned" to work with the plaintiff on his formerly 2015 vacated 426 building, immediately sent threatening correspondence to the plaintiff outlining the plaintiff would be "severely punished" if the plaintiff had continued with any such improvements "without permitting through his office" stating "I trust you will take this matter seriously so that further action is not necessary," on or about June 14th 2023, and again, on or about July 17th 2023

880. Immediately after the 67 Whitaker Way building was "deemed a collapse hazard" as was similarity "deemed" with regard to the plaintiffs former 446 Grand Hotel building in 2015, Fire Chief Robert Keith of the City of Hazard Fire Department immediately posted "condemnation" notices all around the extremities of the said 67 Whitaker Way building, also on or around June 12th 2023.

881. Public Protection Cabinet Jamie Potter would also quickly move to place his own "stop work orders" on the plaintiffs former fire damaged 67 Whitaker Way apartment building, officially prohibiting any "repairs or benefit" of said facility, alongside the notices posted by Robert Keith.

882. As the Public Protection Cabinet has a history of "not allowing the plaintiff to use, benefit or enjoy property" regardless of meeting any permitting requirements, thus the plaintiff was given no incentive to believe he would have ever been again allowed to use, benefit, or care for his former 67

99

Whitaker Way building, or ever again be allowed to use, enjoy, benefit or care of his 426 Main street building, as a direct result of the proven practices of unfair treatment to the plaintiff.

883. The City of Hazard representative Robert Keith followed suit immediately before or just after state representative Jamie Potters "Stop work" order notices, placed the varied "condemnation" notices, placing each "condemnation notice" placed beside each "stop work notice" by representative Jamie Potter of said cabinet, revealing a coordinated effort between the two government entities.

884. After said "postings" from Robert Keith and Jamie Potter, Pubic Protection Cabinet representative Jamie Potter would also "visit" the plaintiffs former 426 building around March 3rd 2023.

885. During many of said "visits," Mr Potter entered the lobby/restaurant first floor area near the first floor bar area of said 426 building, and spoke with the plaintiffs spouse at the time, requesting to "speak with the plaintiff Brian Carter, specifically" on or about March 3rd 2023

886. Ms Arrowood, spouse of the plaintiff, informed Public Protection Cabinet representative Jamie Potter on or about said date of March 3rd 2023 that Brian Carter wasn't on site at the time and asked if he needed anything, but declined further assistance, "just wanted to talk to Brian Carter is all."

887. Shortly thereafter, Public Public Protection Cabinet representative Jamie Potter then placed a "stop work order" on the front door of the plaintiffs former 426 Treehouse Cafe building, ordering the plaintiff to stop any further work to the fire sprinkler system "until access to the (426) building was granted to allow inspection of the fire sprinkler system" on March 3rd 2023.

888. Thacker Grigsby aka TVS cable company, visited the plaintiffs former 426 building to restore the internet services for the building, while completing the restoration of such services, the installer was contacted by his "supervisor," ordering that the tech had to "leave immediately due to the stop work order notice" placed on the front door of the 426 building sometime in June to July 2023.

889. Given the well established history in summation of evidence obtained that the plaintiff would never again be formally allowed to use any portion of his former 426 building, evidence that the plaintiff specifically, would always be given "special treatment," regarding his ability to use, enjoy, or "benefit" from his ownership of properties, facing imminent destruction of his only remaining undamaged 426 Treehouse Cafe building at the hands of Steve Campbell, deprivation of all forms of parking, deprivation of all forms of meaningful access to property, as well as the combined collective, concentrated, coordinated efforts of the defendants to physically destroy, and deprive all manner of

100

righteous enjoyment, or "benefit" of usage for any of the plaintiffs former main street buildings, surrounding properties, including remaining buildings, regardless of "compliance" or the bringing of any suit, the plaintiff was given no incentive to ever believe that said form of treatment would have ever improved, primarily due to the coveting desires of Donald Mobelini as well as Gerry Roll and their "well capitalized non profit entities" as cited by Paul Collins, exhibit 7.

890. The defendants of FOA, Paul Collins, Donald Mobelini, Gerry Roll have had or did have an established policy of "special treatment" of the plaintiff, in that "if we can't have his (plaintiffs) properties, he won't benefit from them either."

891. Defendants ongoing efforts to ultimately succeed in destroying the plaintiff as well as his properties regardless of any good faith action or effort from the plaintiff to provide needed care of his properties, the plaintiff was again placed under extreme duress to liquidate the last of his buildings and property, namely 426 main and 67 Whitaker Way building, by placing all remaining property for sale to avert or avoid their eventual, imminent physical destruction at the hands of the obsessive desires of FOA, as a direct result of the collective actions of the defendants, specifically Gerry Roll, Public Protection Cabinet, City of Hazard and their related "non profit representatives" from June 18th 2015 until on or about August 7th 2023, the final date of liquidation of said buildings.

892. Within a very short relatively 24-48 hour period of time of placing said remaining 426 main and 67 Whitaker Way buildings "for sale," in August 2023, the plaintiffs realtor, Millie Blair of Exposition Realty located and arranged a buyer, Jeff Norman of JLN Properties to make an offer to buy the property, in which the plaintiff accepted the offer under extreme duress placed by the defendants.

893. Immediately after the agreement to sell the remaining 426 Treehouse Cafe building and the fire damaged 67 Whitaker Way apartment building, lots and adjoining properties, the "stop work order" on the front of the 426 building was promptly removed, as well as the "stop work order notices" removed from the adjacent 67 Whitaker Way facility, and "condemnation as unsafe" notices of the said 67 Whitaker building likewise, were also promptly removed shortly after August 7th 2023 sale date.

894. Immediately, or almost immediately, after the August 2023 sale of the 426 building, 67 Whitaker building and adjoining properties, defendant Steve Campbell the City of Hazard resumed work on infilling around the exterior wall of the plaintiffs 426 Treehouse Cafe buildings foundation within the Newberrys lot, proceeded to pour a 6-8" form of concrete against the footer of said 426

101

buildings foundation, quickly providing some manner of correcting the prior four (4) month long conditions of channeling flood and rain waters directly into said 426 buildings foundation.

895. Shortly thereafter said transactions of sale to Jeff Norman of JLN properties, various news groups, primarily WYMT news announced "former Grand Hotel property sees new development" with statements from defendant Donald Mobelini that "we just have to build walls" to "create versatile outdoor recreation space" in place of previously permanent, viable businesses and affordable housing, now permanently destroyed, that the Grand Hotel facility had once offered the community.

896. A few days after the property was sold to Jeff Norman, a prior scheduled "administrative hearing" a conference call between the parties of the State Fire Marshal, the City of Hazard, and the plaintiff, Brian Carter regarding the plaintiffs appeal request to oppose the defendants obsession with tearing down of his former 67 Whitaker Way facility/building on or about September 5th 2023.

897. On the said conference call/administrative hearing regarding the City of Hazards obsessions with destroying the 67 Whitaker Way building, was the plaintiff Brian Carter, defendant Denise Davidson, and Public Protection Cabinet on or about September 5th 2023 by Shawn Chapman, Barry Sullivan, or similar representative.

898. On the date of said conference call, Denise Davidson would continue to refer to the "administrative hearing officer" as "judge."

899. On the conclusion of said conference call, the stated hearing officer gave an order for the plaintiff to produce a brief on his personal authority to represent his company in legal affairs with the State Fire Marshal, the call concluded with the plaintiff challenging the authority jurisdiction of the Public Protection Cabinet and the City of Hazard to command a demolition of his former properties.

900. Within a month of providing the memorandum as instructed, the stated hearing officer Shawn Chapman as abruptly "resigned" or dismissed from his position from the Public Protecting Cabinet, with no clear explanation as to why he was either dismissed or resigned on his own accord.

901. The top executive assistant of legal counsel Barry Sullivan then appointed himself as the "interim hearing officer" regarding the defendants goals of demolishing the plaintiffs former 67 Whitaker Way building/facility on or about August 22nd 2024.

902. The new owner Jeff Norman of said 67 Whitaker Way building was well known by the defendants of of the City of Hazard regarding Jeff Norman's contractual obligations with the plaintiff

102

as a condition of sale of said property that "Jeff would challenge city efforts to have said 67 Whitaker building destroyed."

903. Several months later, perhaps a year later, on or about November 22nd 2024 the defendants collective efforts to pressure or coarse the new owner, Jeff Norman, into allowing the full demolition of the fire damaged 67 Whitaker Way facility, despite knowledge of Mr Norman contractual obligations to preserve, or restore said structure, rather than allowing its full demolition.

904. The defendants collective, maximum pressure efforts to pressure and coarse the new owner, Jeff Norman, into allowing the full demolition of the fire damaged 67 Whitaker Way three story building/facility, knew of the incoming lawsuit/contest of its demolition decisions by the plaintiff.

905. The defendants of City of Hazard knew of the plaintiffs security interest in said 67 Whitaker Way building.

906. The Public Protection Cabinet as well as the City of Hazard had full knowledge of their duties to preserve records over alleged property of 67 Whitaker Way building as well as 426 building respectively, during the events as aforementioned.

907. The Public Protection Cabinet well as the City of Hazard knew of its potential spoliation of evidence by said destruction of 67 Whitaker Way building, yet allowed such demolition to proceed regardless of said spoliation, with extreme indifference of the defendants duties to protect and preserve evidence as government entities.

908. The City of Hazard intentionally allowed the full demolition of the 67 Whitaker Way apartment building consistent with it's well known original goals to destroy the plaintiffs buildings.

909. On the date of said conference call, Denise Davidson was quick to declare/admit "the building isn't condemned" with regard to the 67 Whitaker Way building in question.

910. In the deeply intertwined state level case of *Carter Realty vs FOA 22-CI-00166,* defendant Denise Davidson produced memorandum denying any involvement with the Public Protection Cabinet also known as *Office of the State Fire Marshal vs Brian Carter 15-CI-00259* case outside of the aforementioned administrative hearing regarding the said parties goals to accomplish unauthorized demolition of the plaintiffs former 67 Whitaker Way building/facility.

911. Despite Denise Davidson's denials with prior involvement of the Public Protection Cabinet in her other cases with courtroom video footage revealing otherwise, Davidson knowingly

made material false statement into court record, on or about April 8ᵗʰ 2025.

912. Betsy Clemons is part of the InVision Group alongside Les Roll, son of defendants Gerry Roll and Daniel Roll.

913. InVision Hazard is an alias or an also known as inter-related alias operating under the umbrella of Foundation of Appalachian Kentucky (FOA).

914. Betsy Clemons shares is on the "Hazard Chamber of Commerce" which consists of Housing Development Alliance (HDA) as one of the Chamber of Commerce's leading representatives.

915. Betsy Clemons is also known as "secretary" representative of the Economic Development Alliance, (EDA).

916. Betsy Clemons has an "office" in the former 486 office building formerly owned by Paul Collins, whom of which officially "sold" said building to "The City of Hazard" December 30ᵗʰ 2021.

917. Paul Collins is well known to continue with his personal business usages of his former "sold to the City" office building located at 486 Main Street, Hazard KY.

918. The City of Hazard building located at 486 main street, purchased from Paul Collins is well known to house two other businesses that "sublet" from "the City" named "Ready Set Play" toy store and "Hazard Coffee Shop," "city employees," and "various organizations operating there."

919. The two aforementioned businesses that operate in the former law office building of Paul Collins, now owned by "The City of Hazard," are also known to be involved with "various non profits" such as the Foundation of Appalachian Kentucky (FOA), Drinkard Development, and others.

920. Various "non profits" are also widely known to be involved with various "for show only" businesses, as *admitted* in an LEX 18 news article, or similar articles, by Bailey Richards of the City of Hazard, as its named "city coordinator."

921. Betsy Clemons is well known for her personal disdain of Brian Carter as a commercial property owner/developer on main street.

922. Betsy Clemons is well known at Hazard City Hall for "wanting Brian Carter's white apartment building gone."

923. As Betsy Clemons is known for voicing her personal desires of "wanting Brian Carter's white apartment building gone," Clemons would express such desires on a very frequent, near daily basis at the Hazard City Hall building located at 700 Main Street, Hazard KY.

104

924. Les Roll, son of Gerry Roll and Daniel Roll, shares a board of directors position with Bailey Richards of "Mountain Association" in Hazard.

925. "Mountain Association" is well known to be affiliated with the Foundation of Appalachian Kentucky, (FOA).

926. Foundation of Appalachia Kentucky (FOA) is known to operate under many other alias's such as "InVision Hazard, MACID, Run for the Hills Charity Challenge," and many other such entities.

927. Bailey Richards is well known to have represented, or formerly represented, Foundation of Appalachian Kentucky (FOA), either directly or indirectly, through the entity itself, or one of its alternate alias's, such as "Mountain Association."

928. Bailey Richards has, or has been "hired by the City of Hazard" as "downtown coordinator."

929. Local radio stations such as WSGS, WYMT, as well as Peoples Bank are widely known for promoting "various non profit organizations" within the City of Hazard.

930. NPR radio is known for promoting Governor Andy Beshear, Housing Development Alliance (HDA) "to build new safe homes for flood families" as per their marketing campaign on behalf of said entity, as well as related entities.

931. Chamber of Commerce is well known for "partnering with the City of Hazard."

932. Betsy Clemons, Donald Mobelini, Paul Collins are known for their affiliations with promoting Drinkard Development, Steve Campbell of Balis Campbell construction, EDA, as well as other said entities.

933. Betsy Clemons, Gerry Roll, Scott McReynolds, Donald Mobelini, Paul Collins, as well as their representative entities of Foundation of Appalachian Kentucky, (FOA), Economic Development Alliance (EDA), Housing Development Alliance (HDA), stood to benefit from the destruction of the plaintiffs approximately fifty (50) unit apartment complex, the plaintiffs seven (7) business shopping center downtown, by shifting the burden of commercial as well as housing dependency in the community of Hazard Ky to their own respective entities/business interests.

934. Paul Collins is known to operate or represent several entities located at his former law office building located at 486 Main Street, known to further his interests with Drinkard Development.

935. Bailey Richards is known for her role in "increasing property taxes for blighted

105

properties" as a mechanism to punish its citizens as a direct result of the City of Hazard's own actions.

936. On the day of the June 6th 2023 fire, Les Roll, son of Gerry Roll, would direct the former tenants of the plaintiff on site to their "Appalachian Arts Alliance building located at 612 Main Street in Hazard KY during the burning of the plaintiffs former 67 Whitaker Way building.

937. The said Appalachian Arts Alliance building is known to be operated, or at least initiated by Gerry Roll, same representative of Foundation of Appalachian Kentucky, (FOA), as well as known representative of Housing Development Alliance (HDA), respectively.

938. During the said 67 Whitaker Way building fire of 2023, the adjacently located 426 building tenants were also vacated from that building as well, citing "concerns" that said building may "catch fire" from the adjacently located 67 Whitaker Way building fire.

939. The exterior of said 426 building is clay brick in construction, a material generally well known to be highly resistant to fire.

940. The said exterior of said 426 building was known to be located approximately twenty (20ft) away or more from the former 67 Whitaker building in Hazard KY.

941. The Foundation of Appalachian Kentucky (FOA) is known to have bragged in WYMT news publication about how "boldly and bravely the fire department back the fire" of the said 67 Whitaker Way building the said evening of June 9th 2023.

942. The Appalachian Arts Alliance is known to have Bailey Richards boasting or bragging in news publications about "how great the fire department was to wash down our building for us."

943. The City of Hazard is known to give preferential treatment of FOA by scrapping their parking lots, as well as diverting city worker/employee assets to assist with various errands within their building located at 420 Main Street Hazard KY for the benefit of said "organization."

944. On the night of said June 9th 2023 fire, after said 426 buildings former tenants were "directed" by Les Roll to their Appalachian Arts Alliance building, where Les Roll is known to have "spoken at length" or initiated "conversations of concern" with former 426 buildings 2023 residential tenants about "unauthorized occupancy" of said 426 building.

945. After speaking at length with said 2023 former residential tenants of 426 building, Appalachian Arts Alliance is well known to have initiated a series of negative news coverage campaigns with WYMT news, in coordination with the Public Protection Cabinet and the City of

106

Hazard, collectively, to cast the plaintiff in a negative/unfavorable light with the general public.

946. The defendants of Foundation of Appalachian Kentucky, FOA, City of Hazard, WYMT, and Public Protection Cabinet collectively knew that their defamatory campaign of promoting negative news coverage would discourage future advantageous business relations with the plaintiffs prospective tenants/occupants of said 426 building.

947. Kenneth Browning, defendant as well as primary antagonist with the Public Protection Cabinet, obtained a criminal complaint alleging "wanton endangerment" under the allegation(s) of "renting out apartments he (the plaintiff) knew were deemed unsafe."

948. Derek Campbell, agreed to prosecute the case of wanton endangerment against the plaintiff, based primarily on the defamatory rhetoric previously promoted by Kenneth Browning.

949. Derek Campbell, Commonwealth Attorney, (state prosecutor) is known to carry heavy favoritism with Donald Mobelini, the City of Hazard mayor.

950. "The City of Hazard" is well known to have personally desired "wanting to blame Brian Carter" for the 2023 fire loss of the 67 Whitaker Way apartment building.

951. Derek Campbell is known to have also promoted a "City of Hazard" 2023 criminal complaint against the plaintiff for "violation of a city trash ordinance" in order to strengthen the odds of obtaining a criminal conviction of the aforementioned case of "wanton endangerment" against the plaintiff in *Commonwealth vs Brian Carter 23-M-0381*.

952. WYMT, despite obtaining information otherwise, or should have known otherwise, would willfully promote the plaintiff as "Hazard landlord hit with multiple charges" in order to cast the plaintiff in as much of a negative, unfavorable light with the general public as possible.

953. In the said criminal complaint of *Commonwealth vs Brian Carter 23-M-0381* Kenneth Browning is observed as attempting to "pass the buck" of accountability regarding his past allegations against the plaintiff by asking the said commonwealth office "is that what you want me to say?"

954. While seeking said 2023 criminal complaint, Kenneth Browning, among his previous efforts, attempted to cast doubt of his own "uncertainty" regarding his previous allegations against the said 426 building, in an effort to "pass the buck" of accountability.

955. Kenneth Browning knew, or should have known his prior statements were false, yet sought said criminal complaint against the plaintiff with reckless disregard of his dutiful obligations to

107

obtain or convey accurate information in order to cause extreme harm or other damage the plaintiff.

956. Derek Campbell, upon observing that the Public Protection Cabinet, also known as Office of the State Fire Marshal, declined its prior 2015 opportunity to prosecute the plaintiff by rule 77 dismissal in *State Fire Marshal vs Brian Carter 15-CI-00259*, Campbell agreed to dismiss his previous criminal complaint against the plaintiff "provided Brian Carter doesn't *benefit* from multi-family housing" exhibit 8.

957. The aforementioned "desire" from Derek Campbell is consistent with Paul Collins personal desires of "not wanting Brian Carter to benefit" in favor of promoting his own "well capitalized non profit" endeavors.

958. The defendants of FOA as well as the City of Hazard, specifically Gerry Roll of FOA/HDA and Donald Mobelini of City of Hazard, have expressed a well known "coveting" desire of the plaintiffs former properties, subject to said suit.

959. Betsy Clemons is well known for "wanting that white apartment building gone" referring to the former 67 Whitaker Way apartment building, in order to enhance the profitability of her Housing Development Alliance (HDA) business by shifting community dependency housing to her own housing development/economic development business interests.

960. At least three (3) former tenants of the 426 main and 67 Whitaker Way buildings have been moved to subsidized housing on Gorman Hollow, and Gorman apartments in Lothair Kentucky.

961. The defendants, in particular Foundation of Appalachian Kentucky as well as the City of Hazard are known to enforce a policy or practice of "if we can't have Brian Carter's properties at a price we want to pay he won't benefit from them either."

962. The defendants of City of Hazard are well known to coax or "apply pressure" to the new 67 Whitaker Way property Jeff Norman, to have the former said building destroyed by its new owner, in order to satisfy their own "interests" via Betsy Clemons of the Chamber of Commerce.

963. The defendants of the Public Protection Cabinet with their co-conspirators of the City of Hazard continue as of the filing of this suit, to assert that they have lawful authority to destroy property of their own volition, by way of "administrative hearing" with the Public Protection Cabinet.

964. The Defendants of the City of Hazard knew or should have known that the destruction of the 67 Whitaker Way building would case a flagrant destruction of physical evidence of their crimes

against said property.

## Causes of Action

### Count I
### Retaliation Against Exercise of Free Speech
(Prohibition Against Retaliation and Coercion 42 U.S.C § 12203), (Violation of First Amendment), (42 U.S.C § 3617 Interference, coercion, or intimidation), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Deprivation of Rights by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Retaliatory Harassment KRS 525.070), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

965. 42 U.S Codes § 1983-1985 allows an individual to bring an action against a state official of who, under the color of any statue, ordinance, regulation, custom, or usage, subjects or causes to be subjected any citizen of the United States to the deprivation of any rights secured by the constitution of laws, and conspires to do so, shall be liable to the injured party.

966. 42 U.S Code § 3617 outlines that it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, any right granted or protected by said section 3603, 3604, 3605, or 3606 of said title.

967. The plaintiff is protected under the fair housing act against discriminatory practices of the defendants of Public Protection Cabinet, City of Hazard, and their proxy "non profit" representatives of FOA, HDA, EDA, and all others affiliated pursuant to 42 U.S Code § 3617.

968. The First Amendment protects the right to be free from government abridgment of speech.

969. Retaliation of the exercise of the First Amendment rights is a black letter constitutional violation, thereby, any act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for any different reason, would have been proper.

970. Pursuant to U.S. Code § 12203(a) no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful, further, § 12203(c) cites remedies and procedures available subject to § 12188(b)(1).

971. As the Defendants of Public Protection Cabinet and the City of Hazard have acted as co-conspirator proxies on behalf of the defendants of FOA, HDA, EDA, the defendants collectively exploited the plaintiffs previous lack of legal intelligence as a disability prior to March 18th of 2024, in order to achieve their collective efforts of destroying the plaintiffs property by felonious behavior, U.S Code § 12203(a) also therefore applies as a mechanism of further relief for the plaintiff.

109

972. The RICO statute, 18 U.S. Code § 1961 allows for a private individual "damaged in his business or property" by racketeering organization or enterprise, to bring civil suit for damages against the racketeer.

973. 42 U.S Code § 1983 states that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

974. As the defendants of the City of Hazard, Public Protection Cabinet, operate by the direction or the influence of their proxy representatives of Foundation of Appalachian Kentucky (FOA), Housing Development Alliance (HDA), and Economic Development Alliance (EDA).

975. Defendant Tony Eversole is known as the "City of Hazard Manager" as his official title of the said municipality.

976. The defendants of the City of Hazard have a well established policy or practice of *retaliating* against its citizens for attempts at addressing public grievances or other political demands to its official representatives, as firmly established, or at minimum, alleged, in cases such as *Steven Vires vs City of Hazard 20-CI-00245 Lauren Jacobs vs City of Hazard 23-CI-0173, JB Eversole vs City of Hazard 230 S.W 2d 921 1950 Dallas Campbell vs City of Hazard DBA Hazard Police Department, Donald Mobelini, Darren Williams 24-CI-0034, Jessica Cornett vs City of Hazard, Darren Williams, Tony Eversole, 24-CI-00154, Bill Gavin Fugate, Martha Sizemore vs City of Hazard 6:2025 CV 00055, Brian Carter vs City of Hazard 16-CI-00020,* and others.

977. The City of Hazard has a well established policy or practice of retaliating against the grievances of its citizens by seeking to either punish, physically destroy, harass or annoy, without permission, the privately owned property "of people the city just doesn't like."

978. The City of Hazard is known to have a deeply intertwined relationship with Gerry Roll of Foundation of Appalachian Kentucky (FOA), who is known to have expressed a coveting desire of the plaintiffs properties, specifically the 426 Main building, one of three (3) facilities subject to this action.

979. Beginning in mid June of 2012, Defendants Kenneth Browning and his colleague Alan Walters, representatives of the Public Protection Cabinet, also Known as the Office of the State Fire

110

Marshal, began by making material false statements regarding the conditions of the plaintiffs 426 building, otherwise known to the general public as "Treehouse Cafe" or "Skybox Sports Bar" building.

980.  Defendants Kenneth Browning and his colleague Alan Walters, representatives of the Public Protection Cabinet, also known as Office of the State Fire Marshal, knew, or should have known, their statements were false, yet continued to submit several libel statements on their official reports with the goal of "shutting down Brian Carter," whilst, "ensuring that he doesn't benefit," as the 426 buildings previous owner.

981.  Defendants Mike Haney, Kenneth Browning, and Alan Walters of the Public Protection Cabinet retaliated against the speech of their own expert in building construction, State Building Inspector Steven Hammock, by openly disregarding his recommendations that the plaintiffs former 426 building/facility remain open, whist continuing with their own slanderous narratives in their personal desires to have the 426 building vacated, in order to seek personal damage upon the plaintiff.

982.  Defendant Kenneth Browning of the Public Protection Cabinet retaliated against the plaintiffs free speech of providing rebuttals of Browning's libel statements to his supervisor, defendant Mike Haney, by engaging in an approximately two and a half year long campaign of "inspector shopping" with regard to strengthening Browning's personal goals to "have Brian Carter shut down."

983.  Defendant Kenneth Browning of the Public Protection Cabinet, in direct retaliation against the plaintiff for declaring Browning to be libel with Browning's reports, eventually recruited former state electrical inspector Ronald Hacker, in furtherance of Browning's personal goals to "shut down Brian Carter" a short time before June 18th 2015.

984.  Defendant, former electrical inspector Ronald Hacker, conformed with defendant Kenneth Browning's objectives of retaliation by citing 2014 electrical code standards in intentional effort to misrepresent material facts regarding electrical safety of the plaintiffs former 426 building/facility.

985.  The defendants of the Public Protection Cabinet Kenneth Browning and Alan Walters retaliated against the plaintiffs rebuttal submissions of evidence, outlined material misrepresentation of facts by Browning, Walters, and Hacker to Browning's supervisor, defendant Mike Haney, by thereafter responding to said submissions as "daring to question the honor and integrity of his office."

986.  Defendant Mike Haney obsessively sought punishment against the plaintiffs rebuttals by seeking, and finally obtaining, injunctive action in state circuit court to vacate or deprive all manner of

enjoyment, benefit and usage of the plaintiffs former 426 Treehouse Cafe Building June 18th 2015.

987. The Defendants of the Public Protection Cabinet retaliated against the plaintiffs challenge to have his building vacated under its false pretenses by seeking an injunction order from Perry Circuit Court by way of its legal counsel at the time, Peter Ervin.

988. Defendant Peter Ervin, legal counsel of the Public Protection Cabinet, retaliated against the plaintiffs evidence regarding the safe conditions of his former 426 building/facility at the subsequent June 18th 2015 injunction hearing by making a fraudulent misrepresentation or concealment of material fact in order to serve the objectives of Mike Haney and Kenneth Browning.

989. The said conjectural line of questioning from Peter Ervin was regarding an instruction from said Cabinet, of a "failure to update the fire separation" of the plaintiffs former 426 building/facility, to achieve his objective to have the plaintiffs building vacated by circuit court order *State Fire Marshal vs Brian Carter 15-CI-00259,* on or about June 18th 2015.

990. Defendant Peter Ervin, legal counsel of the Public Protection Cabinet, retaliated against the plaintiffs good faith efforts to improve his former 426 building/facility by giving his own testimony outside of qualifications as a lay witness, without firsthand observance of fact, in order to close the plaintiffs building by injunctive state circuit court order on our about June 18th 2015.

991. Defendant Peter Ervin, legal counsel of the Public Protection Cabinet, retaliated against the plaintiffs noticed efforts to honorably improve his former 426 building/facility by giving Ervin's own testimony outside of any qualifications as an expert in building construction.

992. Defendant Peter Ervin, legal counsel of the Public Protection Cabinet, retaliated against the plaintiffs speech of good faith efforts to improve his former 426 building/facility by giving Ervin's own testimony outside of any firsthand knowledge of the plaintiffs intent or motivations.

993. At some point in 2013 or 2014, the defendants of the City of Hazard Police Department retaliated against the plaintiffs free speech when the plaintiff called Hazard Police department to report a complaint of an alleged "assault" against one of his former residential tenants of the 426 building.

994. The said complaint to said City of Hazard police agency quickly resulted in a retaliation by City of Hazard Police Department in which resulted in the plaintiffs own arrest by said City of Hazard Police Department, quickly claiming that the plaintiff was "falsely reporting an incident" in *Commonwealth v Brian Carter 13-M-00866.*

112

995. The said 2013 arrest of the plaintiff of which the matter was eventually dismissed on June 24th 2014, due to an allegation/belief that the "witness had fled the state" and "could not be located."

996. On the day of August 31st 2015, the defendants of the City of Hazard Police department retaliated against the plaintiffs complaint of trespassers/burglars occupying a vacant apartment unit #31 in the plaintiffs former 446 Grand Hotel building/Mall building, on the second floor of the building, by defending said burglars/trespassers, claiming "criminals have squatters rights," thus allowing said burglars to remain on the property, without defense from said convergence of the plaintiffs former 446 Grand Hotel building.

997. Shortly within 24 hours of said trespassers being allowed to squat within a previously vacant apartment unit, a fire is known to have emanated from said apartment unit where said trespassers were allowed to squat in said apartment unit.

998. The fire Thereafter resulting in a fire being set within same said unit within 24 hours of said complaint, on the morning of September 1st 2015, resulting in the facilities total loss.

999. In a coordinated effort of retaliation against the plaintiffs free speech of "annoying the police" by an otherwise exceptionally well equipped fire department, to "let every square inch burn."

1000. Defendants Donald Mobelini. Denise Davidson, and Gerry Roll, retaliated against the plaintiffs decline of consensual sale of the plaintiffs former commercial properties, buildings, and all adjoining parking lots located from 446 main street to 426 main street, by thereafter engaging in a highly coordinated, conspiratorial pact with the Public Protection Cabinet to physically destroy, exploit, extort, and deprive the plaintiff of all manner of rights, usage, enjoyment or "benefit" of said properties under the color of lawful authority of the City of Hazard and Public Protection Cabinet government entities, commencing September 1st 2015 until the sale under forced duress of property October 2023.

1001. Commencing in May 4th 2022, defendant Gerry Roll, named executive director of the defendants of Foundation of Appalachian Kentucky (FOA), retaliated against the plaintiffs free speech right to decline Gerry Rolls advancements of purchase of the plaintiffs 426 building/facility by conspiring with defendant Tony Eversole of the City of Hazard, in the first of several wall constructions in an attempt to cause extreme deprivation of safe and meaningful egress/ingress to the plaintiffs only remaining 67 Whitaker Way and rear entrances of his 426 buildings/facilities.

1002. The act of various barriers/barricades to property also initiated state circuit suit with the

113

defendants of FOA on or about said date of May 4th 2022, *Carter Realty vs FOA 22-CI-00166.*

1003.  In the subsequent months after March 18th 2024 at which the state circuit judge Alison Wells was later discovered by the plaintiff to be a sitting board member alongside the defendants of Gerry Roll, and Denise Davidson, also as board members of the defendants of Foundation of Appalachian Kentucky (FOA),, the party subject to the state suit *Carter Realty vs FOA 22-CI-00166.*

1004.  On June 6th 2023, the Defendants of the City of Hazard's Tony Eversole, in conjunction with its well known, firmly established policies of retaliation against rights of its citizens, retaliated against the plaintiff, most especially his former residential tenants complaints of the various new concrete barriers, metal walls and other fencing/barrier based construction around approximately ninety percent (90%) of all the plaintiffs only remaining apartment complex formerly located at 67 Whitaker Way, Hazard KY.

1005.  Shortly thereafter receiving said complaints from the former tenants of said 67 Whitaker Way building, defendants of the City of Hazard's elected contractor, defendant Steve Campbell, retaliated against the tenants complaints of restricted access with Tony Eversole, by then restricting or blocking all manners of safe access/escape, in all forms of meaningful usage, benefit, enjoyment of property, by installing additional fencing barriers thereafter blocking one hundred percent (100%) of all remaining forms of safe egress/ingress in direct response to the tenant complaints.

1006.  The Defendants of the City of Hazard's Tony Eversole, titled as "city manager," in a perfectly timed, heavily coordinated series of efforts, continued to fully entrap the tenants in an attempt to burn said residential tenants alive in their homes, whist conspiring in a highly combined series of coordinated efforts with the defendants of Gerry Roll of Foundation of Appalachian Kentucky (FOA), Payton Morton, an individual, and Steve Campbell of Balis Campbell Construction, in furtherance of the organized criminal conspiracy to physically destroy property, as well as deprive all manner of enjoyment or benefit of property from May 4th 2022 until the date of arson June 9th 2023.

1007.  On or about July 10th 2017 Hazard City Police department Jessica Cornett retaliated against the plaintiffs appeal request contesting a $50 fine regarding a trash spillover of the plaintiffs former 67 Whitaker way building/facilities trash dumpster, by then pursuing and obtaining a criminal complaint against the plaintiff at the Perry County Attorney's office.

1008.  Rumpke and the City of Hazard was well known around the time of July 10th 2017 to be

114

directly responsible for dumpster pickup and removal of trash from the properties previously owned of the plaintiff with the plaintiff factually exerting little to no control of how or when trash services were or would be physically picked up by said service.

1009. As timely payments for trash services to the City of Hazard and Rumpke was not an issue on or around the time frame of July 10th 2017, therefore the subsequent "citation ticket" and "criminal complaint" of trash removal issued to the plaintiff from Hazard Police Department officer Jessica Cornet was issued as part of a city policy to bully, harass, and intentionally cause emotional distress upon its citizens, rather than resolve genuine issue or crime of material fact.

1010. The aforementioned criminal complaint regarding the alleged dumpster spillover was rekindled on or about 11-10-23, after WYMT promoted "Hazard landlord hit with multiple charges" citing "wanton endangerment" for again re-leasing the 426 building apartments after the 2015 dismissal of State Fire Marshal (Public Protection Cabinet) vs Brian Carter case, and the dumpster spillover complaint as the "multiple charges" in its attempt to cast the plaintiff in a negative unfavorable light with the general public.

1011. On or about September 2021 defendant Tony Eversole retaliated against the plaintiffs request for assistance with determining if a storm drain was connected to sewer service by calling in a complaint to the Public Protection Cabinet "division of sewer" to report the plaintiff as "performing sewer work without a permit" during the install of the plaintiffs 426 building fire sprinkler system.

1012. As any would be issues with sewage could have been easily remedied by consulting on site with the plaintiff directly, the said complaint to Public Protection Cabinet served no other purpose but to annoy, harass, or "cause trouble" for the plaintiff as in #1004(supra).

1013. The defendants of FOA, specifically defendants Gerry Roll, Daniel Roll, Paul Collins, Denise Davidson, and Tony Eversole, as direct retaliation against the plaintiffs objections to the defendants collective personal desires to destroy and deprive any and all manner of usage, enjoyment or "benefit" of said properties, launched and coordinated a highly collaborative efforts to call in various "complaints" to various state agencies, such as the Division of Air Quality, (DAQ), OSHA, and Public Protection Cabinet, to ultimately serve no other purpose but to annoy, bully and harass, in direct retaliation against the plaintiff for the defendants own "coveting" desires of the plaintiffs properties.

1014. On or about the defendants of the Public Protection Cabinet retaliated against the speech

115

of its own open records request officer, Zachary Hale, shortly after Hale provided the plaintiff with exculpatory information that proved the Public Protection Cabinet was applying a profoundly unequal standard against the plaintiffs former 426 Treehouse Cafe building, specifically regarding permitting requirements, as to opposed to the defendants of FOA's 420 Main Street building, when they had commenced construction and completion of their own apartments in the upper floors of said 420 building/facility next door.

1015. As a DIRECT RESULT of the collective, collaborative actions of retaliation against the plaintiffs exercise of free speech, in furtherance of the defendants overall goals of said conspiracy to deprive rights, and by organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of enjoyment of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in

116

the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii).   Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance compensation,

ix).   Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x).   Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi).   Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii).   Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii).   Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).   Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv).   Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with

117

the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi).  Incurred approximately $808,627.00 conservatively estimated in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii).  As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes, the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

18).  Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property,  as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

### Count II
### Conspiracy
(Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Conspiracy to Deprive Rights Under Color of Lawful Authority 18 U.S. Code § 241, 242), (Deprivation of Rights by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

1016.  42 U.S Code § 1983 allows an individual to bring an action against a state official of who, under the color of any statue, ordinance, regulation, custom, or usage, subjects or causes to be subjected any citizen of the United States to the deprivation of any rights secured by the constitution of laws, shall be liable to the injured party.

1017.  18 U.S. Code § 242 is a crime that prohibits a governing official of either federal or state jurisdiction, while acting under the color of lawful authority, from asserting jurisdictional powers he or she does not legally have, for the purposes of depriving rights of citizens of the United States.

118

1018.  42 U.S Code § 1985 states that, if two or more persons conspire to prevent, by force, intimidation or threat, any person for the purpose of depriving, either directly or indirectly any person or class of persons of equal protection of the laws, or if two or more persons conspire to prevent by force, intimidation or threat to injure any citizen in person or property or cause to be injured may have an action for the recovery of damages by such injury or deprivation, against any one or more conspirators, further, 18 U.S. Code § 241 outlines conspiracy crimes involving two or more persons.

1019.  42 U.S. Code § 1983 states that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1020.  On or about June 18th 2015 in the first of several perfectly timed, highly coordinated efforts by the defendants of the Public Protection Cabinet, in conjunction with the defendants of the City of Hazard, sought and obtained an injunction in Perry County Circuit Court to "vacate" the residential use portions of the plaintiffs formerly owned 426 Treehouse Cafe building.

1021.  The defendants of the Public Protection Cabinet legal representative Peter Irvin sought said injunction against the plaintiffs 426 building/facility based on material false/misleading statements made by Public Protection Cabinet representatives/defendants Kenneth Browning, Alan Walters, and Ronald Hacker, on their official documentation submissions to said Cabinet.

1022.  The said defendant Kenneth Browning, conspired with his colleague Alan Walters to commit fraud in the inducement with libelous intent in order to deprive all manner of beneficial usage of the plaintiffs former 426 building on Main Street Hazard KY.

1023.  The defendants of the Public Protection Cabinet senior assistant state representative Mike Haney pressed diligently for the said injunction against the plaintiffs 426 building/facility alongside the efforts of his "well favored" subordinate Kenneth Browning, for the plaintiff "daring to question the honor and integrity of his (Haney's) office."

1024.  At the June 18th 2015 injunction hearing, the defendants of the Public Protection Cabinet legal representative Peter Irvin could not establish a factual, evidentiary, or expert founded basis that supported the plaintiffs former 426 building/facility as "especially susceptible to fire loss," an

119

"imminent threat risk to human life and limb," or "entry may result in death or serious injury," among other negatively charged rhetoric, previously promoted by the defendant representatives of the Public Protection Cabinet, as aforementioned.

1025. Upon observance of said failure to establish said factual, evidentiary basis to support the defamatory narratives in the state circuit, the defendants of the Public Protection Cabinet legal representative Peter Irvin then resorted to utilizing an omission of material fact line of questioning, via a tactic of willfully conjectural line of questioning regarding a previous direction/instruction from said Cabinet regarding a "direction to update the 426 Main buildings fire separation."

1026. At the said The defendants of the Public Protection Cabinet legal representative Peter Irvin questioned the plaintiff, "Mr Carter, you didn't update the fire separation when you were told to do so, is that correct?"

1027. The plaintiff admitted at the 2015 injunction hearing that he did not comply with such a direction to "update the fire separation as instructed."

1028. The defendants of the Public Protection Cabinet legal representative Peter Irvin, would not disclose that said requirement/instruction was based on a material false statement from Kenneth Browning claiming that "the (426) building had no fire separation."

1029. The defendants of the Public Protection Cabinet legal representative Peter Irvin sought and obtained the 2015 injunction against the plaintiffs residential use areas of his former 426 building/facility based on the conjectural line of questioning of the 426 buildings fire separation.

1030. The plaintiffs failure to comply with said direction to update the 426 buildings separation alone was not evidence that the buildings conditions constituted an "eminent threat to human life and limb" among other such negatively charged rhetoric.

1031. Peter Irvin knew or should have known of his duty as faithful honorable public servant to know or should have known to disclose the full context as to the relevance regarding said decline of updating the 426 buildings fire separation in 2015.

1032. The defendants of the Public Protection Cabinet legal representative Peter Irvin's methods of obtaining said injunction by concealment of material fact in order to vacate the plaintiffs former 426 building/facility constitutes an intentional abuse of state circuit court process.

1033. The defendants of the Public Protection Cabinet legal representative Peter Irvin methods

120

of obtaining said injunction to vacate the plaintiffs former 426 building/facility demonstrates a willful or intentional failure of his fiduciary duty to ensure righteous/amicable application of discretion under his authority as government representative.

1034. The defendants of the Public Protection Cabinet legal representative Peter Irvin knew or should have known that said "failure to provide an update to the 426 buildings fire separation" was based on material false statement and breach of his fiduciary duties to ensure fair, equal application of justice as a representative of the government.

1035. From June 18th 2015 to date of this filing, the Public Protection Cabinet, the City of Hazard have consistently failed to establish the 426 building/facility as "especially susceptible to fire loss," an "imminent threat risk to human life and limb," and "entry may result in death or serious injury," among other negatively charged rhetoric, promoted by the defendant representatives of the Public Protection Cabinet, as aforementioned (supra).

1036. The State Circuit Court Judge Alison Wells, of whom granted the 2015 injunction to vacate the plaintiffs former 426 building's residential use areas, in case of *State Fire Marshal vs Brian Carter 15-CI-00259* was later discovered to be on the defendants of Foundation of Appalachian Kentucky (FOA)'s board of directors, citing heavily conflicts that were not previously disclosed, exhibit 49, respectively.

1037. Immediately after the State Circuit Court Judge, colleague board of directors member Alison Wells had issued her June 18th 2015 ruling ordering the plaintiffs residential units to be vacated, the defendants of the City of Hazard followed conspired with the Public Protection Cabinet in a perfectly timed, coordinated effort to shut off all water and gas utility service to the 426 buildings restaurant, the Treehouse Cafe and bakery on the same day.

1038. After the City of Hazard followed suit in a perfectly timed, coordinated effort to shut off all water and gas utility service to the 426 buildings restaurant, the Treehouse Cafe and bakery, the cafe's owner, Jennifer Noble, headlined a news article "Treehouse Cafe will not reopen" citing "the water was shut off after some upstairs apartments were condemned."

1039. Immediately after public notice was given that "Treehouse Cafe would not reopen" the Public Protection Cabinet representative Kenneth Browning conspired in response yet again to the City of Hazard's shut off of water and gas utilities to the plaintiffs restaurant serving portions of the 426

121

building, by then placing "vacate" notices on the restaurant/lobby serving portions of the 426 building on or about June 18th 2015, the date of the order to vacate from state circuit court judge Alison Wells.

1040.  The said order to vacate the 426 building decision from Perry Circuit judge Alison Wells did not include the restaurant serving portions of said 426 building/facility in 2015.

1041.  When the plaintiff questioned the Public Protection Cabinet via email, the Cabinets attorneys responded "while the order from the injunction applies to only the residential use areas, the separate order issued from our building and codes enforcement applies to the whole building."

1042.  The City of Hazard is a small community, known for "word to travel fast."

1043.  The perfectly timed, coordinated efforts between the Public Protection Cabinet with the City of Hazard knew that the plaintiff would loosely be cast in a negative, unfavorable light with the general public, by promoting or creating generalized public disinterest/discouragement in conducting any future business endeavors with the plaintiff or his former 426 building/facility as a direct result of said "altercations" with the aforementioned in June of 2015.

1044.  The defendants perfectly timed and coordinated 2015 efforts of the Public Protection Cabinet with the City of Hazard with regard to the 426 Treehouse Cafe building/facility knew or should have known its actions had the potential to cause permanent irreparable harm as a direct result.

1045.  The defendants of the Public Protection Cabinet specifically declared "Brian Carter (specifically) is never going to be back in compliance" expressing a willfully damaging demeanor revealing the said cabinets personal hatred and disdain of "Brian Carter personally benefiting."

1046.  From the date of the June 18th 2015 until the date of its forced liquidation on or about August 7th 2023, the defendants of the Public Protection Cabinet and the City of Hazard would never again not allow the plaintiff any shape, form, or fashion of relief to perform any sort of "remedy or compliance" work to allow any official usage, enjoyment or "benefit" of his former 426 building.

1047.  The August 7th 2023 act involving the plaintiffs forced liquidation of his formerly owned 426 building asset was due as a direct result of the destructive actions of the City of Hazard, specifically Steve Campbell, by constructing a large fourteen (14) foot tall concrete wall whist leaving a large gap in order to concentrate or direct rain/flood waters directly into the 426 buildings previously repaired foundation, creating a highly distressing situation for the plaintiff.

1048.  Defendant Steve Campbell conspired with the City of Hazard to construct said wall whist

leaving said conditions outlined in allegation #1047 were left unabated for approximately two (2) calendar months until the date of its forced liquidation on or about August 7th 2023.

1049. During the defendants and the Public Protection Cabinet nor the City of Hazard would ever exercise any duties of said cabinet to perform "remedy or compliance work" of his former 426 building on its own volition, and simply bill the plaintiff for the cost as an alternative to "shutting down Brian Carter (plaintiff)" pursuant to KRS 227.390, KRS 99.360(1)(k), this was not done at any point during the period of June 18th 2015 until August 9th 2023 during the plaintiffs term of ownership.

1050. KRS 227.390 outlines a duty of the Public Protection Cabinet also known as the State Fire Marshal, to perform its own work to "remedy" any conditions it would find issue with and simply bill the plaintiff for said expense, this was not done.

1051. Rather than exercise any dutiful obligations to assist or to "render aid" to the plaintiff pursuant to KRS 227.390, the Public Protection Cabinet engaged in endless exhausting the plaintiffs personal resources on fabricated, "just for Brian Carter only plan submission requirements" in order to "demonstrate how compliance with their office is going to be achieved" shortly after June 18th 2025.

1052. The said June 18th 2015 direction of the Public Protection Cabinet, following the cabinets deprivation of all forms of benefit, enjoyment or usage as a direct result, regarding the plaintiffs former 426 building, ultimately served no other purpose but to exhaust the plaintiffs personal resources to no gain or benefit for the plaintiff or those that enjoyed it, under the guise of "protecting the public."

1053. The City of Hazard and the Public Protection Cabinets June 18th 2025 evasive methods to "pass the buck," to indefinitely, unjustly, tie the plaintiffs hands throughout the remainder of his ownership, over an approximately eight (8) year period of time, until its forced October 8th 2023 liquidation as a direct result of the co-conspirators actions of the City of Hazard and Steve Campbell's efforts to physically destroy the facility itself by barriers which redirected rain and flood waters directly into the previously repaired foundation of the said building.

1054. The combined, conspiratorial efforts of the Public Protection Cabinet, the City of Hazard, as well as their inter-related Foundation of Appalachian Kentucky (FOA)'s combined efforts are consistent with their goals to either obtain or destroy said 426 building.

1055. The defendants of FOA, City of Hazard, Donald Mobelini, Betsy Clemons have universally deemed "if we can't have Carter's (plaintiffs) buildings he won't benefit from them either"

123

as a matter of established "City policy."

1056. On August 31st 2015, City of Hazard Police department was contacted by the plaintiffs spouse regarding a burglary and trespass of the plaintiffs 446 Grand Hotel/Main Street Mall building/facility, residential unit on the second floor, at the rear of said building, apartment #31.

1057. On August 31st 2015, City of Hazard Police department refused to render aid in the situation, claiming "criminals have squatters rights." Verbatim.

1058. Claiming that "certain persons" or "criminals have squatters rights" is a common evasive tactic well known to be often employed by the City of Hazard Police department to allow it to avoid lawful duties to serve and protect the general public's interest.

1059. Over the course of a 24 hour period of time, in the very early hours of September 1st 2015, a fire is known to have broke out in the apartment where the stated burglars were alleged to have resided within the plaintiffs former 446 Grand Hotel building, on Main Street Hazard KY.

1060. The stated 2015 fire originated when the acting fire chief Sam Stacey, with a proven track record of expeditiously extinguishing fires, was conveniently "made unavailable" on the date of September 1st 2015 events.

1061. The stated September 1st 2015 Grand Hotel building fire loss was directly caused by the City of Hazard Police Department due to the conspiratorial pact between the City of Hazard Fire Department and the City of Hazard Police Department, due to the acts alleged in #1056 thru #1060.

1062. The City of Hazard fire department is otherwise well known to exist within one thousand feet (1,000ft) of the subject buildings and property of the 446 Grand Hotel property, the 426 Building property, as well as the 67 Whitaker Way property, respectively.

1063. On the morning of the September 1st 2015 fire, the City of Hazard Fire Department demonstrated extreme indifference to both the safety and preservation of life and property, by moving at a pace similar to that of sloths.

1064. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by demonstrating absolutely no sense of urgency whatsoever with regard to the plaintiffs 2015, 446 Grand Hotel building fire.

1065. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by slowly entering the origination of the 446 Grand Hotel

124

building apartment fire, apartment 31, 2nd floor, with a very small compliment of approximately three men, out of many more as was readily available standing by outside of said building.

1066. Despite having reportedly an overwhelming presence of fire officials during the initiating hours on the very early morning hours of September 1st 2015, it was visually observed by many of witness in attendance, that the said "army" of firemen were observed casually meandering around outside the structure, for several subsequent hours, essentially doing nothing, or next to nothing, while said 446 Grand Hotel structure grew throughout the building.

1067. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by openly refusing to spray any water within the said apartment at which the fire was established to have started, during the initiating hours of the 2015 fire of said Grand Hotel structure was set ablaze.

1068. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by refusing to visit the 3rd, 4th, or 5th floors of the 446 Grand Hotel building to verify if residents had safely evacuated the facility during the events of September 1st 2015.

1069. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by bragging or boasting to insurance adjuster Monica Isbel that "basically we just let it all burn" in a reportedly smug tone with regard to the former 446 Grand Hotel building fire of September 1st 2015.

1070. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by bragging or boasting to staff of LKLP "we let it all burn because the owner refused to cooperate with the fire marshal (Public Protection Cabinet)" with regard to the former 446 Grand Hotel building fire of September 1st 2015.

1071. The defendants of the City of Hazard fire department made such statements as alleged in #1069 thru #1070 in order publicly slander the plaintiff as "having no regard to fire safety."

1072. It is further understood with reference to the previous 426 building matters as alleged above in #1071, said matters pertaining to 426 did not factually pertain to his former 446 Grand Hotel building, with regard to the former 446 Grand Hotel building fire of September 1st 2015.

1073. The City of Hazard conspired with the Public Protection Cabinet to deprive the plaintiff of favorable public relations regarding the 446 Grand Hotel building as outlined by drawing a willful

125

misrepresentation of consistency in the previous June 2015 state actions against the 426 main building.

1074. The City of Hazard Fire Department, demonstrated extreme indifference to the safety and preservation of both life and property by bragging or boasting to staff of LKLP "we let it all burn due to meth heads and meth labs that were in the building" to again slander the plaintiff as openly promoting drug activity within the historic 446 Grand Hotel facility, formerly consisting of a seven (7) business shopping mall and nineteen (19) residential use apartments during the September 2015 events.

1075. The City of Hazard Fire Department, demonstrated extreme defamation, hypocrisy, or projection of villainy by promoting a "Raffle for a Makers Mark Fire Hat" at the City of Hazard Fire Department, publicly promoting the same alcoholism and/or drug addition it had just previously accused the plaintiff of promoting, in order to defame the plaintiff as outlined in #1074(supra).

1076. Following the 446 Grand Hotel building fire of September 1st 2015, the City of Hazard Fire Department, Pubic Protection Cabinet staff, were observed smirking back and forth to each other before sending email communications requesting that "the power company cut power off to the 67 Whitaker Way white apartment building" citing "that building now has code discrepancies that will need to be addressed before the building can be reoccupied" thereafter shutting down the 3rd and final 67 Whitaker facility previously owned by the plaintiff sometime around September 4th 2015.

1077. The City of Hazard with the Public Protection Cabinet conspired together in bad faith by shutting off power, usage, enjoyment and access to the adjacently located 67 Whitaker Way building, promoted by the said defamatory, slanderous, libelous rhetoric as outlined in allegations #1069 thru #1074(supra).

1078. Following the 2015 446 Grand Hotel building fire, the City of Hazard Fire Department, Pubic Protection Cabinet staff conspired together by "finding their way" into the vacated 426 Treehouse Cafe building demanding to know "why is power still on in Treehouse??" In order to deprive the plaintiff of enjoyment of property with intent to also deprive that facility of electric utilities.

1079. The City of Hazard and the Public Protection conspired together regarding said visit in #1077(supra) in order to harass or annoy the plaintiff, in order deprive, or continue to deprive the plaintiff of beneficial usage or enjoyment of the 426 main building.

1080. In January 2016, defendants Paul Collins, Daniel Roll and Gerry Roll conspired together to deprive the plaintiff rights to beneficial usage or care of the 446 Grand Hotel property by placing an

126

illicit lien for approximately double the amount that the City of Hazard could legally justify.

1081. The said lien was placed around the timeline of when the plaintiff declined Gerry Roll and Paul Collins advancements to purchase his neighboring 426 Main Street building at the time.

1082. As the plaintiff had previous September 2015 conflict regarding the matters over the 446 Grand Hotel building with Paul Collins and Daniel Roll, husband of Gerry Roll, the plaintiff was given no incentive to "blind trust" Daniel Roll regarding the clear alternative intent behind placement of said lien to 446 building.

1083. On or about January 10th 2020, defendants Denise Davidson and Donald Mobelini, representatives of the City of Hazard conspired together to exploit the plaintiffs personal resources in order to manipulate the plaintiff into making improvements to the 446 Grand Hotel building and vacant Newberrys lots, by hoaxes or trickery, to subvert a trial under promises to respect the plaintiffs rights.

1084. Upon attempts to make said improvements, #1083(supra), Tony Eversole of the City of Hazard conspired with the Division of Air Quality, in order to severely harass or annoy the plaintiff during his improvement efforts to said 434 Newberrys vacant building lot, by claiming "the plaintiff didn't properly dispose of asbestos debris" or other such rhetoric on or about March 13th 2020.

1085. Tony Eversole and the City of Hazard generally well knew that the plaintiff was already licensed and trained to properly handle asbestos debris, therefore, the said communication alleged in #1084 above served no other purpose but to harass, annoy, or cause emotional distress.

1086. Donald Mobelini, Tony Eversoles superior, would boast to defendants of WYMT news "about working together" with the plaintiff, "to improve the said property together" in order to "take credit" for the plaintiffs improvement efforts, as alleged in #1083(supra), on or about March 13th 2020.

1087. After the Plaintiff had completed his improvement efforts of said Newberrys lots, Denise Davidson and Donald Mobelini further conspired to deprive the plaintiff of beneficial enjoyment or usage of said 446 Grand Hotel building, by extorting the plaintiff with "eminent domain" threats or intimidation to force a sale of the plaintiffs newly improved Newberrys and 446 Grand Hotel lots "or lose everything" (the remaining 426 and 67 Whitaker Way building lots) by extreme coercion, ex 59.

1088. On or about May 4th 2022, defendants Payton Morton, Gerry Roll of FOA, and Tony Eversole of the City of Hazard conspired together to begin the construction of various barriers, walls, fencing, by building an approximately one hundred foot plus (100ft+) white metal wall all along the

127

property line of the FOA parking lot at 420 Main Street and 67 Whitaker Way concrete lot, which effectively causing heavy restriction to public ingress/egress to said buildings.

1089. As a direct result of the public safety concern, the plaintiff filed suit in state circuit court as in *Carter Realty vs FOA 22-CI-00166* on or about January 16th 2016.

1090. From the events of May 4th 2022 until June 9th 2023, defendants Steve Campbell, Tony Eversole of the City of Hazard followed suit with their co-conspirators as outlined in #1088(supra) by erecting various concrete barriers, fences, and other barriers all around the remaining portions of the said 67 Whitaker Way building as well as rear facing 426 main residential use portions, effectively blocking all forms of effective ingress/egress to said facilities, exhibits 1 thru 51.

1091. Tony Eversole, Steve Campbell, Gerry Roll of FOA, are known to have retaliated against the former tenants of said 67 Whitaker Way apartment buildings subsequent complaints of all the blockages to their former homes by setting fire or conspiring to burn, on the 3rd floor of said 67 Whitaker Way building, as *admitted* in their publication with WYMT news on June 9th 2023.

1092. The City of Hazard Fire Department is known to have conspired with the defendants of FOA by allowing their said homes of the 67 Whitaker Way building to be completely destroyed, by the willful allowance of said fire department to permit the spreading and grow over several hours, June 9th of 2023, exhibits 1 thru 51.

1093. The Defendants of FOA, City of Hazard and WYMT news conspired with the Public Protection Cabinet to publish several negative/unfavorable news headlines by promoting many more segments to time allotted to promotion of negative/unfavorable headlines, to discourage or detract any future business relationships the plaintiff could have with the general public, shortly after June 9th 2021.

1094. The City of Hazard police department conspired with the City of Hazard fire department to destroy the plaintiffs former 446 Grand Hotel building by arson or intentional contribution to initiating fire, in September 1st 2015, by allowing burglars to invade a vacant apartment in said building, where a fire was later set, where said fire was intentionally allowed to spread over the course of several hours by said fire department, in several demonstrations of extreme indifference to duty to protect life and property.

1095. Leading up to the 2015 Grand Hotel fire, defendants Payton Morton, Gerry Roll of FOA, Betsy Clemons of an FOA alias/aka "InVision Hazard," and "secretary of Economic Development

128

Alliance, (EDA)" Daniel Roll of City of Hazard, Hazard Mayor Donald Mobelini, City of Hazard preferred Contractor Steve Campbell of Balis Campbell Construction, City of Hazard Fire Department, Paul Collins attorney of the City of Hazard, Tony Eversole, Denise Davidson as board member of FOA attorney of City of Hazard, Public Protection Cabinet, FOA, as well as Kenneth Browning, Alan Walters, Ronald Hacker and Mike Haney, said cases against the plaintiff *State Fire Marshal 15-CI-00259, Brian Carter vs City of Hazard 16-CI-00020, Carter Realty vs FOA, 22-CI-00166* in series of highly, coordinated, collaborative efforts with the defendants of the Public Protection Cabinet, of whom sought and ultimately achieved, their collective goals of depriving the plaintiff of any and all forms of enjoyment, usage or benefit of all of his formerly owned commercial buildings, lots, and parking lots, within the City of Hazard, on and around Main Street in Hazard Kentucky, by organized criminal conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by the allegations as outlined from #118 thru #1094(supra).

1096. The defendants aforementioned in paragraph as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, sought and achieved their collective goals of depriving the plaintiff of any and all forms of enjoyment, usage and benefit of all of his formerly owned commercial buildings, lots, and parking lots, in a conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by refusing to provide a working path to allow the plaintiff to use and continue benefiting from his former 426 Treehouse Cafe Building.

1097. The defendants aforementioned in allegations #118 thru #1096 as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, sought and achieved their collective goals of depriving the plaintiff of any and all forms of enjoyment, usage or benefit of all of his formerly owned commercial buildings, lots, and parking lots, in the said conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by interfering with income advantage, of which was actively used in attempts to improve his former 426 building/property.

1098. The defendants aforementioned in #1097 as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, engaged in the conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by intentionally allowing his 67 Whitaker Way building to be completely destroyed, originating in a limited fire, in a singular section of said building, over the course of several hours on the date of June 9rd 2023.

129

1099. The defendants aforementioned in paragraph as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, engaged in a conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by intentionally allowing his 67 Whitaker Way building to be completely destroyed originating in a limited fire in a singular section of the building over the course of several hours on the date of June 9th 2023 in attempt to "score a demolition contract" against the said facility.

1100. The defendants aforementioned in #118 thru #1099 as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, engaged in a criminal conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by intentionally allowing his former 446 Main Street Grand Hotel building to be completely destroyed originating in a limited fire in a singular section of the building, over the course of several hours, on the date of September 1st 2015.

1101. The defendants aforementioned in #118 thru #1100 as above, in one of many highly coordinated, collaborative efforts with the Public Protection Cabinet, engaged in a criminal conspiracy to deprive the plaintiff of all manner of rights to use, benefit and enjoyment of property, by intentionally allowing his historic former 446 Main Street Grand Hotel building to be completely destroyed, originating in a limited fire in a singular section of the building over the course of several hours on the date of September 1st 2015 in attempt to score a demolition contract against the facility.

1102. Defendant Scott McReynolds stood to benefit from the actions of his colleagues and affiliates, by shifting the majority of community dependency of "safe affordable housing" from the plaintiff to his Housing Development Alliance (HDA).

1103. Defendant Betsy Clemons stood to benefit from the actions of her colleagues and affiliates, by shifting the majority of community dependency for "safe affordable housing" from the plaintiff to her Housing Development Alliance (HDA).

1104. Defendant Gerry Roll stood to benefit from the actions of her colleagues and affiliates, by shifting the majority of community dependency for "safe affordable housing" from the plaintiff to her Housing Development Alliance (HDA).

1105. Defendant Betsy Clemons stood to benefit from the actions of her colleagues and affiliates, by shifting the majority of community dependency of commercial leasing or "economic

130

development" from the plaintiff to her Economic Development Alliance (EDA).

1106. Defendant Donald Mobelini, mayor of the City of Hazard, stood to benefit from the actions of his colleagues and affiliates, by shifting the majority of community dependency of commercial leasing or "economic development" from the plaintiff to his Economic Development Alliance (EDA).

1107. Defendants Betsy Clemons, Scott Reynolds, Gerry Roll and Paul Collins stood to collectively gain their own benefit, enjoyment, or other usage of the plaintiffs properties, at the plaintiffs permanent detriment and loss, by their mutual relationship with Foundation of Appalachian Kentucky (FOA).

1108. The said organizations of EDA, FOA, EDA, and others affiliated conspired utilizing their combined influence over city and state, by proxy, to destroy, devalue, diminish or overall deprive the plaintiff of all manner of righteous, beneficial usage or enjoyment of property by the actions taken from #118 to #1105 (supra) as aforementioned, from on or about June 18th 2015 until August 7th 2023.

1109. As a DIRECT RESULT of the collective, collaborative actions of conspiracy against all manner of the plaintiffs rights, in furtherance of the defendants overall goals of said conspiracy to deprive his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a

direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff

by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii). Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property, as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

### Count III
### Violation of the R.I.C.O. Act
(18 U.S. Code § 1961-1968 Conspiracy to Destroy Commercial Properties and Deprive Rights to Properties by Organized Crime), (18 U.S. Code § 371 Conspiracy to Solicit Bribes via Federal Funding), (18 U.S. Code § 1951 Conspiracy to Commit Extortion), (18 U.S. Code § 1519 Conspiracy

to Destroy Evidence), (18 U.S. Code § 1956 (h) Conspiracy to Commit Money Laundering) (18 U.S. Code § 3371 Conspiracy to deprive crime victims rights), (42 U.S. Code § 1985 Conspiracy to Interfere with Civil Rights), (KRS 209.990(5) Felony Exploitation of an Adult), (18 U.S. Code§ 666 Conspiracy to Embezzle, Theft, Fraud and Bribery Involving Property or Benefits), (KRS 434.155 Illegal Lien)

1110. 18 U.S. Code § 1961 thru 1968 pertains to the Racketeer Influenced and Corrupt Organizations Act (RICO), respectively.

1111. 18 U.S. Code § 1961 provides definitions relevant to the act, including what constitutes racketeering activity.

1112. 18 U.S. Code § 1962-1968 outline the prohibitions against racketeering, the penalties for violations, the procedures for civil remedies and forfeiture of assets.

1113. The RICO statute and its related subsections 1961 thru 1968 are designed to combat organized crime by allowing the prosecution of individuals involved in a pattern of racketeering activity.

1114. Pursuant to the RICO 1961 statute, "racketeering activity" means *"any act or threat involving murder, arson, robbery, bribery, extortion, dealing in obscene manner,"* or other generalized criminal offenses subject to provisions of title 18, tile 29, or title 11, involving fraud or *other crimes.*

1115. Pursuant to 18 U.S. Code § 1961(5), no less than two acts of racketeering activities have occurred within ten years by the defendants collective, coordinated activities, after the commission of prior acts of racketeering activity as alleged in #1114, as above (supra).

1116. As the intertwined state cases have not been or yet to be adjudicated, all related matters pertaining to the coordinated efforts are tolled, commencing on our about June 18th 2015 until present.

1117. Pursuant to 18 U.S. Code § 1962(d), it is unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c), income derived directly or indirectly from pattern of racketeering activities, control of an enterprise affecting interstate commerce, or collection of unlawful debt(s) as initiated by the defendants, as alleged in this suit.

1118. Pursuant to 18 U.S. Code § 1963(a)(2), forfeiture of tangible assets or other property by injunction or restraining order is common to provide redress to victims of the racketeering activity of the defendants direct or indirect actions.

1119. Pursuant to 18 U.S. Code § 1964(c), any person injured in his business or property by reason of a violation of section 1962 of this chapter by sue therefor in any appropriate United States

District court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorneys fees needed to provide redress of which the damaged party may be entitled.

1120. The Economic Development Alliance (EDA), Housing Development Alliance (HDA), and Foundation of Appalachian Kentucky (FOA) are well known "non profit entities" operating within Perry County.

1121. The stated entities are well known to be deeply affiliated with each other, through the sharing of board members, or related board members.

1122. The Defendants of FOA are well known to operate under many other sub alias's such as *Invision, MaCID, Hazard Perry County Community Foundation, East Kentucky Tornado Relief Fund, Jackson County Community Foundation, Clinton County Community Foundation, Friends of Buckhorn Lake State Resort Park, Leslie County Community Foundation, Run for the Hills Charity Challenge, Coal Fields Industrial Park,* and many others.

1123. Mountain Association, and many others, such as "Chamber of Commerce," is well known to be deeply associated with HDA, FOA, EDA, and the City of Hazard.

1124. The said organizations, specifically FOA and HDA, are well known to "bribe" or "creatively influence" politicians in order to send money to their "housing for flood families" real estate development "non profit organizations" or "affordable housing initiatives."

1125. The monies sent to the defendants "non profit organizations" involves federal funding, often through state congressman Hal Rogers, among others.

1126. The monies sent to the defendants often involves state funding, commonly through the Andy Beshear administration, among others.

1127. The Defendants "non profit" representatives are well known to carry unique levels of "favoritism" with local and state political leaders, in order to enrich or advance their "real estate development" ventures, commonly marketed to the public as "housing for flood families."

1128. The defendants in their "non profit capacities" are well known to undermine development efforts of other private developers, or property owners, by threats or coercion, through their established "influence" with local and state officials, representatives, and government agencies.

1129. Among the private developers the defendants habitually "target" via their "influences," include the plaintiff, a victim of the conspiracy.

135

1130. The defendants of said "non profit organizations" influence over state Public Protection Cabinet and City of Hazard, are generally well known to employ mafia/gang style threats or coercion to various local businesses in order to "encourage donations" to their "non profit ventures."

1131. The defendants of said "non profit organizations" influence over state Public Protection Cabinet and City of Hazard, are also known to employ mafia/gang style threats or coercion to various local businesses "or else we can make it real hard for you to get permits."

1132. The Defendants, particularity Tony Eversole of the City of Hazard is well known to employ said coercion or threats, "or else what we did to the Grand Hotel owner we can also do to you" referring to previous loose ended threats regarding the plaintiff as the former Grand Hotel owner.

1133. Commonwealth of Kentucky is pervasively well known to employ "pay for play" favoritism, particularly with various "donor" influences of mutual benefit to politicians.

1134. The defendants, particularly FOA and HDA are well known to get heavy marketing support from various media entities, particularly support from the defendants of WYMT news, NPR radio, and NBC News, to promote their "housing for flood families" real estate development endeavors.

1135. The defendants with the City of Hazard are known to promote a "documentary" on "American Exceptionalism" with a popular Fox News, or Fox News affiliate network.

1136. The Defendants of WYMT news are well known to be an NBC or CBS based affiliate.

1137. The defendants of WYMT are well known to be affiliated with the Gorman and Roll family cliques and conglomerates, historically.

1138. Kentucky Power is well known to raise electric rates for its consumers, particularly in the Hazard, Perry County area, whilst giving several one hundred thousand dollar ($100,000.00) plus or minus "donations" to further enrich the defendants of HDA, at the expense and detriment of everyone else in the area, as a direct result of the increased rates.

1139. The Gorman and Roll families are well known to weld considerable political influence over the Hazard/Perry County area.

1140. Gerry Roll is one of the primary antagonist representatives responsible for undermining the plaintiffs beneficial usage/enjoyment of his properties, in particular the plaintiffs former 426 Treehouse Cafe building and former 67 Whitaker Way building, located in Hazard KY.

1141. Gerry Roll is generally well known to be upset with the plaintiff for his polite decline of transactional sale to Gerry Roll, at considerable loss to the plaintiff.

1142. Gerry Roll is well known to make many "complaints" to the defendants of Public Protection Cabinet, whenever the plaintiff attempted to make beneficial usage/enjoyment of the plaintiffs former 426 Main Street Treehouse Cafe building from January 2016 until the final conclusion of the plaintiffs ownership of said property August 7th 2023.

1143. Defendant Gerry Roll is or was a leading "executive director" of FOA and essentially all of its sub alias entities, as aforementioned, during the events of June 18th 2015 through August 7th 2023.

1144. Defendant Gerry Roll is also known as an "executive director" of the defendants of HDA, alongside Scott Reynolds.

1145. Defendants Donald Mobelini, Gerry Roll, and Paul Collins have all expressed a well known "coveting desire" of the plaintiffs former properties "as we just think our well capitalized non profit will do better at that location," exhibit 7.

1146. The City of Hazard Mayor/defendant Donald Mobelini, and defendant Paul Collins are also well known to covet the remainder of the plaintiffs former properties, aside from the 426 Main building, previously located at 446 Main Street, 434 Newberrys building lot, (located between 446 and 426) and 67 Whitaker Way, respectively.

1147. The City of Hazard and their colleagues with FOA are known for coveting desires of private citizens property, particularly when private citizens attempt or have attempted to make improvements to property, such as previous efforts made by the plaintiff, during his term of ownership.

1148. The City of Hazard has a known policy to undermine other property owners that end up obtaining the same property the defendants originally coveted, with one example the plaintiffs former properties on and around main street in Hazard KY.

1149. The City of Hazard, particularly via their partnership with "Chamber of Commerce," work actively to deny or deprive actual would be private property owners from beneficial usage/enjoyment of property that the defendants have coveted.

1150. "Chamber of Commerce" is known to be ran or heavily involved with Betsy Clemons, also a representative of HDA, EDA, and "Invision" of FOA.

1151. Defendant Betsy Clemons is well known for "wanting Brian Carters white apartment

137

building gone" referring to the plaintiffs former 67 Whitaker Way White Apartment building.

1152. The conspiracy initially begins in mid to late 2012 until June 18th 2015 when Defendants Kenneth Browning and Alan Walters of the Public Protection Cabinet, began a series of "visits" to the plaintiffs 426 Main Street building, otherwise known as the Treehouse Cafe building.

1153. Defendant Kenneth Browning has previously declared that he did not personally enjoy seeing residential apartments constructed in the upper floors of the plaintiffs former 426 building.

1154. The subsequent "visits" ultimately resulted in the defendants Kenneth Browning and Alan Walters submitting several libelous statements on their official documentation regarding said "conditions of the plaintiffs 426 building," in an effort to "have Brian Carter shut down."

1155. The plaintiffs responded to said libelous documentation statements from Browning and Walters by sending rebuttal correspondence and offering his cooperation going forward to defendant Mike Haneys office, leading state fire marshal, of the Public Protection Cabinet on various dates from mid 2012 until June 18th 2015.

1156. In early or mid November 23rd 2013, or within a month or so of said date, a fire is known to have "broken out" in the plaintiffs former 67 Whitaker Way apartment building, on the 3rd floor, middle of the building, apartment #7, fully engulfing the said unit in fire, shortly after Pats Pest Control had provided pest control services for that particular unit on the same day.

1157. Former City of Hazard Fire Chief Sam Stacey, acting with bold, decisive action, quickly and promptly extinguished the said November 23rd 2013 fire with his team of fire fighters, preventing spread to other units, as outlined in #1156(supra).

1158. Defendant Kenneth Browning of the Public Protection Cabinet, after consulting on the phone with the plaintiff on the said timeframe alleged in #1157(supra), quickly allowed fire damaged 67 Whitaker Way apartment building to be reoccupied after the said November 2013 fire of 67 Whitaker Way building.

1159. Kenneth Browning also allowed the plaintiff to make prompt repairs to said 67 Whitaker Way Apartment building and said fire damaged unit without any special "permitting requirements" or any other such requirements from his Public Protection Cabinet in said November 23rd 2013 fire event.

1160. From 2013 until about June 18th of 2015, Kenneth Browning continued with his push to "have Brian Carter shut down" in particular regard to his 426 building, by enlisting teams of various

138

plumbing and electrical inspectors to further his personal goals of "having Brian Carter shut down."

1161. Kenneth Browning has continued to seek punishment of the plaintiff with his Public Protection Cabinet "for daring to perform work" to said 426 building throughout the plaintiffs term of ownership from 2012 until August 7th 2023, which is the final termination of the plaintiffs ownership.

1162. In early June 2015, or about that time frame, Kenneth Browning eventually enlisted Ronald Hacker, former state electrical inspector, to further Browning's personal goals to "have Brian Carter shut down."

1163. Defendant Ronald Hacker assisted Browning by misrepresenting material facts on his own documentation in order to aid Browning in "having Brian Carter shut down."

1164. Defendant Mike Haney, assisted Browning in his push to "shut down Brian Carter" by retaliating against Carter "for daring to question the honor and integrity of his office" when plaintiff attempted to provide rebuttals to Haney regarding the plaintiffs allegations of misleading statements by Browning, Walters, and Hacker, during said 2012 until June 18th 2015 events.

1165. Defendant Mike Haney, supervisor of Kenneth Browning, openly disregarded his own expert, former state building inspector Steve Hammock, regarding Hammocks recommendations that the plaintiffs former 426 building should have remained open, contrary to Browning, Walters, and Hackers "push" to have said building closed/vacated.

1166. On or about June 18th 2015 Defendant Peter Ervin of the Public Protection Cabinet sought and obtained an emergency injunction in the Perry State Circuit Court, to have the plaintiffs 426 buildings residential use areas vacated *State Fire Marshal vs Brian Carter 15-CI-000259*.

1167. On the date of said 2015 injunction, #1166(supra), Peter Ervin could not establish a basis of fact that the plaintiffs building was factually "unsafe to occupy" due to the plaintiff producing electrical safety inspection reports of said apartments in the 426 building, during said circuit hearing.

1168. After failing to obtain an injunction based on making a case regarding electrical safety or other "pertinent issues with safety" of the 426 building, Ervin stepped outside of the limits of his lawful authority by alleging that the plaintiff "*had failed to provide an update to the 426 buildings fire separation*," to use as justification to vacate the plaintiffs 426 building on the June 18th 2015 hearing.

1169. The said failure to follow a direction to provide an update to the 426 buildings fire separation as #1168(supra), was based on material false statement from defendant Kenneth Browning

139

"that the 426 building had no fire separation" as was a libelous false statement of the buildings condition cited on Browning's official reports to said Cabinet.

1170. The limits of authority discretion of the Public Protection Cabinet under KRS 227.330 did not allow Ervin to seek and obtain an injunction to vacate the plaintiffs building for failing to follow a direction or procedure of said Cabinet.

1171. Peter Ervin continued to commit a fraud upon the court by offering his own testimony claiming to be both firsthand witness and as an expert in building construction, knowing he was not qualified to do so pursuant to rules 701 & 702 in Ervin's personal effort to fraudulently deprive the plaintiff of beneficial usage/enjoyment of his former 426 building, June 18th 2015.

1172. Defendant Peter Ervin committed a fraud upon the court when he willfully failed to disclose relevant material fact in order to damage the plaintiff by deprivation of the plaintiffs previous beneficial usage/enjoyment, or other advantageous business relationships with regard to the plaintiffs formerly owned 426 building.

1173. Defendant Kenneth Browning committed a fraud in the inducement by providing false material statements to his superiors, of which Peter Ervin used to deprive the plaintiff his beneficial usage or enjoyment of the plaintiffs formerly owned 426 building/facility June 18th 2015.

1174. The State Circuit Court Judge Alison Wells granted said June 18th 2015 injunction to vacate plaintiffs former 426 building based on the "plaintiffs failure to provide an update to the buildings fire separation," as outlined in #1166 thru #1173 as above (supra).

1175. Immediately after obtaining said injunction against the plaintiffs former 426 buildings residential use areas, the City of Hazard immediately moved to have the restaurant use portions removed from city provided utilities, primarily water and gas services, June 18th 2015.

1176. Public Protection Cabinet responded yet again to the removal of utility services by the City of Hazard by placing "dangerous unsafe vacate notices" on the restaurant serving portions of the 426 building on June 18th 2015.

1177. It was later disclosed to the plaintiff that Brian Carter, the plaintiff, and specifically Brian Carter, would "never again be allowed to benefit" from his 426 Treehouse Cafe building "for daring to question the honor and integrity of the state fire marshal," specifically the office of defendant Mike Haney, under the Public Protection Cabinet.

140

1178. Approximately three months later, the day of August 31ˢᵗ 2015, Hazard City Police openly allowed burglars to squat within a previously vacant apartment unit within the plaintiffs former 446 Grand Hotel building.

1179. The City of Hazard's police department has well known, long standing policy that "criminals get squatters rights" nearly every time or every other time they are called for assistance.

1180. Within 24 hours, of August 31ˢᵗ 2015, in the very early hours before daybreak on September 1ˢᵗ 2015, a fire is known to "originate" from the very same apartment in the 446 Grand Hotel building where said burglars/trespassers were allowed to squat on the property by the City of Hazard Police Department.

1181. Its is generally well known that some "squatters" have a propensity to burn or vandalize properties whenever they're about to get removed from a property, or think that they will be removed.

1182. In a demonstration of extreme indifference to the duty of protection and preservation of precious life and property, The City of Hazard Fire Department intentionally allowed the said fire to spread throughout all 5 floors of the former approximately eighty thousand square foot (80,000 sq ft) 446 Grand Hotel building/facility over the course of many hours.

1183. An otherwise exceptionally well equipped and well staffed fire department, known as the City of Hazard Fire Department, is known to exist within one thousand (1,000) feet of said 446 Grand Hotel, 426 Treehouse Cafe, and 67 Whitaker Way buildings, that are subject to this complaint.

1184. In a demonstration of extreme indifference to the duty of protection and preservation of precious life and property, The City of Hazard Fire Department never bothered to visit the 3ʳᵈ, 4ᵗʰ, or 5ᵗʰ floors of said 446 Grand Hotel building, to ensure occupants had vacated safely.

1185. In a demonstration of extreme indifference to the duty of protection and preservation of precious life and property, The City of Hazard Fire Department moved at a pace similar to that of sloths, in a flagrantly meandering fashion for many hours during said September 1ˢᵗ 2015 events.

1186. In a demonstration of extreme indifference to the duty of protection and preservation of precious life and property, The City of Hazard Fire Department, moving at an extremely meandering, flagrantly disinterested pace, entered the fire occupied apartment within said Grand Hotel building with a hose, but openly refused to spray any water within said unit, the day of September 1ˢᵗ 2015.

1187. In a demonstration of extreme indifference to the protection and preservation of precious

life and property, The City of Hazard Fire Department is afterwards well known to openly brag or boast about "letting everything burn" regarding the September 1st 2015 events.

1188.  Former fire Chief Sam Stacey was conveniently "made unavailable" on the date of said September 1st 2015 Grand Hotel building fire.

1189.  Former fire chief Sam Stacey was well known to have been "terminated or abruptly resigned" from duty not long after the 446 Grand Hotel fire loss of said building in 2015.

1190.  Over the course of several hours, the 446 Grand Hotel fire progressed into the 470 Main Street building, known as the Public Defenders Building, owned or previously owned by defendant Payton Morton, during said September 1st 2015 events.

1191.  Upon the entry of fire into said Public Defenders building as outlined in #1190(supra), the pace of the Hazard City Fire Department drastically increased, at which the fire department staff quickly extinguished said fire and prevented it from spreading throughout the remainder of the 470 Main Street building,  owned or previously owned by Payton Morton.

1192.  Payton Morton is known for later being aggrieved with the plaintiff for Morton's inconveniences regarding said 2015 fire getting into his neighboring 470 building.

1193.  Payton Morton is alleged to have since "sold" his 470 Main Street building to defendant Steve Campbell's son sometime within or about the year 2023.

1194.  Shortly after the said 2015 Grand Hotel fire, the adjacently placed 67 Whitaker Way apartment building incurred virtually no fire damage from the adjacent 446 Grand Hotel building fire.

1195.  The 67 Whitaker Way apartment building, incurred some slight manner of melting, of its vinyl siding in its top corner that faced closest to the adjacently located former 446 Grand Hotel building during the September 2015 events.

1196.  Behind the former 67 Whitaker Way apartment building's vinyl siding was well known to cover over a "chimney block" style construction, generally known to be highly resistant to fire.

1197.  Despite having virtually no fire damage of the 67 Whitaker Way apartment building, shortly after the 2015 Grand Hotel fire loss, defendants Kenneth Browning and Ronald Hacker were observed trading random smirks, sneers, and snide remarks directed at the plaintiff alongside with the City of Hazard Fire Department declaring "oh yeah this building needs to be vacated too."

1198.  Email was known to be sent to Kentucky Power to "request that power be shut off to the

142

white apartment building on behalf of the state, and Hazard City entities" on or about September 4th 2015 events as aforementioned.

1199. The said disconnection of previously permitted electrical services was outside the limits of any known authority jurisdiction during the September 2015 events.

1200. The shutoff of electric power service to said 67 Whitaker Way Apartment Building directly resulted in all seventeen (17) residential refrigerator units being destroyed, due to rotted food and corrosion of their refrigerant coils, during the September 2015 events.

1201. City of Hazard followed suit after shutting off of electrical utility services to said 67 Whitaker building by then removing gas and water utilities to said 67 Whitaker Way apartment building, without just cause or lawful authority to remove them during the September 2015 events.

1202. Defendant Daniel Roll of the City of Hazard also officially barred the plaintiff from any enjoyment or usage of the adjacently located 67 Whitaker Way building during the September 2015 fire events, on the grounds of a "collapse hazard zone of the Grand Hotel building."

1203. Defendant Daniel Roll of the City of Hazard would not hold Payton Morton to the same standard of barring usage or enjoyment of Morton's directly connected 470 Public Defenders building, due to any nearby "collapse hazard zone" during said September 2015 events.

1204. Over several subsequent weeks, City of Hazard Police Department were observed escorting the 67 Whitaker Way apartment buildings residential tenants in and out of said building, to retrieve personal belongings without a lawful court order of eviction or injunction after the said September 2015 fire events of the 446 Grand Hotel building.

1205. Payton Morton's 470 Main Street building, despite significant fire damage, was treated with no form of scrutiny from the City of Hazard, Public Protection Cabinet, repairs were allowed to be made immediately to Morton's building, vs that of the plaintiffs former 67 Whitaker Way building, which had virtually no damage during the September 2015 events.

1206. Prior to the 2015 446 Grand Hotel building fire loss, the said building previously sublet to six (6) independent business and provided residential housing for nineteen (19) residential apartment units, causing immediate, significant losses to main streets local economy.

1207. Following the September 1st 2015 fire loss of the 446 Grand Hotel building/facility, the defendants of City of Hazard directed the plaintiff "to come in and speak with Steve Campbell," of

143

whom quickly declared to the plaintiff that "it's got to come down" and "he was the man to do it."

1208. The plaintiff objected to Steve Campbell's demand in #1207(supra), citing that the plaintiff wished to pursue his own agenda with restoring the said 446 facility to operational health.

1209. The City of Hazard, specifically Daniel Roll directed the plaintiff to "pay for a permit fee to commence repairs" to the plaintiffs former fire damaged 446 Grand Hotel facility as in #1208(supra).

1210. Daniel Roll accepted payment for said permit, in #1209(supra) only to refuse it later, in favor and pursuit of awarding a demolition contract against said building with its own contractors, with Steve Campbell in mind on or about September 29th 2015.

1211. The refusal to issue said permit in #1210(supra), prompted a mandamus lawsuit against the City of Hazard in *Brian Carter vs City of Hazard 16-CI-00020* requesting that the court issue an order commanding the City of Hazard to issue the permit the plaintiff had paid for, further advising that they were not allowed to demolish the Grand Hotel building on or about January 13th 2016.

1212. The City of Hazard ignored said suit in #1211(supra), by demolishing considerable portions of said 446 Grand Hotel building, many of which having little or nothing to do with "improving public safety" in and around the timeframe/month of February 2016 until March 8th 2016.

1213. Defendants Daniel Roll and Paul Collins then applied a lien against said 446 Grand Hotel building for approximately seventy eight thousand, five hundred seventeen dollars ($78,517.00) for the "full taxable value" of the 446 Grand Hotel "partial" demolition, contrary to the contractors awarded bid of forty four thousand ($44,000.00) dollars.

1214. The applied lien to the Grand Hotel in excess of the amount that could be lawfully claimed or justified constitutes a state felony pursuant to KRS 434.155.

1215. The tactics employed by Daniel Roll and Paul Collins felonious application of lien in excess of what could be justified made the City of Hazard untrustworthy, prompting the plaintiff to "pause" or proceed with great deal of reluctance to pursue restoration efforts of said 446 fire damaged facility further.

1216. Eventually, Defendants Donald Mobelini and Denise Davidson held said lien as "leverage" against the said 446 Grand Hotel building, knowing or should have known, that the lien couldn't have been justified, making them complicit in the fraudulent usage of lien upon the property.

1217. Defendants Donald Mobelini and Denise Davidson then sought to exploit the plaintiffs

personal resources to improve the 446 Grand Hotel property and Newberrys property lots, under false hope that they would allow the plaintiff to restore his 2015 Grand Hotel building January 10th 2020.

1218. A verbal agreement by Donald Mobelini and Denise Davidson was deceptively offered to subvert or obstruct the trial over the matter in the state case of *Brian Carter vs City of Hazard 16 CI-00020* with no true intent to allow the plaintiff to pursue his future ambitions with the 446 Grand Hotel property on or about Friday, June 10th 2020.

1219. A written version of the verbal agreement to settle the said case in #1218(supra), was later offered, but not signed by the plaintiff, after it was first reviewed by the plaintiff, and found to be both flagrantly and deceptively non enforceable on or about the following Monday June 13th 2020.

1220. After the plaintiff made said improvements in #1217(supra), per the verbal agreement made on Friday June 10th 2020, defendant Tony Eversole then declared "we're going to try to get it (the 446 Grand Hotel property) from him now" after the plaintiff made improvements to said property.

1221. The Defendants Donald Mobelini and Denise Davidson knew well of the plaintiffs desires to restore some manner of advantageous business relationships with the 446 Grand Hotel property, yet sought to deny said desires with extreme indifference of the plaintiffs rights to the property.

1222. Defendants Donald Mobelini and Denise Davidson then later threatened "eminent domain on everything else" if the plaintiff "didn't sell his Grand Hotel property" exhibits 53 & 54.

1223. The threat of eminent domain was used to extort the plaintiff after exhausting the plaintiffs personal resources for improving said property as per #1222(supra).

1224. On or about the evening of June 9rd 2023, a fire originated within the plaintiffs former 67 Whitaker Way White apartment building, resulting in heavy fire damage, after the local fire department willfully allowed said fire to slowly progress all throughout the top floor of said building.

1225. The City of Hazard Fire Department again demonstrated extreme indifference of its duties to protect precious life and property by moving in a flagrantly meandering, slow, or overall highly disinterested pace over the course of several hours, June 9th 2023.

1226. The treatment of the 67 Whitaker Way apartment building by the City of Hazard Fire Department was again identical of the 2015 Grand Hotel building fire, by demonstrating extreme indifference of duty to protect precious life and property June 9th 2023.

145

1227. It is generally well known that large, massive multi-family apartment buildings are well known to be highly compartmentalized, taking time for fire to spread to other units.

1228. The June 9th 2023, 67 Whitaker Way fire was eventually extinguished after Jakes Branch Fire department came in to "assist" with said fire, at which the City of Hazard Fire Department's pace drastically, or had at least somewhat, increased, by that time.

1229. The 67 Whitaker Way apartment building was said to be largely extinguished eventually at or around midnight the night of June 9rd 2023.

1230. An otherwise exceptionally well equipped and well staffed City of Hazard Fire Department is known to reside within one thousand (1,000) feet of the plaintiffs former buildings previously located at 67 Whitaker Way, 446 Main Street, and 426 Main street in Hazard KY, respectively.

1231. The said June 2023 fire occurred very shortly after former residential tenants of said 67 Whitaker Way facility began to call in complaints to the City of Hazard regarding city placed barriers, blockades, and obstructions previously erected all around their former homes, on or about the day of June 9th 2023, which effectively served as an entrapment of said tenants within or inside the property.

1232. The timing of said entrapment of said barriers as stated in #1231(supra), and subsequent fire loss of the 67 Whitaker Way building is consistent with the City of Hazard's commonly known practice of retaliative based practices/policies known throughout the area.

1233. Defendants of the City of Hazard, FOA, Gerry Roll, Payton Morton, Tony Eversole, and Steve Campbell were all directly involved with depriving the plaintiff and his former residential tenants of all forms of parking as well as the unjust blocking of all forms of safe, sensible access to the plaintiffs former properties exhibits 1 thru 51.

1234. The former residents of the plaintiffs 67 Whitaker Way building were bullied/harassed by ticketing and threats of fines for attempts to make any form of use of the plaintiffs parking, as well as depriving of city parking, by the City of Hazard police department, exhibits 44 & 45.

1235. The deprivation of all forms of city parking were in direct contradiction with the City of Hazard's "agreement" that city parking "would remain as city parking" exhibit 58.

1236. The City of Hazard had no need to deprive the former plaintiffs tenants from all forms of parking for his former residential tenants, previously located at 67 Whitaker Way in Hazard KY.

146

1237. The fences and barriers as aforementioned effectively created an impairment of the former residential tenants abilities to escape said 67 Whitaker Way and 426 building residential use areas, formerly owned by the plaintiff.

1238. The fences and barriers effectively created an unjustified hindrance/delay to the City of Hazard Fire departments response at the scene of said 2023 fire.

1239. Previous to said 67 Whitaker Way building fire, a lawsuit was filed by the plaintiffs attorney John Hansen under *Carter Realty vs FOA 22-CI-00166* May 4th 2022 for the commencement erection of said barriers, alleging that such would unjustly obstruct public right of way, cause extreme inconvenience, and create a potentially dangerous situation regarding dependable, prompt access for fire, EMS, police and other first responders in the event of emergency.

1240. The defendants of FOA, and City of Hazard, particularly the defendant representatives of Gerry Roll, Payton Morton, Tony Eversole, and Steve Campbell of Balis Campbell construction, knew erection of these barriers would cause the aforementioned issues with safe, sensible access to property, yet continued doing so from May 1st 2022 until June 9th 2023, with extreme indifference to the plaintiff or his residential tenants needs of safe, prompt, and reliable access to property.

1241. Eventually, the 67 Whitaker Way property was fully demolished November 22nd 2024 after the co-conspirators of the Public Protection Cabinet threatened the plaintiff with "punishment" for attempting to make repairs to the newly fire damaged 67 Whitaker Way building July 17th 2023.

1242. The plaintiff eventually liquidated/sold the fire damaged 67 Whitaker Way building directly August 2023, as a direct result of various threats of being punished for attempts to provide care of his 67 Whitaker building facility by the Public Protection Cabinet, in a longstanding pact with the City of Hazard to undermine the plaintiff on or about August 7th 2023.

1243. The plaintiff also liquidated his adjacent 426 Main Street building, August 7th 2023, as likewise deprived of any and all manner of beneficial usage of his adjacently owned 426 building, since 2015 by the City of Hazard and Public Protection Cabinets combined, coordinated efforts to deprive all manner of usage/benefit of said property the plaintiff had once enjoyed.

1244. The plaintiff also liquidated both 67 Whitaker Way and the 426 buildings as a direct result of the 426 buildings eminent destruction by the physical actions taken by Defendant Steve Campbell, contractor of the City of Hazard, by building a concrete wall while leaving an approximately

147

four (4) foot gap between a large mound of dirt, which then concentrated rain/flood waters continually into the rear facing corner of said 426 building/facility, placing the plaintiff under extreme duress.

1245. Defendant Steve Campbell knowingly left the plaintiffs 426 building in said condition without correction for approximately two (2) calendar months until after the plaintiff liquidated the property under extreme duress August 7th 2023 as a direct result of Steve Campbell's actions.

1246. The plaintiff sold said 426 and 67 Whitaker Way buildings after the plaintiff received prior evidence that no other person would be treated the same way as himself.

1247. After receiving said evidence that no one else would be treated in the same way as the plaintiff, the defendants of the Public Protection Cabinet terminated its open records staff member Zachary Hale after Hale had provided exculpatory information to the plaintiff about July 18th 2022.

1248. The defendants knew or should have known that fully destroying said 67 Whitaker Way building would have resulted in a destruction of evidence or spoliation claim against the defendants.

1249. The Defendants collective, collaborative, highly focused efforts has successfully resulted in the plaintiffs formerly owned 67 Whitaker Way (White Apartment Building) "being gone" as desired by defendant Betsy Clemons of Invision/FOA.

1250. The deprivation of rights of private property owners as outlined, is a common policy practice employed by the "well connected" members of City of Hazard, FOA, HDA, and EDA, respectively.

1251. The Defendants utilize their purchased influence over the Public Protection Cabinet to enforce a "non compete" policy, to undermine the efforts of private property owners when they also attempt to improve/develop their privately owned properties.

1252. The Defendants undermine the efforts of private property owners by enacting various "pay for play" mechanisms, specifically to harass those that aren't "well connected."

1253. The Defendants of FOA, and HDA are known to "shake down" local businesses for "donations" to its housing development ventures, via their political influences, often marketed to the public as "housing for flood families."

1254. The defendants of FOA and HDA in particular, are also well known to obtain "donated" labor from Hazard Community College, Perry County Drug Court, as well as other out of state "charitable organizations."

1255. By coercion and duress, local businesses feel compelled to "donate" to the defendants non profit housing development ventures, "or we can make it real hard for your business to operate" as a matter of City of Hazard policy/practice.

1256. By coercion and duress, local businesses feel compelled to "donate" to the defendants non profit housing development ventures, "or we can make it real hard for you to get permits" as a matter of City of Hazard policy/practice.

1257. By coercion and duress, local business are encouraged to "stay small to stay alive" as a matter of bullying/harassment policies of the City of Hazard.

1258. By coercion and duress, local business are encouraged to "keep a low profile" as a matter of bullying/harassment policies of the City of Hazard.

1259. The defendants are collectively well known for personal hatred of the plaintiff in terms of "seeing the plaintiff personally benefit" from his now destroyed properties, exhibits 7 thru 9 *et al.*

1260. As in #1250 thru #1259(supra), the ongoing harassment of local businesses, as a matter of "policy" enacted by the City of Hazard, is known to promote the interests of its "well connected."

1261. The defendants, particularly HDA, are known to sell the houses they build at market value to the public.

1262. The defendants of FOA and/or HDA are well known to get the houses they build sold and financed through government agencies, such as USDA.

1263. KHC, otherwise known as Kentucky Housing Corporation, are well known to provide payment services, and other residential leasing services for (HDA) Housing Development Alliance.

1264. KHC is advertised as a "for profit" corporation established by Kentucky General Assembly.

1265. The plaintiff was collectively viewed by the defendants as a threat to the defendants "safe affordable housing" promotions and "had to be eliminated no matter the cost" by the destruction and deprivation of all forms of beneficial usage/enjoyment of plaintiffs former properties, previously located at 426 Main Street, 446 Main Street, and 67 Whitaker Way (located just off main street) in Hazard KY, as a direct result of the organized conspiracy against the plaintiffs properties.

1266. The plaintiff has suffered permanent, irreparable harm as a direct result of the collective, conspiratorial actions of the defendants, their organizations, and the individuals that run them by the

149

common established pattern of bribery, money laundering, influence peddling, conspiracy to commit arson, attempted murder of residential tenants, extortion of property, exploitation of the plaintiffs personal resources, for the unjust enrichment of the conspiracy of said individuals.

1267. At least two counts of the above crimes have occurred within a ten year period collectively, by the defendants and their "well capitalized non profit" housing development business.

1268. The defendants are well known to sell the houses they build at market value after receiving various "grants" and "donations" to build the same house or set of houses.

1269. The defendants are involved in various "kickbacks" schemes due to their heavy influence peddling operations.

1270. The proceeds of sales of said houses and rental properties by the defendants of HDA are established as 501 3c "non profit" although the defendants profit very heavily from their operations.

1271. The Defendants represent numerous individuals, of whom largely originate from the Gorman and Roll families/associates of Hazard KY.

1272. The Gorman's are well known to represent former mayor of Hazard Bill Gorman and the late LD Gorman, both were well known as established businessmen in the City of Hazard.

1273. The Roll families originate from Daniel Roll's father, as leading commissioner at the City of Hazard, for many years and was considered former mayor Gormans "right hand man" for decades.

1274. Defendant Steve Campbell is well known as married into the Gorman family by former LD Gorman's daughter, and thus is well known to have considerable influence, particularity over "getting city contracts."

1275. The defendants of the City of Hazard are pervasively well known to give Steve Campbell an overwhelmingly large majority of "city contracts" as well as many other contracts within Perry County, often favoring Drinkard Development, a known affiliate of the defendants of EDA.

1276. The defendants of the City of Hazard are pervasively well known to pay Steve Campbell an unusually exorbitant amounts of taxpayer money for work performed, in one case paid just under one million dollars to "set up two tennis courts" at Perry County Park, among others.

1277. Defendant Steve Campbell is pervasively well known as "laughing his way all the way to the bank" with matters such as the tennis court setup at Perry County Park.

1278. Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance (HDA) and Economic Development Alliance (EDA) are well known in the community to garner influence of many local and state officials.

1279. The City of Hazard is well known for highly inappropriate conduct with funding and resources, such as using city manpower for private functions, mostly that favor the current mayor Donald Mobelini's family members, and that of their "non profit organizations," well outside of normal government functions, such as that directly benefiting the defendants of FOA, HDA, and EDA.

1280. Donald "Happy" Mobelini is the current mayor of Hazard, well known to be "Gorman's boy" shares a board of directors position with the Economic Development Alliance, alongside Scott Alexander of the Perry County Fiscal Court, and Betsy Clemons as "Chamber of Commerce," all tied together with Economic Development Alliance (EDA).

1281. "Investors" publicly advertised for said Economic Development Alliance include The City of Hazard, and Chamber of Commerce, among Kentucky Power Company, and others.

1282. Chamber of Commerce is widely known to involve the Housing Development Alliance (HDA).

1283. Chamber of Commerce is well known, publicly advertised to be "partnering with the City of Hazard."

1284. Betsy Clemons of FOA, EDA, and as head of Chamber of Commerce, is widely known to use her influence of "wanting Brian Carter's white apartment building gone" in order to eliminate the plaintiff as an affordable housing alternative to the defendants own Housing Development Alliance (HDA).

1285. Kentucky Power is well known to recently gift Housing Development Alliance with "$100,000.00 - $150,000.00 gifts" to "build houses" while pushing to raise electrical rates on its other customers in order to fund such an endeavor that it has a financial interest in, along with Economic Development Alliance (EDA), as an affiliate.

1286. Housing Development Alliance is well advertised to receive millions in various "grants" through its affiliate Foundation of Appalachia Kentucky (FOA) and others.

1287. Betsy Clemons is well known to be intertwined with Invision Hazard, an alias of Foundation of Appalachian Kentucky, Economic Development Alliance, and Housing Development

151

Alliance, among other named organizations that commonly share the same or inter related board of directors members.

1288. The defendants of FOA, EDA, and HDA are well known to obtain millions in "grants" via its influence with political leaders, such as congressman Hal Rogers, Governor Andy Beshear, senator Brandon Smith, and state representative Chris Fugate, and others, all of whom have performed major advertisement/marketing campaigns for the above said organizations.

1289. The said organizational efforts of FOA, EDA, and HDA utilize their "influence" with said government officials to have government funds sent to their respective non profit organizations.

1290. The said organizational efforts of FOA, EDA, and HDA have also utilized their influence with said government officials to quash or eliminate the plaintiff as a once prosperous economic property developer alternative to their own housing and commercial property development endeavors, by having government officials apply atrociously unequal standards regarding the plaintiffs now destroyed fifty (50) unit apartment complex and shopping center that once consisted of seven (7) independently ran business that had also once sublet from the plaintiff.

1291. Housing Development Alliance (HDA) is well known to be deeply aligned with Kentucky Housing Corporation (KHC) a government organization known to launder government proceeds to the rental properties of the Housing Development Alliance (HDA).

1292. Housing Development Alliance Inc (incorporated) publicly identifies itself as a "corporation" whilst evading tax obligations on its home sales and rental property income as a 501 3c "non profit organization."

1293. Housing Development Alliance (HDA) obtains millions in grants while it markets itself as receiving funds from sponsors and donors to "build houses for flood families."

1294. Housing Development Alliance (HDA) contrary to the marketed appearance as a charitable organization, factually sells the houses it builds at market value to said "flood families," rather than charitably gifting the houses as otherwise implied.

1295. Housing Development Alliance (HDA) typically average around $150,000.00+/- mortgages through entities such as USDA, a government organization that normally deals in agriculture, financed to the buyers through that agency.

1296. Most home buyers of HDA are middle aged, financed through USDA for an average of

152

40+/- years.

1297. The Housing Development Alliance (HDA) and Economic Development Alliance (EDA), both "entities" stood to benefit from the destruction of the plaintiffs once prosperous fifty (50) unit apartment complex and seven (7) business shopping center by shifting the burden of business and residential housing dependency to said organizations for leasing options vs that of the plaintiff.

1298. Defendants Donald Mobelini of the City of Hazard, and Gerry Roll of Foundation of Appalachian Kentucky FOA both have expressed a coveting desire of the plaintiffs former properties prior to said conspiracy to physically destroy the plaintiffs commercial buildings and properties.

1299. Donald Mobelini of the City of Hazard, and Gerry Roll of Foundation of Appalachian Kentucky FOA, have expressed extreme hatred or malice to the plaintiff due to his polite rejection consensual sale of his former commercial properties to said individuals.

1300. Donald Mobelini and Tony Eversole of the City of Hazard both have a well established reputation of randomly tearing down commercial businesses and houses of individuals that do not carry favor with the collective established order of the defendants.

1301. Defendants Donald Mobelini and Tony Eversole of the City of Hazard have a well established reputation of randomly tearing down privately owned buildings and houses without receiving permission from the property owners.

1302. Donald Mobelini and Tony Eversole of the City of Hazard both have a well established reputation of randomly tearing down commercial business and houses without any due process.

1303. Donald Mobelini and Tony Eversole of the City of Hazard both have a well established reputation of randomly tearing down commercial business buildings and houses without any shape, form or fashion of permission from the owners, in deliberate acts of malicious criminal mischief as outlined pursuant to 18 USC Chapter 65, and a class D felony pursuant to KRS 512.020.

1304. Many of the cases of criminal mischief to destroy property by the City of Hazard, namely acts committed by Donald Mobelini and Tony Eversole, have not seen a courtroom, due to the City of Hazard's policies of impoverishment of its citizens, many cannot afford legal representation to defend against such acts.

1305. The City of Hazard, particularly Donald Mobelini and Tony Eversole have a well known reputation for punishing its citizens for the impoverished appearance of many privately owned

153

properties.

1306. The City of Hazard has a well established policy/practice to impoverish its citizens in favor of enrichment of its "well connected."

1307. Criminal regimes are well known for impoverishing their people for the enrichment of select few, until eventually everything collapses under the weight of its own corruption.

1308. Many of the City of Hazards impoverished citizens cannot afford legal representation and/or are not legally literate, allowing the City of Hazard to often evade justice for its crimes against its own people.

1309. The City of Hazard randomly "purchases' privately owned buildings, of its well connected, at taxpayers expense, one of them the former office building owned by Paul Collins.

1310. The City of Hazard purchases said buildings as in #1309(supra), to run, or attempt to run, their own "for profit" businesses in those buildings, funded and started by said organizations related to FOA, while allowing said business entities to evade tax obligations due to government ownership.

1311. The City of Hazards allowance of unfettered tax free usage by FOA, to run "for profit businesses" while maintaining fraudulent status as 501 3c constitutes a profound fraud upon the taxpaying constituents of the United States and of the Commonwealth.

1312. The collective organizational efforts to destroy the plaintiffs commercial properties, and deprive the plaintiff of all manner of righteous, beneficial enjoyment/usage by the collective efforts of said entities, has caused a tremendous economic detriment to the tax base in Hazard Kentucky, in order to "create versatile outdoor recreation space" for the "enjoyment of FOA's "well capitalized non profits" at an extreme forever detriment to the taxpayers, exhibit 65.

1313. The City of Hazard's ownership of the plaintiffs former properties allows Foundation of Appalachian Kentucky, also known as "Mountain Association," "Appalachian Arts Alliance," also founded by Gerry Roll, or family of Gerry Roll, free unlimited, unfettered usage whilst fraudulently evading tax obligations/commitments to the taxpayers, as a direct result of the actual ownership remaining under the local government ownership and control.

1314. The Defendants of WYMT news is a well known CBS affiliate, WYMT and FOX News are well known to produce various televised news articles or other "documentaries" about "American exceptionalism" showcasing Donald Mobelini and city Commissioner Susan Brotherton in Hazard

154

Kentucky.

1315. Kentucky Housing Corporation, (KHC) a government entity, is known to collect lease/rent payments via its government funded online bill pay service, from the residential tenants of Housing Development Alliance (HDA), for the payments, profits, and benefit of the defendants of HDA.

1316. Kentucky Housing Corporation (KHC) and Kentucky Housing Authority (KHA) are considered "synonymous" and essentially the same entity.

1317. Housing Development Alliance, in its partnership with the Kentucky Housing Corporation, appear to operate on a very similar methods of operation and criminal intent to defraud the United States as found in *United States vs Angela Williams 24 MAG 318 (sealed) et al,* in these cases, among total of 70 housing authority of New York defendants are alleged to have concealed several "non bidding practices" for personal enrichment with federal dollars.

1318. The Defendants employ similar themed "kickbacks" to individuals such as Steve Campbell, Scott Reynolds and Donald Mobelini, often under the guise of "helping low income families obtain homes" or "economic development" by a predetermined allotment of government resources, workers, etc for the defendants own personal enrichment or benefit.

1319. As in 1318(supra), the cases involve an elaborate racketeering operation almost verbatim of how the defendants of FOA and HDA also operate. "*As many as 70 current and former New York City public housing employees were charged Tuesday with accepting kickbacks from contractors in exchange for awarding city contracts, according to federal prosecutors in New York*" as is alleged in News publications.

1320. The defendants related to HDA enrich themselves off federal taxpayer dollars by leveraging influence with Hal Rogers office, often in increments of three million ($3,000,000) dollars.

1321. Despite receiving federal funds to "build houses for flood families" such as in #1320(supra), the defendants related to HDA sell the same houses they were already paid to build from the taxpayer *at market value* to said "flood families" or "other families."

1322. "Samaritans Purse" is another well known entity known to "gift" houses by purchasing "eighteen million worth" of houses from HDA affiliates.

1323. As a DIRECT RESULT of the collective, collaborative actions of conspiracy against all

155

manner of the plaintiffs rights, in furtherance of the defendants overall goals of said conspiracy to deprive his rights, by an organized criminal conspiracy, (RICO), to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit property, as aforementioned, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance

protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public

157

Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii). Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property, as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

## Count IV
### Obstruction of Justice
(Conspiracy to Obstruct Justice 18 U.S. Code § 371), (Dealing in Obscene Manner 18 U.S. Code § 1961(1),(a)), (Deception to Prevent Witness from Producing Evidence 18 U.S. Code § 1512)

1324. 18 U.S. Code § 371 pertains to conspiracies against the United States, which includes obstruction of justice.

1325. 18 U.S. Code § 1961(1)(a) outlines that obstructing justice involves dealing in an obscene manner consistent with the RICO conspiracy of the defendants, thus permits redress.

1326. 18 U.S. Code § 1512 involves tampering with the witness in such a manner as to prevent the plaintiff from producing his evidence (exhibits) into court record as judicially noticed facts.

1327. On or about the date of July 18th 2022 the defendants of the Public Protection Cabinet committed the felony offense of conspiring to obstruct justice by terminating its open records staff member Zachary Hale after Mr Hale had provided evidence of unequal application of lawful authority/exculpatory information to the Plaintiff on or about said date.

1328. On or about April 8th 2025 defendant Denise Davidson legal representative on behalf of the City of Hazard, Public Protection Cabinet, and FOA, obstructed justice by knowingly making material false statements into court record regarding her previous legal representation of the Public Protection Cabinet in state case of *Carter Realty vs FOA 22-CI-00166* in order to fraudulently conceal

158

her previous conflicts in other cases against the plaintiff, specifically *State Fire Marshal vs Brian Carter 15-CI-00259 et al.*

1329. On or about April 8th 2025 defendant Denise Davidson obstructed justice by making material false statement into court record outlining her usage of obtaining the plaintiffs property for the benefit of her non profit Foundation of Appalachian Kentucky (FOA) aka Mountain Association etc.

1330. On defendant Denise Davidson obstructed justice by abusing her influence as master commissioner over the Perry Circuit Court Judge Alison Wells to gain favorable advantage in order to prevent the plaintiffs evidentiary exhibits of her co-conspirators arson against his 67 Whitaker Way building from being admitted into record as judicially noticed facts, by having ruling against the plaintiffs *pro se* right to represent his company, only when the plaintiff moved the court to take notice of said facts on or about March 19th 2025.

1331. Denise Davidsons position as master commissioner is a role known for *"assisting the circuit court with the commencement of its duties,"* the circuit judge over said interrelated state cases against the plaintiff is State Circuit Judge Alison Wells, see *Carter Realty vs FOA 22-CI-00166, Brian Carter vs City of Hazard 16-CI-00020,* and *State Fire Marshal vs Brian Carter 15-CI-00259.*

1332. Perry Circuit Court Judge Alison Wells was also later discovered to be a colleague board of directors member alongside Denise Davidson, also a board of directors member, of the defendants of FOA, a profound conflict that was not previously disclosed into court record in *Carter Realty vs FOA 22-CI-00166* during the course of the plaintiffs investigation mid to late 2024.

1333. Denise Davidson, attorney, and Alison Wells, Perry Circuit Judge, known to be affiliated with FOA, otherwise known as Foundation of Appalachian Kentucky, defendants of this suit.

1334. Denise Davidson and Alison Wells timely obstructed justice by issuing rulings against the plaintiffs *pro se* representation only when the plaintiff moved the court to accept judicially noticed facts based on the plaintiffs new exhibits 7 thru 60, on or about said March 19th 2025 date.

1335. The exhibits as cited in #1334(supra), reveal a conspiracy of arson or wanton endangerment against the plaintiffs former tenants by the defendants of the City of Hazard by their collaborative, coordinated efforts to destroy commercial property previously owned by the plaintiff.

1336. Denise Davidson abused eminent domain discretion against the plaintiffs former 446 Grand Hotel building, to serve no other purpose but to circumvent the plaintiffs writ of mandamus

159

petition which had previously sought an order for issuance of his permit to provide care of the plaintiffs former historic 446 Grand Hotel property, for the goals of Davidson's "well capitalized non profit" "recreational" ventures on our about June 10th 2021.

1337. Denise Davidson knew or should have known of the City of Hazard's duty to issue said permit in #1336(supra), to reconstruct upon receipt of payment for said permit, yet sought to subvert said justice, with extreme indifference of duty to issue, to deprive the plaintiffs rights to property.

1338. On June 9th 2023, Defendants Tony Eversole of the City of Hazard, Gerry Roll of FOA, Payton Morton, and Steve Campbell conspired together to entrap the plaintiffs 67 Whitaker Way tenants inside the property, exhibits 7 thru 51.

1339. The defendants of WYMT and FOA publicly *admitted* to initiating a fire on its 3rd floor by their highly coordinated efforts by a public news publication by WYMT after the erection of said barriers in #1338(supra).

1340. The said fire in #1339(supra) was a direct result of retaliation against eye witnesses (tenants) for daring to complain to the City of Hazard about being entrapped within their homes.

1341. The City of Hazard Fire Department obstructed justice by sending threatening correspondence to destroy the 67 Whitaker Way building June 12th 2023 in order to conceal evidence of the above mentioned crimes outlined in #1335 thru #1340(supra).

1342. On November 22nd 2024, as a direct result of a "maximum pressure campaign" exerted by the City of Hazard, resulted in the 67 Whitaker Way facilities new owner Jeff Norman destroying the building himself in an indirect violation of his agreement with the plaintiff that he would challenge the City of Hazard's efforts to do the same.

1343. On December 19th 2025, the Public Protection Cabinets legal counsel Jennifer Wolsing and Clayton Patrick dismissed the plaintiffs appeal of the City of Hazard Fire Departments decision to destroy the 67 Whitaker Way building, in order to aid and abet the City of Hazard's efforts to destroy any remnants of said 67 Whitaker Way building/facility, to aid in the concealment of evidence or spoilation of evidence, on behalf of the City of Hazard.

1344. Defendant Gerry Roll obstructed justice by publicly advertising herself as "having resigned as executive director." of FOA, after receipt of interrogatories from the plaintiff in the ongoing state case of *Carter Realty vs FOA 22-CI-00166* in order to avoid answering said interrogatories.

160

1345. The said "resignation" was a perfectly timed effort from Gerry Roll in a deliberate attempt to evade interrogatory questions from the plaintiff in the current state case of *Carter Realty vs FOA 22-CI-00166* on or about January 1st 2024.

1346. The current state case of *Carter Realty vs FOA 22-CI-0166* was pending appeal with the Kentucky Supreme Courts, as the defendants have obstructed justice by arguing against the plaintiffs *pro se* right to represent his company, *Carter Realty & Associates, LLC* in order to keep the plaintiffs new evidence of the defendants crimes of arson, endangerment, attempted murder, out of court record.

1347. Kristin Collins, daughter in law of defendant Paul Collins, is publicly advertised as "the new executive director" of FOA, on or about January 1st 2024.

1348. After publicly declaring said "resignation" of said organization, Housing Development Alliance, (HDA) once again advertised defendant Gerry Roll as "co-executive director" alongside Kristin Collins, on their social media, contrary to what was publicly advertised earlier.

1349. Gerry Rolls evasion of interrogatory questions currently serves as an intentional fraud upon the court to obstruct or subvert justice in favor of the Defendants of FOA.

1350. The Public Protection Cabinet obstructed justice by refusing to allow rebuttals or other evidence that established the plaintiffs formerly owned 426 building as "safe to occupy, in order to deprive the plaintiff of all manner of his rights to use, enjoy, or benefit from ownership of said building.

1351. As a DIRECT RESULT of the collective, collaborative actions to obstruct justice in furtherance of the defendants overall goals of said conspiracy alleged in Counts two and three, to deprive all manner of the plaintiffs rights, by an organized criminal conspiracy, (RICO), to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit property, as aforementioned, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

161

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's Bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts,

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said

162

improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii). Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property, as a direct result of the destructive

163

actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

**Count V**
**Deprivation of Rights Under Color of Lawful Authority**
(Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Violation of the 14th Amendment), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1352. 18 U.S. Code § 242 makes it unlawful for officials operating in their official capacities, to perform acts, or assume authority of which said governing agency or official asserts powers, or asserts authority said official does not factually have, or have not been granted to them by legislative authority, or other lawful authority, in order to deprive rights of an individual citizen, whist operating under color of lawful authority, that person is said to be committing a crime pursuant to the statute.

1353. 18 U.S. Code § 241 states that if two or more persons conspire to injure, oppress, threaten, intimidate any person in any state, territory, commonwealth, possession, or district in the free exercise of any right or privileged secured to him by the constitution or laws of the United States, shall be fined or imprisoned pursuant to the statute.

1354. 42 U.S Code § 1983 allows an individual to bring an action against a state official of who, under the color of any statue, ordinance, regulation, custom, or usage, subjects or causes to be subjected any citizen of the United States to the deprivation of any rights secured by the constitution of laws, shall be liable to the injured party.

1355. 18 U.S. Code § 242 is a crime that prohibits a governing official of either federal or state jurisdiction, while acting under the color of lawful authority, from asserting jurisdictional powers he or she does not legally have, for the purposes of depriving rights of citizens of the United States.

1356. 42 U.S Code § 1985 states that, if two or more persons conspire to prevent, by force, intimidation or threat, any person for the purpose of depriving, either directly or indirectly any person or class of persons of equal protection of the laws, or if two or more persons conspire to prevent by force, intimidation or threat to injure any citizen in person or property or cause to be injured may have an action for the recovery of damages by such injury or deprivation, against any one or more conspirators.

1357. 42 U.S. Code § 1983 states that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1358. Beginning mid 2012 until June 18th of 2015, the defendants of the Public Protection Cabinet engaged in deprivation of rights under the color of their lawful authority by making criminal libel on official documentation in order to fraudulently misrepresent the conditions of the plaintiffs formerly owned 426 Treehouse Cafe building/facility.

1359. As the defendants of the Public Protection Cabinet had no authority to commit said crimes of false statements on its official documentation, as such crimes of libel operated outside the limits of any known authority jurisdiction while acting under the color of its lawful authority.

1360. Beginning on June 18th 2015, the defendants of the Public Protection Cabinet engaged in deprivation of rights under the color of their lawful authority by abusing the state circuit court process by seeking and then obtaining, an emergency injunction to vacate the residential use portions of his formerly owned 426 building based on the plaintiffs failure or alleged failure to comply with a direction from said Cabinet to update the structures fire separation (*SFM vs Carter 15-CI-00259*).

1361. Pursuant to KRS 227.330 the Public Protection Cabinet has no lawful authority to order a building vacated due to a failure to comply with any direction, even if said direction was for just cause.

1362. KRS 227.330 grants powers to close to the public of vacated by its occupants *"if there is present such a hazard to human life or limb that the public safety imperatively requires emergency action, that said property to be vacated until the violation is corrected."*

1363. The stated failure of the plaintiff to provide said update was based on libel reporting from Public Protection Cabinet's representatives, specifically Kenneth Browning and Alan Walters, falsely alleging that "the 426 building had no fire separation," thus, said direction did not, and could not warrant a "genuine fire safety concern" or "fire safety issue" regarding the buildings condition.

1364. Pursuant to KRS 227.330 the Public Protection Cabinet could never establish a factual, evidentiary basis to vacate the plaintiffs former 426 Grand Hotel building, thus it committed an illegal act under color of lawful authority June 18th 2015, specifically its counsel Peter Ervin.

1365. The Cabinets seeking and obtaining said injunction in state circuit court June 18th 2015 against the 426 building based upon fraud in the inducement by Kenneth Browning, Alan Walters, and

Ronald Hacker was well beyond the scope of said cabinets lawful authority.

1366. Paul Randall Collins deprived the rights of the plaintiffs formerly owned 446 Grand Hotel building/facility under color of lawful authority of the City of Hazard by proceeding with an unauthorized demolition of the plaintiffs 446 Grand Hotel facility, against KRS 381.775 on or about March 14th 2016 whilst doing so without obtaining a lawful order of the court, under the color of his lawful authority as City of Hazard's attorney of legal counsel.

1367. Paul Collins denied the plaintiff rights to his Grand Hotel property by declaring "no remedies, no options" with regard to the forced 2016 initial demolition of the plaintiffs 446 Grand Hotel building sometime between January 1st 2016 and January 13th 2016, or around said date.

1368. Defendant Paul Collins had then made an appearance in Perry Circuit Court in case of *Brian Carter vs City of Hazard 16-CI-00020* asserting that "Mr Carter failed to exhaust his administrative remedies" sometime in early to mid 2016.

1369. Paul Collins knew or should have known that any administrative functions of the City of Hazard do not provide lawful authority to override legislative authority otherwise defined under KRS 381.775 regarding building demolitions of private property, yet sought to deprive the rights of the plaintiff under the color of his lawful authority as City of Hazard's legal counsel, by denying the plaintiff of his due process rights to contest or protest the City of Hazard's actions to destroy property.

1370. Defendant Daniel Roll did not provide any "administrative appellate procedures" with regard to any "administrative hearing remedies" in any of his 2015 correspondence to the plaintiff as otherwise required in *Miranda vs California 486 U.S. 1038 (1988),* in order to deprive the plaintiff of his due process rights under the color of lawful authority of the City of Hazard, regarding the September 2015 thru March 2016 demolition pursuits of the 446 Grand Hotel building.

1371. Daniel Roll denied the plaintiffs due process rights when he made no mention in any of his subsequent 2015 "orders" regarding the plaintiffs former 446 Grand Hotel building, that any said orders were "appellable" contrary to law, under color of his lawful authority (*Miranda v Arizona 1966*).

1372. Paul Collins knew the plaintiff had paid the City of Hazard for a permit to commence rebuild/repair of his former 446 Grand Hotel structure, yet Mr Collins conspired with Daniel Roll to deprive the plaintiff of due process without issuance of said permit, under color of lawful authority of the City of Hazard.

1373. Defendant Daniel Roll and Paul Collins applied a felonious lien pursuant to KRS 434.155 to the plaintiffs former 446 Grand Hotel building, after demolishing sizeable portions of said building on or about the month of March 8th 2016 above and beyond the total amount they could legally justify, under color of lawful authority of the City of Hazard.

1374. After the June 18th 2023 fire loss of the 67 Whitaker Way Apartment Building, the City of Hazard sent correspondence to the plaintiff, declaring that they "were going to destroy the newly fire damaged 67 Whitaker Way white apartment building unless appealed to the state fire marshal" aka Public Protection Cabinet June 12th 2023 outside the limits of any "arbitrarily destruction authority" of either public entity, under the color of lawful authority of the City of Hazard and the Public Protection Cabinet, further citing KRS 227.390 as his alleged authority over the matter.

1375. Contrary to the assertions of KRS 227.390 (supra) the said state statue actually outlines a *duty* of the State Fire Marshal (Public Protection Cabinet) to provide aid in remedying safety conditions of a property, or remove the portions of property that is considered a "safety risk," and bill the owner for the cost incurred as a result of providing those services.

1376. At no point in time does KRS 227.390 provide arbitrary authority to destroy property against the rights of any property owner, without permission or consent of the property owner, or grant a waiver of duty of said cabinet to provide aid to the tax paying citizens of the United States.

1377. The Defendants of the City of Hazard and the Public Protection Cabinet knowingly abuse its discretion of KRS 227.390 repeatedly against its own citizens, without consent, with extreme indifference of the governments duties to its tax paying constituents of the United States, to serve no other purpose but to deprive the rights of property owners under the color of lawful authority.

1378. On October 13th 2025, Public Protection Cabinet sent notice to parties via email, under color of lawful authority, declaring that "the Cabinet has administrative authority to decide on demolishing private property" in which the plaintiff still holds a security interest in after the plaintiffs 67 Whitaker Way building fire loss June 9th 2023.

1379. Destruction of privately owned property without permission or consent, regardless of any condition or alleged condition, deprives the plaintiff of his protected rights to use, enjoy, and benefit from ownership of property in violation of the 5th & 14th amendments to the United States Constitution.

1380. Kentucky Revised Statutes KRS 381.775 mandates that the City of Hazard or other

167

government agency reach an agreement with a property owner of any "dilapidated" or otherwise "visually disfavored" property before they have the right to converge upon property to destroy it.

1381. On June 22nd 2023, the plaintiff sent his appeal request to the Public Protection Cabinet also known as the State Fire Marshal to contest the demolition desires of the City of Hazard absent of its lawful authority to do so.

1382. After approximately two calendar years after the initial appeal date of June 22nd 2023, at least two senior executive positions of the Public Protection Cabinet have been abruptly "resigned or dismissed from duty" as a direct result of said executives not immediately dismissing the plaintiffs appeal request in observance of the plaintiffs rights, and upon receiving challenges from the plaintiff that the said cabinet did not have lawful authority to preside over such a matter.

1383. Eventually said matter on the City of Hazards was assigned to its new deputy executive director Clayton Patrick on or about October 8th 2025.

1384. On October 13th 2025 the plaintiff sent notice of cease and desist to the Public Protection Cabinet and affiliated, asserting that the defendants have no lawful authority to order demolition of private property purely of their own volition, seeking to stop further harassing communications regarding the unauthorized demolition desires of the City of Hazard.

1385. On October 14th 2025 the defendants of the Public Protection Cabinet continued to declare that they have lawful authority to destroy property by administrative action by holding a prehearing conference on the matter, disregarding the previous cease and desist notice.

1386. The said October 14th 2025 prehearing conference was carried through in disregard of a lawful cease and desist notice outlining that the Public Protection Cabinet does not have or ever did have lawful authority on the matter regarding unauthorized property destruction by the defendants.

1387. On the said October 14th 2025 conference date, Clayton Patrick of the Public Protection Cabinet disregarded the plaintiffs challenges of authority jurisdiction, and proceeded to refocus on the plaintiffs rights to represent and defend his own interests as a *pro se* litigant, further claiming "he didn't get the notice," regarding the cease and desist previously sent from the plaintiff.

1388. On the October 14th 2025 conference date, Patrick claimed "he would look at" the proper controlling authorities the plaintiff had cited regarding the plaintiffs right to represent and defend his own interests on said conference date.

1389.  Because the plaintiff owns a company, *Carter Realty & Associates, LLC*, the defendants are depriving the plaintiffs *pro se* right to represent and defend his own rights to counsel as *discretionary*, in violation of the plaintiffs 6th amendment in *Faretta vs California 422 U.S 806 (1975)*, *Alria Group vs Good 555 U.S 70 (2008)*, *Netchoice vs Paxton 603 U.S 707 (2024)*, *KRS 275.335(5)*, *KRS 341.470(3)(a),(b)* and many other federally supreme precedents as preemptive authorities over state controlling case law decisions against *pro se* representations for corporations in Kentucky, the City of Hazard, nor the Public Protection Cabinet has authority to override, or intelligently disregard, under the color of lawful authority of the Public Protection Cabinet, the defendants openly discriminate against the plaintiff strictly due to his "status" as a "non attorney" in order to serve no other purpose but to deprive the plaintiffs rights, in order to achieve the criminally complicit objectives of destroying property without permission or consent, to further deprive rights of the plaintiff.

1390.  As in #1389(supra), the defendants of the Public Protection Cabinet, specifically Clayton Patrick, was repeatedly, knowingly, and intelligently provided with the proper controlling authorities on October 13th 2025, October 14th 2025, December 5th 2025, December 18th 2025, and December 19th 2025 by memorandum along with cease and desist orders provided by service of process server.

1391.  On December 19th 2025, Clayton Patrick had set another conference call, with colleague of legal counsel Jennifer Wolsing, and Denise Davidson, counsel for both the Cabinet and the City of Hazard.

1392.  On December 19th 2025 Jennifer Wolsing deprived the 6th amendment rights of the plaintiff to protect and defend his own interests under the color of lawful authority of the Public Protection Cabinet, by fraudulent misrepresentation of Kentucky state controlling case law *Cabinet for Health and Family Services vs Appalachian Hospice Care Inc 2021-SC-0082-DG* and Kentucky State Supreme Court rule 3.020 knowing, or should have known, that both the cited law and rule 3.020 were directly contrary to what she claimed they cite.

1393.  As in #1392 (supra), Clayton Patrick knowingly and intelligently *dismissed* the plaintiffs appeal regarding the unauthorized demotion sought by the City of Hazard, to aid and abet its criminal mischief against its own citizen, with extreme indifference, by repeatedly, knowingly, and intelligently have been provided with the proper preemptive federal and state authorities to the plaintiffs 6th amendment discretionary rights to *waive* counsel, to serve no other purpose but to deprive the plaintiffs

rights to protect property, under the color of lawful authority of the Public Protection Cabinet, whist aiding others in crime against the plaintiffs rights to protect his own interests in property.

1394. As in #1383 thru #1393(supra), Clayton Patrick's actions provides proof beyond reasonable doubt that Patrick knowingly and intelligently intended to commit the crime of deprivation of rights under color of lawful authority of the Public Protection Cabinet pursuant to *18 U.S. Code § 242 Deprivation of Rights Under Color of Lawful Authority* consistent with this complaint.

1395. On December 19th 2025 Jennifer Wolsing committed fraud upon the state appellate process in order to deprive the 6th amendment rights of the plaintiff when she provided materially false or fraudulent misrepresentation of information to her colleague Clayton Patrick, in order to participate in a conspiracy of criminal mischief against privately owned property of which the plaintiff still holds a security interest, within the City of Hazard, under color of lawful authority of the Public Protection Cabinet, by her willful engagement in the conspiracy as outlined in #1391 thru #1394(supra).

1396. From October 8th 2025 until December 19th 2025, legal counsel State attorney Linda Keeton was the "assigned counsel" to "represent the Public Protection Cabinet," with her colleague Clayton Patrick assigned under his official capacity as "deputy executive director" also of said cabinet, assuming his role as "administrating official" or "judge" over said matters of unauthorized demolition.

1397. On December 19th 2025, legal counsel State attorney Linda Keeton was conveniently "made unavailable" on the date of said conference call.

1398. On December 19th 2025, Jennifer Wolsing, colleague of legal counsel to Linda Keeton, reported that "Linda Keeton gave her the information" with reference to #1395(supra).

1399. On December 19th 2025, Linda Keeton committed fraud in the inducement by willfully neglecting her duties of relaying truthful, accurate information to her colleague of legal counsel Jennifer Wolsing, in order to deprive the rights of the plaintiff to petition grievances with his government pursuant to the plaintiffs 6th amendment discretionary rights to waive counsel, or Wolsing demonstrated extreme indifference of her duties as counsel for a government agency when she failed to obtain, convey, or relay truthful, accurate information to her colleague Clayton Patrick in order to achieve her ends of depriving the plaintiff of his rights to represent and defend his own interests, whist conspiring to aid in the crimes of criminal mischief against the Commonwealths own citizens, under the color of lawful authority of the Public Protection Cabinet.

1400. Plausible deniability is a well known by attorneys in order to tactfully evade dutiful obligations to the taxpaying citizens of the United States to be accountable for their actions.

1401. Dismissing the plaintiffs appeals to the Public Protection Cabinet and the City of Hazards coordinated attempts to perform criminally mischievous unauthorized destruction of private property of which the plaintiff owns, or possesses a security interest in, violates the plaintiffs 1st and 5th amendment rights to petition grievances with his government, whist operating under color of lawful authority of the City of Hazard and Public Protection Cabinet.

1402. During the September 1st 2015 thru approximately March 8th 2016, the City of Hazard and the Public Protection Cabinet deprived the rights of the plaintiff under the color of their lawful authority by evicting the plaintiffs residential tenants out of his former 67 Whitaker Way building without a lawful court order of eviction or vacate orders from any state district or circuit courts.

1403. During the September 1st 2015 thru approximately March 8th 2016, the City of Hazard and the Public Protection Cabinet deprived the rights of the plaintiff under the color of their lawful authority by "teaming up" to have all manner of the plaintiffs utilities removed from said 67 Whitaker Way facility, based on fraud in the inducement from Ronald Hacker, ally of Kenneth Browning, of the Public Protection Cabinet.

1404. Daniel Roll under his official capacity as City of Hazard official deprived the rights of the plaintiff under the color of his lawful authority by directing the plaintiff to "come in and pay for a permit" to restore or repair the plaintiffs formerly owned 446 Main Street Grand Hotel facility only to deny the plaintiff due process with its issuance later, in order to proceed with his own goals of destroying the plaintiffs property for the enrichment of his contractors of the City of Hazard during the timeline of September 1st 2015 thru March 8th 2016.

1405. Donald Mobelini and Denise Davidson deprived the rights of the plaintiff under the color of their lawful authority as City of Hazard representatives by exploiting the financial resources of the plaintiff to make improvements to the said 446 Grand Hotel property only to force him into a contractual sale of said property later in 2021 "or lose everything" without just compensation for said improvements, or just compensation for tortious interference with the plaintiffs existing or prospective business advantages, of which the plaintiff was then forever deprived of as a direct result.

1406. Donald Mobelini, Gerry Roll, Scott Reynolds, and Betsy Clemons, are well known to

171

utilize their "influence" or "donor influence" with their "nonprofit organizations" of FOA, HDA, and EDA, over the Public Protection Cabinet and the City of Hazard in order to have the plaintiffs commercial buildings shut down and destroyed by arson, fire, and fraud summarily, as alleged in the related causes of action #2, #3, #4, #5 (supra) of a conspiracy to deprive rights to property as , under the color of lawful authority of the City of Hazard and the Public Protection Cabinet.

1407. Donald Mobelini, Gerry Roll and Betsy Clemons, representatives of the "nonprofits" FOA, HDA, and EDA respectively, stood to benefit from the destruction and closure of the plaintiffs former commercial buildings, by shifting the burden of community dependency of commercial business and residential tenant leasing within the community to their own Housing Development and Business Development ventures in FOA, HDA, and EDA, under the color of lawful authority of the City of Hazard and the Public Protection Cabinet.

1408. Donald Mobelini and Denise Davidson deprived the rights of the plaintiff under the color of their lawful authority of the City of Hazard, by extortion of the plaintiff to "accept the deal to sell the Grand Hotel property, Newberrys Vacant lot, and we'll take over 80% of your remaining parking, or else we'll take everything, including the 67 Whitaker Way and 426 buildings, and you'll get nothing" as a direct result of the defendants diminished of the plaintiffs former property values or slandering of title by the defendants collective collaborative actions beginning June 18th 2015 until June 9th 2023.

1409. As the plaintiff did not consent to the sale of said property, the state mandamus suit of *Brian Carter vs City of Hazard 16-CI-00020* remains wholly unajudicated, as there is no agreement in the contract of sale to settle the said dispute, nor was consent given to any counsel to settle any suit..

1410. As a DIRECT RESULT of the collective, collaborative actions to deprive the plaintiffs rights under the color of lawful authority of the City of Hazard and the Public Protection Cabinet, in furtherance of the defendants overall goals of said conspiracy alleged in Counts One through five, to deprive all manner of the plaintiffs rights, by an organized criminal conspiracy, (RICO), to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit property, as aforementioned, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main

172

Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's Bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts,

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting

in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working,

174

tax contributing resident of Perry County Kentucky, and;

xviii).  Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property,  as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

**Count VI**
**Deprivation of Rights by Unlawful Convergence**

(Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Violation of the 5th and 14th Amendments), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1411.  The 14th Amendment to the United States Constitution makes it unlawful for government actors to deprive any person of life, liberty, or property without due process of law, nor deny any person within its jurisdiction equal protection of the laws.

1412.  The 5th Amendment mandates that the government follow proper legal procedures before depriving a person of life, liberty or property, as well as a duty to provide just compensation for unwelcome convergence upon the property rights of citizens of the United States.

1413.  As the City of Hazard nor the Public Protection Cabinet lacks the authority jurisdiction to override the 5th and 14th amendments as outlined, the City of Hazard has engaged in deprivation of the plaintiffs rights by unlawful convergence upon property, to serve little other purpose but to deprive beneficial enjoyment or usage of property, without just compensation to the owner as required by law.

1414.  As the City of Hazard, Tony Eversole, Steve Campbell, Payton Morton, Denise Davidson Gerry Roll and Donald Mobelini have actively participated in a conspiracy in their official capacities in order to deprive the plaintiff of beneficial enjoyment, usage, or beneficial ownership of property by their unlawful convergence(s) upon property, the plaintiff is entitled to claims for redress pursuant to 42 U.S. Code § 1985, 42 U.S. Code § 1983, and 18 U.S. Code 241 for the defendants ongoing conspiracy to deprive all manner of the plaintiffs rights to benefit from and enjoy property.

1415.  Pursuant to 42 U.S. Code § 1985, 42 U.S. Code § 1983, and 18 U.S. Code 241, claims of common law torts agasint the state are able to be made in the federal district court of the United States, along with supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

1416.  Beginning in mid day of August 31st 2015, the defendants of the City of Hazard,

175

specifically the City of Hazard Police Department (HPD), engaged in a conspiracy to deprive the rights by convergence upon the plaintiffs property by intentionally allowing trespassers to converge or invade a previously vacant apartment which resided on the 2nd floor of the plaintiffs former 446 Grand Hotel/Main Street Mall building/property.

1417. The defendants of the City of Hazard, specifically the City of Hazard Police Department (HPD) claim "squatters rights" consistent with established policy/practices of the City of Hazard Police Department to allow said egregious or criminal based behaviors against property owners.

1418. The City of Hazard, specifically the City of Hazard Police Department (HPD) knew or should have known laws pertaining to burglary and criminal trespass are in fact crimes established by state legislature, thus a duty to protect was willfully ignored.

1419. The City of Hazard, specifically the City of Hazard Police Department (HPD) knew or should have known laws pertaining to "squatters rights" do not apply to those that have not held residence on private property for less than fifteen (15) calendar years.

1420. A fire is known to then originate from the kitchen area of the same apartment in the 2nd floor of the Grand Hotel within 24 hours of the permission to grant convergence upon the plaintiffs property for the burglars/trespassers was granted by the City of Hazard, specifically the City of Hazard Police Department (HPD), in the very early morning hours of September 1st 2015.

1421. The City of Hazard, specifically the City of Hazard Fire Department, participated in the said convergence upon the plaintiffs property, to deprive the plaintiffs rights to property, by intentionally "allowing every single square inch to burn," slowly, over the course of many hours, into the late evening hours of September 1st 2015, of the otherwise highly compartmentalized, 446 Grand Hotel building/structure.

1422. The City of Hazard, specifically defendants Daniel Roll and Paul Collins, knew that the plaintiff paid for a permit to execute a wall bracing and reconstruction plan of the former 446 Grand Hotel building, yet sought to deprive him of due process with its issuance, in attempt to participate in subsequent conversion upon property to destroy significant portions of said property in the initiating encounters of September 1st 2015.

1423. The City of Hazard, specifically defendants Daniel Roll and Paul Collins participated in a subsequent conversion by the City of Hazard contractors against the plaintiffs former 446 Grand

176

Hotel property by engaging in a monetary transaction value greater than $10,000.00 above the contractors bid of $44,000.00 to completely destroy otherwise serviceable portions of the former historic 446 Grand Hotel facility during the affairs of the 2015 Grand Hotel building.

1424. The City of Hazard, specifically defendants Daniel Roll and Paul Collins knew or should have known that they were not entitled to the "full taxable value" of the former 446 Grand Hotel building/facility for said demolition, yet sought to impose a lien upon said property, approximately double the amount of the City of Hazard contractor C&C Construction's advertised bid of $44,000.00 for execution of said 2016 "partial" demolition of the plaintiffs former 446 Grand Hotel property.

1425. On or about Feburary 2020, defendant Tony Eversole sought unlawful convergence upon the plaintiffs former vacant 434 Newberrys lot by prohibiting any of the plaintiffs residential tenants, specifically children of the residential tenants, from riding their bicycles in said lot, previously owned by the plaintiff at the time of the plaintiffs ownership of said property.

1426. Tony Eversole knew that such prohibition in #1425(supra) of stated usage of said Newberrys lot would deprive the plaintiff and his residential tenants beneficial usage and enjoyment of said lot, as well as lessen the appeal of the neighboring buildings previously owned by the plaintiff.

1427. On or about May 4nd 2022, the defendants of the Foundation of Appalachian Kentucky (FOA), City of Hazard, specifically Gerry Roll of FOA, Tony Eversole of City of Hazard, and Payton Morton an individual, engaged in convergence against the plaintiffs concrete slab which resided beside the plaintiffs former 67 Whitaker Way Apartment building, during the defendants initial construction of an approximately one hundred foot (100ft) long, eight (8) foot tall white metal wall alongside the plaintiffs slab, by depriving any and all forms of parking and usage/benefit of the plaintiff and his former residential tenants.

1428. The defendants erection of said wall in #1427(supra), was made with extreme indifference of the general public's need for safe, sensible egress/ingress to the plaintiffs formerly remaining 67 Whitaker Way building and apartment complex on or about the day of May 4nd 2022.

1429. A suit was promptly initiated during the erection of said wall/barrier in #1428(supra), against the defendants of FOA, specifically Gerry Roll for the public blocking/restriction to the plaintiffs property by which the defendants thereafter referred to as a "fence" *22-CI-00166.*

1430. The defendants of the Foundation of Appalachian Kentucky (FOA), City of Hazard,

177

specifically Gerry Roll of FOA, Tony Eversole of City of Hazard, and Payton Morton, an individual, knew the plaintiff was using the stated slab as an alternate means of parking for his residential tenants, after Gerry Roll denied any usage of the parking owned by her Foundation of Appalachian Kentucky (FOA), in an action exclusively against the former residential tenants of the Plaintiffs 67 Whitaker Way building/complex.

1431. The defendants of the Foundation of Appalachian Kentucky (FOA), City of Hazard, specifically Gerry Roll of FOA, Tony Eversole of City of Hazard, and Payton Morton an individual, threatened the former residential tenants of the plaintiff with towing and fines against said tenants, for any attempts to utilize said concrete slab for alternative forms of parking along the time-frame of the erection of the first white metal wall/barrier all alongside the south facing portions of said 67 Whitaker Way building on or about the month of May 4th 2022.

1432. The suit was that was initiated based in part due to the unlawful convergence to erect said barrier(s) is as cited in #1425 thru #1431 in *Carter Realty vs FOA 22-CI-00166* respectively.

1433. Perry Circuit Judge Alison Wells, who was the local state circuit judge of whom would preside over said matter, was conveniently "made unavailable" during the time of initial erection of said barrier in #1425 thru #1431(supra).

1434. The stated concrete slab beside the plaintiffs former 67 Whitaker Way building was owned by the plaintiff during the May 2022 erection of the first of many other walls/barriers, later to be erected by the defendants collective/collaborative actions, consecutively by defendant Steve Campbell and defendant Donald Mobelini of the City of Hazard.

1435. The defendants as in #1425 thru #1431(supra) collectively knew that its actions of depriving access to the plaintiffs slab for alternate parking would cause a deprivation of beneficial enjoyment/usage of the plaintiff and his residential tenants at the time of May 4th 2022 onward.

1436. The defendants knew of said egregious conduct, of the unwelcome convergence upon the remainder of said properties owned by the plaintiff, knew of a lawsuit involving said matters, yet collectively sought to continue with said activity of barrier erections all around the remaining 67 Whitaker Way properties, not yet assumed by the City of Hazard, with extreme indifference of the general public's need for safe, effective public entry and exiting from said property, particularity the need of access for fire and EMS crews should the need occur with regard to #1425 thru #1431(supra).

178

1437. During the course after the May 2022 events as above, following the erection of the first wall/barrier against the plaintiffs former properties, the Defendants of the City of Hazard further sought additional conversion to deprive public ingress/egress by blocking all forms of public access to and from the Whitaker way road lying directly behind the former 67 Whitaker Way building/facility, exhibits 11 & 12.

1438. The portion of the Whitaker way road behind the plaintiffs former 67 Whitaker Way building was also on the deed formerly belonging to that of the plaintiff at the time of said 2022 events.

1439. The defendants of the City of Hazard knew or should have known that blocking such roadway would create a highly distressing situation for the plaintiffs former residential tenants, specifically regarding their need for prompt public entry/exiting from said roadway.

1440. Defendants Payton Morton and Steve Campbell sought personal enrichment by the erection and placement of said walls/barriers around the plaintiffs former 67 Whitaker Way properties and lots, primarily at the expense of the City of Hazard taxpayers during the course of May 2022 initiating events until June 18th 2025 concluding events by the defendants actions.

1441. The harassment with consistent placement of barriers would continue virtually with little ending from the date of initiating events commencing in May 4nd 2022 until June 9th 2023.

1442. On the date of June 9th 2023, defendant Steve Campbell, widely known preferred contractor of the City of Hazard, commenced a convergence with his workers upon the plaintiffs only remaining 67 Whitaker Way building/facility property by several additional feet past the property line of the Newberrys lot previously taken from the plaintiff by the defendants of the City of Hazard, in order to erect a new fourteen foot tall concrete walls all around the west and north facing portions of the plaintiffs former 67 Whitaker Way apartment building, exhibits 15, 17, 19, 38.

1443. On the date of June 9th 2023, the former residential tenants are well known to have initiated several "complaints" to the defendants of the City of Hazard, regarding all the various fencing/barriers and general obstructions erected all around the remaining portions of the plaintiffs former 67 Whitaker Way building/facility, as a direct result of the very distressing situation created by the Citys contractors.

1444. On the date of June 9th 2023, the Defendants of the City of Hazard, in response to the barriers erected, specifically the City of Hazard Fire Department, criminally conspired with the

179

defendants of Foundation of Appalachian Kentucky (FOA) to destroy the plaintiffs 67 Whitaker Way building by fire, and admitted to their involvement with said fire in a WYMT news article.

1445. The timing of the said 67 Whitaker Way building fire on June 9th 2023 is consistent with the defendants well known established patterns of retaliatory based behaviors against the free speech rights of the citizens of the City of Hazard.

1446. On the date of June 9th 2023, the Defendants of the City of Hazard, specifically the City of Hazard Fire Department and the defendants of Foundation of Appalachian Kentucky FOA, once again declared "collapsible hazard zone" a similar status previously given to that of the plaintiffs former 446 Grand Hotel facility, after its likewise 2015 destruction declared by Dan Roll, of Husband of FOA's "executive director" Gerry Roll, in order to publicly prevent/discourage the plaintiff from performing amicable work/service to said facility.

1447. The stated "collapsible hazard zone" status did not stop Steven Campbells contractors from reentering said property and completing the erection of the stated fourteen foot tall concrete walls/barriers after the successful fire destruction of the plaintiffs former 67 Whitaker Way building/facility in the following days after the June 9th 2023 building fire loss of said facility.

1448. The previous 2015 allegation of a "collapsible hazard zone" by Dan Roll of the plaintiffs former Grand Hotel building also did not stop Payton Morton from accessing and repairing his own facility directly connected next door to said Grand Hotel building, revealing an unequal double standard of unfair treatment by the City of Hazard, nor were any "permitting requirements" demanded from the Public Protection Cabinet for Morton's building in 2015.

1449. The encroachment work performed by Steven Campbell and his workers during and shortly after the June 9th 2023 events with the walls and barriers also caused an obstruction of a culvert the plaintiff had previously placed, to allow proper drainage of rain and flood waters out of the Newberrys lot and away from the plaintiffs former 426 Treehouse Cafe building/facilities foundation.

1450. Steve Campbell then proceeded to place several mounds of dirt along the interior edge of said Grand Hotel and Newberrys lots, in which a large four to eight foot gap was left between the mound of dirt and the north facing wall of the plaintiffs former 426 Treehouse Cafe building.

1451. The obstruction of pubic access by the concrete barriers erected by Steve Campbell, the obstruction of the culvert that previously allowed proper drainage from the Newberrys lot, and piling of

180

dirt away from the plaintiffs former 426 building within the Newberrys lot as depicted in exhibit 59. effectively diverted flood and rain waters directly into the rear east facing portions of the plaintiffs former 426 building/facilities previously repaired foundation.

1452. It is generally well known that diversion of flood and rain waters diverted into the foundation of any building, home or facility, is pervasively known to not fair well to the structural foundation of any building, home or structure, particularly over very long periods of time.

1453. The stated conditions of diverting rain and flood waters directly into the plaintiffs former 426 Treehouse Cafe building, created as a direct result of the actions of defendant Steve Campbell, was then left willfully unremedied/unresolved from until the property was liquidated by the plaintiff in October 2023, to avoid its eventual destruction.

1454. As the mayor of Hazard had previously refused to take any other phone calls upon acquiring, and suiting his goals of destroying the plaintiffs former 446 Grand Hotel building in mid to late 2021, the plaintiff was not expected to reach the mayor regarding the actions of Steven Campbells damaging convergence upon the plaintiffs 426 building.

1455. The defendants of the Public Protection Cabinet would continue to not allow any shape, form or fashion of any usage or benefit of the plaintiff's former 426 building during the stated June 2023 events, regardless of compliance of said building due to convergence with "stop work" orders.

1456. The defendants of the Public Protection Cabinet would continue to not allow any shape, form or fashion of basic care of the plaintiffs former fire damaged 67 Whitaker Way building/facility during the stated 2023 events, as a direct result of the placed "stop work orders" against said facility.

1457. As the Defendants of the Public Protection Cabinet would never historically allow the plaintiff make any semblance of enjoyment, usage, or benefit regardless of "obtaining permits" through their office, or for any other reason, regardless of merit, compliance, or good faith efforts.

1458. The defendants of the Public Protection Cabinet would continue to "threaten the plaintiff with fines or other punishment if he were to continue with any remedy work on his former 67 Whitaker Way building during the stated June 2023 events.

1459. The Public Protection Cabinet previously has a long track record of "special favoritism" of its "well connected" vs that of the plaintiff, who is not "well connected."

1460. The defendants of the Public Protection Cabinet has a proven track record of not

allowing the plaintiff to use/enjoy, or allow the plaintiff to benefit from his previous ownership of property, despite obtaining "required permits" through its own office.

1461. The defendants of the Public Protection Cabinet has a proven track record of convergence upon the plaintiffs property, from mid 2012 until June 18th 2025, particularly with his former 426 building, in order to serve no other purpose but to create a bullying/threatening/harassing based presence in order to interfere with the advantageous business relationships with the plaintiff, discourage business interests with potential customers, clients or tenants, under the guise of "promoting safety and compliance" for the ultimate enrichment of the non government organizations FOA, EDA, and HDA, that control said cabinet by proxy, respectively.

1462. As the plaintiff was given previous ultimatums that "you need to change the people around you, until you do, the results will always be the same" and "Mr Carter (the plaintiff) specifically, "will never be back in compliance with us," (the Public Protection Cabinet), as such, the plaintiff was given no incentive to ever believe the cabinet would "change its mind" with providing good faith assistance with his remaining 67 Whitaker Way building and 426 buildings, or that he would ever again be treated fairly by the defendants, thus, the remaining said properties were finally liquidated to Jeff Norman on or about August 7th 2023 to avoid their destruction by the defendants.

1463. Upon said liquidation in #1462(supra), the new owner Jeff Norman was quickly given assistance from Donald Mobelini and Steve Campbell, to quickly repair the damage to the 426 buildings foundation, and make arrangements with Norman to allow him to reopen said facility, without meeting the same standards previously imposed upon the plaintiff as its previous owner very shortly after the August 7th 2025 sale date, within 24-48 hours.

1464. As a DIRECT RESULT, of the aforementioned convergence efforts to destroy property, the plaintiff was placed under extreme duress by the defendants collective convergence upon the only remainder of his former properties, in furtherance of deprivation of any and all shape, form, or fashion of any enjoyment, usage, or benefit of his properties, to then force the plaintiff to liquidate said remaining 426 Main and 67 Whitaker properties August 7th 2023, in order to avoid or avert their eminent destruction **and** as a DIRECT RESULT of the defendants collective, collaborative actions of convergence to destroy and deprive benefit of said property, in furtherance of the conspiracy to deprive all manner of the plaintiffs rights to use, benefit, enjoy and provide all forms of care of property, as

182

aforementioned, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's Bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts,

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost

184

no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii).  Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property,  as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

## Count VII
### Breach of Contract
(Violation of 5th and 14th Amendments), (Prohibition Against Retaliation and Coercion 42 U.S.C § 12203), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985),  (Conspiracy Against Rights 18 U.S. Code § 241), Dealing In Obscene Manner 18 U.S. Code § 1961), (41 U.S. Code § 6503 Breach or Violation of Contract terms)

1465.  Pursuant to the RICO statute, 18 U.S. Code § 1961, the defendants are prohibited from dealing in an obscene manner, consistent with other crimes related to the conspiracy, therefore redress.

1466.  This Court has the jurisdiction to provide relief from tortiously egregious breaches of action when said actions are intended to achieve a secular or overall goal of depriving rights to property, thus 42 U.S. Code § 1983 & 1985 based complaints allow redress by this court.

1467.  Pursuant to the 5th and 14th amendments, property cannot be taken without "just compensation" which includes compensation for improvements under false pretenses of the defendants, as well as compensation for tortious interference with business advantageous business relationships, or tortious interference with prospective business advantages, respectively.

1468.  42 U.S. Code § 12203 allows the plaintiff to recover redress for acts taken to deprive rights to property by threats, coercion, intimidation and retaliation against the exercise of those rights.

1469.  28 U.S. Code § 1331 establishes that federal district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties, thus common law torts.

1470.  28 U.S. Code § 1343(a), deems that federal district courts shall have original jurisdiction of any civil action authorized by the law, to be commenced by any person, to recover damages for injury to his person or property, or deprivation of any right or privileged of a citizen of the United

185

States, and seek redress for said deprivation under color of any state law, statute, ordinance regulation, custom or usage of any right privileged or immunity secured by the constitution of the United States or by any act of Congress providing equal rights of all persons within the jurisdiction of the United States.

1471.  The defendants of the City of Hazard, specifically its official representatives Daniel Roll, Donald Mobelini, Tony Eversole, and Denise Davidson have a consistently proven track record of breaching every agreement, negotiation, contract, or virtually any other good faith covenant with the plaintiff, either written or unwritten, only to then perform the most egregious, in many cases criminal acts in nature, with the overall goal to cause consistent, ongoing harm to the plaintiff, directly and personally, as outlined in the introduction to this complaint, as outlined in the factual allegations of this complaint, counts one thru seven, as aforementioned, and as cited in count eight of this complaint.

1472.  The Defendants of the City of Hazard as referenced in #1471(supra) exploited the plaintiffs personal resources in the form of trickery or hoaxes into making improvements to the plaintiffs formerly owned 446 Grand Hotel property under false pretenses they'd allow its restoration.

1473.  The Defendants of the City of Hazard knew well of the plaintiffs heartfelt desires to restore said structure, as well those business relationships as outlined in #1471(supra).

1474.  The Defendants sought to circumvent the previous trial that was set January 10th 2020 under the guise of intent to settle the writ of mandamus suit of *Brian Carter vs City of Hazard 16-CI-00020* that previously sought dutiful issuance of the plaintiff's permit he had already paid in 2015 to restore said structure, with no real intent on behalf of the defendants to settle said suit in good faith with the plaintiffs intent of restoring economic prosperity with said 446 Grand Hotel structure.

1475.  The initial "settlement agreement" provided by the City of Hazard's attorney Jonathan Shaw on January 10th 2020 offered a *"waiver of permit fees"* to restore said 446 Grand Hotel structure, whist deceptively excluding language that would mandate that they provide issuance of said permit for reconstruction, nor a mention of waiving its previous "cease and desist order" issued from Daniel Roll of which had effectively prevented the plaintiff from performing care of said property.

1476.  In said suit of *Brian Carter vs City of Hazard 16-CI-00020,* City of Hazard attorney Jonathan Shaw would not permit the city's primary antagonist, Daniel Roll to be deposed in said case, in extreme disingenuous nature, to deprive the plaintiff of his pursuit of discovery.

1477.  With regard to #1474(supra), the City of Hazard collected its payment from the plaintiff

186

for a permit to restore said structure, only to refuse its issuance a short time later, in direct defiance of the plaintiffs due process right to its issuance.

1478. When the plaintiff attempted to discuss enforcement concerns of the initial settlement draft agreement as outlined in #1475, the defendants, specifically Tony Eversole would then declare, "we're going to try to get the (Grand Hotel) building from him now" prompting the plaintiff to halt construction on a new roofline of said building.

1479. The new roofline as outlined in #1478(supra) was pursuant to the initial "draft" settlement agreement/offer, that was conducted in a covenant of good faith dealings on the part of the plaintiff, based on the general terms of said verbal agreement on or about January 10th 2020.

1480. Just prior to receiving said notice from Tony Eversole as in #1478(supra), the plaintiff had performed improvements at great expenditure on to said Newberrys lot and the 2015 Grand Hotel building, pursuant to the said "draft" of the first settlement agreement by the parties as aformentioned.

1481. As the consistently secretive, deceptive, evasive or otherwise extremely disingenuous tactics employed by the City of Hazard since the initiating events with the Grand Hotel as of September 1st 2015 until present, the plaintiff was given no incentive to "blindly trust" the City of Hazard.

1482. As the plaintiff had good reason not to "trust" the defendants of the City of Hazard, beginning on or about February 21st 2022, defendants of the City of Hazard, namely Hazard mayor Donald Mobelini, Tony Eversole, and attorney Denise Davidson then promptly engaged in a subsequent, indefinite breach of its own contractual obligations to "leave the parking taken from the plaintiff as city parking" only to deprive all form of public usage for parking, specifically targeting the plaintiff and his residential tenants of his former 67 Whitaker Way building/facility as was otherwise cited in stipulation #1 of its "contract of sale" of the Grand Hotel property, exhibit 58, stipulation #1.

1483. In accordance with the original deed, "forty feet (40ft) from the back of the Grand Hotel building" did not include the said parking beyond the building itself.

1484. The City of Hazard breached its contract by not allowing the plaintiff to "buy back" the property pursuant to stipulation #1 paragraph #2 or not allowing the plaintiff to "discuss any return transactions" of said property per the "non negotiable terms" of the City of Hazard's own "contract of sale" executed with the plaintiff on our about June 10th 2021.

1485. The defendants knew of the plaintiff and his residential tenants basic and essential needs

187

for parking, yet sought to undermine all forms of it, or nearly all forms of it, contrary to said contract.

1486. The defendants of the City of Hazard collectively knew or should have known that erection of various barriers or simply blocking access to parking would create a very distressing situation, as well as cause a significant deprivation of abilities enjoy or benefit from the residential tenants homes formerly owned by the plaintiff.

1487. Breached its covenant of contractual duty by failing to provide "just compensation" pursuant to paragraph #1 stipulation #1, by compensating only for the value of land of the Grand Hotel and Newberry lot itself, without compensation for improvements to said facility, compensation for land of additional parking taken behind Grand hotel, and compensation for tortious inference with advantages, and well as diminution required by law of eminent domain.

1488. Breached its contract in stipulation #13 of its contract of sale regarding the defendants duty of impartial judicial review by engaging in undisclosed and unlawful *ex parte* relations of favoritism with the Perry County Circuit Court judge Alison Wells, as a direct result of judge Wells conflict as board of directors member of the defendants of FOA, exhibit 49 alongside Denise Davidson, also a colleague board member, as well as Denise Davidson holding improper *ex parte* relationship with judge Wells as "master commissioner" under Wells.

1489. Master commissioner duties are known to "assist the circuit court with the commencement of its duties" a conflict not previously disclosed in inter-related state case *Carter Realty vs FOA 22-CI-00166.*

1490. The City of Hazard breached its contractual obligations by violating stipulation #14 by modifying said agreement into a "separate settlement agreement" *ex parte* without the plaintiffs permission, consent or knowledge, as well as the plaintiff being "duly informed" that said matter "was not the final resolution of the case, contract of sale only." exhibit 53 *Brian Carter vs City of Hazard 16-CI-00020.*

1491. As the City of Hazard case remains unajudicated to this date, the defendants of the City of Hazard are now subjected to a leave of amend of that case, due to the defendants tactics to willfully, intelligently, evade its lawful duties of providing the plaintiff with his rights to due process, in order to deprive the plaintiff of his rights to prosper, enjoy, use or benefit from his ownership of property.

1492. The tactics employed by City of Hazard Defendants as outlined in #1471 thru #1491 deal

188

in an obscene manner to deprive the rights of the plaintiff pursuant to 18 U.S. Code § 1961.

1493. As a DIRECT RESULT, of the aforementioned Breach of the City of Hazard's duties to honor its own forced, non negotiable terms of its own contractual obligations, in furtherance of the overall efforts to destroy property, in furtherance of said conspiracy to cause deprivation of any and all shape, form, or fashion of any enjoyment, usage, or benefit of properties, to ultimately force by threats, intimidation and other means as a DIRECT RESULT of the defendants collective, collaborative actions of convergence upon, to physically destroy, and deprive the plaintiff of all benefit of said properties, in furtherance of the City of Hazard's ongoing conspiracy to deprive all manner of the plaintiffs rights to use, benefit, enjoy and provide all forms of care of property, as aforementioned, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations at high loss, of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's Bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants

189

combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts,

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv). Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said

190

plaintiff of all forms of his previous or future advantageous business relationships,

xvi). Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii). As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii). Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property, as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

**Count VIII**
**Breach of Covenant of Good Faith Dealings**
(Prohibition Against Retaliation and Coercion 42 U.S.C § 12203), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Conspiracy Against Rights 18 U.S. Code § 241), Dealing In Obscene Manner 18 U.S. Code § 1961), (Conspiracy to Deprive Rights Under Color of Lawful Authority 18 U.S. Code § 242), (41 U.S. Code § 6503 Breach or Violation of Contract terms)

1494. 18 U.S. Code § 242 makes it unlawful to deprive, or conspire to deprive a citizen of their rights whist asserting, assuming, or "taking" authority jurisdiction a governing agency does not have given to it by legislative authority or right to assume authority it by fact does not have, in order to accomplish a secular or overall goal of depriving a citizen of their rights.

1495. Pursuant to 18 U.S. Code § 1961 it shall be unlawful for the defendants to deal in an obscene manner, in order to deprive rights by an organized criminal conspiracy to deprive rights for the unjust enrichment of the donor influences of the "non profit organizations" FOA, HDA, and EDA.

1496. 42 U.S. Code § 12203 makes it unlawful to use threats, intimidation or coercion in order

191

to force a citizen against their will or their rights in order to deprive a citizen of those rights.

1497. Albeit written or unwritten, 41 U.S. Code § 6503 mandates that contract terms with the government be executed in manner of good faith stewardship with the public, as a duty of honorable service to the taxpaying constituents of the United States.

1498. This Court has the jurisdiction to provide relief from tortiously egregious breaches of action when said actions are intended to achieve a secular or overall goal of depriving rights to property, therefore, 42 U.S. Code § 1983 & 1985 based complaints allow redress by this court.

1499. Beginning in mid to late June 2012 until June 18th 2015 Defendants Kenneth Browning and Alan Walters breached their respective covenant of good faith dealings with their leading cabinet representatives by submitting several libelous statements on their official government documentation in order to justify their objectives of ordering the plaintiffs building to be vacated or "deemed extremely unsafe" with regard to the plaintiffs former 426 Treehouse Cafe building, with the intent to cause extreme harm to the plaintiff, by deprivation of rights to enjoy or benefit from use of property.

1500. On or about June 10th 2021 the defendants of the City of Hazard Breached its covenant of good faith dealings by abusing discretion with eminent domain for public use, to deprive the public of beneficial usage or enjoyment with fences and barriers, to only be utilized on the whims, or pleasure of the defendants of FOA or other inter-related "non profit organizations" known to be affiliated with the City of Hazard, FOA, HDA, "Mountain Association," and EDA, respectively.

1501. Beginning on or about June 10th 2015 Defendant Ronald Hacker breached his respective covenant of good faith dealings with his leading cabinet representatives by submitting intentionally misrepresenting material facts on his official government documentation in order to reinforce the objectives of Kenneth Browning and Alan Walters's ordering of the plaintiffs building to be vacated or "deemed unsafe" with regard to the plaintiffs former 426 Treehouse Cafe building.

1502. Beginning in early to late September 2015 Defendant Ronald Hacker breached his respective covenant of good faith dealings with his leading cabinet representatives by submitting intentionally misrepresenting material facts on his official government documentation in order to reinforce the objectives of Kenneth Browning and Alan Walters's ordering of the plaintiffs building to be vacated or "deemed unsafe" with regard to the plaintiffs former 67 Whitaker Way seventeen unit apartment building, in order to have said facilities electric utilities removed from previously permitted

192

service, without the lawful authority to do so.

1503. Beginning in mid to late June 2012 until June 5th 2016, defendant Mike Haney was provided with exculpatory information from the plaintiff regarding the 426 main street and 67 Whitaker Way buildings, revealing a fraudulent concealment of material facts from Ronald Hacker, specifically regarding a 2015 unauthorized electricity services disconnection of the plaintiffs former 67 Whitaker Way apartment building by the Public Protection Cabinet and "Hazard City entities."

1504. Prior to the providing of the aforementioned exculpatory information to Mike Haney, #1503(supra), representative of the Public Protection Cabinet also known as The Office of the State Fire Marshal regarding the 67 Whitaker Way apartment building, defendant Mike Haney was also provided with exculpatory information regarding the vacature/shutdown and injunction order against the plaintiffs former 426 main Treehouse Cafe building.

1505. Defendant Mike Haney breached his covenant of good faith dealings with the plaintiff when he knew or should have known the negative rhetoric or narratives provided from his subordinates Kenneth Browning, Alan Walters, and former state electrical inspector Ronald Hacker were highly questionable and/or subjective at minimum, yet obsessively sought to achieve deprivation of the plaintiffs beneficial usage of property, with extreme indifference of his duty to be amicable with the plaintiffs need for assistance with his subordinate representatives, primarily Kenneth Browning and Ronald Hacker, to deprive the plaintiff of said rights to property.

1506. Defendant Daniel Roll, representative of the City of Hazard breached his covenant of good faith dealings with the plaintiff by instructing the plaintiff to "come in and pay for a phase one permit to brace the walls and make safe" following the 2015 destruction of the plaintiffs historic 446 Main Street Grand Hotel/Main Street Mall building, and then "changed his mind" on providing the plaintiff of due process with its issuance.

1507. The afterwards mention/deprivation of said duty to provide permit issuance was then stated by Daniel Roll was that "main street could be obstructed for an indefinite period of time with said wall braces and is unacceptable for that reason."

1508. Defendant Daniel Roll breached his covenant of good faith dealings with the plaintiff when he knew or should have known that if the plaintiff had ever indeed "failed to take remedial

193

actions" as was implied under #1507(supra), the City of Hazard, could have later acted in its own regard to remedy said issue itself and bill the plaintiff for the cost pursuant to KRS 227.390, KRS 99.360(1)(k), this was not done or utilized to the plaintiffs benefit.

1509. On or about September 22nd 2021 the City of Hazard "changed the main street parking configuration" from horizontal to slanted vertical parking, with a conversion of a two lane drive lane into a one lane drive lane, in a further demonstration that "alternative measures" could have easily been taken to accommodate the plaintiffs 2015 wall bracing plan for reconstruction of the plaintiffs former 446 Grand Hotel building/facility, without causing complete, "forever obstructions of main street traffic" as was previously claimed or implied in #1507(supra).

1510. Defendant Payton Morton personally desired to have serviceable portions of the plaintiffs 446 Grand Hotel building destroyed for Morton's personal pleasure and convenience by having the plaintiffs building "physically separated" from his own building, located at 470 Main Street, otherwise known as the Public Defenders building during the September 2015 events with said 446 building.

1511. Defendant Steve Campbell is widely known for his personal desires to destroy the plaintiffs former 446 Grand Hotel building/facility for his own enrichment.

1512. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff when knew of the plaintiffs personal desires to pursue his own ambitions as facility owner to continue with said restoration of the former 446 Grand Hotel building/facility, yet contrarily to the desires of the owner, sought to pursue the personal desires of defendants Steve Campbell and Payton Morton to have said facility destroyed, over the desires of the plaintiff, as the 446 buildings righteous owner of said property.

1513. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff when he proceeded to destroy otherwise serviceable portions of said 446 Grand Hotel facility for the personal pleasures, conveniences and long term profits of Steve Campbell and Payton Morton's mutual pleasure or benefit of seeing the plaintiff destroyed or personally injured, without permission or consult with the plaintiff.

1514. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff by openly disregarding a writ of mandamus lawsuit *Brian Carter vs City of Hazard 16-CI-00020* seeking or requesting that the plaintiff be provided with his lawfully paid permit

194

to commence facility restoration as aforementioned.

1515. In September 1st 2015 defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff by declaring the former Grand Hotel building a "collapsible hazard zone," yet afterwards brought in a team of his own contractors directly into said building by Keith Miller Construction on or about October 17th 2015 in order to "provide the City of Hazard a bid seeking a (unauthorized) demolish/destruction of said (446) structure," in a demonstration that stated concerns were not as real genuine in intent as first implied, and as reported by visual and verbal contact with the plaintiffs then asbestos abatement contractor Robert Combs.

1516. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff by declaring that the plaintiffs former 446 Grand Hotel building "had all these new cracks in the brick walls that weren't there before" after the 2015 fire damage of the 446 Grand Hotel building/facility, without evidence to support such a claim.

1517. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff by declaring "we're going to hire our own structural engineer to further the interests of the City of Hazard" to suit his own goals of demolishing said 446 Grand Hotel structure, without any form of permission from plaintiff, as outlined in the plaintiffs writ of mandamus suit, likewise filed on or about January 13th 2016.

1518. The City of Hazard, then hired stated structural engineer, to support its goals of destroying the plaintiffs former 446 Grand Hotel building/facility on or about September 29th 2015.

1519. The stated City of Hazard structural engineer produced a report with his own findings on or about October 16th 2015.

1520. In the stated report as cited in #1519(supra), the structural engineer hired by the City of Hazard was unable to deny that the walls could still have simply been braced to support the plaintiffs goals of restoration of said 446 Grand Hotel structure, in accordance with the plaintiff's structural engineers design.

1521. The stated structural engineer hired by the City of Hazard *admitted*, contrary to the claims made by defendant Daniel Roll's claims, that "clay brick tends to have good resistance to fire."

1522. The structural engineer hired by the City of Hazard recommended that the 446 building be "demolished down to the limestone plasters" as an alternative to the wall bracing proposal

on or about October 16th 2015 previously put forth by the plaintiffs structural engineer.

1523. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff by declaring that the plaintiff was "welcome to attend the bid hearing (regarding the demolition proposed by the City of Hazards engineer) but no further discussions would take place" on or about November 12th 2015.

1524. Defendant Daniel Roll of the City of Hazard breached his covenant of good faith dealings with the plaintiff, by willfully ignoring and/or disregarding any and all "alternative work proposals" provided to Daniel Roll from the plaintiff, when he knew, or should have known of the plaintiffs attempts to do so in opposition of the City of Hazard taking steps to perform any unauthorized demolition of his former 446 historic Grand Hotel/Main Street Mall building/facility.

1525. The defendants of the City of Hazard breached its covenant of good faith duties with the plaintiff by destroying otherwise serviceable portions of the plaintiffs former 446 Grand Hotel building/facility having no relation whatsoever to public safety, while operating under the guise of public safety, in the month on or about February 2nd of 2016.

1526. The named serviceable portions of the demolished/destroyed 446 Grand Hotel building as aforementioned in #1523(supra), by the hand of the City of Hazard's 2016 contractors, included the peak of the limestone plasters, the eighty foot steel reinforced awning and support pillars, the glass of the front entrance, and demolishing of a 7ft wide area of the 446 Grand Hotel building thereafter referred to as "opening up the alleyway" by Daniel Roll, among other damages unrelated to safety.

1527. Defendant Paul Collins of the City of Hazard, as former city legal representative, breached his covenant of good faith dealings with the plaintiff by declaring "the city has hired its own engineer and his determination is what we're going to go with" knowing, or should have known, of the City's prior duty to issue permit to the plaintiff, to proceed with his own plans of structure repairs.

1528. Attorney for the plaintiff, Ned Pillerdorf, requested to Paul Collins, that the City of Hazard "send the plaintiff a list of requirements to lift the cease and desist order" that was previously preventing the plaintiff from taking action on the property, with which defendant Paul Collins quickly replied "the city's not doing that! The city's not doing that!" Verbatim, with regard to #1512 thru #1527.

1529. Attorney for the plaintiff, Ned Pillerdorf, further requested to Paul Collins about any remedies or options, with which Paul Collins replied, "there are no remedies! There are no options!

196

Verbatim as in #1512 thru #1528(supra).

1530. Jonathan Shaw attorney for the City of Hazard in *Brian Carter vs City of Hazard 16-CI-00020* performed bad faith dealings within the court by asking the court to "limit what he's able to negotiate" regarding the Perry Circuit Court's ruling that the case of Brian Carter vs City of Hazard be ordered to mediate on or about January 29th 2021.

1531. Jonathan Shaw attorney for the City of Hazard in *Brian Carter vs City of Hazard 16-CI-00020* breached his covenant of good faith dealings by refusing to allow Daniel Roll to be deposed.

Paul Collins breached his covenant of good faith dealings by declaring that "Mr Carter failed to exhaust his administrative remedies" after openly denying any and all "remedies" regarding the September 1st 2015 thru March 8th 2016 demolition events involving the 446 Grand Hotel building.

1532. Daniel Roll under his official capacity as City of Hazard official breached his covenant of good faith dealings with the plaintiff by refusing to read the plaintiff his rights pursuant to *Miranda vs California 486 U.S. 1308 (1988)* regarding any appellate process or "administrative appellate procedures" by willfully omitting any information on Daniel Roll's orders as "appellable" to the City of Hazard, as an available option for the plaintiff to petition his opposition or grievances, as opposed to the bringing of suit in *Brian Carter vs City of Hazard 16-CI-00020.*

1533. Denise Davidson and Donald Mobelini breached their covenant of good faith dealings with the plaintiff by exploiting the plaintiffs resources by scandal or trickery, under the false pretenses that they'd allow the plaintiff to reconstruct his former 446 Grand Hotel building, as outlined, from on or about January 10th 2020 throughout March 13th 2020, until June 10th 2021.

1534. The said scandal or trickery employed by Denise Davidson and Donald Mobelini #1533(supra) was then followed to further extort the plaintiff to deprive prosperity of ownership of property after the plaintiff had provided equitable service of duty of good faith for property improvements, only to then be forced, by extreme coercion or duress, to "sell his property and accept our terms or lose everything" in a further breach of covenant of good faith dealings with the plaintiff.

1535. The defendants Donald Mobelini and Denise Davidson as in #1534(supra), breached their covenant of good faith dealings with the plaintiff by again breaching the terms of its own written dictated, non negotiable terms of its own written contract, by the unlawful convergence upon the remaining non seized properties of 67 Whitaker Way and 426 Main buildings, in order to directly cause

197

severe deprivation the plaintiffs abilities to use, or rights to use, enjoy, or benefit from said property.

1536. The Defendants of FOA, EDA, and HDA breached their covenant of good faith dealings with the plaintiff by utilizing their collective influence over City of Hazard and Public Protection Cabinet, in a highly coordinated series of efforts to undermine and destroy the plaintiff, personally, financially, and emotionally, as a tax and economically producing citizen of the United States.

1537. Defendants of the City of Hazard, namely Daniel Roll, Tony Eversole, Donald Mobelini, and Denise Davidson breached their covenant of good faith dealings by "making deals" with the plaintiff to perform various tasks to improve property, only to quickly call in random "complaints" to state agencies in an attempt to cause discouragement, harassment or annoyance, in order to undermine the plaintiffs improvement efforts at the 426, 67 Whitaker Way, and 446 Main Street properties.

1538. The defendants of the City of Hazard in their coordinated pact with the Public Protection Cabinet breached their covenant of good faith dealings with the plaintiff by consistently applying an unequal or unfair standard or set of standards upon the plaintiff that is not applied to others.

1539. The defendants of the City of Hazard as well as the Public Protection Cabinet commonly breach their covenant of good faith duties to the general public by offering "special favoritism" in support of some while working to undermine or diminish abilities of others to use, benefit and enjoy property.

1540. The defendants often employ said tactics of unfair, unequal, or generally obscene behaviors as outlined in #1539(supra) under the guise of "promoting safety or compliance."

1541. Defendants collectively breach or have breached their covenant of good faith dealings by "teaming up" in order to provide widespread support for some, while "teaming up" in order to undermine the efforts of others.

1542. The defendants breach their covenant of good faith dealings with the general public by operating as a for profit corporation, whist reaping benefits of millions in federal and state subsidies, selling the product it was already been paid to build by the taxpayers, marketing such real estate development efforts as "charitable organizations" or "charitably providing housing for flood families" or implying otherwise profitable operations as "charitably providing housing for the community."

1543. Public Protection Cabinet breached its covenant of good faith dealings or obligations to the plaintiff by abusing state circuit court process under false statements or pretenses of the 426 Main

198

Street building made by Kenneth Browning and Alan Walters in order to directly deprive the plaintiff of enjoyment, benefit or abilities to care for said property as a direct result of tortious interference by said methods.

1544.   The defendants collectively breached their covenant of good faith dealings with the plaintiff by dealing in obscene manner or obscene manners to deprive all forms of beneficial usage, care or enjoyment of property, as aforementioned in #118 thru #1543(supra), as well as the additional causes of action nine (9) through thirty two (32), as aforementioned in summation to this complaint.

1545.   As a DIRECT RESULT of the collective, collaborative actions of acting in bad faith, breaching several covenants of good faith, and dealing in an obscene manner, or generally obscene manner, in order in furtherance of the defendants overall goals of organized conspiracy to deprive his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit property, the plaintiff was:

i).   Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii).   Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii).   Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv).   Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v).   Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi).   Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the

199

monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit,

xv).  Deprivation of future productivity as a direct result of the plaintiffs age and remaining lifespan over the last thirteen (13) years of the defendants harassing/fighting senselessly with the plaintiff over the defendants coveting desires of the plaintiffs property, and against plaintiffs rights or desires to enjoy and benefit from ownership of property, whilst depriving said plaintiff of all forms of his previous or future advantageous business relationships,

xvi).  Incurred approximately $808,627.00 (conservatively estimated), in damages as a direct result of wasted effort in improvements and essential care, only as an exercise in futility by the willful disregard of said improvements by the defendants of City of Hazard and the Public Protection Cabinet, via the influence and coordination with the proxies of their "non profit" racketeering organizations of FOA, HDA, and EDA, in pursuit of destroying the plaintiff to enhance their own, self enrichment "property development" endeavors,

xvii).  As a direct result of the defendants collective efforts to "destroy the plaintiff at any cost no matter what it takes," the plaintiff has been indefinitely deprived of his rights, of all shape form, and fashion of abilities to live a peaceful, productive, meaningful life as an honorable tax and economically contributing citizen of the United States, and as a productive, hard working, tax contributing resident of Perry County Kentucky, and;

xviii).  Forced final liquidation of all remaining main street commercial assets, and adjoining assets, in order to avoid the physical destruction of the 3rd and final 426 building, as well as remaining parking lots and 67 Whitaker Way property,  as a direct result of the destructive actions of Steve Campbell, favored "well connected" contractor of the City of Hazard.

## Count IX
## Breach of Fiduciary Duty
(29 USC 1109 – liability for breach of fiduciary duty), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985),  (Conspiracy Against Rights 18 U.S. Code § 241), Dealing In Obscene Manner 18 U.S. Code § 1961), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242)

1546. Pursuant to U.S. Code § 1109 allows relief to be granted by this court when any person who is a fiduciary with respect to a plan or duty, behaves in a manner that contradicts their duty to act, or fail to contribute in any manner that does not benefit the taxpaying constituents of the United States as fiduciary beneficiaries of the government, or governing agencies within the United States.

201

1547. State government officials, primarily those subject to this suit, the City of Hazard and the Public Protection Cabinet, have a duty to its taxpaying constituents of the United States, to act and behave in a manner to behave that benefits the citizens of the Commonwealth, within the United States.

1548. 18 U.S. Code § 242 makes it unlawful to deprive, or conspire to deprive a citizen of their protected rights whist asserting, assuming, or "taking" authority jurisdiction a governing agency is not factually bestowed upon it, or given to it by legislative authority, or right to assume authority it by fact does not have, in order to accomplish a secular or overall goal of depriving citizens their rights.

1549. Pursuant to 18 U.S. Code § 1961 it shall be unlawful for the defendants to deal in an obscene manner, in order to deprive rights by an organized criminal conspiracy, to deprive rights for the unjust enrichment of the donor influences of the "non profit organizations" FOA, HDA, and EDA.

1550. This Court has the jurisdiction to provide relief from tortiously egregious breaches of action when said actions are intended to achieve a secular or overall goal of depriving rights to property, therefore, 42 U.S. Code § 1983 & 1985 based complaints allow this court to provide redress.

1551. 18 U.S. Code § 241 makes it unlawful for the defendants to conspire together for the collective, overall goal to deprive the plaintiff of all manner of his rights to use, enjoy, or benefit from ownership of property, or deprive his protected rights to property.

1552. A fiduciary duty arises in relationships where one party places trust and confidence in another party, often referred to as the beneficiary, expecting that the latter will act in their best interests.

1553. The Commonwealth of Kentucky local and state governments serve as fiduciary representatives on behalf of the citizens of the state of Kentucky, as their respective beneficiaries.

1554. The citizens of the state of Kentucky are the beneficiaries of the Commonwealth of Kentucky state and local government entities.

1555. The Commonwealth of Kentucky local and state governments exist at the consent of the governed.

1556. The Commonwealth of Kentucky local and state governments are dutiful bound as a state within the United States, to provide amicable service for the benefit and prosperity of its tax and economically contributing citizens operating within the jurisdictional authority of the United States.

1557. A breach of fiduciary duty happens if a fiduciary behaves in a manner that contradicts their duty.

202

1558. The Commonwealth of Kentucky local and state governments are dutiful bound as a state operating within the United States, to a duty of care to act with the care that a reasonably prudent person would exercise on behalf of its beneficiaries.

1559. The Commonwealth of Kentucky local and state governments are dutiful bound as a state operating within the United States, to a duty of loyalty to its beneficiaries by avoiding conflicts of interest and by not profiting from the fiduciary relationship without the consent of the beneficiaries of its constituents.

1560. The Commonwealth of Kentucky local and state governments are dutiful bound as a state operating within the United States, to a duty of good faith of acting honesty and with integrity in all dealings related to the fiduciary relationship with its constituents.

1561. Commencing on or about July 2012, or mid 2012, until present, defendant Kenneth Browning, representative of the Public Protection Cabinet, a government agency, breached his fiduciary duty of good faith by submitting libel statements on his official documentation regarding the conditions of the plaintiffs former 426 Treehouse Cafe building, to suit his personal objectives of "having Brian Carter shut down" or cause other immediate, direct, personal harm to the plaintiff.

1562. Commencing on or about July 2012, or mid 2012, until present, defendant Alan Walters representative of the Public Protection Cabinet, breached his fiduciary duties of good faith by submitting libel statements on his official documentation regarding the conditions of the plaintiffs former 426 Treehouse Cafe building, to aid his colleague Kenneth Browning's personal goals of "having Brian Carter shut down" or cause other immediate, direct, personal harm to the plaintiff.

1563. Commencing on or about July 2012, or mid 2012, until June 2015, defendant Ronald Hacker representative of the Public Protection Cabinet, breached his fiduciary duties of good faith by misrepresenting material facts on his official documentation regarding the conditions of the plaintiffs former 426 Treehouse Cafe building, to aid his colleague Kenneth Browning's personal goals of "having Brian Carter shut down" or cause other immediate, direct, personal harm to the plaintiff.

1564. Commencing on or about July 2012, or mid 2012, until present, defendant Mike Haney representative of the Public Protection Cabinet, a government agency, breached his fiduciary duty of care to act by disregarding the plaintiffs rebuttals to the documentation provided from his subordinates, Kenneth Browning, Alan Walters, and Ronald Hacker, in regard to the plaintiffs former 426 Treehouse

203

Cafe building, with extreme indifference of material fact, in order to aid his colleague Kenneth Brownings personal goals of "having Brian Carter shut down" or cause other immediate, direct, personal harm to the plaintiff.

1565. Commencing on or about July 2012, or mid 2012, until present, defendant Mike Haney representative of the Public Protection Cabinet, a government agency, breached his fiduciary duty of by willfully disregarding his own expert opinion from Public Protection Cabinet representative Steven Hammock, that the plaintiffs formerly owned 426 building "should have remained open."

1566. Commencing on or about July 2012, or mid 2012, until present, defendant Mike Haney representative of the Public Protection Cabinet, a government agency, breached his fiduciary duty of care to act by disregarding all subsequent evidence of bad faith dealings regarding the conduct of his staff regarding the extreme lack of candor with submissions of their official filings of the plaintiffs former 426 Treehouse Cafe building, primarily reports that were provided by Kenneth Browning.

1567. Among the libel statements provided and marketed to Browning's superiors, namely Mike Haney of the Public Protection Cabinet, in furtherance of his personal goals to "have Brian Carter shut down" was that the said 426 building/facility "had no fire separation."

1568. Kenneth Browning knew or should have known that the statements claiming the plaintiffs former 426 building "having no fire separation" were astoundingly false, yet continued with the libelous activity to further his personal goals to "have Brian Carter shut down" or cause other immediate, direct, personal harm to the plaintiff.

1569. On the day of June 18th 2015, the defendants of the Public Protection Cabinet and the City of Hazard initiated a highly coordinated, collaborative pact, in a series of events, to physically destroy and deprive all manner of righteous, beneficial enjoyment, usage or ability to provide basic care of the plaintiffs former fifty (50) unit apartment complex and shopping center of seven (7) businesses that had once sublet from the plaintiff.

1570. The stated businesses and apartment complex resided within three historic commercial properties residing at 446 Main Street also known as Grand Hotel/Main Street Mall, 67 Whitaker Way, a seventeen unit apartment building, and 426 building previously known as Treehouse Cafe & Bakery.

1571. The Public Protection Cabinet, specifically, the also known as "Office of the State Fire Marshal" operates under the umbrella of the Public Protection Cabinet.

The stated authority discretion of the state fire marshal is generally limited to vacating a building or facility if it is determined to be "unsafe for occupancy" by the Public Protection Cabinet.

1572.  There is no known authority the stated Office of the State Fire Marshal has to order for a building be vacated, simply due to a "failure to follow a direction" or some manner of process or procedure of said Public Protection Cabinet, KRS 227.330 particularly around the time of stated June 2015 events respectively.

1573.  On or about the day of June 18th 2015 defendant Peter Irvin, counsel of the Public Protection Cabinet, breached his fiduciary duties of good faith to the plaintiff, a tax and economically contributing citizen of the Commonwealth of Kentucky and of the United States, by seeking and obtaining an injunction against the plaintiff via Perry Circuit Court Judge Alison Wells, a state circuit court, in order to vacate the residential use portions of the plaintiffs former 426 Treehouse Cafe building, under the declaration "the plaintiff didn't update the fire separation when asked."

1574.  State Circuit Court Judge Alison Wells was later discovered to be on the defendants of Foundation of Appalachian Kentucky, (FOA)'s board of directors following the subsequent events of the eventual 2023 fire destruction loss of the plaintiffs 67 Whitaker Way apartment building, at the hands of the defendants collective, collaborative efforts.

1575.  Defendant Peter Irvin breached his fiduciary duty of good faith to the plaintiff by refusing to disclose or concealing relevant material fact that said "direction to update the fire separation" was based on material false statement "that no fire separation existed" as libelously promoted by defendant Kenneth Browning.

1576.  Defendant Peter Irvin breached his fiduciary duty of good faith dealing with the plaintiff by seeking said injunction for an a stated "failure to comply with a direction to update the 426 buildings fire separation" which stood outside of the limits of authority discretion of the Public Protection Cabinet.

1577.  Defendant Peter Irvin breached his fiduciary duty of good faith dealing with the plaintiff by obtaining said injunction against the plaintiffs former 426 building without establishing a factual, evidentiary basis that had ever supported the said structure was "especially susceptible to fire loss," or "eminent risk of loss of life and limb" among other negatively charged rhetoric.

1578.  Defendant Peter Irvin breached his fiduciary duty of good faith dealing with the plaintiff

205

by obtaining said injunction against the plaintiffs former 426 building.

1579. Immediately following the June 18th 2015 events that transpired in state circuit court, the defendants of the Public Protection Cabinet and the City of Hazard breached their fiduciary duties of good faith dealing with the plaintiff by commencing a series of follow up actions to the achieved injunction against the residential use portions of the plaintiffs former 426 Treehouse Cafe building.

1580. On the date of September 1st 2015, the Public Protection Cabinet and the City of Hazard behaved in a manner contrary to said entities fiduciary duties by engaging in a criminal conspiracy to physically destroy and deprive all manner of beneficial usage or enjoyment of the plaintiffs former 446 Grand Hotel building, by "allowing every square inch to burn" following a burglary/trespassing of a previously vacant apartment unit in said facility.

1581. The City of Hazard policy is pervasively known with its City of Hazard Police department by declaring, or having an "established policy" that "criminals have squatters rights."

1582. Shortly after the date of said September 1st 2015 total fire loss of the plaintiffs former 446 Grand Hotel building/facility, defendants of the Public Protection Cabinet and City of Hazard officials, specifically Ronald Hacker and Kenneth Browning of the Public Protection Cabinet, were observed exchanging random smirks, sneers and snide remarks directed at the plaintiff near the plaintiffs former 67 Whitaker Way building, in a manner inconsistent with said entities fiduciary duty to maintain professional courtesy with regard to treatment of the plaintiff.

1583. The 67 Whitaker Way white apartment building resided adjacently located from the former 446 Grand Hotel building/facility in Hazard Kentucky.

1584. A short time later after the demeaning series of "conversations" as stated in #1582(supra), the Public Protection Cabinet and "Hazard City entities" violated said entities fiduciary duty by sending an email to Kentucky Power with a "request that power be shut off the (remaining) 67 Whitaker Way apartment building" shortly after September 1st 2015.

1585. The said request to disconnect electrical services to a building that have been previously approved for electrical service is outside the limits of any known authority jurisdiction of the Public Protection Cabinet or the City of Hazard, thus presents a breach of said cabinets fiduciary duties by operating in a manner inconsistent with its duties.

1586. The City of Hazard also followed suit by unjustly removing water and gas utilities from

206

said 67 Whitaker Way building, in a breach of its fiduciary duties outside of any known authority discretion.

1587. Over subsequent weeks, after September 1st 2015 the City of Hazard further breached its fiduciary duties by directing its City of Hazard Police Department to forcibly evict residential tenants from the plaintiffs 67 Whitaker Way apartment building without a writ of possession, injunction, or any other means of lawful court order, outside it's limits of City of Hazard's authority jurisdiction.

1588. Beginning on September 1st 2015 until June 25th 2021, the defendants of the City of Hazard breached their fiduciary duties by knowingly exploiting the plaintiffs personal and financial resources for various improvements of "cleanup operations" of the former 446 Grand Hotel building lots and vacant Newberrys lots, under the false pretenses that the City was going to release its hold on said property for redevelopment by the plaintiff.

1589. The defendants of the City of Hazard knew of the plaintiffs desires to restore economic prosperous or advantageous business relationships with the local community of said 446 Grand Hotel building and Newberrys parking lots, by restoration of said structure and lots, yet sought unjust exploitation of the plaintiff with extreme indifference of duties, to indefinitely deprive plaintiffs enjoyment, benefit and usage of said lots, in favor of the defendants and their "well capitalized non profit" as "we just think our non profit will do better at that location."

1590. The stated "well capitalized non profits" as outlined in #1589(supra) represent the defendants Gerry Roll of FOA and their inter-related "Mountain Association" and others, that are known to serve at the pleasure or "in alignment" with the City of Hazard.

1591. The defendants of Public Protection Cabinet breached its fiduciary duties to protect and serve the public by allowing the defendants of the City of Hazard to erect various barriers/blockades, walls and fences all around the remaining portions of the plaintiffs 67 Whitaker Way building and the plaintiffs primary residential access portions of his former 426 building/facility, with extreme indifference to the public's needs to safely access/exit the named properties, in a manner inconsistent with its duties.

1592. The defendants of Public Protection Cabinet and the City of Hazard breached its fiduciary duties to the public by willfully allowing a profoundly unequal application of its codes, rules, procedures and general practices upon the plaintiff vs that of other developers, particularly in

207

favoritism or enhancement profitability, or enrichment of the defendants of FOA, HDA, and EDA.

1593. The Defendants of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, (HDA), and Economic Development Alliance (EDA) collectively advertise themselves as "charitable non profit organizations" via their tax classification statuses as "501 3c's."

1594. The Defendants of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, (HDA), and Economic Development Alliance (EDA) are well known to publish and advertise themselves as "promoting safe affordable housing and economic development opportunity solutions for Perry County."

1595. Defendant Betsy Clemons is well known to represent all or at least in some capacity, all three organizations of FOA, HDA and EDA, along with Defendant Donald Mobelini, as the mayor of the City of Hazard, also representing EDA.

1596. The Defendants of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, (HDA), and Economic Development Alliance (EDA) breached their fiduciary duties as "charitable non profit organizations promoting safe affordable housing and economic development opportunity solutions for Perry County" by undermining the plaintiffs commitment to doing the same.

1597. The defendants of the City of Hazard breached their fiduciary duties in March 2016 by performing a "partial demolition" areas of the plaintiffs former 446 Grand Hotel building that had nothing to do with "improving public safety" such as demolishing the large awning, pillars, entrance among "creating an alleyway" on behalf of pleasuring defendant Payton Morton by doing so.

1598. The defendants of the City of Hazard knew that such demolition outlined in #1597(supra) of otherwise serviceable portions of the plaintiffs former 446 Grand Hotel building had the potential to lessen the visual appeal of said structure.

1599. Thereafter the said 446 Grand Hotel structure was publicly smeared by the defendants of WYMT to refer to said structure as "an eyesore" in attempts to devalue the property in the eyes of the general public as well as to cast the plaintiff in a negative, unfavorable light with the general public.

1600. The defendants of the City of Hazard and WYMT breached its fiduciary duties to convey factual complete information to the general public regarding the interference of the City of Hazard with the plaintiffs developmental ambitions with said 446 Grand Hotel building/property, as a direct result of the City of Hazards refusal to issue the permits the plaintiff had paid for to further its development.

208

1601. Beginning in June 2015 until present, The Public Protection Cabinet and the City of Hazard behaved in a manner contrary to said entities fiduciary duties by engaging in a criminal conspiracy to physically destroy, and deprive all manner of beneficial usage or enjoyment of the plaintiffs former 446 Grand Hotel building, by "allowing every square inch to burn" following a known burglary/trespassing event of a previously vacant apartment unit in said facility, September 1st 2015.

1602. The said conspiracy as outlined in #1601(supra), was initiated on behalf of its proxy representatives, The Defendants of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, (HDA), and Economic Development Alliance (EDA) and other related "organizations" affiliated, in order to reap further profit from their non profit business ventures, by destruction of the plaintiffs commercial properties, or deprivation of beneficial usage of properties.

1603. As a DIRECT RESULT of the collective, collaborative actions of the City of Hazard and Public Protection Cabinet, acting in extreme manner of breaching said government entities fiduciary duties of said entities taxpaying constituents, in order to further breach several covenants of good faith, dealing in an obscene manner, or generally obscene manner, in order in furtherance of the defendants overall goals of organized conspiracy to deprive his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, deprive the plaintiff of all forms of enjoyment, and deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a

direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff

210

by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count X
### Deprivation of Rights by Felony Extortion
(Violation of the Hobbs Act 18 U.S. Code § 1951), (Extortion to Aid Organized Crime 18 U.S. Code § 1961-68), (Theft by Extortion KRS 514.080), (Extortion by Servants of United States 18 U.S. Code § 872), (Receipt of Property or Proceeds from Extortion 18 U.S. Code § 880), (Violation of 5th Amendment Eminent Domain Law), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Conspiracy Against Rights 18 U.S. Code § 241), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Violation of the Real Property Acquisition Act of 1970 {URA § 201} 42 U.S.C. § 4621 (1970)) (Prohibition Against Coercion 42 U.S.C § 12203), (42 U.S.C § 3617 Interference, coercion, or intimidation)

1604. 18 U.S. Code § 1951 outlines the Hobbs Act, established in 1946, named after United States representative Sam Hobbs, in order to combat racketeering in labor-management disputes however has since been applied to a wide range of criminal activities involving robbery and extortion.

1605. As the defendants collective, collaborative, concentrated efforts to physically destroy, as well as indefinitely deprive the plaintiff off all manner of righteous, beneficial usage, enjoyment of property, or abilities to use, benefit or enjoy property, among said acts being extortion, or extortive in nature, directly resulted in ending the plaintiffs interstate commerce of business activities within the states of Kentucky and Florida, the conspiracy elements cited within the Hobbs Act applies.

1606. 18 U.S. Code § 1961-68 outlines the RICO statute, allowing the plaintiff to seek civil redress as a direct result of the extortion practices enacted by the City of Hazard and the Public Protection Cabinet, in order to destroy the plaintiffs property, deprive his rights to property, for the unjust enrichment of the non government entities, or proxies of government entities named in this suit, specifically the entities of FOA, EDA, and HDA, inter-related to the conspiracy allegations of this suit.

1607. KRS 514.080 is the Kentucky State Law which makes it unlawful to engage in extortion of others in order to commit or aid in any other criminal offense, such as felonious application of lien under color of lawful authority to do so, the implement to exploit the plaintiffs resources under false pretenses, threatening to subject the person to hatred contempt or ridicule to impair his or her credit or

211

business repute, or refuse to perform an official duty, either expressed or implied, in such a manner to affect some person adversely, by the statute.

1608. As the matter of just compensation in dispute as outlined in #1607(supra), the amount alleged is in excess of ten thousand ($10,000.00) dollars.

1609. 18 U.S. Code § 872 makes it unlawful for government agents operating within the Commonwealth of Kentucky, as representatives of the government operating within the United States, to act in an official capacity to extort the tax and economically contributing citizens of the United States, in order to achieve crimes against the United States.

1610. 18 U.S. Code § 880 makes it unlawful for the defendants of FOA or their inter-related "Mountain Association" to obtain via government ownership or control under the guise or veil of City of Hazard's official ownership, as a direct result of the City of Hazard's unlawful activity.

1611. The 5th Amendment of the United States Constitution mandates that the defendants provide "just compensation" for the property the City of Hazard has obtained, as well as additional property unlawfully obtained, via all if its inverse condemnation tactics.

1612. "Just Compensation" encompasses a broader range of compensation factors involving "totality of circumstances" approach, which includes surroundings, improvements to property, or in the case of the plaintiff, a tortious interference with advantageous, or prospective advantageous business relationships the defendants, have since deprived the plaintiff, of his beneficial usage of property,

1613. "Just Compensation" also can encompass an "income capitalization approach" among other methods, to compensate for the permanent loss of the advantageous business relationships the plaintiff had enjoyed, or would have enjoyed should he have been allowed to care for property, or overall has lost, as a direct result of the defendants interventions.

1614. Pursuant to the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 or URA § 201, 42 U.S.C. § 4621 (1970) the plaintiff is entitled to compensation for the defendants forcing of the plaintiff to relocate his business interests as a direct result of the City of Hazard's interventions with the plaintiffs advantageous business relations, by the destruction of his property, conversion of all other property, or otherwise general deprivation of his rights to property.

1615. 42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress based on the organized conspiracy of the defendants of the City of Hazard, of two or more individuals in their combined,

212

concentrated, coordinated efforts to extort the plaintiff in order to deprive him of his rights to property.

1616. 18 U.S. Codes § 241 & 242 make it unlawful for the City of Hazard officials to conspire to deprive the rights of the citizens of the United States, or deprive rights by other crimes, under the color of lawful authority, in order to achieve their collective ends of depriving rights to property.

1617. 42 U.S.C § 12203 prohibits the defendants against Retaliation and Coercion while 42 U.S.C § 3617 allows redress for interference, coercion, or intimidation by the defendants, however, both allow a path of redress by this court.

1618. On or about June 9th 2021 Defendants Denise Davidson and Donald Mobelini of the City of Hazard, committed the act of felony extortion to deprive the plaintiffs rights to property by abuse, or threats of abuse, of its eminent domain discretion, in order to force a non consensual, non negotiable "contract of sale" of the plaintiffs former 446 Grand Hotel building, vacant Newberrys Lot, and approximately 80% of all remaining parking lots, under threat of "take the deal or you will lose everything" exhibits 54 & 55.

1619. The said threat of "losing everything" as cited in 1618(supra), if the plaintiff had not "taken the deal of sale" would have included the seizure of all remaining buildings of 426 main as well as 67 Whitaker Way buildings, both in Hazard KY, as well as access to all adjoining parking lots, or abilities to use them.

1620. The said threat of "losing everything if he didn't take the deal" as in 1619(supra), would have resulted in the plaintiff receiving little to no fair compensation for those additional land or properties of 426 Main, 67 Whitaker Way property, or other adjoining parking, as a direct result of the defendants co-conspirator "partnership" with the Public Protection Cabinet and other co-conspirators of the "non profit organizations" FOA, EDA, HDA, and WYMT, engaging in, and as a direct result of, an overall collaborative, highly coordinated campaign to slander, vilify, or otherwise devalue the said remaining properties previously belonging to the plaintiff, for the unjust enrichment/enhancement of said organizations own real estate development "promotions" or other real estate "endeavors."

1621. Defendants Denise Davidson and Donald Mobelini, knew or should have known that the felonious application of lien against the 446 Grand Hotel building/facility placed by their co-conspirators Paul Collins and Daniel Roll could not be legally justified, yet utilized said lien in order to aid, or contribute to the crime of extortion against the plaintiff in order to "surrender his (446) property

213

or lose everything" exhibits 53 thru 55.

1622. Defendants Denise Davidson and Donald Mobelini of the City of Hazard knew of the plaintiffs intent to rebuild/repair/restore his former 446 Grand Hotel building, in order to restore the prospective advantageous business relationships that had already previously proven successful at the location of the plaintiffs former 446 Grand Hotel building/facility, yet sought, with extreme indifference of fiduciary duties to provide due process, in order to to forever solidity the plaintiffs indefinite deprivation of property benefit or usage as well as the general community the plaintiff had once served, by willfully depriving the plaintiffs right to provide care, usage or benefit of said property.

1623. The Defendants Donald Mobelini, Denise Davidson, Paul Collins, and Daniel Roll engaged in said practices against the plaintiffs 446 Grand Hotel property with the intent to deprive the plaintiff of his once prosperous economic advantageous business relationships, as well as prospective advantageous business relationships, without fair or just compensation for those permanent losses or permanent loss of benefit he otherwise would have continued to enjoy from those relationships.

1624. Defendants Denise Davidson and Donald Mobelini of the City of Hazard knew of the plaintiffs intent to rebuild/repair/restore his former 446 Grand Hotel building, knew of his tremendous expenditures incurred with following special rules of debris removal and other improvements, yet sought to "force a contract of sale by threat of eminent domain" discretion following those expenditures, without providing just compensation/redress for said expenditures on June 10th 2021.

1625. Defendants Denise Davidson and Donald Mobelini of the City of Hazard knew the plaintiff had a writ of mandamus lawsuit against said *City of Hazard Brian Carter vs City of Hazard 16-CI-00020* for a permit to repair said structure, after the City of Hazard already collected a permit fee from the plaintiff for said repairs to said 446 building, during the initiating September 2015 events.

1626. Defendants Denise Davidson and Donald Mobelini of the City of Hazard sought and utilized such tactics of eminent domain to undermine the plaintiffs goals and prosperity with said 446 Grand Hotel property, without just and full, proper compensation for their tortious interference with advantage and prospective business advantages the plaintiff would have otherwise enjoyed, had they not interfered with said advantageous, or prospective advantageous business relationships the plaintiff, as well as the community he once served, had once enjoyed.

1627. The defendants provided at minimum, compensation for the land and dirt beneath the

214

former Grand Hotel lot and Newberrys building lots on or about June 10th 2021.

1628.  At no point in time was additional compensation offered for over 50% of the plaintiffs only remaining parking, that formerly existed behind the former 446 Grand Hotel building/lot.

1629.  At no point in time was compensation offered for the 446 Grand Hotel building itself, or its improvements, only the dirt beneath it.

1630.  The plaintiff would have never gotten a fire sprinkler tap for his nearby 426 building "had he not taken the deal" to sale the 446 property, "or else lose everything"

1631.  At no point in time was additional compensation offered for the plaintiffs improvements to the former 446 Grand Hotel Building and Newberrys vacant lots, performed under the promises from the City of Hazard, specifically Donald Mobelini and Denise Davidson, that the plaintiff might actually be allowed to proceed with repairs and resume the prosperity the plaintiff once enjoyed with his former properties.

1632.  At no point in time were the defendants Donald Mobelini or Denise Davidson going to allow or permit the plaintiff to "buy back" any portion of seized 446, Newberrys property, or parking beyond the Grand Hotel building/property, as was otherwise strongly implied by their dictated, non negotiable, terms of the City of Hazard's own contract of sale of said property, exhibit 58 stip #1(2).

1633.  As a DIRECT RESULT of the collective, collaborative actions of the City of Hazard to extort the plaintiff into the surrender of part of his property, dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized conspiracy to deprive the plaintiff of his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i).  Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii).  Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii).  Permanently deprived of all forms of interstate commerce and prospective commerce

215

business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

216

xii).  Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii).  Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XI
### Felony Exploitation of Personal Resources
(Felony Exploitation of an Adult KRS 209.990(5)), (18 U.S. Code § 666 Conspiracy to Embezzle, Theft, Fraud and Bribery Involving Property or Benefits), (Illegal Lien KRS 434.155), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Violation of the 14th Amendment), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1634.  KRS 209.990(5) makes it a felony in within the Commonwealth of Kentucky to knowingly exploit a person in the United States, its enactment is to prevent disadvantaged adult persons from being victimized by general hoaxes or trickery in order to exploit their financial resources.

1635.  Pursuant to 28 U.S. Code § 1343(a) this court has supplemental jurisdiction to provide relief of the state claims of #1633(supra).

1636.  18 U.S. Codes § 241 & 242 make it unlawful for the City of Hazard officials to conspire to deprive the rights of the citizens of the United States, or deprive rights by other crimes, under the color of lawful authority, in order to achieve their collective ends of depriving rights to property.

1637.  42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress based on the organized conspiracy of the defendants of the City of Hazard, of two or more individuals in their combined, concentrated, coordinated efforts to extort the plaintiff in order to deprive him of his rights to property.

1638.  KRS 434.155 makes it a felony to apply a lien on property above and beyond what can be legally justified, in this case a lien of said application was applied to said 446 Grand Hotel property for the furtherance of conspiracy to exploit the plaintiffs personal resources by fraudulent means.

1639.  18 U.S. code § 666 makes it unlawful to engage in practices of bribery or hoaxes or other

forms of fraud or trickery in order to exploit the plaintiffs personal resources.

1640. The 14th amendment mandates that the defendants treat the plaintiff with fairness, due process, and equal protection of the laws.

1641. On or about June 10th 2021 Defendants Donald Mobelini and Denise Davidson, representatives of the City of Hazard intentionally and knowingly exploited the financial resources of the plaintiff by hoaxes or trickery, to coax the plaintiff into making various improvements to his former 446 Grand Hotel and Newberrys vacant lots following the initiation of a 2016 writ of mandamus, inverse condemnation and trespass/conversion complaint *Brian Carter vs City of Hazard 16-CI-00020,* via a disingenuous "settlement offer" that they would allow the facilities restoration January 13th 2020.

1642. The initial "settlement offer" was deceptively unenforceable, by willfully excluding language that would have removed the City of Hazard's "cease and desist order" which prevented the plaintiff from performing work to said facility, as well as omitting language that would have mandated that the city provide a permit that the plaintiff had already paid to the city for its issuance on or around the time of September 15th 2015.

1643. The writ of mandamus suit was filed against the City of Hazard to seek relief from the Perry Circuit Court by seeking an order of issuance of the rebuild permit of the 2015 fire damaged 446 Grand Hotel building/facility, of which the plaintiff had previosly paid for.

1644. Defendants knew well of the plaintiffs passion for restoring said historic 446 Grand Hotel structure, as well as restoring the advantageous business relationships with the general public the facility had once held within it under the plaintiffs ownership.

1645. Despite said knowledge, #1643 and #1644(supra), he defendants continued to exploit the plaintiffs resources from 2015 until 2021, regarding the plaintiffs ongoing, yet somewhat reluctant, efforts to improve the 446 building and Newberrys lot properties with the intent, and eventual success of, depriving the plaintiff of any and all forms of enjoyment, usage, or benefit of said properties in favor of profiting their "well capitalized non profit," exhibit 7, in favor of enrichment, original goals/intent, and pleasure of Steven Campbell, to complete the facilities final, total destruction for Campbell's own profit and pleasure from mid 2021 until early 2023.

1646. The said defendants sought to coerce a "contract of sale" of the said 446 and Newberry property, without just compensation for the plaintiffs previous expenditures, by threat of eminent

218

domain "or you (plaintiff) will lose everything" regarding *all* remaining properties of 67 Whitaker Way, and 426 Treehouse Cafe buildings, and adjoining lots exhibits 54 & 55

1647. As the plaintiffs other properties, 67 Whitaker Way building, and 426 Treehouse Cafe buildings were drastically devalued as a direct result of slander to title due to the collective, publicized defamatory rhetoric of the Public Protection Cabinet, of the City of Hazard, and promoted by WYMT's labeling of "the eyesore on main street," the plaintiff was placed under extreme duress that he would likely not receive any form whatsoever of "just compensation" as a direct result of the said tactics and threats, if he did not accept a "contract of sale" with regard to his former 446 Grand Hotel and Newberrys Lot on or about June 10th 2021.

1648. By the aforementioned, the plaintiff was effectively held by Denise Davidson and Donald Mobelini at a legal gunpoint to the plaintiffs head of "trust us or else you lose it all" with regard to the "contract of sale," and all other properties, rather than the honoring any shape or form of the "final settlement agreement" originally agreed upon by the parties, but not immediately signed by the plaintiff due to its lack of abilities to be enforceable, as well as lack of defendant "trustworthiness."

1649. The mandamus case that resulted in the forced "contract of sale" in *Brian Carter vs City of Hazard 16-CI-00020* still stands unadjudicated, therefore, was firmly communicated to the plaintiff and understood to "not be the final settlement of the case" Exhibit 53.

1650. Despite the clear understanding as cited in #1649(supra), the attorneys for the plaintiff and the defendants of the City of Hazard submitted and tendered a "final settlement agreement" signed by both attorneys, but not authorized or given consent by the plaintiff to do so.

1651. With regard to the initiating events of June 18th 2015 until the forced liquidation at extreme losses of the plaintiffs former commercial properties on our about August 7th 2023, as aforementioned throughout this complaint, the defendants have repeatedly exploited a previous yet profound lack of legal knowledge or legal expertise of the plaintiff, in order to achieve felonious egregious acts of destroying the commercial properties against the rights or desires of the plaintiff, in order to enhance or provide further enrichment of their own real estate developments desires or interests, by effectively eliminating the plaintiff as an alternative competitor to their own real estate developments, either by commercial or residential in usage.

1652. Paul Collins and Daniel Roll participated in the conspiracy to exploit the plaintiffs

219

personal resources for improvements to said 446 Grand Hotel property by placing a felonious lien approximately double of what could legally be justified, understood as "that was the taxable value of the 446 Grand Hotel property at the time" after the September 1st 2015 fire of said building/facility, by hoaxes, treachery deceptive practices or fraud in furtherance of said conspiracy with Donald Mobelini and Denise Davidson.

1653. As a DIRECT RESULT of the conspiracy to exploit the plaintiff resources, by the defendant representatives of the City of Hazard as aforementioned, to further extort the plaintiff into the surrender of part of his property, to then weaponize said property by using seized property to block access to remaining property, dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized conspiracy to deprive the plaintiff of his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the

monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

221

## Count XII
### Fraud Upon the Court

(Violation of Civil Rule 60.02(b)(3)), (Fraud and False Statements 18 U.S. Code § 1001), (Major Fraud Against the United States 18 U.S. Code § 1031), (False Information or Hoaxes 18 U.S. Code § 1038), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy to Defraud the United States 18 U.S. Code § 371)

1654.  Federal Rules of Civil Procedure (Rule 60(b)(3)), allows a party to be granted relief via a rule 60 motion on the ground of extrinsic fraud, misrepresentation, or misconduct by an opposing party.

1655.  18 U.S. Code § 1001(a) makes it unlawful for anyone who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, makes any materially false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

1656.  18 U.S. Code § 1031 makes it unlawful for the defendants to utilize devices of trickery or hoaxes in order to commit a major fraud against the taxpaying constitutes of the United States.

1657.  In accordance with 18 U.S. Code § 1031, the plaintiff was a significant tax and economically contributing citizen of main street in Hazard Kentucky, from mid 2012 until August 2023, provided significant business opportunities via sublet to seven (7) independently ran businesses, as well as approximately fifty (50) affordable residential homes for the local citizens of Perry County, Kentucky, thus, the schemes or fraud taken by the defendants in order to deprive, and physically destroy the plaintiffs commercial building complex by deprivation of rights to property with said hoaxes and trickery, to serve no other purpose but to cripple an already impoverished tax base, in order to achieve or perpetrate a major fraud against the United States itself.

1658.  Pursuant to 18 U.S. Code § 1038(c) allows the court to provide redress to the plaintiff for false information, hoaxes, by whoever engaged in conduct with the intent to convey false or misleading information, shall be liable in a civil action to any party incurring expenses for said conduct.

1659.  18 U.S. Codes § 241 & 242 make it unlawful for the City of Hazard officials to conspire to deprive the rights of the citizens of the United States, or deprive rights by other crimes, under the color of lawful authority, in order to achieve their collective ends of depriving citizens of their rights.

1660.  42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress based on the organized

222

conspiracy of the defendants of the City of Hazard, of two or more individuals in their combined, concentrated, coordinated efforts to defraud the plaintiff in order to deprive him of his rights to use, enjoy or benefit from property.

1661. 18 U.S. Code 371 makes it unlawful for two or more persons to conspire to either commit any offense against the United States or any agency thereof, in any manner or for any purpose.

1662. As in #1657(supra), the plaintiff is an economically tax contributing citizen of the United States, a victim of the conspiracy.

1663. On June 18th 2015 Defendant Peter Ervin, counsel representative of the Public Protection Cabinet knowingly and intelligently committed the act of fraud upon the court by providing his own testimony as a firsthand lay witness when he knew was not qualified pursuant to rule 701 in *State Fire Marshal vs Brian Carter 15-CI-000259.*

1664. As in #1663(supra), defendant Peter Ervin counsel representative of the Public Protection Cabinet also knowingly and intelligently committed the act of fraud upon the court by providing his own testimony as an expert in building construction knowing that he was not qualified to do so pursuant to rule 702 in *State Fire Marshal vs Brian Carter 15-CI-000259.*

1665. On June 18th 2015 defendant Peter Ervin gave his own testimony as in in order to misrepresent material fact to have the plaintiffs 426 building vacated by state circuit court order of injunction, under color of his lawful authority as representative of the Public Protection Cabinet.

1666. Defendant Peter Ervin committed fraud upon the court by seeking and obtaining an injunction to vacate the plaintiffs former 426 building due to a "decline of the plaintiff to perform an update said buildings fire separation," in excess of his lawful authority pursuant to KRS 227.330.

1667. Pursuant to KRS 227.330, the Public Protection Cabinet, also known as Office of the State Fire Marshal, has the authority to vacate a building if "extremely dangerous unsafe conditions that warrant emergency action to be taken due to imminent risk of loss of life or limb."

1668. Pursuant to said KRS 227.330, the Public Protection Cabinet does not have the authority jurisdiction to order a building to be vacated merely due to a failure to follow a direction from said Cabinet.

1669. The said direction to update the 426 buildings fire separation as in #1666(supra), from the Cabinet was based on material false statements from defendants Kenneth Browning that "the

building had no fire separation" on Browning's official government documentation to said Cabinet.

1670.  On June 18th 2015 defendant Peter Ervin committed fraud upon the court by his fraudulent concealment of relevant information in #1669(supra), either by willful participation in fraud in the inducement with Kenneth Browning, or demonstrated an extreme indifference of duty to obtain, convey relevant, truthful, relevant information to the state circuit court in order to cause permanent irreparable damage to the plaintiff.

1671.  Defendants Kenneth Browning, Alan Walters and Ronald Hacker committed fraud in the inducement by demonstrating an extreme indifference of duty to convey trustworthy, reliable, truthful information to their superiors and colleagues of the Public Protection Cabinet, in order to achieve their goals of committing a profound fraud upon the Perry County Circuit Court, to deprive the plaintiff of his rights to use, enjoy and benefit from ownership of his former 426 building/property.

1672.  Prior to the June 18th 2015 date, the plaintiff had sent emails as well as rebuttal correspondence via certified mail to Gary Feck and Ric Mcknees of the Public Protection Cabinet, of which would be willfully overlooked or ignored in order to pursue the cabinets objective.

1673.  On said June 18th 2015 injunction date, Peter Ervin could not establish a factual, evidentiary basis that actually determined "extremely dangerous unsafe conditions that warrant emergency action to be taken due to imminent risk of loss of life or limb" with regard to said 426 main street building.

1674.  Denise Davidson committed fraud upon the court by passing off the previous illicitly placed lien upon the plaintiffs former 446 Grand Hotel building as "legitimate" with the court, with the goal of extorting the plaintiff after knowingly exploiting the plaintiffs personal resources in *Brian Carter vs City of Hazard 22-CI-00020* under false pretenses on or about June 10th 2021.

1675.  Defendants Paul Collins and Daniel Roll committed a fraud upon the court by applying a fraudulent lien on the plaintiffs former 446 Grand Hotel property sometime on or about June 2nd of 2017, approximately double what could be justified in contrast to the City of Hazard's contractor bid of forty four thousand  ($44,000.00) dollars.

1676.  The stated lien applied to the 446 Grand Hotel building in #1675(supra), was claimed to be 'for the full taxable value of the property itself."

1677.  Defendants Paul Collins and Daniel Roll knew or should have known the 446 Grand

224

Hotel lien could not be justified.

1678. Defendants Paul Collins and Daniel Roll knew or should have known they were not entitled to "the full taxable value" of the 446 Grand Hotel property.

1679. The 446 Grand Hotel lien was applied after the defendants Daniel Roll and Paul Collins initiated an unauthorized demolition on the plaintiffs former 446 Building, without permission from the plaintiff in violation of contrary to law on or about February 2nd 2016.

1680. Daniel Roll and Paul Collins was instrumental in having the plaintiffs former 446 Grand Hotel building destroyed, or mostly destroyed from about February 2nd through March 8th of 2016.

1681. Defendant Steve Campbell used his influence with the City of Hazard to satisfy his personal long term goals of destroying the plaintiffs 446 Grand Hotel building for his own enrichment.

1682. Denise Davidson knew or should have known the approximately $78,517.00 Grand Hotel lien could not be justified, yet held such lien with her conspiratorial pact with Paul Collins and Donald Mobelini in order to effectively "beat Brian Carter out of his property."

1683. Denise Davidson and Donald Mobelini continued to exploit the personal resources for various "cleanup operations" and other improvements at the plaintiffs former 446 Grand Hotel building and Newberry's building lots, under the false pretenses that they would allow the plaintiff free reign of the restoration of his former 446 Grand Hotel property, throughout 2020.

1684. City of Hazard attorney Jonathan Shaw was an attorney representing the insurance company of the City of Hazard in the mandamus case of *Brian Carter vs City of Hazard 16-CI-00020.*

1685. Attorney Jonathan Shaw committed fraudulent concealment upon the court by refusing to allow defendant Daniel Roll to be deposed, on or about September 6th 2019.

1686. Attorney Jonathan Shaw committed fraud upon the court by verbally informing the state circuit court Alison Wells that the case of *Brian Carter vs City of Hazard 16-CI-00020* was "settled" on January 10th 2020, order to circumvent the trial scheduled January 13th 2020.

1687. City of Hazard attorney Jonathan Shaw attempted to defraud the Perry Circuit Court by providing a disingenuous, non enforceable written "settlement agreement" January 13th 2020.

1688. Jonathan Shaw performed bad faith dealings within the court by asking the court to "limit what he's able to negotiate" regarding the Perry Circuit Court's ruling that the case of *Brian Carter vs City of Hazard 16-CI-00020* be ordered to mediate on or about January 29th 2020.

1689. Beginning on or about May 4th 2022, the City of Hazard conspired with the Foundation of Appalachian Kentucky and the City of Hazard Fire department, Payton Morton, and Steve Campbell conspired to destroy significant portions of the plaintiffs 67 Whitaker Way building/facility by arson shortly after the defendants Steve Campbell and Tony Eversole attempted to further entrap said residential tenants with various barriers, blockades, and fencing based obstructions June 9th of 2023.

1690. Upon the events of June 9th 2023, #1689(supra), the City of Hazard and Public Protection Cabinet immediately denied any remedial work to his fire damaged 67 Whitaker Way building, harassing the plaintiff by posting "stop work orders", condemnation notices, and various email threat(s) of "punishment if he continued any repairs" to said structure on or about June 12th 2023.

1691. As soon as said 67 Whitaker Way and 426 Main buildings was forcibly liquidated as a direct result of the defendants collective efforts to physically destroy and deprive all manner of beneficial usage or care of said facilities on or about August 7th 2023, the said notices of condemnation of said 67 Whitaker way building by the City of Hazard were promptly removed, as were all stop work order notices from the Public Protection Cabinet, also promptly removed for the buildings new owner Jeff Norman of JLN Properties, LLC.

1692. Publicly the City of Hazard broadcast with its well connected WYMT news and City Fire Department, along with FOA, deemed that "the building was also a collapse hazard" after the 67 Whitaker way building fire, an exact identical "diagnosis" as was previously given to the plaintiffs former 446 Grand Hotel building after the September 1st 2015 events.

1693. Despite the widely held knowledge in #1692(supra), Denise Davidson committed fraud upon the court by producing memorandum that declared that "the first two floors only had flood damage," a deceptively opposite "diagnosis" or "preferential treatment" given to the new owner Jeff Norman vs the treatment exclusively given to that of the plaintiff on or about May 23rd 2025.

1694. Upon discovery of the new crimes committed by the defendants and acquisition of legal literacy of the plaintiff himself, the plaintiff then moved the court to remove John Hansen, in order to later move to reopen the rule 77 dismissed case of *State Fire Marshal vs Brian Carter 15-CI-00259*, and *Brian Carter vs City of Hazard 16-CI-0020* as the two cases are intertwined June 6th 2024.

1695. At the hearing, Defendant Denise Davidson made appearances on behalf of both parties of Public Protection Cabinet also known as *State Fire Marshal vs Brian Carter 15-CI-00259* and *Brian*

*Carter vs City of Hazard 16-CI-00020* respectively on or about July 26th 2024 date.

1696. Denise Davidson committed fraud upon the court when she denied her previous legal representation of the Public Protection Cabinet in her memorandum on April 8th 2025.

1697. Denise Davidson participating in the known conflicts as in 1696(supra) constitutes a flagrant violation of the Public Protection Cabinets rules of administrative procedure pursuant to 9 KAR 1:025 by a conspiracy to deprive the plaintiff of equitable, fair due process.

1698. City of Hazard committed fraud upon the court by concealing its original intent or purpose on behalf of securing the former 446 Grand Hotel and Vacant Newberrys building lots for the pleasure of the defendants of FOA by posting an independent vendor selling goods on said lot exhibit 64 in *Carter Realty vs FOA 22-CI-00166* on or about March 28th 2025.

1699. As a DIRECT RESULT of the conspiracy to commit fraud upon the court by the defendants representatives of the City of Hazard and the Public Protection Cabinet as aforementioned, dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized conspiracy to deprive the plaintiff of all manner of his rights, by an organized criminal conspiracy, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

227

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never

228

benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XIII
### Intentional Infliction of Emotional Distress
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Dealing in Obscene Manner 18 U.S. Code § 1961-68)

1700.  Intentional Infliction of Emotional Distress (IIED) is a common law tort that occurs when one acts in a manner that intentionally or recklessly causes another to suffer severe emotional distress, such as as *issuing the threat of future harm*.

1701.  18 U.S. Code § 1961 thru 1968 defines the RICO statue, which forbids the defendants in dealing in an obscene manner in furtherance of the organized conspiracy of the defendants.

1702.  42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress based on the organized conspiracy of the defendants of the City of Hazard, of two or more individuals in their combined, concentrated, coordinated efforts involving felonious activities or behaviors, in order to deprive the plaintiff of all manner of his rights to use, enjoy, or benefit from ownership of property.

1703.  18 U.S. Code § 241 makes it unlawful for the City of Hazard, Public Protection Cabinet and the defendants of the "non profit organizations" of FOA, HDA, and EDA to conspire collectively in order to deprive the plaintiff of his rights to use, benefit and enjoy property.

1704.  Beginning in mid 2012 until June 18th 2015, defendants Kenneth Browning, Alan Walters, Ronald Hacker, and Mike Haney initiated a series of harassing, annoying series of "visits" to the plaintiffs former 426 Treehouse Cafe building, under the guise of "promoting public safety."

1705.  The defendants named in #1704(supra) proceeded to make a series of materially false and willfully misleading statements of the buildings conditions on their official documentation in Kenneth Browning's personal goals to "have Brian Carter shut down."

1706.  For approximately two and a half years (2-1/2) until June 18th 2015, the Public Protection Cabinet took no action to "vacate the 426 building" due to the allegations of "extremely unsafe status" promoted by Kenneth Browning and his colleagues in #1704(supra).

1707. From mid 2012 until June 18th 2015, the defendants as mentioned in #1704(supra) caused intentional infliction of emotional distress by threatening to shut down the plaintiffs building, based on libelous reporting from said defendants.

1708. As the plaintiff possessed no legal or political intelligence, the plaintiff was placed under extreme emotional distress due to the threats of having his building shut down on the false pretenses primarily promoted by Kenneth Browning of the Public Protection Cabinet.

1709. On June 18th 2015, defendants Peter Ervin, his colleagues of the Public Protection Cabinet, and the City of Hazard, in a highly coordinated effort, caused intentional infliction of emotional distress by obtaining an injunction to vacate, as well as removal of all utilities from the plaintiffs former 426 main street building in Hazard Kentucky, based on fraud in the inducement primarily promoted by Kenneth Browning's libelous reporting of the buildings conditions.

1710. Defendant Mike Haney caused intentional infliction of emotional distress by declaring that "Mr Carter will never again be reopen for daring to question the honor or integrity of our office" after the plaintiff had sent rebuttal correspondence regarding the false statements promoted by Browning of the 426 buildings condition to Haney's office.

1711. Steve Campbell caused intentional infliction of emotional distress by his personal pursuit of a final demolition contract against the plaintiffs former 446 Grand Hotel facility/building, in order to deprive the plaintiffs of his rights to said property, via Campbell's well known influence over the City of Hazard.

1712. Steve Campbell knew well of the plaintiffs passion for rebuilding/restoring said structure, yet utilized his influence with the City of Hazard to satisfy his personal long term goals of destroying the plaintiffs property, as well as depriving the plaintiffs prosperity with said property forever, for Campbell's own personal gain and profit.

1713. Steve Campbell knew well of the plaintiffs passion for rebuilding/restoring said structure, and yet utilized his influence with the City of Hazard in order to satisfy his personal long terms goals of destroying the plaintiffs property for his own personal pleasure at the notion of doing so.

1714. Upon completion of his goal of completely destroying what was left of the plaintiffs former 446 Grand Hotel building, sometime in late 2021 until early to mid 2022, Steve Campbell then sought to cause additional emotional distress of the plaintiff by strategically stacking various

busted/damaged pieces of antique limestone fragments/remnants of the historic Grand Hotel buildings front facade, on random pallets, and stacked them all along the inside portions of the City of Hazards government provided fencing for the plaintiffs constant viewing, exhibits 22, 24 & 25.

1715. The strategic placement of the aforementioned limestone fragments on the pallets also served as a dual purpose to greatly restrict movement of the government provided fencing exhibit 22, before it, therefore creating an unsafe limit to public egress/ingress to the plaintiffs remaining property.

1716. The placement of the limestone fragments cause immediate infliction of emotional distress and torturous interference with the plaintiffs only remaining residential tenant relationships of his former 67 Whitaker Way building, from the time period around May 4th 2022 until June 9th 2023.

1717. The unsafe limit of public egress/ingress to the 67 Whitaker property also intentionally prohibited usage of the new "city parking lot" that was stipulated to "remain as city parking" per the defendants own forced, non consensual, non negotiable "contract of sale" with the plaintiff on or about June 10th 2021 exhibit 58.

1718. Steve Campbell known, or should have known that blocking of said parking and rendering it unusable was prohibited by contract with the plaintiff, that otherwise stipulated "city parking would remain as city parking," would have placed the plaintiffs tenants in an emotionally distressing position, due to inability to escape the property in the event of emergencies.

1719. Steve Campbell known, or should have known that blocking of said parking, rendering it unusable, and blocking safe egress/ingress with large pallets of limestone and fencing would create a broad infliction of emotional distress upon the plaintiffs residential tenants of his remaining 67 Whitaker Way building/facilities, diminishing their abilities to use and enjoy property.

1720. On or about May 4th 2022 Gerry Roll, Tony Eversole, and Payton Morton sought to deprive the plaintiff and the remainder of his residential tenants all remaining forms of benefit, usage, and abilities to enjoy property by constructing an approximately 100ft long, 8 foot tall white metal wall/barrier, (therein also referred to as a fence) effectively diminishing the plaintiff and his residential tenants their abilities to access and escape the plaintiffs former properties, as well as diminish riverside views outside of property, also lessening enjoyment of property, to cause intentional emotional distress.

1721. Gerry Roll, Tony Eversole and Payton Morton knew their actions would create emotional distress, limit the residents ability to enjoy property, cause a largely limited access to and from the

231

plaintiffs former 67 Whitaker and 426 building properties due to unjust isolation/limitation from the remainder of the community, cause extreme inconvenience, whilst pursuing harassing communications to further their goals of discouragement of the plaintiff to use and enjoy property.

1722. Steve Campbell, from May 4th 2022 erection of the first wall/barrier, then sought to cause continued harassment and lessen enjoyment of property in order to create intense emotional distress by constructing a series of concrete walls and barriers, with the remainder of property marked off for additional permanent barriers all throughout the remainder of property that was not already previously blocked/restricted by the precious actions of Gerry Roll, Payton Morton and Tony Eversole throughout 2022 until June 9th 2023, the date of the arson against the plaintiffs 67 Whitaker Way property by the defendants combined efforts.

1723. The residential tenants, highly annoyed with the new barriers being constructed, threats of towing and harassment by the City of Hazard, without a clear need to do so, contacted the City of Hazard with complaints regarding the blocking of access to their homes and blocking of escapes from said property, among other emotional distressing situations, caused upon said tenants as a direct result of tenant lessening of enjoyment of said property with the fences/barriers on the date of June 9th 2023.

1724. The complaints quickly resulted in the fencing being wrapped all around the remaining entirety of the plaintiffs former 67 Whitaker Way apartment building, at which a fire was then set in the building promptly thereafter by the defendants of FOA and the City of Hazard after #1722(supra).

1725. It is well known and established that the timing of the entrapment with the various fences, walls and other barriers by the City of Hazard is perfectly consistent with Tony Eversole's established patterns of retaliatory based behaviors whenever the public attempts to address its grievances with the City of Hazard.

1726. It is understood and observed by many exhibits 39 & 42 produced in the intertwined case of *Carter Realty vs FOA 22-CI-000166* that Hazard Fire Department and the residential tenants had to contend greatly with the placed barriers rather than effectively responding to said June 9th 2023 fire.

1727. The defendants of FOA quickly *admitted* in news article of their highly coordinated efforts with the City of Hazard fire department and their knowledge of the origination of the 67 Whitaker Way fire *Carter Realty vs FOA 22-CI-000166* On or about June 12th 2023.

1728. The defendants in the similar article/broadcast an admittance that they "intended to let it

232

all burn to begin with," therefore, "had no need to get any closer to the building" whist being obstructed to said property by the wall/barrier/fencing placed by the defendants of FOA.

1729. During the June 9th 2023 fire events of the 67 Whitaker building, the City of Hazard Fire department knowingly caused intentional infliction of emotional distress upon the plaintiff and his residential tenants by demonstrating an extreme hateful and hostile tone of voices from the fire department staff of cursing the residential tenants to "get the f*** back, sit there and watch" ('while we just let all of your homes burn and your pets die.')

1730. The City of Hazard fire department knowingly caused intentional infliction of emotional distress upon the plaintiff and his residential tenants by demonstrating an extreme indifference of the need to show urgency and importance to fighting the June 9th 2023 fire as a gesture in bad faith dealing.

1731. An otherwise exceptionally well equipped and staffed fire department is well known to reside within approximately one thousand feet (1,000ft) of said former 67 Whitaker Way and 446 Grand Hotel buildings, respectively.

1732. Following the extremity of fire damage to the plaintiffs 67 Whitaker Way building/structure June 9th 2023, defendant Steve Campbell then completed his new 14ft tall walls all along the Newberrys lot, changed the blocking/construction off the side of said wall with a ramp whist leaving a large mound of dirt, effectively blocking a culvert that previously allowed proper rain and flood water drainage out of the Newberry's lot and away from the 426 buildings foundation exhibit 59.

1733. Steve Campbell's contractors were noted to have completed the concrete wall work within the stated "collapsible hazard zone" as was again reverberated by the defendants of FOA, notably Daniel Roll in 2015 with regard to the plaintiffs former 446 Grand Hotel building, and again on or about June 12th 2023 with regard to the former 67 Whitaker Way building, revealing a double standard of "safety hazard concerns of the public" vs the previous treatment given to the plaintiff of not being allowed to do any work at all near either said buildings.

1734. The defendants of the City of Hazard and the Public Protection Cabinet knowingly created intentional infliction of emotional distress by treating the plaintiff in a profoundly different standard of treatment vs that of their own "preferred well connected persons" from June 18th 2015 until the termination of the plaintiffs ownership on or about August 7th 2023 as a direct result of the defendants collective actions against the plaintiff, to destroy the plaintiff, emotionally, financially, and

233

physically by the destruction of the plaintiffs buildings and property.

1735. In August 31st of 2015, the City of Hazard police and fire departments committed intentional infliction of emotional distress by willfully allowing squatters to intentionally invade and set fire to an apartment in the plaintiffs 446 Grand Hotel building, resulting in a fire being set in said apartment unit September 1st 2015.

1736. On the date of September 1st 2015 the City of Hazard fire department caused an intentional infliction of emotional distress by forcing former residents and the owners to watch for hours upon hours of flagrant meandering, "lolly gagging" and arbitrarily moving at the pace equivalent to that of disinterested sloths in order for said department to "let every square inch burn."

1737. The defendants of the City of Hazard Fire department intentionally caused intentional infliction of emotional distress by demonstrating an extreme indifference to their duties to protect both precious life and property by openly refusing to visit the 3rd, 4th or 5th floors of said 446 Grand Hotel building the day of September 1st 2015.

1738. The defendants of the City of Hazard fire department is well known for random bragging or boasting throughout town of "letting every square inch burn" in order to cause intentional infliction of emotional distress within the community, with respect to the 2015 Grand Hotel building loss.

1739. The City of Hazard caused extreme intentional infliction of emotional distress by placing an illicit lien on said 446 Grand Hotel property, double what they could legally justify, to then exploit the plaintiffs personal resources for improvements, only to then extort the plaintiff into a sale of property once the improvements were made, without full and just compensation for the permanent loss of the plaintiffs once advantageous business relationships of both commercial and residential leasing beneficial relationships, on or about June 2nd 2017.

1740. The family of Donald Mobelini is well known for causing intentional infliction of emotional distress by openly bragging or boasting "sorry things didn't work out for ya" after destroying the economic prosperity of the town with regard to the willful destruction of the plaintiffs buildings.

1741. The City of Hazard caused intentional infliction of emotional distress by making random, calls, threats, and other intimidation to various state agencies, for the purpose of creating harassing/annoying conditions or impairment of the plaintiffs abilities to use, enjoy, or benefit from property from June 18th 2015 until August 7th 2023 in a campaign of annoying, harassing

234

communications, in order to deprive enjoyment, usage or beneficial enjoyment of property.

1742. The defendants of the City of Hazard as well as the Public Protection Cabinet caused intentional infliction of emotional distress by exchanging random smirks, sneers, and generally snide remarks at the plaintiff during the September 2015 Grand Hotel building events, when they removed electric utility service from the adjacently located 67 Whitaker Way building unlawfully, under false pretenses of Ronald Hacker, ally of Kenneth Browning.

1743. The City of Hazard caused intentional infliction of emotional distress when they knowingly removed the plaintiffs tenants from adjacently located 67 Whitaker Way building in September 2015 without an order of eviction from the court.

1744. The City of Hazard and Gerry Roll of FOA caused intentional infliction of emotional distress by refusing to provide trash services for the 67 Whitaker Way tenants, then made threats against the plaintiff if he continued to haul trash for his tenants on his own accord, in order to also cause conflict with the energy and environment cabinet, damaging its own water meter services, anf then making the plaintiff pay for the cost.

1745. The defendants of City of Hazard, FOA, EDA, HDA, and the Public Protection Cabinet caused intentional infliction of emotional distress when they conspired collaboratively, collectively, from June 18th 2015 until on or about August 7nd 2023 to physically destroy as well as deprive the plaintiff of all forms of meaningful, beneficial usage or enjoyment of property, in order to enhance the profitability of their own real estate development efforts, as outlined in this suit, in all other related causes of action, summarily.

1746. Denise Davidson and Donald Mobelini caused intentional infliction of emotional distress by *threatening to take all of the plaintiffs properties* if he didn't consent to a "contract of sale" of the Grand Hotel property on or about June 10th 2021 in *Brian Carter vs City of Hazard 16-CI-00020* in a "trust us or else" method of extreme duress or coercion to capitulate.

1747. The City of Hazard, specifically Steve Campbell placed the plaintiff under extreme, intentional infliction of emotional distress by placing his former owned 426 building under eminent destruction by diversion of flood waters into said buildings foundation, while the Public Protection Cabinet would not allow the plaintiff to take any action to use, enjoy, or benefit from the 426 building or remaining 67 Whitaker Way buildings, as they stood August 7th 2023, forcing the plaintiff to "sell or

235

lose everything" similar threat to #1746(supra) only this time by actual physical threat.

1748. As a DIRECT RESULT of the willful, flagrant attempts to cause emotional distress, in order to deprive the plaintiff or anyone that would conduct business relations with the plaintiff any and all forms beneficial usage, enjoyment, or abilities to enjoy property, by dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants

236

combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

**Count XIV**
**Slander of Title**
(Violation of Civil Rule 60.02(b)(3)), (Fraud and False Statements 18 U.S. Code § 1001), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

237

1749. 18 U.S. Code § 1001 and federal rule 60.02(b)(3) makes it unlawful for the defendants to use fraud and false statements in order to slander title to a property.

1750. 18 U.S. Code § 241 makes it unlawful for the defendants to use fraud or false statements in order to slander the title to a property involving two or more persons.

1751. 42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress as a direct result of the conspiracy to slander the title of property, in order to deprive the plaintiff of his rights to maintain, benefit, use or enjoy property.

1752. Commencing in mid 2012 until June 18th 2015, Defendant Kenneth Browning of the Public Protection Cabinet slandered the title of the plaintiffs 426 building/property by making material false statements about the properties condition his official documentation, to then justify his former 426 buildings vacature under the color of his lawful authority.

1753. Defendant Alan Walters of the Public Protection Cabinet slandered the title of the plaintiffs property by making material false statements about the 426 buildings condition on his official documentation, to justify his former 426 buildings vacature under the color of his lawful authority.

1754. Defendant Ronald Hacker of the Public Protection Cabinet slandered the title of the plaintiffs property by misrepresenting material facts about the 426 buildings condition on his official documentation, to justify said former 426 buildings vacature under the color of his lawful authority.

1755. Defendant Ronald Hacker of the Public Protection Cabinet slandered the title of the plaintiffs 67 Whitaker Way building/property by misrepresenting material facts about the facilities condition on his official documentation, to then justify said former 67 buildings disconnection from utility service under the color of his lawful authority on or about September 5th 2015.

1756. Defendant Kenneth Browning is well known to be the primary antagonist behind the initial push to "shut down Brian Carter" in 2015, specifically with the 426 main building.

1757. Defendant Mike Haney is well known among the Public Protection Cabinet to be a primary staunch supporter of his subordinate Kenneth Browning.

1758. Defendant Mike Haney is well known among the Public Protection Cabinet to "share Kenneth Browning's ways of thinking."

1759. Defendant Mike Haney was given more than reasonable doubt that the reporting of building conditions from his subordinates, namely Kenneth Browning, Alan Walters and Browning's

colleague Ronald Hacker was highly subjective at best, yet sought to slander the title of the plaintiff's former properties over "daring to question the honor/integrity of his office."

1760. Defendant Peter Ervin counsel representative of Public Protection Cabinet slandered the title of the plaintiffs former 426 building/facility by obtaining an injunction order through state circuit court to vacate the residential use portions of said building, without establishing a basis of material fact to justify Browning's classification of said building as "extremely unsafe to occupy" among other derogatory, defamatory based rhetoric.

1761. Defendant Peter Ervin counsel representative of Public Protection Cabinet knew or should have known the said "failure to update the facilities fire separation" direction was based on material false statements promoted by Kenneth Browning, that falsely claimed "the building had no fire separation at all."

1762. Defendants of the Public Protection Cabinet slandered the title of said 426 building by publicly casting said facility in a negative, unfavorable light with the general public via obtaining said injunction.

1763. In the first of many, highly coordinated, collaborative efforts, the City of Hazard further slandered the title to the plaintiffs former 426 building/facility by timely choosing to remove all water service and gas utility services from the restaurant serving portions of the plaintiffs former 426 building immediately after the Public Protection Cabinets representative Peter Ervin obtained said injunction to vacate its residential use portions.

1764. The removal of said utilities by the City of Hazard prompted the restaurant owner to permanently shut down her business as well, due to the combined efforts in #1763(supra).

1765. Immediately after the defendants of the City of Hazard removed water and gas utility services from the 426 buildings restaurant use portions June 18th 2015, the Public Protection Cabinet responded yet again by placing vacate notices on the restaurant serving portions as well.

1766. Counsel of the Public Protection Cabinet further declared that a "separate order to vacate the restaurant portions from its other sub department applied to the whole building."

1767. As a direct result of the coordinated, collaborative efforts of the defendants of the Public Protection Cabinet and the City of Hazard to publicly slander the title to said 426 building as in #1752 thru #1766(supra), the plaintiff was indefinitely prohibited from any further usage or benefit of

239

ownership of his former 426 Treehouse Cafe building/facility, due to in part said tarnishment of the facilities reputation.

1768. PVA's office thereafter *devalued* the plaintiffs former 426 building, due to the "condemnation" status placed by the Public Protection Cabinet aka Office of State Fire Marshal shortly after the state circuit court order to vacate said building was granted under the false pretenses and conjectural based arguments of Peter Ervin, promoted by fraud in the inducement of Kenneth Browning June 18th 2015.

1769. Approximately two and a half months later, the morning of September 1st 2015 the City of Hazard, specifically the City of Hazard Police and Fire Departments, collaborated together to allow virtually every square inch of the plaintiffs former 446 Grand Hotel to be lost due to a fire after City of Hazard Police Department allowed burglars to invade a previously vacant residential unit within said facility, August 31st 2015.

1770. The said fire was well known to have originated in said vacant apartment unit at which said burglars invaded in #1769(supra),

1771. Defendants of the City of Hazard slandered the title of the plaintiffs former 446 Grand Hotel facility by intentionally allowing its full destruction by fire, thereby causing an intentional devaluation of said property due the egregious acts as aforementioned.

1772. Defendants of the City of Hazard, specifically Daniel Roll and Paul Collins, participated in the slandering of the title of the plaintiffs newly 2015 fire damaged 446 Grand Hotel facility, by having otherwise serviceable portions of said building destroyed that had nothing to do with "protecting the public" under the guise of protecting the public, such as destruction of the large awning with pillars in front entrance of the building, thereby causing an intentional diminishing of its public appearance, to cast the plaintiff in a negative, unfavorable light with the general public.

1773. Defendants of WYMT news knew of the City of Hazard's cause for its appearance after the March 2016 "partial" demolition events of said 446 Grand Hotel building, and made unfavorable broadcasts slandering the title to the property as an "eyesore" as a direct result of the conspiracy with the City of Hazard to diminish the title in the eye of the public exhibit 52.

1774. Defendants of the City of Hazard, specifically Daniel Roll and Paul Collins, also participated in slandering the title of the plaintiffs newly 2015 fire damaged 446 Grand Hotel facility,

by having serviceable portions destroyed that had nothing to do with "protecting the public" such as destruction of a serviceable section of said building for "creating an alleyway" for the personal desire/whim of others, in particular defendant Payton Morton.

1775.  Defendants of WYMT knew the City of Hazard was directly responsible for the impaired physical appearance of the 446 Grand Hotel building, by City of Hazard's decision to willfully allow every square inch of the said facility to burn entirely, minus sizable portions of brick and steel.

1776.  Defendants of WYMT knew or should have known the City of Hazard was directly responsible for the impaired physical appearance of the 446 Grand Hotel building, by the City of Hazard's open refusal to protect said facility from burglary/squatters.

1777.  Defendants of WYMT knew the City of Hazard was directly responsible for the impaired physical appearance of the 446 Grand Hotel building by the City of Hazard's performance of an unauthorized demolition against said facility.

1778.  The City of Hazard did not receive permission from the plaintiff to demolish any portion of said 446 Grand Hotel facility during the term of the plaintiffs ownership.

1779.  The City of Hazard willfully ignored the plaintiffs work proposals to perform his own work to said 446 Grand Hotel facility from September 1st 2015 until March of 2016.

1780.  Despite the aforementioned knowledge from WYMT, then proceeded to slander the title of said 446 Grand Hotel property by publicly referring to the 446 property as "an eyesore of the public" in order to cast said property in an effort to cast negative/unfavorable light with the general public.

1781.  Defendants of WYMT, Public Protection Cabinet and City of Hazard knew that the above named facilities were affiliated with the plaintiff, Brian Carter.

1782.  Defendant Betsy Clemons is a well known representative of Economic Development Alliance, Housing Development Alliance, Chamber of Commerce, and representative of "InVision" of Foundation of Appalachian Kentucky.

1783.  InVision is a known alias or "also known as" name used by the Foundation of Appalachian Kentucky.

1784.  Defendant Gerry Roll is known, or was known, as "executive director" of the Foundation of Appalachian Kentucky.

1785.  Defendant Gerry Roll and Betsy Clemons are both well known due to their affiliations

241

with said organizations, primarily Foundation of Appalachian Kentucky, Housing Development Alliance, and Economic Development Alliance "non profit organizations," respectively.

1786. Defendant Gerry Roll is pervasively known for her personal hatred and disdain of the plaintiff, primarily for plaintiffs decline of sale to Gerry Roll of his former 426 building at a loss.

1787. Defendant Daniel Roll was previously known as "City of Hazard building inspector" a position that was later renamed to "office of zoning and permits" as his official position with the City of Hazard.

1788. Defendant Gerry Roll is also well known for the previous conflict between her husband Daniel Roll and the plaintiff, regarding the City of Hazards 2016 "partial demotion" of the plaintiffs former 446 Grand Hotel building/facility.

1789. The defendants of the City of Hazard collectively knew the plaintiff had brought writ of mandamus lawsuit against the City of Hazard, over the 446 Grand Hotel demolition.

1790. The defendants of the City of Hazard openly disregarded said lawsuit with extreme indifference of the plaintiffs rights to continue use, enjoyment or benefit from said 446 Grand Hotel property, and destroyed significant portions of said fire damaged building the month of March 2016.

1791. Defendant Donald Mobelini is the mayor of the City of Hazard.

1792. Defendant Donald Mobelini is a board member of Economic Development Alliance alongside defendant Betsy Clemons.

1793. Betsy Clemons is known to have her own office in a City of Hazard building, up the street from Hazard City Hall building, located at 486 Main Street in Hazard KY.

1794. The stated 486 City of Hazard building was purchased by the City of Hazard from defendant Paul Collins, in which Clemons derives personal benefit and usage.

1795. Defendant Betsy Clemons is well known for her personal hatred and disdain towards the plaintiff, specifically the plaintiffs 3rd and final 67 Whitaker Way 17 unit apartment building, previously owned by the plaintiff.

1796. Defendant Betsy Clemons is widely known for her negatively charged, daily, or near daily rhetoric about the plaintiff, specifically with regard to plaintiffs previously owned 67 Whitaker Way apartment building, "wanting that white building gone."

1797. Defendant Betsy Clemons slandered the title to the plaintiffs previously owned 67

242

Whitaker Way building/facility by spreading slanderous, negatively charged rhetoric against said facility throughout the town of the City of Hazard as aforementioned.

1798. Defendant Betsy Clemons stood to benefit from her slander of title efforts against the plaintiffs 446 Grand Hotel and 67 Whitaker Way residential units, by shifting community dependency of residential housing to her own publicly promoted "Housing Development Alliance (HDA)" business.

1799. Defendants Betsy Clemons and Donald Mobelini stood to benefit from the slander of title efforts against the plaintiffs 446 Grand Hotel and 67 Whitaker Way residential units, by shifting community dependency of commercial leasing to her own Economic Development Alliance (EDA).

1800. The Housing Development Alliance is well known to collect millions in taxpayer grants to "build new homes for flood families."

1801. The Housing Development Alliance is well known to sell the houses it builds "at market value" after receiving said subsidies/grants to build the same houses.

1802. The Foundation of Appalachian Kentucky (FOA), Housing Development Alliance (HDA), and Economic Development Alliance (EDA), are well known to bribe government officials to send money or have money sent to their respective non profits.

1803. The said organizations use said influence to also undermine the private development interests of the plaintiff, due to their influence over the Kentucky State Governor Andy Beshears office.

1804. The City of Hazard participated in the slandering of the title to the plaintiffs former 426 building by erecting various barriers to restrict public ingress/egress to the rear facing portions of the 426 building, making said facility less appealing to the public.

1805. The City of Hazard slandered the title to the plaintiffs former 67 Whitaker Way building by erecting various barriers to restrict public ingress/egress to said building.

1806. The City of Hazard slandered the title to the plaintiffs all remaining forms of parking by convergence upon his remaining property, parking, and access to parking from around May 4th 2022 until around August 7th 2023.

1807. The City of Hazard slandered the title to the plaintiffs all remaining forms of parking by intentionally depriving the plaintiff of all remaining forms of beneficial usage.

1808. The City of Hazard's collaborative efforts to deprive parking by convergence and restriction of egress/ingress to the plaintiffs former properties as aforementioned slandered the title to

243

said properties by creating an unappealing/undesirable or generally unwelcoming atmosphere for the general public.

1809. The defendants of WYMT and its conspiratorial pact with the Public Protection Cabinet further slandered the title of the plaintiffs former 426 building by publicly broadcasting empty loose ended narratives as "deemed unsafe to occupy."

1810. It was determined that the previous case State Fire Marshal aka Public Protection Cabinet vs Brian Carter ordering the said residential units of the former 426 building the said cabinet was well aware, or should have been aware that said case was dismissed by that time.

1811. Defendants of the Public Protection Cabinet knew or should have known the original grounds of original injunction order was based primarily on materially false statements from Kenneth Browning.

1812. Defendant Kenneth Browning of the Public Protection Cabinet slandered the title of the 426 building by seeking a criminal prosecution of the plaintiff, based on the previously dismissed 2015 injunction case *State Fire Marshal vs Brian Carter 15-CI-0259.*

1813. In the weeks following the June 2023 Defendants of the City of Hazard slandered the title of the 426 building, primarily to cast the plaintiff in a negative/unfavorable light with the general public, by attempting to "prosecute the plaintiff" for an alleged 2017 spillover of the residential tenant dumpster alongside the criminal complaint filed by defendant Kenneth Browning, in order to cast the plaintiff in as much of a negative/unfavorable light as possible with the public June 27th 2023.

1814. The alleged trash dumpster spillover did not violate any known criminal statutes, rather, "violated a city ordinance" established by the City of Hazard.

1815. Daniel Roll and Paul Collins of the City of Hazard slandered the title to the 446 Grand Hotel building by placing a felonious lien against said property approximately double what could be legally justified.

1816. Defendants of WYMT strongly promoted and publicized its news narratives of "Hazard landlord hit with multiple charges" via the aforementioned criminal complaints of "trash dumpster spillover" from the City of Hazard, and "wanton endangerment of the public" by "renting out unsafe apartments" by the Public Protection Cabinet, in order to slander the title of said property as well as to cast the plaintiff in a negative/unfavorable light with the general public.

244

1817. As a DIRECT RESULT of the conspiracy to slander the title to the plaintiffs properties, in order to deprive the plaintiff or anyone that would conduct business relations with the plaintiff any and all forms beneficial usage, enjoyment, or abilities to enjoy property, by dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

245

viii).  Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix).  Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x).  Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi).  Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii).  Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii).  Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XV
### Defamation
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1818.  18 U.S. Code § 241 makes it unlawful for two or more persons to conspire together in order to deprive a citizen of their abilities to use, enjoy or benefit from the ownership of property.

246

1819. From September 1st 2015 throughout January 2023, the defendants of City of Hazard, Public Protection Cabinet, and WYMT news have a history of making considerable efforts to promote a series of carefully staged, choreographed, general negatively, or defamatory biased "news coverage" in order to cast the plaintiff in as much of a negative, unfavorable light with the general public as possible, in order to deprive the plaintiff of his abilities to use, enjoy or benefit from property, by discouraging the public from conducting business, or future business with the plaintiff.

1820. As WYMT news has a history of affiliation with the Gorman and Roll families, defendants relatives of this suit, specifically FOA and Steve Campbell, the defendants have a history of "not allowing unauthorized competition" with regard to their personal business interests.

1821. The plaintiff is entitled to relief pursuant to 42 U.S. Codes § 1983 & 1985 as the acts taken in #1818 thru #1820(supra) involve conspiracy to defame the plaintiff in order to deprive the plaintiff of his abilities to enjoy, use, or benefit from property.

1822. Hazard Kentucky is a small town in the south eastern Kentucky Region known as Perry County.

1823. As a small town, Hazard is well known for "word to carry fast" on general affairs within the City of Hazards territorial boundaries.

1824. Beginning in mid June 2012 through June 18th 2015, defendant Kenneth Browning representative of the Public Protection Cabinet initiated a campaign to "shut down Brian Carter" after discovering residential apartment units in the plaintiffs former 426 Main Street/Treehouse Cafe building in Hazard Kentucky.

1825. Kenneth Browning demonstrated an extreme personal hatred/demeanor/attitude of the plaintiff when Browning observed the development of new residential apartment units in the upper floors of the plaintiffs former 426 Main Street/Treehouse Cafe building in #1824(supra).

1826. As a direct result of Browning's discovery of said development of new residential apartment units, #1825(supra), Browning would then proceed to demonstrate an extreme personal malice directed towards the plaintiff in the form of an envious, hateful, or vindictive personal attitude/demeanor towards the plaintiff, supported by his colleague Alan Walters.

1827. Defendant Kenneth Browning after his discovery in #1825(supra) then sought to defame the plaintiff by making a series of material false statements regarding the 426 buildings conditions in

1. order to suit his personal goals of "shutting down Brian Carter," aided by Alan Walters.

1828. Kenneth Browning defamed the plaintiff when he made the aforementioned libelous statements on his official documentation in order to to suit Browning's personal goals of casting the plaintiff in a negative/unfavorable light with his superiors of the Public Protection Cabinet.

1829. Kenneth Browning defamed the plaintiff with intent to cause direct, personal harm to the plaintiff by depriving the plaintiff of beneficial usage/enjoyment of property as a direct result of Browning's personally hateful, envious rhetoric.

1830. Kenneth Browning defamed the plaintiff with negatively charged rhetoric in order to deprive the plaintiff of beneficial usage/enjoyment of his former 426 building, in order to suit his personal objective to "have the building shut down."

1831. Kenneth Browning continually demonstrated extreme indifference to relaying/conveying factual, truthful information to his superiors of the Public Protection Cabinet, in order to defame/cast the plaintiff in a very negative/unfavorable light with his office in order to deprive the plaintiff of his abilities to use, enjoy or benefit from property.

1832. Kenneth Browning defamed the plaintiff by continually demonstrating extreme indifference of his duties as public servant, by openly refusing to relay or convey good faith improvements the plaintiff had made or performed in good faith to said 426 building/facility.

1833. Mike Haney defamed the plaintiff by retaliating against the plaintiffs rebuttals as "daring to question the honor of his office" in order to conspire with Browning to deprive the plaintiff of his abilities to use, enjoy, or benefit from property.

1834. The Public Protection Cabinet defamed the plaintiff by openly disregarding all of their own expert recommendations that the 426 building "should have remained open" in order to obsessively pursue its negatively charged narratives about the plaintiff or his 426 building.

1835. On June 18th 2015, Counsel for the Public Protection Cabinet Peter Ervin obtained an injunction from Perry Circuit Court in *State Fire Marshal vs Brian Carter 15-CI-00259* based on the defamatory rhetoric promoted by Kenneth Browning.

1836. Pursuant to KRS 227.330 counsel of the Public Protection Cabinet Peter Ervin, had the lawful authority to vacate a building if proven "extremely dangerous or unsafe to occupy."

1837. Peter Ervin defamed the plaintiff when he obtained an injunction to vacate the plaintiffs

248

now former 426 building, by obtaining testimony from the plaintiff in conjecture to deceive the court, regarding a "direction to update the 426 buildings fire separation," at which the plaintiff had admitted to not taking such an action June 18th 2015.

1838.  Peter Ervin defamed the plaintiff when he knew or should have known that the stated "direction to update the fire separation" was based on fraud in the inducement from Kenneth Browning "that the 426 building had no fire separation."

1839.  Peter Ervin failed to establish whether or not the plaintiffs failure to perform such an "update of fire separation" had ever constituted an "extremely dangerous unsafe condition"

1840.  Peter Ervin defamed the plaintiff by by his participation in an intentional fraud in the inducement, or defamed the plaintiff by extreme indifference of duty to obtain, relay or convey truthful good faith information upon the court using a flagrantly deceptive, conjectural line of questioning regarding the plaintiffs "failure to update the buildings fire separation."

1841.  Peter Ervin demonstrated extreme indifference of his duties as public servant by failing to obtain, relay, or convey truthful information in obtaining such the extremity of an injunction against the plaintiffs 426 building, without establishing evidence of "imminent danger to the public."

1842.  Peter Ervin knew or should have known that experts would have been needed to support Ervin's claims that "the plaintiffs 426 building was an imminent danger to the public" among the need to promote other negatively charged,  defamatory based rhetoric against the plaintiff.

1843.  Peter Ervin defamed the plaintiff by refusing to produce his own experts to support of his claim(s) that "the 426 building was an imminent danger to the public" among other negatively charged rhetoric, in order to case the plaintiff in a negative, unfavorable light with the state circuit court.

1844.  Peter Ervin defamed the plaintiff by utilizing empty, non substantive, slanderous narratives to achieve his personal agenda of having the plaintiffs 426 building vacated by injunctive state circuit court order June 18th 2015.

1845.  Peter Ervin defamed the plaintiff when he provided his own testimony, unqualified to do so, as a *firsthand eye witness*, in order to flagrantly vilify or mischaracterize the plaintiffs intent with his 426 building as "just building more apartments instead of doing safety work like we asked."

1846.  Peter Ervin defamed the plaintiff when he provided his own testimony, unqualified to do so, as an *expert in building construction*, in order to flagrantly mischaracterize the plaintiffs intent with

249

his 426 building as "just building more apartments instead of doing safety work like we asked."

1847. If the Public Protection Cabinet were indeed ever "dissatisfied" with a failure to perform a duty, or alleged to have failed to perform a duty as they claim in #1835 thru #1846(supra), the cabinet had the option to simply have the work done at their own discretion and simply bill the plaintiff for the cost KRS 227.390, KRS 99.360(1)(k) this was not done.

1848. Beginning in June 18th 2015 until about August 7th 2025, the Public Protection Cabinet, the City of Hazard, and the defendants of Foundation of Appalachian Kentucky (FOA) engaged in a conspiratorial pact to physically destroy and deprive all manner of beneficial usage of the plaintiffs commercial buildings, previously located at 446 Main, 67 Whitaker Way and 426 Main Street in Hazard KY.

1849. The conspiratorial pact in #1848(supra), prompted state cases of *State Fire Marshal vs Brian Carter 15-CI-00259, Brian Carter vs City of Hazard 16-CI-00020, and Carter Realty vs FOA 22-CI-00166* respectively.

1850. On or about March 2016 defendant Paul Collins defamed the plaintiff by declaring that "Mr Carter failed to exhaust his administrative remedies" in Perry Circuit Court after earlier declaring "that there are no remedies! There are no options!" with regard to Paul Collins unauthorized March 2016 demolition against the plaintiffs 446 Grand Hotel building prompting *Brian Carter vs City of Hazard 16-CI-00020* in order to cast the plaintiff in an unfavorable light with the City Commission.

1851. Defendant Daniel Roll is a city official, tasked with handling zoning and permits within the City of Hazard, often exerts authority as "city building inspector" outside of his jurisdiction.

1852. Defendant Paul Collins is/was the City of Hazard Attorney in September 1st 2015 thru March 8th 2016, during said events that transpired in *Brian Carter vs City of Hazard 16-CI-00020*.

1853. Defendant Paul Collins defamed the plaintiff by declaring to the City of Hazard Commission "that Brian Carter didn't respond to Daniel Roll is why nothing's getting done downtown" when the plaintiff attempted to formally bring his proposals to restore his fire damaged 446 Grand Hotel building, in order to cast the plaintiff in a negative/unfavorable light with City officials as "being uncooperative" with regard to #1850(supra).

1854. Paul Collins knew, or should have known, his statement as outlined in #1853(supra) was false, as correspondence exchanged between the parties revealed the opposite was true.

250

1855. Defendant Daniel Roll defamed the plaintiff by immediately declaring the plaintiffs former 2015 fire damaged 446 Grand Hotel building/facility as a "collapsible hazard zone" to justify keeping main street blocked, when he is/was unqualified as a structural expert.

1856. Daniel Roll directed the plaintiff to "come in and pay $45 for a phase one permit to brace the walls (of the 446 Grand Hotel) to make the structure safe" only to refuse its issuance a short time later on or about September 15th 2015.

1857. Daniel Roll defamed the plaintiff by refusing to issue said permit, by wrongly tarnishing the plaintiffs image as "not taking action to remedy the problem" of keeping main street blocked from traffic flow.

1858. Shortly thereafter the September 1st 2015 fire loss of the Grand Hotel building, Daniel Roll and Paul Collins engaged in a scheme via trickery or hoaxes to deprive the plaintiff of his right to restore and provide care of the plaintiffs former 446 Grand Hotel facility, by "hiring the City of Hazard's own structural engineer."

1859. Defendants Daniel Roll and Paul Collins hired said structural engineer to further their personal goals of destroying the plaintiffs 446 Grand Hotel building for unjust enrichment of their "preferred well connected" contractors.

1860. Defendants Daniel Roll and Paul Collins hired said structural engineer to further their personal goals of destroying the plaintiffs 446 Grand Hotel building with extreme indifference of the plaintiffs desires to restore said property for the plaintiffs beneficial rights prosper with said property.

1861. Defendant Daniel Roll defamed the plaintiff by intentionally refusing to issue said "permit to brace the walls and make the structure safe" in order to later tarnish the plaintiffs reputation as "working in unsafe conditions" as a direct result of the plaintiff not receiving said permit.

1862. Defendant Daniel Roll knew of his duties as a faithful public servant to assist the plaintiff with restoration of his structure, yet sought to publicly defame the plaintiff with various government agencies, in pursuit of Daniel Roll's own long term agenda to destroy the plaintiffs personal property for the enrichment of others.

1863. Daniel Roll as in #1861(supra), sought to defame the plaintiff as "a generally unsafe person" in order to cast the plaintiff in a negative/unfavorable light with the Public Protection Cabinet, OSHA, and other government agencies, by Daniel Roll's own refusal to provide the plaintiff with good

251

faith duty to issue said "wall bracing permit" to the plaintiff, at which the plaintiff had just paid the City of Hazard for, during the initiating September 15th 2015 thru March 8th 2016 events with regard to the 446 Grand Hotel building.

1864. Gerry Roll is the wife of Daniel Roll, and is the leading antagonist representative of Foundation of Appalachian Kentucky, (FOA) also of the defendants.

1865. Gerry Roll is well known to be aggrieved with the plaintiff over the plaintiffs 2015 clashes with Daniel Roll over the 446 Grand Hotel building.

1866. Gerry Roll is also well known to be aggrieved with the plaintiff for the plaintiffs polite decline of transactional sale of the plaintiffs former 426 building to Gerry Roll at tremendous loss from September of 2015 throughout the plaintiffs ownership of said building until August 7th 2023.

1867. Gerry Roll defamed the plaintiff when she made various string of "complaints" to the Public Protection Cabinet as "violating his court order by renting out apartments" in order to cast the plaintiff in a negative/unfavorable light with said Cabinet from on or about October 14th 2017.

1868. Gerry Roll defamed the plaintiff when she made the various string of "complaints" to the Public Protection Cabinet, in order to cause tortious interference with the plaintiffs prospective advantageous business advantages, by discouraging said Cabinet from future work in good faith prospective business advantageous dealings or relationships with the plaintiff.

1869. Public Protection Cabinet defamed the plaintiff by referring/labeling of the plaintiff as a "slumlord" as a means of justification to not assist the plaintiff with reopening his former 426 building.

1870. Public Protection Cabinet claimed its defamatory "slumlord" rhetoric of the plaintiff with extreme disregard for the actual, factual condition of the plaintiffs former facilities.

1871. Public Protection Cabinet claimed its defamatory "slumlord" rhetoric of the plaintiff with no firsthand knowledge whatsoever of his rent pricing.

1872. Public Protection Cabinet claimed its defamatory "slumlord" rhetoric of the plaintiff with extreme disregard for the plaintiffs attentiveness to provide proper care of his facilities.

1873. Defendant Mike Haney is well known to promote defamatory rhetoric of his subordinate Kenneth Browning, alongside Gerry Roll, against the plaintiff as aforementioned, in order to indefinitely deprive the plaintiff of any form or usage/benefit of said 426 building.

1874. Defendants of Public Protection Cabinet continued to defame the plaintiff by openly

252

disregarding the expertise of their own state building inspector, expert Steve Hammock, with extreme indifference of promoting factual, accurate information regarding said 426 building, in order to cast the plaintiff in as much of a negative, unfavorable light with the public as possible.

1875. The City of Hazard Fire Department defamed the plaintiff by claiming "the owner doesn't respect safety regulations of the fire marshal" whilst utilizing said rhetoric as justification to "let everything burn every square inch" with regard to the conspiracy to destroy the plaintiffs buildings by arson and fraud in the inducement as supported in #1869 thru #1874(supra).

1876. The City of Hazard Fire Department defamed the plaintiff by calming "meth labs in the grand hotel building" without evidence whatsoever in support of any such activity, or claim to justify its obscenely neglectful behaviors of "letting everything burn."

1877. The City of Hazard Fire Department demonstrated an extreme indifference to convey truthful, factual information by making said allegations in #1875 thru #1876(supra) to staff at LKLP during, or shortly after, the September 1st 2015 fire loss of the 446 Grand Hotel building/facility.

1878. From September 1st 2015 until on or about March 8th 2015, the defendants of WYMT promoted hateful, inaccurate news coverage of the plaintiff to defame the plaintiff as "unreasonable to deal with" by having former mayor Jimmy Lindon state "all he's (the plaintiff) has to do is let us help" knowing, or should have known the City of Hazard and the plaintiff had opposite agendas with regard to the plaintiffs formerly historic 446 Grand Hotel building/facility.

1879. WYMT news is an NBC or CBS based affiliate network, well known to be working in favoritism and influence of the Gorman family, specifically with regard to Steve Campbell, eager to promote negative biased coverage of the plaintiff for the Roll and Gorman family benefit.

1880. WYMT news defamed the plaintiff by "hunting down" former residential tenants of the plaintiffs former 426 building to "coarse, convince, or entice" former residential tenants of said building into making a series of defamatory, derogatory manner about the plaintiff by loose ended narratives promoted by the Public Protection Cabinet shortly after the June 2023 events regarding the 67 Whitaker Way buildings fire loss with WYMT's co-conspirator partnership with City of Hazard, Public Protection Cabinet, and Foundation of Appalachian Kentucky, (FOA).

1881. The defendants of FOA, HDA, and EDA, stood to benefit from the defamatory, hateful promoted rhetoric of WYMT by using said rhetoric to destroy or tarnish the public's perception of the

253

plaintiff in the eye of the general public, by encouraging or enticing community housing dependency to its own housing development endeavors.

1882. WYMT, FOA, and HDA defamed the plaintiff by claiming it "HDA provides safe affordable housing" whist promoting negatively biased coverage of the plaintiff through its indirectly connected WYMT affiliate as "the plaintiff profiting from unsafe housing" exhibit 9 *et al.*

1883. WYMT, City of Hazard, and Public Protection Cabinet defamed the plaintiff by promoting a "Hazard landlord hit with multiple charges" series of news articles in order to cast the plaintiff in as much as a negative, unfavorable light as possible with the public in order to unjustly interfere with the plaintiffs business advantageous relationships, based primarily on the previous fraud in the inducement by Kenneth Browning, as well as a "violation of a 2017 city trash ordinance" as justification for the "multiple charges" negatively promoted news rhetoric from June of 2023.

1884. Kenneth Browning of the Public Protection Cabinet, defamed the plaintiff when he sought and obtained a criminal complaint *Commonwealth vs Brian Carter 23-M-0381* seeking to prosecute the plaintiff based on Browning's previous 2015 allegations under case of *State Fire Marshal vs Brian Carter 15-CI-00259*.

1885. In *State Fire Marshal vs Brian Carter 15-CI-00259*, said original 2015 case was dismissed under rule 77 December 21ˢᵗ 2021, for the cabinets willful failure to prosecute said suit as a direct result in the discovery of the libelous statements or highly questionable motives of Browning and Gerry Roll by the senior executives under the former governor Bevin administration.

1886. Commonwealth attorney Derek Campbell is well known to carry favor with defendant Donald Mobelini, mayor of the City of Hazard as well as Mobelini's capacity as Economic Development Executive of the defendants of EDA.

1887. Defendants of WYMT, HDA, City of Hazard, and Public Protection Cabinet defamed the plaintiff when they collectively demonstrated extreme indifference when obtaining, relaying, or conveying truthful, factual information to the general public by concealing or failing to disclose relevant material fact in order to cause permanent irreparable harm to the plaintiffs reputation, in order to damage or limit plaintiffs abilities to conduct business within the city of Hazard Kentucky as an honorable tax and economically contributing citizen of the United States.

1888. Defendants of WYMT defamed the plaintiff by refusing to publicly disclose any apology,

254

or correction of its previous negatively promoted defamatory rhetoric that the subsequent prosecution attempt from Browning as in #1884(supra) was effectively *dismissed* without any requirement of guilt, wrongdoing, or admissions of any wrongdoing by the plaintiff on or about February 9th 2025.

1889.  The defendants of WYMT, HDA, City of Hazard, and Public Protection Cabinet defamed the plaintiff by not disclosing the slanderous abuse of process promoted by Kenneth Browning as outlined in #1888(supra).

1890.  As a DIRECT RESULT of the conspiracy to defame the plaintiff, personally and professionally, slander all forms of title to the plaintiffs properties, in order to deprive the plaintiff or anyone that would conduct business relations with the plaintiff beneficial relations with the plaintiff deprive the plaintiff of any and all forms a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, beneficial usage, enjoyment, or abilities to enjoy property, by dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff

255

forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

256

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XVI
## Abuse of Discretion
(Dealing in Obscene Manner 18 U.S. Code § 1961), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Abuse of Lawful Authority 5 U.S. Code 706(2)(a)), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1891. 18 U.S. Code § 1961 references the RICO statute which makes it unlawful for the defendants to act or deal in an obscene manner in conjunction with an organized criminal conspiracy to deprive a citizen of their rights to use, enjoy, or benefit from property.

1892. 18 U.S. Codes § 241 & 242 makes it unlawful for the defendants to conspire to deprive a citizen of their rights to use, enjoy, or benefit from property, under the color of their lawful authority of the City of Hazard and the Public Protection Cabinet.

1893. 5 U.S. Code 706(2)(a), states that when a court is reviewing an administrative agency's decision, the decision will be set aside when the decision was an abuse of discretion, or otherwise not in accordance with the law.

1894. 42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress for the defendants of the City of Hazard and the Public Protection Cabinet as a direct result of said entities conspiring together in order to deprive a tax paying citizen of their rights, or abilities to use, enjoy or benefit from property.

1895. Defendants of the City of Hazard abused their authority discretion with eminent domain by exploiting the plaintiffs personal resources with his own 446 Grand Hotel property and Newberrys building lots, only to then force the plaintiff by threats of extortion to "surrender said property or lose everything" exhibits 53 thru 55.

1896. "Everything" as outlined in #1895(supra), would have included not only the Newberrys lot and 446 Grand Hotel building lot, but the 426 building and 67 Whitaker Way buildings as well.

1897. As the conspiratorial pact of the City of Hazard, and the Public Protection Cabinet have openly promoted previous defamatory, libelous, or otherwise derogatory rhetoric with regard to the buildings subject of this complaint, namely the 426 Main building, 67 Whitaker Way building, and the

257

former 446 Grand Hotel building, the said commercial properties were all effectively devalued by PVA to essentially little to no value of their original values, as a direct result of said rhetoric beginning in June 18th 2015 throughout the termination of the plaintiffs ownership August 7th 2023.

1898. As a direct result of said devaluation of #1897(supra), the plaintiff stood to collect next to nothing, due to said eminent domain threat of "taking everything if you don't cooperate."

1899. The defendants of City of Hazard and Public Protection Cabinet knew their slanderous, libelous, defamatory rhetoric would cause a devaluation in said properties previously belonging to the plaintiff, thus further sought extortion of the plaintiffs 446 Grand Hotel lot, Newberrys lot, and 426 building based in part on that devaluation.

1900. The defendants of the City of Hazard, Donald Mobelini and Denise Davidson, knew of the prior ambitions of the plaintiff with his commercial 446 property, yet utilized the said tactics among others as outlined in #1897(supra), to serve no other purpose but to indefinitely deny the plaintiff his prosperity with ownership of property, in favor of unjust enrichment of defendant Steve Campbell, HDA, EDA, FOA, in order to "create versatile outdoor recreation space" exhibit 65 *et al.*

1901. The "versatile outdoor recreation space" #1900(supra), was an abuse of eminent domain discretion, as the very same "triangle park" well known to provide the very same, is known to be located within three hundred feet (300ft) approximated, from said space.

1902. In addition to the "versatile outdoor recreation space" as in #1900(supra), the defendants related to FOA and Gerry Roll, known as "Appalachian Arts Alliance" located at 612 main street, approximately one thousand feet from said 446 Grand Hotel space, is also well known to house "versatile outdoor recreation space" similarity themed and set up consistent with Gerry Rolls Arts Alliance building/property.

1903. As the defendants of the City of Hazard and FOA already had "plenty of outdoor recreation space" other than described in #1895 thru #1902(supra), the said seizing of the plaintiffs tax and economically contributing facilities simply to destroy them constitute an egregious deprivation of rights of the plaintiff to use, benefit and enjoy property for the unjust enrichment of Steve Campbell, FOA, EDA, and HDA respectively, by diverting community commercial or residential leasing dependency to the defendants own benefit or interests.

1904. The "versatile outdoor recreation space" as aforementioned, involved transitioning said

258

446 Grand Hotel and Newberrys lots from tax contributing property to tax detriment property, as government ownership is known to not collect taxes on property owned by the government.

1905. Denise Davidson further abused authority discretion of eminent domain by utilizing said tactics of extortion and exploitation of the plaintiffs personal financial resources to add nearly 80% of all remaining parking the plaintiffs residential tenants previously enjoyed, promising to "leave it as parking" only to promptly deny the parking later, including the plaintiffs, as outlined in #1895 thru #1904(supra) exhibits 11 thru 51.

1906. Perry Circuit Judge Alison Wells has recently been discovered, over this last calendar year, to be deeply involved with the non profit tied to this suit, Foundation of Appalachian Kentucky (FOA) exhibit 49.

1907. As referenced in #1906(supra) the said conflict was never disclosed in the inter-related cases of *Brian Carter vs City of Hazard 16-CI-00020* and *Carter Realty vs FOA 22-CI-00166*.

1908. Defendant Denise Davidson is also a sitting member of FOA alongside judge Wells, the non profit involved with litigation against the plaintiff.

1909. Defendant Denise Davidson holds a position as "master commissioner" a role known for "assisting the Perry Circuit Court in the commencement of its duties" revealing an additional *ex parte* relationship in favoritism of Davidson and her non profit FOA, also alongside judge Wells.

1910. Perry State Circuit Court Judge Alison Wells abused the discretion of her position when she ruled against the plaintiffs *pro se* representation, only when the plaintiff introduced approximately sixty (60) new exhibits and moved the court to accept judicially noticed facts based on said evidence April 11th 2025 that revealed the defendants committed arson upon the 67 Whitaker apartment complex.

1911. Alison Wells abused her discretion as cited in #1906(supra) by performing exhaustive heavy ended legal research in order to aid or assist her colleague of FOA Denise Davidson in ruling against the plaintiffs right to *waive counsel* pursuant to the 6th amendment, whilst making no effort to review the plaintiffs memorandum defending his position pursuant to *Faretta vs California 422 U.S 806 (1975)* why the 6th amendment was presented, or other preemptive authorities by the plaintiff.

1912. Public Protection Cabinet representative Clayton Patrick abused his discretion as administrative official when he *mandated* counsel against the plaintiffs rights in order to aid and abet the City of Hazard in is policies of criminal mischief against its own citizens December 19th 2025.

259

1913. Public Protection Cabinet representative Clayton Patrick was given repeated notice that he was committing a crime, cited the proper authorities on October 13th and 14th of 2025, again on December 18th and 19th of 2025, in proof beyond reasonable doubt that he intended, knowingly and intelligently to deprive the plaintiff of his rights to waive counsel as well as assist others in crimes against the citizens of the United States pursuant to 18 U.S. Code § 242.

1914. The Kentucky State Appellate Courts abused their discretion by ruling against the plaintiffs appeal of state circuit judge Alison Well's ruling against the plaintiffs *pro se* representation by a loose ended superficial at best examination of the plaintiffs controlling case law, doctrines of authority, without observing any state legislative authority or supreme authority of the federal law, to serve no other purpose but to deprive the plaintiff of his discretionary right to waive counsel established by the 6th amendment right to do so.

1915. As a DIRECT RESULT of abuse of discretion of the City of Hazard's authority, flagrant abuse of the Public Protection Cabinet, as well as abuse by flagrant disregard of an individuals rights to due process of the 6th amendment to waive counsel of both state and federal legislative authority, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by dealing in an obscene manner, or generally obscene manner, in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce

260

business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

261

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XVII
### Abuse of Judicial Process
(Dealing in Obscene Manner 18 U.S. Code § 1961), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Abuse of Lawful Authority 5 U.S. Code 706(2)(a)), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

1916. Abuse of process is a legal doctrine that allows courts to prevent the misuses of their processes, where legal system is exploited for improper purposes, such as harassment, improper motives, entrapment, bad faith prosecutions, failing to disclose material fact, other egregious abuses.

1917. 18 U.S. Code § 1961 references the RICO statute which makes it unlawful for the defendants to act or deal in an obscene manner in conjunction with an organized criminal conspiracy to deprive a citizen of their rights to use, enjoy, or benefit from property.

1918. 18 U.S. Codes § 241 & 242 makes it unlawful for the defendants to conspire to deprive a citizen of their rights to use, enjoy, or benefit from property, under the color of their lawful authority of the City of Hazard and the Public Protection Cabinet.

1919. 5 U.S. Code 706(2)(a), states that when a court is reviewing an administrative agency's decision, the decision will be set aside when the decision was an abuse of discretion or otherwise not in accordance with the law.

1920. 42 U.S. Codes § 1983 & 1985 allow the plaintiff to seek redress for the defendants of the City of Hazard and the Public Protection Cabinet as a direct result of said entities conspiring together in order to deprive a tax paying citizen of their rights, or abilities to use, enjoy or benefit from property.

1921.  On June 18th 2015, Peter Ervin of the Public Protection Cabinet abused the state circuit courts judicial process by obtaining an injunction to vacate the plaintiffs former 426 building, essentially, "for failing to update the fire separation when told" *State Fire Marshal vs Brian Carter 15-CI-000259.*

1922.  Pursuant to KRS 227.330, the Public Protection Cabinet has the authority to order a building be vacated if said structure "extremely dangerous conditions that warrant immediate action in order to protect life and limb" (loosely defined).

1923.  Pursuant to KRS 227.390 the Public Protection Cabinet has the authority discretion, as well as a duty, that if any "unsatisfactory condition" deemed as making said cabinet "unhappy or displeased" with any act or failure to act on behalf of a property owner, the cabinet has the authority under that statute to have the work performed to its own satisfaction and bill the owner for the expense, this was not done, nor was such option disclosed to the court June 18th 2015, to conceal material fact.

1924.  The stated "failure to perform such an update" in #1921(supra), was based on material false statement or fraud in the inducement from defendant Kenneth Browning by claiming that "no fire separation existed," of which said information was then either willfully withheld by Peter Ervin, or Ervin demonstrated extreme indifference of duty to obtain, convey, truthful, accurate information to the state circuit court in order deprive the plaintiff of righteous, beneficial usage of said 426 building.

1925.  Paul Collins abused the courts process when he claimed that "Mr Carter failed to exhaust his administrative remedies" after openly denying all remedies, in order to get favorable rulings by the state circuit court for the purpose of depriving the plaintiff of his due process rights to property.

1926.  The stated case of *State Fire Marshal vs Brian Carter 15-CI-00259* was eventually dismissed under rule 77 for the cabinets failure to prosecute said suit December 21st 2021.

1927.  Kenneth Browning abused state circuit court process by obtaining a criminal complaint of "wanton endangerment" against the plaintiff when Browning knew or should have known Browning's original statements "deeming said 426 building as unsafe" were categorically false On or about June 27th 2023.

1928.  Defendant Denise Davidson is discovered to have heavy involvement with the defendants of FOA, Foundation of Appalachian Kentucky, aside from her legal representation.

1929.  Denise Davidson abused judicial process by utilizing her influence with state circuit

263

Judge Alison Wells in order to gain favorable rulings, in order to prevent the plaintiffs new evidence from being accepted into the record as judicially noticed facts on or about April 21st 2025.

1930. Denise Davidson abused judicial process by using her influence as master commissioner in order to sway or gain favorable rulings with the Perry Circuit Court Judge Alison Wells against the plaintiff in *Brian Carter vs City of Hazard 16-CI-00020, State Fire Marshal vs Brian Carter 15-CI-00259, and Carter Realty vs FOA 22-CI-00166* respectively.

1931. Denise Davidson abused judicial process as outlined in #1928 thru #1930(supra), in order to obstruct justice in favor of keeping critical evidence of organized criminal conspiracy out of the court record, of which proved the defendants of FOA, City of Hazard, and Steve Campbell conspired to commit arson and attempted murder of the plaintiffs former residential tenants, wantonly endangering their lives, and attempting to entrap them inside of the 67 Whitaker Way property for the purposes of attempted murder, as aforementioned.

1932. Jennifer Wolsing abused the Public Protection Cabinets administrative process by participating in a fraud in the inducement with her colleague of legal counsel Linda Keeton, or Wolsing demonstrated extreme indifference to convey truthful, factual information to executive director Clayton Patrick, in order to deprive the plaintiff of his rights to waive counsel, as well as deprive the plaintiff of his rights to protect property of which the plaintiff still holds security interest December 19th 2025.

1933. Jennifer Wolsing abused the Public Protection Cabinets administrative process by committing the said fraud or fraudulent concealment of information as outlined in #1932(supra) in order to participate in criminal mischief against the plaintiff, by damaging secured property of which the plaintiff holds security interest, in order to damage the plaintiff irreparably,

1934. Jennifer Wolsing abused the Public Protection Cabinets administrative process by committing the said fraud or fraudulent concealment of information as outlined in #1933(supra) in order to participate in destruction of evidence of the City of Hazard's crimes against its own citizens.

1935. The Public Protection Cabinet abused its process of administrative procedures on or about July 1st 2015 by using false, misleading, or conjectural lines of statements in order to achieve unfavorable results for the plaintiff, in order to deprive the plaintiff of his rights to use, benefit or enjoy property of the plaintiffs formerly owned 426 main building.

1936. Denise Davidson abused state circuit court process by submitting memorandum denying

264

any previous involvement with the Public Protection Cabinet in *Carter Realty vs FOA 22-CI-000166* on or about April 8th 2025.

1937. Denise Davidson abused state circuit court process by making material false statements or fraudulent concealment of material fact to the state circuit court in intertwined cases against the plaintiff as aforementioned #1936(supra).

1938. As a DIRECT RESULT of state circuit court processes, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the

265

monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

266

## Count XVIII
## Felony Application of Lien

(18 U.S Code § 1957 – Engaging in Monetary Transactions in Property Derived from Unlawful Activity), (Felonious Application of Lien KRS 434.155), (Perjury in a Lawful Instrument KRS 523.020), (18 U.S. Code § 1038 False Information and Hoaxes), (Criminal Attempt 506.010), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242)

1939. Pursuant to KRS 506.010 it is unlawful to attempt to intentionally engage in conduct that would constitute a crime, and take *"substantial step in course of conduct planned"* to culminate in the commission of a crime.

1940. 18 U.S. Code § 1957 makes it unlawful to engage in monetary transactions of property obtained by or from illicit means.

1941. Pursuant to KRS 434.155 it is a felony to apply a lien in excess of the amount that can be legally accounted for or justified.

1942. Pursuant to KRS 523.020 it shall be unlawful to forge a false statement as a lawful instrument in order to achieve a crime.

1943. Pursuant to 18 U.S. Code § 1038 is shall be unlawful to engage in false information or involving hoaxes or trickery in order to achieve unlawful ends.

1944. 18 U.S. Code § 241 makes it unlawful for two or more persons to conspire together with false information, hoaxes or other trickery in order to deprive a citizen of their rights to use, enjoy or benefit from property.

1945. 18 U.S. Code § 242 makes it unlawful for government officials to deprive the rights of citizens whist operating under the guise or color of their lawful authority to do so.

1946. Beginning September 1st 2015 until March 14th 2016, defendant representatives of the City of Hazard, namely Daniel Roll and Paul Collins criminally conspired to deprive the rights of the plaintiff by hoaxes and trickery, in order to deprive, impair or limit the plaintiffs abilities to provide essential care of his September 1st 2015 fire damaged historic 446 Grand Hotel facility.

1947. The defendants named in #1946(supra) achieved said objectives by denying the plaintiffs due process issuance of a permit to provide care of said facility, only to promptly deny plaintiffs due process, in order to destroy the plaintiffs property in order to achieve the unjust enrichment of others.

267

1948. Paul Collins achieved personal benefit of depriving the plaintiffs rights to property as outlined in #1946 thru #1947(supra), with the long term goal of destroying the plaintiffs prosperity with said historic 446 Grand Hotel building/facility for the enjoyment, pleasure and benefit of his own preferred "well capitalized non profit" later discovered to be the defendants of FOA.

1949. At some point after the City of Hazard police departments conspired with the City of Hazard fire department to allow squatters invade a vacant apartment unit in order to cause significant fire damage to said facility August 31st 2015, the defendants Paul Collins and Daniel Roll would eventually conspire to recruit its own "preferred contractors" to destroy otherwise serviceable portions of said facility that were of no "safety detriment" to anyone with regard to #1946 thru #1947(supra).

1950. The said "preferred contractors" as outlined in #1946(supra) was eventually C&C Construction, a known pipeline company in the commonwealth for an officially awarded bid amount of forty four thousand ($44,000.00) dollars to destroy said portions of said 446 building in #1946 thru #1948(supra).

1951. The said contractors outlined in #1950(supra) was alleged to have completed said demolition activities on or about March 8th 2016.

1952. On or about June 2nd 2017 Defendants Daniel Roll and Paul Collins applied a lien on the plaintiffs former fire damaged 446 Grand Hotel/facility on or about the amount of $78,.517.00.

1953. The stated $78,517.00 lien applied referenced in #1952(supra), to the said 446 Grand Hotel facility was stated to be the "taxable value of the 446 Grand Hotel property at that time."

1954. The stated lien in #1952(supra) was applied to the plaintiffs former fire damaged 446 Grand Hotel facility, after the plaintiff had filed a writ of mandamus petition/lawsuit requesting that the court order the defendants to issue a pre-paid permit to allow commencement of reconstruction with wall braces for said structure in January of 2016 *see Brian Carter vs City of Hazard 16-CI-00020.*

1955. The defendants directed the plaintiff to "come in and pay for a permit to brace the walls a rebuild said 446 building, then refused issuance of his permit in pursuit of their own agenda shortly after the initiating events of September 2015.

1956. The stated lien was also applied, after "the city" issued and executed its own plans to demolish a sizable portion of the plaintiffs 446 Grand Hotel facility, shortly after initiating pursuit of

Daniel Roll and Paul Collins own agenda on or about February 3rd 2016 until March 8th 2016.

1957. The defendants of the City of Hazard, most particularly Daniel Roll as a government official, and Paul Collins attorney representing the City of Hazard, knew, or should have known that placement of such a lien on property more than could be lawfully justified constituted a crime.

1958. The defendants knew, or should have known that they were not legally entitled to the "full taxable value" of said 446 Grand Hotel property.

1959. As the lien was suspicious in intent, the defendants of the City of Hazard, Daniel Roll and Paul Collins made future dealings with the City of Hazard difficult to trust, or fully trust.

1960. Is is generally well known that defendant Steve Campbell had long sought a full demolition contract against the plaintiffs 446 Grand Hotel structure since the initiating September 1st 2015 events, for his own self enrichment or benefit.

1961. The said lien was then utilized by Denise Davidson and Donald Mobelini, to exploit the plaintiffs personal resources into making improvements to said 446 Grand Hotel property, under false pretenses that they'd allow the plaintiff to make restoration of his historic 446 Grand Hotel structure sometime on or about January 13th 2020, throughout March 13th 2020.

1962. After exploiting the plaintiffs personal resources as outlined in #1961(supra), the defendants, specifically Tony Eversole and Donald Mobelini then decided they "changed their minds" and decided "we're going to try to get the building from him now" (from the plaintiff).

1963. After ceasing to make continued improvements to said 446 Grand Hotel upon receipt of notice as outlined in #1962(supra) the defendants Donald Mobelini and Denise Davidson then conspired to extort the plaintiff to "surrender the property to us in a sale or we'll take everything" if the plaintiff had declined to capitulate to their demands.

1964. It was thereafter communicated to the plaintiff that the "contract of sale would not be the final resolution of your case" (exhibit 53) yet, the attorneys John Hansen and Jonathan Shaw would later submit a "settlement agreement" without knowledge or consent from the plaintiff to engage in such activity June 25th 2021 in the inter-related case of *Brian Carter vs City of Hazard 16-CI-00020*.

1965. Pursuant to the "contract of sale" outlined in #1964(supra), no stipulation of any "settlement agreement or release" was in any of the contract of sale terms with regard to the City of Hazard's June 10th 2021 forced "non negotiable sale" of the 446 Grand Hotel property, a primary

269

property, subject to this suit.

1966. Steve Campbell ultimately utilized his influence to fully destroy all remnants of the plaintiffs 446 Grand Hotel property for his own enrichment, to then participate in construction of various barriers, walls, and other fencing in order to attempt entrapment of the plaintiffs remaining residential tenants of his former 67 Whitaker Way building/facility, in order to conspire with said City of Hazard and FOA, to severely endanger, as well as taking of lives as a co-conspirator with the City of Hazard beginning June 10th 2021 until June 9th 2023.

1967. As a DIRECT RESULT of the conspiracy to apply a felonious application of a lien against property, in order to further exploit the financial resources of the plaintiff, only to then openly extort the plaintiff via hoaxes, fraud or trickery, via forcing a contract of sale under false pretenses, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment, or benefit of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never

271

benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XIX
### Conspiracy to Commit Arson of Commercial Properties
(Criminal Attempt to Endanger and Murder KRS 506.010), (Arson in The First Degree KRS 513.020), (First Degree Wanton Endangerment KRS 508.060), (Failure to Render Services KRS 413.245), (Conspiracy to Commit Arson Involving Interstate Commerce 18 U.S. Code § 844(i)), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Conspiracy to Tamper or Prevent Production of Evidence 18 U.S. Code § 1512), (Conspiracy to Obstruct Justice 18 U.S. Code § 371), (Dealing in Obscene Manner 18 U.S. Code § 1961(1),(a))

1968.  KRS 506.010 criminal attempt occurs when a person intends to commit a crime, and takes substantial step toward commission of said crime, even if the crime was not completed.

1969.  Pursuant to KRS 513.020 a person is guilty of arson in the first degree when, with intent to destroy to damage a building, he starts a fire and the building is inhabited or occupied, or the person has reason to believe the building may be inhabited or occupied.

1970.  Pursuant to KRS 508.060 a person is involved in a felony charge that occurs when a person engages in conduct that creates substantial danger of death or serious injury by demonstrating an extreme indifference to the value of human life.

1971.  KRS 413.245 permits a party to file civil action for relief whether brought in by tort, contract, arising out of any act or omission in rendering, or failing to render professional services for another.

1972.  Notwithstanding applicability of KRS 413.245 outlined in #1971(supra), the local City of Hazard Police and Fire departments are duly obligated to serve and protect citizens by the professional services they're dutifully obligated to provide to the taxpaying constituents of the United States.

1973.  18 U.S. Code § 844(i) is the federal arson statute, which makes it unlawful for the defendants to collaboratively burn fiable commercial properties to interfere with interstate commerce.

1974.  18 U.S. Codes § 241 & 242 make it unlawful for two or more persons to conspire together in order to deprive rights to property by organized criminal conspiracy, under color of lawful

272

authority of the City of Hazard, Public Protection Cabinet, or other governing entities.

1975. 42 U.S. Codes § 1983 & 1985 allow a party to seek redress for an organized conspiracy to deprive the rights of a person as well as redress for deprivation of property rights of a person.

1976. 18 U.S. Code § 1512 makes it unlawful for the defendants to conspire to destroy physical evidence in order to fraudulently conceal evidence of crimes by usage of illegal force, threats, or deception in order to prevent a witness from producing evidence.

1977. As the defendants of the City of Hazard and the Public Protection Cabinet have been accused of arson and fraud in order to deprive the plaintiffs rights to pursue justice, the said defendants have been gifted with remarkable incentive to have the plaintiffs 67 Whitaker Way as well as 446 Grand Hotel buildings destroyed by threats and coercion in order to conceal said crimes.

1978. 18 U.S. Code § 371 encompass conspiracies to defraud the United States, including obstruction of justice.

1979. As of December 19th 2025, the defendants of the Public Protection Cabinet Clayton Patrick and Denise Davidson are utilizing an illicitly discriminatory practice against the plaintiffs *pro se* representation in order to tactfully prevent the plaintiffs new evidence of said crimes out of court and administrative record, particularly with the inter-related case *Carter Realty vs FOA 22-CI-00166*.

1980. 18 U.S. Code § 1961(1)(a), encompasses the RICO statute, that, in addition to the crimes alleged by the plaintiff of arson, fraud, extortion, exploitation, among other felonious means to achieve the defendants collective objectives of depriving the plaintiff of all manner of rights to use and enjoy property, the said manner of felonious behaviors *deals in obscene manner* consistent with the statute.

1981. On or about June 18th 2015 The Public Protection Cabinet and the City of Hazard conspired together in a highly coordinated, collaborative effort to vacate the plaintiffs 426 Main Street building, otherwise known as the Treehouse Cafe and Bakery, to then have said building vacated, with city provided utilities also removed from said facility.

1982. On or about June 18th 2015 The Public Protection Cabinet and the City of Hazard conspired together in a highly coordinated, collaborative effort to vacate the plaintiffs 426 Main Street building, effectively depriving the plaintiff of any and all forms of enjoyment, usage and benefit of owning said facility.

1983. Upon the June 18th 2015 date as aforementioned, the 426 Treehouse Cafe and Bakery had

273

consisted of a two level sports bar themed restaurant/bar/lobby area with apartments newly constructed in the upper floors above said restaurant/bar/lobby.

1984. The 426 Building/Restaurant/Cafe was well known to host several restaurants in the past, or prior to the plaintiffs ownership/acquisition of said building/facility.

1985. The plaintiff later acquired the neighboring 446 Grand Hotel/Main Street Mall building next door, hosting a series of businesses that had sublet in said facility, as well as approximately nineteen (19) residential apartment units in said facility on or about March of 2013.

1986. On the date of August 31st 2015, the defendants representing the City of Hazard, most specifically the Hazard City Police Department (HPD) knowingly and intentionally allowed burglars to invade a previously vacant apartment unit located on the 2nd floor, apartment number #31 of the plaintiffs former 446 Grand Hotel building/facility, which faced the rear of the building, furthest away from main street, facing the river bank side of the building.

1987. The stated representatives of the City of Hazard, #1986(supra), most specifically the Hazard City Police Department (HPD), knew, or should have known that burglary and trespassing are in fact crimes, thus should have removed them from the stated 446 Main property when contacted for assistance the day or evening of August 31st 2015.

1988. The City of Hazard's HPD knew or should have known of its foremost duties to serve and protect the public pursuant to the criminal statutes as aforementioned was its top duty, with regard to #1986(supra).

1989. On said August 31st 2015 date, City of Hazards HPD defended the criminal acts of the burglars, claiming "criminals have squatters rights" - verbatim.

1990. The aforementioned "squatters rights" #1989(supra), has been commonly utilized by the City of Hazard's HPD to defend what it knows, or should have known, to justify otherwise criminal activity of unwanted, or undesired actions taken against private property of its taxpaying citizens, pursuant to a well known "policy practice" of the City of Hazard.

1991. Within less than 24 hours after said trespass, August 31st 2015, #1984(supra), intentionally allowed by the defendants of the City of Hazard's HPD, a fire from same said apartment unit was later started in said vacant apartment, at which held the said trespassers in said apartment unit in the very early morning hours of September 1st 2015.

274

1992. It is common knowledge that squatters often have a propensity to vandalize or commit arson of properties upon which unauthorized occupants are known to perform such criminally egregious acts, when they are aware of a property owners intent to remove them.

1993. On said August 31st 2015 date, City of Hazard's police department, otherwise known as HPD, were duly notified of the desires to have said trespassers removed from the 446 Grand Hotel property, thereby citing "criminals have squatters rights" remark by said department.

1994. City of Hazard's Fire Department, is commonly known to be very well equipped, very well staffed, is known to be located within approximately one thousand feet (1,000ft) of said 446 Grand Hotel facility, formerly located on main street in Hazard Kentucky.

1995. The City of Hazard Fire Department is well known, that prior to the stated 2015 Grand Hotel fire of the 446 building, to have an otherwise outstanding capability and performance of quickly and promptly extinguishing fires that occur, limiting their spread to other areas, or other facilities.

1996. City of Hazard's Fire Department, arrived on scene September 1st 2015 with several fire trucks and a staff of approximately 15-20 men ready to respond.

1997. Instead of providing a prompt response, the City of Hazard Fire Department were observed by many former residents as "laughing, cutting up, and meandering or "lolly gagging around" over the course of several hours.

1998. Instead of providing a prompt response, the City of Hazard Fire Department intentionally allowed the 2015 Grand Hotel fire, originating from the illegally occupied apartment unit, to slowly spread throughout all 5 floors, with the willful intent of allowing the entire structure to be destroyed.

1999. Instead of providing a prompt response, the City of Hazard Fire Department demonstrated extreme indifference to their fiduciary duties to protect and preserve precious life and property, by flagrantly refusing to visit 3rd, 4th or 5th floors of the former 446 Grand Hotel building to ensure that everyone was safely evacuated.

2000. The City of Hazard Fire Department demonstrated astoundingly unequal, unfair exercise of standards in the performance of its duties, by quickly and promptly entering and stopping fire from spreading throughout the neighboring 470 Main Street building to the 446 Grand Hotel building, during the September 1st 2015 fire events of the plaintiffs former 446 Grand Hotel building.

2001. Insurance adjuster Monica Isbel consulted with the fire department a short time after said

275

September 1st 2015 fire of the 446 Grand Hotel building, at which fire department staff openly boasting, gloating, or otherwise bragging about "letting it all burn."

2002. A short time after the September 1st 2015 Grand Hotel building fire loss, is is known that LKLP representatives also consulted with Hazard City Fire Department regarding displacement of residential tenants from the plaintiffs former 446 Grand Hotel facility.

2003. The stated LKLP representative as in #2002(supra), was informed by the City of Hazard Fire Department "the fire started in the Grand Hotel building because the owners wouldn't cooperate with remedying fire hazards in the (446 Grand Hotel) building."

2004. The stated LKLP representative in #1202 thru #2003(supra), was also informed by the City of Hazard Fire Department that "we let it burn due to the meth labs (or alleged meth activity) in that building" in an effort to slander or defame the reputation of the plaintiff with regard to his former 446 Grand Hotel facility.

2005. The City of Hazard Fire Department is known shortly thereafter the September 1st 2015 fire loss of the historic 446 Grand Hotel building, to promote a "raffle for a Makers Mark Fire Hat" simultaneously promoting/encouraging alcoholism in a community that is well known for having extreme poverty/drunken, or similar drug related issues known throughout the community.

2006. There are no aforementioned records that has ever been established, during and/or around the time of the 2015 fire loss of the plaintiffs former 446 Grand Hotel facility, of which ever shown or revealed any evidence of stated "drug activity and fire hazards" with regard to the stated communications with LKLP and the City of Hazard Fire Department as in #2002 thru #2004(supra).

2007. It is well known or generally well known that the defamatory statements of official public recognition of the closure/vacature of the plaintiffs former 426 Treehouse Cafe building/facility by the defendants of the Public Protection Cabinet, specifically, with regard to the negatively charged rhetoric promoted by its primary antagonists Kenneth Browning, Alan Walters, Ronald Hacker and Mike Haney from mid June 2012 until June 18th 2015, was generally well known as a large contributing factor in the City of Hazard Fire Departments subsequent "treatment" toward the plaintiff's Grand Hotel building/facility September 1st 2015.

2008. Shortly after the September 1st 2015 fire of the plaintiffs former 446 Grand Hotel facility, the City of Hazard and the Public Protection Cabinet collectively contacted Kentucky Power requesting

276

"to have power shut off" to the plaintiffs third and final former 67 Whitaker Way building/facility.

2009. Over several subsequent weeks, after September 1st 2015 446 Grand Hotel building fire, City of Hazard Police department were observed vacating the plaintiffs formerly adjacent 67 Whitaker Way apartment building, also formerly known as the 446 ½ Main Street apartment building.

2010. Former leading state fire marshal representative, William Swope, around the time of events as cited in #2008(supra), then declared to the plaintiff, that "the (67 Whitaker Way) building needed to go through his building and codes enforcement to be allowed to reopen" the same treatment as was given to the plaintiffs former 426 building around June 18th 2015.

2011. On or about December 15th 2015, a new Kentucky governor takes office, Matt Bevin.

2012. The Bevin administration is known for terminating several members of the Public Protection Cabinet upon his official assumption of public office as state governor via executive order.

2013. The terminations of employment as outlined in #2012(supra), included former deputy commissioner Jack Coleman, former commissioner Gary Feck, and former head state fire marshal William Swope, all operating under the umbrella of the Public Protection Cabinet, respectively.

2014. The stated terminations in #2012 thru 2013(supra), was known to be performed due to allegations of "political corruption," or alleged political corruption, within the previous governor Steve Beshear's administration.

2015. Former Governor Matt Bevin is known to have "promoted" former assistant head state fire marshal and defendant Mike Haney, to a new position of head state fire marshal, in place of former state fire marshal head William Swope sometime after Governor Bevin taking office Dec 15th 2015.

2016. After many months on or around April 29th 2016, Mike Haney eventually answered a phone call from the plaintiff, in which the plaintiff then quickly provided photographic evidence in a report that former state electrical inspector Ronald Hacker had intentionally mislead Haney's office regarding closure of said 67 Whitaker Building during the previous September 2015 events.

2017. Mike Haney then agreed, with some measure of reluctance, to send a different fire marshal, later identified as C.W Cornett, to work with the plaintiff on reopening the plaintiffs former 67 Whitaker Way building/facility on or about the month of May 2016 as outlined in #2016(supra).

2018. After completing a series of various odd ended tasks in a relatively short amount of time, the assigned fire Marshal C.W. Cornett, contacted defendant Mike Haney, to inform Haney that C.W.

277

Cornett decided to allow re-occupancy of the plaintiffs former 67 Whitaker Way building/facility, On or about June 5th 2016.

2019. A brief argument quickly ensued between state fire marshal C.W. Cornett and the new head state fire marshal Mike Haney, with the argument ending in "Mike he's done everything we've asked him to do" with Haney grumbling with displeasure "well ok then." Verbatim.

2020. Defendant Mike Haney knew at said point as outlined in #2016 thru #2018(supra), that information from defendant Ronald Hacker was highly questionable at best, but refused to exercise the same discretion given to the previously June 18th 2015 vacated 426 Treehouse building, in regards to assisting the plaintiffs with reopening said building as well.

2021. Again, same as his predecessor William Swope, defendant Mike Haney, reverted back to the original treatment of "passing the buck" back to his "building and code enforcement department" with regard to "reopening the (plaintiffs) 426 building" again stating "you gotta go through them to get back in there."

2022. Department of building codes enforcement under Public Protection Cabinet, Director Duane Curry, under the former Bevin administration, eventually referred the said matter of reopening the plaintiffs 426 building, beginning with its restaurant use portions, in back to Mike Haney to "assist with it's reopening" on behalf the plaintiff September 13th 2017.

2023. Upon receiving the direction from Duane Curry as in #2022(supra), Mike Haney would not respond to any subsequent communication attempts from the plaintiff regarding any such a reopening of the plaintiffs former 426 Treehouse Cafe building.

2024. Mike Haney then began his renewed push in retaliation against the plaintiff requests to officially reopen said 426 building with his Public Protection Cabinet, to have the plaintiff *prosecuted* under the previous 2015 injunction order under the allegations of "occupying or benefiting" from the usage of, or rather "illegal occupancy of" the plaintiffs former 426 Treehouse Cafe building, largely due to complaints from defendant Gerry Roll from the neighboring 420 building next door, sometime around October 14th 2017 throughout September 18th 2018.

2025. Without providing explanation, former executive director Harold Corder informed the plaintiff "it just doesn't look like Mike Haney's going to help you" sometime around May 2019.

2026. Gerry Roll is well known around the time time of events with Mike Haney as outlined in

278

#2024 thru #2025(supra), to have been very aggrieved with the plaintiff over his decline of offers to purchase his former 426 Treehouse Cafe building, at substantial loss to the plaintiff.

2027. Mr Haney would at some point briefly respond, to the plaintiff declaring "it's out of my hands talk to my lawyer" seeking prosecution of the plaintiff rather than assistance.

2028. Former legal counsel on behalf of the Public Protection Cabinet, under the former Bevin administration David Startsman, did initially move to comply with the desires of Mike Haney for prosecution against the plaintiff October 26th 2018.

2029. David Startsman would later *decline* to proceed with Mike Haney's prosecution desires as outlined #2028(supra), based on documentation of Gerry Roll's bias provided to David Startsman's office, among other exculpatory information, on or about November 7th 2018.

2030. The 2015 state injunction case was eventually dismissed by the Perry Circuit Court under rule 77 without prejudice, due to a lengthy period of inactivity in the case declining to prosecute the plaintiff, with the case currently remaining closed, and unajudicated/unresolved to date Dec 21st 2021.

2031. Months and years pass without assistance from defendant Mike Haney, Governor Andy Beshear would later assume office in place of former governor Matt Bevin.

2032. Upon assuming office, Governor Andy Beshear would then terminate Bevin's commissioner of housing, Steve Milby, and Bevin's director of housing Duane Curry, who had previously referred the matter of reopening the plaintiffs former 426 building back to Mike Haney during Bevin's administration.

2033. Commencing May 4th 2022 throughout June 9th 2023, the defendants of FOA, namely Gerry Roll as it's named "executive director," defendant Payton Morton, Tony Eversole, and Steve Campbell began a campaign of harassment of the plaintiff and his residential tenants, with erection of various barriers, walls, fences and other such obstacles depriving the plaintiff and his residential tenants of his 67 Whitaker Way and 426 Treehouse Cafe buildings significant enjoyment, benefit and usage of said facilities, as well as creating unsafe conditions of entrapping the plaintiffs tenants and limited their safe escape from the plaintiffs former properties, limiting ingress to fire and first responders, as aforementioned, exhibits 7 thru 60.

2034. As a direct result of defendant Mike Haney's repeated refusals to respond to the plaintiffs request to assist with officially reoccupying his former 426 Treehouse Cafe building through the Public

279

Protection Cabinets official channels, and the plaintiffs obvious need for income to complete the installation of a new NFPA 13 fire sprinkler/fire suppression system for the plaintiffs former 426 Treehouse building, the decision was eventually made by the plaintiff in reopening and again leasing the residential use portions of his former 426 building in late 2022 or early in 2023.

2035.  On Friday, June 9th 2023, the plaintiffs former residential tenants began a series of complaints to the City of Hazard regarding the new concrete barriers/walls being erected and placed around the remainder of the plaintiffs 67 Whitaker Way building, by City of Hazard contractor Steve Campbell as in #2033(supra).

2036.  Upon receipt of said complaints as outlined in #2035(supra), a fire is then set on the 3rd floor of the plaintiffs former 67 Whitaker Way apartment building, quickly engulfing at least one third floor apartment unit on said date of June 9rd 2023.

2037.  Later in the day on June 9th 2023, In a manner consistent with its pervasively known patterns of retaliatory based behaviors, the City of Hazard, its fire department, and the defendants of Foundation of Appalachian Kentucky (FOA), openly *admitted* to their involvement regarding the deliberate and nearly total destruction by fire of the plaintiffs 67 Whitaker Way facility beginning on the buildings 3rd floor, as *admitted*, in the related case of *Carter Realty vs FOA 22-CI-0166.*

2038.  Various exhibits produced by the plaintiff in *Carter Realty vs FOA 22-CI-00166* reveal the City of Hazard Fire Department expending considerably more time contending with the various fencing/barriers and other obstructions of ingress/egress erected by the City of Hazards co-conspirators of Steve Campbell, Payton Morton, Gerry Roll of FOA, and Tony Eversole of the City of Hazard, regarding said 2023 building fire of 67 Whitaker Way facility, rather than battling said fire of the plaintiffs former 67 Whitaker Way facility.

2039.  As was very similar behavior in the plaintiffs former 446 Grand Hotel facility, in 2015, the City of Hazard Fire Department once again demonstrated extreme indifference of its duties to the preservation of both life and property, by demonstrating absolutely no sign of urgency whatsoever with fighting/extinguishing the plaintiffs 67 Whitaker Way building/fire said evening of June 9th 2023.

2040.  During the course of the June 9th 2023 building fire of the plaintiffs former 67 Whitaker Way building/facility, witness accounts, observed by several residential tenants of the former 67 Whitaker Way facility, that the City of Hazard, over the course of several hours, to have wandered

around aimlessly, with little purpose, in and out of the ground floor units of the plaintiffs former 67 Whitaker Way building/facility, behaving as if the facility itself was not actively burning.

2041. During the course of the June 9th 2023 building fire regarding said meandering activities as outlined in #2040(supra), at no point in time did the City of Hazard Fire Department officials ever demonstrate any urgency whatsoever to remove beloved pets or personal effects from the plaintiffs former 67 Whitaker Way building/facility, resulting in the permanent loss of both precious life and property to the plaintiffs residential tenants.

2042. During the course of the June 9th 2023 building fire, the City of Hazard Fire Department were observed yelling, cursing profanities at the former residential tenants of the plaintiffs 67 Whitaker Way facility, to "get the {expletive} back, sit the {expletive} down and watch" forcing the former tenants to watch in horror at the deliberate abuse of willful neglect by the City of Hazards officials as aforementioned.

2043. During the plaintiffs return to the scene the evening of June 9th 2023 of his former 67 Whitaker Way facility, a 4" water cannon was observed for at least an hour spraying nothing but the open air and the parking lot beside the 67 Whitaker Way building, where the former residents/tenants were forced to watch, while the stated fire department of three staff continued with its slow, aimless meandering around at a pace similar to that of sloths or at minimum, individuals showing extreme disinterest in faithful execution of fire fighter duties.

2044. A "concerned bystander" eventually made use of the stationary cannon, previously active and spraying water aimed at absolutely nothing but open air, redirected said cannon at the building and into the windows where fire was observed, quickly extinguishing over 30% of overall said fire within an approximately three to five minute period of time.

2045. Upon the stated #2044, a somewhat heavy set fire department staff member then approached and directed the stated individual yelling to "leave or go to jail!"

2046. After being told to "leave or go to jail," as in #2045(supra), the 4" cannon was left to spray water directly into one of the open windows into the building, at which had just shown significant signs of fire.

2047. Upon being directed to "leave or go to jail" as outlined in #2044 thru #2046(supra), One fire department "worker" then very slowly approached said cannon, slowly turned the cannon off,

281

walked away from the cannon, and left said cannon off long enough for fire to catch back up in the room that was largely extinguished, over the course of approximately another hour, before turning said cannon back on again.

2048.  At some point into the late evening of the events outlined in #2041(supra), the stated fire department workers or staff then progressed its pace from that equivalent to the movement of sloths to that at best, the pace of hourly wage plumbers or contractors "milking the clock," when attaching said 4" cannon to the basket of a fire truck, exhibit 39.

2049.  The stated movements/pace from City of Hazard Fire Department staff, as outlined in #2048(supra), moving at the said pace equivalent to that of hourly wage plumbers at best, continued to demonstrate virtually no sense of urgency whatsoever up until the very late ours of the night on June 9th 2023.

2050.  During the course of several subsequent hours as outlined in #2035 thru #2049(supra) the stated fire truck and man basket proceeded to prioritize spraying the exterior brick walls and vinyl siding of the former 67 Whitaker Way apartment building, while openly, visually disregarding an obvious and urgent need to place the water directly on the fire itself.

2051.  During the course of several subsequent hours outlined in #2048 thru #2050(supra), the stated fire truck and man basket proceeded to change its spray angle from a straight concentrated spray to that of a fine mist, then aimed it at the plaintiffs former 67 Whitaker Way building exhibit 41.

2052.  The fine mist spray from the stated fire truck as outlined in #2048 thru #2051(supra), combined with distance from the 67 Whitaker building made such actions both visually and noticeably ineffective exhibit 43.

2053.  With regard to the said *admissions* of the defendants of Foundation of Appalachian Kentucky (FOA), regarding said organizations *admissions* of involvement in said building fire outlined in #2035(supra), with regard to the plaintiffs June 9th 2023 building fire loss of the plaintiffs former 67 Whitaker Way building, also *admitted* that "the fire department wouldn't have been that close to the building anyway" with regard to the said fire department sitting opposite side of the building, behind the approximately one hundred foot long white metal wall the defendants of FOA erected down the south facing side of the plaintiffs former 67 Whitaker Building, blocking or greatly restricted access to said property since May 4th of 2022.

282

2054. The aforementioned admission outlined in #2053(supra), that the fire department "wouldn't have bothered" to attempt to faithfully execute its duties to protect and preserve both precious life and property that was tragically lost in the June 9th 2023, 67 Whitaker building fire, said attitude(s) constitutes a willful intent to commit a crime of complicity to commit arson of the plaintiffs former 67 Whitaker Way building.

2055. Following the June 9th 2023 fire loss of the plaintiffs former 67 Whitaker Building, defendants of WYMT news immediately began a series of negatively charged broadcasts involving a highly coordinated series of efforts with the Public Protection Cabinet and the City of Hazard, in an ongoing, renewed effort to defame and cast the plaintiff in as much of a negative, unfavorable light with the general public as possible, with regard to the plaintiffs former usage/benefit of his formerly owned, adjacently located 426 building, by "hunting down" the former residential tenants of said building, seeking to coax, con, entice, or convince said former tenants to "talk trash" or defame the plaintiff, Brian Carter, with regard to said 426 building on or about June 12th 2023.

2056. The defendants of WYMT and the Public Protection Cabinet knew, or should have known that the loose ended defamatory statements of "vacating" the former 426 Building "deeming it unsafe" were ever established nor based on substantive, material facts backed by evidence, proper expertise or law, nor had ever provided proper disclosure that its original June 18th 2015 case of injunction that had previously ordered said building to be vacated, was dismissed directly due to said Cabinet's own failure to bring a prosecution in said case on or about December 21st 2021 in *State Fire Marshal vs Brian Carter 15-CI-00259* due to allegations of "political corruption" of said cabinet.

2057. Despite said knowledge of indecent acts by its own staff as outlined in #2056(supra), the Public Protection Cabinet, specifically defendants Mike Haney and Kenneth Browning, again engaged in a second malicious prosecution attempt of "wanton endangerment" against the plaintiff, based on Browing's renewed allegations of "illegal occupancy" of the plaintiffs former 426 building/facility, June 27th 2023.

2058. Defendants of City of Hazard, opted to enjoin with said Public Protection Cabinet case as outlined in #2056(supra), by adding or renewing a previously unknown July 10th 2017 prosecution attempt from former City of Hazard Police officer Jessica Cornett, against the plaintiff, in order to have the plaintiff criminally prosecuted for "the trash dumpster overfilling and spilling over in violation of

283

City of Hazard trash ordinance," thus said November 10th 2017 "dumpster spillover" criminal charge, or event was then "renèwed" in order to be utilized as an additional "criminal charge" against the plaintiff June 27th 2023 in order to cast the plaintiff in as much of a negative, unfavorable light as possible with WYMT's other defamatory based news publications.

2059.  The stated criminal complaint for "violation of City of Hazard trash ordinance" as outlined in #2058(supra), July 10th 2017, was well known, and firmly established as a duty of the City of Hazard and its contract with Rumpke to perform trash removal services for the city at the time, not a duty of the plaintiff to perform.

2060.  Defendants of WYMT, despite pervasively known contract with Rumpke services, as well as knowing, or should have known the previous Public Protection Cabinet's previous 2015 case against the plaintiff was *dismissed,* WYMT still willfully chose to broadcast the plaintiff, headlined as "Hazard landlord facing multiple charges" on its public newscasts, in order defame the plaintiff with the public, by casting the plaintiff in a defamatory, unfavorable light with the general public.

2061.  Of the "multiple charges" as outlined in #2060(supra), cited by the defendants of WYMT, one of which being "wanton endangerment," the other "violation of trash ordinance," WYMT would not disclose the later of those details, in order to cast the plaintiff in the most negative, defamatory, unfavorable light with the general public as possible.

2062.  Once the full details of the previously dismissed injunction case of Public Protection Cabinet, also known as the Office of the State Fire Marshal, in *State Fire Marshal vs Brian Carter 15-CI-00259* had again resurfaced, county attorney Derek Campbell became quick to offer *deferral and dismissal* agreements to the plaintiff, without requiring an admission of guilt or a guilty plea of the plaintiff on or about February 6th 2024.

2063.  Commonwealth County Attorney Derrek Campbell is well known to have a close personal relationship with the City of Hazard mayor, Donald Mobelini.

2064.  The stated deferral agreement outlined in #2062(supra), included one year of "not getting into any trouble," no requirement of a guilty plea, and then full dismissal with an added stipulation that the plaintiff "will agree to not benefit from any multi family housing."

2065. As the plaintiff was initially reluctant to sign such an agreement, the "deferral agreement" revealed the defendants collective, true intent, "to ensure that Brian Carter doesn't *benefit*

284

from his properties," therefore the plaintiff accepted, to get an endorsed, authenticated copy of the defendants true intent for future use or reference.

2066. As a DIRECT RESULT of the defendants criminal conspiracy to physically destroy two massive commercial buildings previously belonging to the plaintiff, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, by conspiring to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals involving highly organized, collaborative, coordinated, concentrated efforts to deprive the plaintiff of all manner of his rights, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily, deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in

285

the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XX
### Tortious Interference With Advantage
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

2067.  18 U.S. Code § 241 makes it unlawful for two or more persons to conspire to deprive the rights of citizens of the United States, by interfering with advantageous business relationships of which directly involve a persons abilities to use, enjoy or benefit from ownership of property.

2068.  42 U.S. Codes § 1983 & 1985 allow this court to provide redress to the plaintiff for the defendants unjustified, illicit, or improper interference with the plaintiffs rights, in order to deprive beneficial usage or enjoyment regarding property ownership, particularly commercial property, of which an individual enjoys advantageous business relationships due to ownership of said property.

2069.  Tortious interference with business advantage is a common law tort that allows a claim or cause of action to be alleged in the pleadings of a legal case involving civil deprivation of rights.

2070.  Beginning in mid 2012 until June 18th 2015 defendants Kenneth Browning, Alan Walters and Ronald Hacker, representatives of the Public Protection Cabinet, interfered with the advantageous business advantage of the plaintiff and his commercial tenant of the Treehouse Cafe restaurant by creating a menacing, harassing, or overall intimidating environment for the plaintiffs former commercial business tenant, Jennifer Noble of Treehouse Cafe restaurant and her customers, as a direct result to their repeated "visits" from the defendants to the plaintiffs former 426 Treehouse Cafe building, in a series of attempts to "shut down Brian Carter," the owner of said building.

2071.  In addition to #2070(supra), the named defendants also interfered with the advantageous business relationship with Jennifer Noble and the plaintiff, by utilizing false statements of the buildings condition, fraudulent concealment of material fact, fraud in the inducement, fraud by extreme indifference to obtain, relay or convey truthful, accurate, complete information, or a combination of said methods, by their attorney of legal counsel Peter Ervin, in order to have the plaintiffs 426 building vacated by state circuit court order June 18th 2015 based on the false pretenses as aforementioned.

2072.  The series of harassing menacing visits as outlined in #2071(supra), created a torturous interference between Jennifer Noble and her customers, by discouraging said customers from visiting her restaurant to make regular purchases of the products she offered to the public.

2073.  Jennifer Nobles Treehouse Cafe Bakery and Restaurant was well known and well loved

287

by the general public and community of Hazard Kentucky, along the era of June 2015 events.

2074. As a direct result of the said interference with business advantages relationships with her customers, Jennifer Noble was unable to collect stable profit from her otherwise well loved restaurant and bakery, thus unable to meet her various debt obligations, primarily her lease of her restaurant serving portions of said 426 building from the plaintiff.

2075. Defendants of the Public Protection Cabinet, in addition to #2070 thru #2071(supra), also interfered with the plaintiffs advantageous business relationships by removing all residential tenants from said 426 building, by utilizing the same false pretenses as in #2071(supra) June 18th 2015.

2076. Defendants of the City of Hazard conspired with the Public Protection Cabinet on June 18th 2015 to interfere with the plaintiffs business advantageous relationships by removing city provided utilities from said 426 building also on said date, putting a permanent end to Jennifer Noble's Treehouse Cafe restaurant.

2077. In response to #2076(supra), the restaurant owner Jennifer Noble is publicly known to announce that "Treehouse Cafe will not reopen."

2078. Upon receipt of notice, and in coordination with the City of Hazard, the Public Protection responded to the events outlined in #2075 thru #2077(supra), without a lawful court order, posted "order to vacate" notices on the lobby/restaurant serving portions as well, as the residential units, thereafter causing a permanent, irreparable harm to the facilities public by the damage of its reputation with the plaintiff as its owner, to serve said cabinets and said city authorities goals of interfering with the advantageous business relationships the said facility once enjoyed.

2079. On the date of August 31st 2015 through the next day of September 1st 2015, the City of Hazard intentionally interfered with the plaintiffs advantageous business relationships by refusing to perform honorable, equitable good faith execution of its duties to protect and serve the best interest of the public, as well as its duties to the plaintiff as main streets top tax and economic contributor to its local economy, by openly allowing crimes of burglary, trespass, and willful, deliberate failure to render aid at time of need by allowing the plaintiffs former 446 Grand Hotel and shopping center to be destroyed by subsequent fire as direct result of said burglary and trespassing.

2080. The City of Hazard, specifically the City of Hazard Police and City Fire Departments knew or should have known of their duties to protect the taxpaying citizens of the community against

such crimes as outlined in #2079(supra), yet chose willful participation in those crimes by several demonstrations of extreme indifference to serve and protect its citizens.

2081.  By their intentional, extreme disregard of their duties to amicably serve and protect the public, the City of Hazard's decisions to perform no equitable service of their duties, #2080(supra), the plaintiff suffered permanent irreparable harm as a direct result of the tortious interference with the plaintiffs business advantageous relationships with commercial as well as residential tenants of said 466 Grand Hotel facility.

2082.  On or about September 5th 2015 the Public Protection Cabinet and "Hazard City entities" engaged in tortious interference with the plaintiffs advantageous business relationships when said entities conspired/coordinated to have electric utilities shut off from the plaintiffs former 67 Whitaker Way building/facility outside the limits of any known authority jurisdiction to do so.

2083.  The defendants of said Public Protection Cabinet and "Hazard City entities" knew or should have known that said action of removing all manners of electric services as in #2082(supra), on previously permitted electrical services for said 67 Whitaker Way facility was outside of the limits of any known authority to do so, yet still sought intervention with said services while operating under the guise of "public safety and compliance."

2084.  The Defendants of the City of Hazard further sought intervention with the plaintiffs business advantage with regard to #2083(supra), by having City of Hazard Police department visit and escort the former residential tenants from his former 67 Whitaker Way, a 17 unit apartment building, without a lawful eviction or injunction sought nor issued by either state district or state circuit court.

2085.  An adjacently, as well as neighboring building with parking to the 446 Grand Hotel building, known as 470 Main Street, otherwise known as Public Defenders Building, owned by defendant Payton Morton, was not given the same treatment as the plaintiffs 67 Whitaker building.

2086.  The Public Protection Cabinet, even if the plaintiff had failed to provide faithful duty of service to "improve conditions" were valid or without good reason on the part of the plaintiff, the said cabinet had the full discretion to simply have work performed to its own satisfaction and simply bill the plaintiff for the expense pursuant to KRS 227.390, KRS 99.360(1)(k) this was not done.

2087.  Beginning on June 18th 2015 until August 7th 2023, the defendants of Foundation of Appalachian Kentucky, (FOA), Housing Development Alliance, HDA, and Ecomomic Development

289

Alliance, (EDA), Betsy Clemons representative of all above entities including "chamber of commerce," Scott Reynolds of HDA, and Gerry Roll of FOA, collectively stood to benefit from the destruction of the plaintiffs once prosperous seven (7) business shopping center and approximately fifty (50) unit apartment complex, by shifting the local community dependency of commercial and residential business leasing options to those provided by the defendants collective, personal financial interests, and that of their own favored "non profit organizations" as outlined summarily, throughout this complaint.

2088. The defendants of aforementioned "non government organizations" #2087(supra), are well known to use their influence with local and state governments to further their collective personal objectives as outlined.

2089. The related government officials as outlined in #2087(supra), namely Donald Mobelini, and Scott Alexander, are well known to be deeply intertwined with EDA, FOA, and HDA, alongside colleague representatives Betsy Clemons, Gerry Roll, Denise Davidson, and Scott Reynolds respectively,

2090. With regard said individuals in #2087(supra), the said relations of said individuals stood to benefit collectively from the destruction of the plaintiffs once thriving properties, in order to cause interference with the plaintiffs advantageous business relationships, by utilizing said influences with their related government agencies, to shift or divert community dependency of commercial and residential leasing options to the defendants own business development interests.

2091. Ronald Hacker, former electrical inspector recruited by Kenneth Browning of the Public Protection Cabinet, in order to further Browning's personal goals of "shutting down Brian Carter" with particular respect to the plaintiffs former 426 Treehouse Cafe building, also committed fraud in the inducement on his official government documentation/reports with regard to removal of or justification used, to remove electric utilities from the 67 Whitaker Way building on or about September 4th 2015.

2092. Defendant Mike Haney, of the Public Protection Cabinet was made well aware of the large misrepresentation of material facts by Ronald Hacker, on April 29th 2016 but would still fight or argue with his own alternative fire marshal to Kenneth Browning, by the name of C.W. Cornett regarding reopening of said 67 Whitaker Way building/facility on or about June 5th 2016.

2093. Gerry Roll of FOA, the 420 next door of the plaintiffs former 426 building, interfered

290

with the plaintiffs business advantage when she opted to call Mike Haney's office "to complain to the fire marshal" by seeking to cause further damage to the relations with the Public Protection Cabinet and the plaintiff when, on or about October 14th 2017, the plaintiff had arranged to meet a young couple to conduct business with the plaintiff at the plaintiffs former 426 building next door on said date.

2094.  Gerry Roll made said complaint in #2093(supra), in order to deprive the plaintiff of any and all forms or semblance of beneficial usage, even for use as a personal office for the plaintiff.

2095.  Gerry Roll, known to have previous coveting desires of said 426 building, is likewise well known to be personally aggrieved with the plaintiff when the plaintiff did not make special effort to sell Gerry Roll the 426 building at substantial losses, therefore, Gerry Roll has since conspired to deprive the plaintiff of any and all forms of enjoyment or beneficial usage by the plaintiff as outlined in #2093(supra).

2096.  In addition to the above renewed conflict with said Public Protection Cabinet as outlined in #2093 thru #2095(supra), defendant Mike Haney, of the Public Protection Cabinet, despite being well aware of the false or misleading claims of Kenneth Browning and Ronald Hacker, opted to retaliate against said evidence of foul play provided by the plaintiffs free speech, by refusing to assist the plaintiff with any official reopening of the plaintiffs 426 building, verbally declaring in response to the plaintiffs request for assistance stating "kiss my ass talk to my lawyer" attitude or demeanor in order to deprive the plaintiff of fair due process or deprive amicable treatment to the plaintiff.

2097.  On June 9th 2023, defendants Gerry Roll, Payton Morton, Tony Eversole and Steve Campbell, representatives of the City of Hazard and FOA, caused intentional tortious interference with the plaintiffs advantageous business relationships with his former residential tenants of his 67 Whitaker Way apartment building, by criminally conspiring together from June 10th 2021 until June 9th 2023 in order to barricade, entrap, or at minimum, gravely limit the remaining tenants of the 67 Whitaker Way building means of escape, with extreme indifference of said residents need for safe, sensible ingress/egress to said property, in order to wantonly endanger the lives of said residents, to then conspire together to have said property burned, then destroyed to conceal their crimes of arson and fraud against said 67 Whitaker Way facility, via their partnership with the Public Protection Cabinet as also outlined #118 thru 2096(supra).

2098.  As a direct result of the Public Protection Cabinets willful failure to work in good faith

291

with the plaintiff as outlined in #2097(supra), and subsequent "teaming up" with the City of Hazard to indefinitely deprive the plaintiff of all forms of beneficial usage or enjoyment of either 426 or adjacently located 67 Whitaker Way buildings, the plaintiff was given no incentive to believe the attitudes or treatment would ever change, regardless of "compliance" or efforts on part of the plaintiff.

2099. As a DIRECT RESULT of tortious interference with the plaintiffs advantageous business relationships as outlined above, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

    i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

    ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

    iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

    iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

    v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

    vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the

monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XXI
### Tortious Interference With Prospective Advantage
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983)

2100.  18 U.S. Code § 241 makes it unlawful for two or more persons to conspire to deprive the property rights of citizens of the United States, by interfering with prospective advantageous business relationships, of which involve a persons abilities to use, enjoy, or benefit from ownership of property.

2101.  42 U.S. Codes § 1983 & 1985 allow this court to provide redress to the plaintiff for the defendants unjustified, illicit, or improper interference with the plaintiffs rights under color of law, in order to deprive beneficial usage or enjoyment regarding property ownership, particularly commercial property, of which an individual had once enjoyed, and attempted to resume, advantageous business relationships by person's right to benefit, enjoy and prosper from ownership of said property.

2102.  On or about September 10th 2015 shortly following the plaintiffs September 1st 2015 building fire loss of the 446 Grand Hotel/Main Street Mall building, defendant Payton Morton of Home Lumber Company, sought and achieved his personal objectives to interfere with the plaintiffs prospective business advantages in restoring the plaintiffs former historic 446 Grand Hotel building/facility, by demanding with the City of Hazard, that the plaintiff have the entire 446 building torn down" at or around said date.

2103.  Defendant Payton Morton is well known to carry considerable political influence or "pull" with the City of Hazard and its officials.

2104.  Defendant Payton Morton has had the public road "Morton Boulevard" named after himself.

2105.  Morton Boulevard is known to house Hazard ARH Hospital, at which Roy Campbell Drive resides just off of Morton Boulevard.

2106.  The Roy Campbell family is well known to "donate" considerably to the defendants of Housing Development Alliance (HDA).

2107.  Defendant Payton Morton is well known to be a "top building materials supplier" for Housing Development Alliance (HDA).

2108.  Defendant Payton Morton interfered with the plaintiffs prospective business advantage when he utilized his well known political influence with the City of Hazard officials, specifically

294

Daniel Roll and former fire chief Sam Stacey, to pursue, and then succeed at "having an alleyway opened up" by directing or "influencing" the City of Hazard contractors to demolish a considerable portion of the plaintiffs former 446 Grand Hotel facility, thereby "creating an alleyway to separate Morton's 470 Main Street Public Defenders building from the plaintiffs former 446 Grand Hotel building," on our about March 5th 2016, without consent or permission of the plaintiff.

2109.  The said invasion in unwelcome convergence upon the plaintiffs former 446 Grand Hotel facility as outlined in #2108(supra), was performed under the guise of "public safety" although said demolition of stated areas for the pleasure or convenience of Payton Morton had little to no actual "public safety" benefit, therefore, Daniel Roll deprived the property rights of the plaintiff by the unauthorized commencement of said action in order to interfere with the plaintiffs prospective advantageous relationships.

2110.  On our about September 29th 2015, Defendant Payton Morton is well known to demand that the plaintiff "tear down that (446 Grand Hotel building) and make your (plaintiff) living off the other two buildings" when the plaintiff was attempting to conduct business with Daniel Roll, Sam Stacey and the plaintiffs engineers, on or about said date, when discussing the implementation of the plaintiffs previously approved "wall bracing plan" with said City of Hazard officials.

2111.  The stated wall bracing plan as referenced in #2110(supra), was a plan devised by the plaintiffs structural engineers so that the former fire damaged facility could be "safely restored" and to ensure that the "walls wouldn't collapse."

2112.  The plaintiff, upon direction from Daniel Roll, "paid the permit fee to brace the walls and make the structure safe" only to quickly refuse issuance of said permit, in violation of the plaintiffs due process rights to its issuance on or about September 15th 2015.

2113.  The defendants of City of Hazard, Daniel Roll and Paul Collins, interfered with the plaintiffs prospective business advantage when they knew of the duty to issue said permit upon receipt of payment for issuance of said permit, but then openly refused, loosely citing "those wall braces could be there for an indefinite period of time" as a reasoning for refusing the plaintiffs due process with permit issuance.

2114.  With regard to #2113(supra), if the City of Hazard was indeed concerned about "the wall braces being there for an indefinite period of time" the city had an obligation, and could have assisted

295

with the work, to further the plaintiffs goals, and simply bill the plaintiff for the cost, KRS 227.390 or KRS 99.360(1)(k), or other remedies, rather, the City of Hazard sought to utilize said discretion in order to undermine and deprive the plaintiff rights to property in order to destroy otherwise serviceable portions of said building, and then bill the plaintiff for the cost of destroying said building, for the pleasure and enrichment of others, in a dealing of obscene manner as defined in 18 U.S. Code § 1961.

2115. It is of obvious general knowledge that the stated wall bracing plan outlined in #2113(supra), wouldn't have been "permanent" upon 446 Grand Hotel facility restoration.

2116. A well known recent parking configuration change made by the City of Hazard from parallel to horizontal based parking sometime in September 27th 2021 proves that the city has always had the ability to "make accommodations" for the growth and development of its citizens, particularly with regard to the implementation of the plaintiffs 446 Grand Hotel wall bracing plan, only to then be promptly refused by Daniel Roll after receiving payment for a lawfully issued permit.

2117. On May 4th 2022 defendants Gerry Roll of FOA, Payton Morton of Home Lumber Company, and Tony Eversole of the City of Hazard, sought and achieved interference with the plaintiffs prospective business advantages by erecting an approximately one hundred foot long white metal, eight foot tall wall all along the property line and parking lots adjoining the FOA building parking lot and the plaintiffs concrete slab to his former 67 Whitaker way building,

2118. The stated blocking of access as outlined in #2117(supra), also made it impossible to reliably access and service the 426 main effectively with the plaintiffs 40 foot long crane/bucket truck, a special equipment the plaintiff had previously purchased to provide maintenance or service work to the rear facing portions his former 426 Treehouse Cafe building/facility, thereby causing a limitation of accessibility with providing care of said facility.

2119. By erecting such a wall/barrier/structure, the defendants effectively prohibited maintenance access to the plaintiffs former 426 building/facility by the plaintiffs specialized equipment as outlined in #2118(supra), obtained specifically for that purpose.

2120. The defendants as outlined in #2119(supra), pervasively knew that the plaintiff was struggling to have the building officially approved or "re-approved" in his efforts to regain official usage, benefit, or enjoyment of said 426 building/facility, through the Public Protection Cabinet, also known as the State Fire Marshal's office.

296

2121. The defendants as outlined in intentionally created a tortious interference with the plaintiffs prospective business advantages beginning on or about May 4th 2022, regarding potential reopening of his former 426 Treehouse Cafe building., by also engaging in a permanent blocking/restricting of public access to the plaintiffs 426 building/facility, by negatively impacting the plaintiffs abilities to utilize or enjoy meaningful access to said building as aforementioned #2120(supra).

2122. Beginning on or about September 10th 2015 defendant Steve Campbell of Balis Campbell Construction sought and eventually achieved, tortious interference with the plaintiffs potential or prospective business advantageous relationships, by abusing his influence with the City of Hazard to seek and then score a large demolition contract, or series of demolition based contracts, against the plaintiffs former 446 Grand Hotel building/facility, from June 10th 2021 until June 9th 2023.

2123. After defendants Denise Davidson and Donald Mobelini forced the plaintiffs hand by a combination of exploitative, extortion based tactics in order to coarse by use of threats or intimidation, into surrender of said 446 Grand Hotel property June 10th 2021, neither Davidson or Mobelini would accept any further communications, texts, or phone calls with the plaintiff, before proceeding with Steve Campbell's desires for his own enrichment, at the economic detriment of the community.

2124. Steve Campbell of Balis Campbell Construction's abuse of his influence with City of Hazard Officials sought and eventually obtained, a full demolition contract on the plaintiffs former 446 Grand Hotel facility, in a manner of unjust enrichment for himself as outlined in #2123(supra).

2125. Defendant Steve Campbell utilized his influence over City of Hazard officials to profit himself at the final destruction of the plaintiffs 446 facility, due to his influential marital relations with the Gorman family.

2126. The Gorman family is pervasively known to hold considerable influence over City of Hazard affairs.

2127. Defendant representatives of the City of Hazard pervasively knew of the prospective business advantages the plaintiff had sought upon the plaintiffs prospective restoration of said 446 Grand Hotel structure, yet prioritized the facilities total destruction with extreme indifference of the plaintiffs rights to provide basic care of said facility, for the purposes of interfering with regaining the business advantageous relationships the plaintiff had previously enjoyed with said 446 building.

297

2128. Defendants of the City of Hazard interfered with the plaintiffs prospective business advantage when they knowingly drew out the term of the legal battle over issuance of the plaintiffs otherwise due process right to his permit in *Brian Carter vs City of Hazard 16-CI-00020*, that would have allowed the plaintiff to fully repair and restore said facility, knowing that such delays in the legal process would cause an unjust deterioration of the facility within its walls/boundaries.

2129. The said knowledge of such delays by the City of Hazard would also knowingly cause an unjust aggravation of restoration expenses the plaintiff would incur, should the opportunity by the City of Hazard been granted.

2130. The defendants of the City of Hazard collectively knew that the plaintiffs personal resources were being depleted as a direct result of the misleading of intent and deceptive practices of its representatives to completely destroy said property for their own benefit, with regard to said 446 Grand Hotel building.

2131. The defendants of the city of hazard knew or should have known that the placing of a lien approximately double what it could justify for its "partial" March 2016 demolition of the plaintiffs 446 Grand Hotel building/facility would have constituted a profound lack of ability to trust its officials.

2132. Beginning in June 18th 2015 until the date of forced liquidation of the plaintiffs 426 main and 67 Whitaker Way assets by the collective/collaborative actions of the defendants ending the plaintiffs remaining ownership August 7th 2023, the Public Protection Cabinet had sought from June 9th 2023 until August 7th 2023 to interfere with any future prospective business advantageous relations the plaintiff, by openly refusing to work in good faith with the plaintiff over the reopening/re-occupancy of either of the said facilities.

2133. Upon the collaborative efforts to entrap, attempt to murder or at minimum wantonly endanger the tenants/occupants of the former 67 Whitaker Way apartment building as outlined, the Public Protection Cabinet then engaged June 9th 2023, in a slanderous, defamatory set of falsely promoted narratives with the cooperation of WYMT and the City of Hazard's county attorney Derrick Campbell, to seek a publicly promoted prosecution of the plaintiff for attempting to again utilize, or reap beneficial usage of ownership of the 426 Treehouse Cafe building during the year 2023, in order to interfere with future prospective business relationships of the plaintiff.

2134. The stated defamatory campaign of harassment and negatively charged rhetoric caused

298

an intentional interference with the plaintiffs prospective business advantages the plaintiff would have otherwise enjoyed with his ownership of the 426 Treehouse Cafe building from June 9th 2023 until the termination of the plaintiffs remaining ownership of the 426 and 67 Whitaker Way properties as a direct result of said series of interference on or about August 7th 2023.

2135. The defendants of the City of Hazard and the Public Protection Cabinet, interfered with the plaintiffs prospective business advantages by issuing a series or generally threatening set of "stop work order notices," "condemnation notices," and other threatening correspondence to fine, punish and summarily destroy the plaintiffs buildings "if the plaintiff had taken any steps to improve, repair, or provide basic essential care of either 426 main or 67 Whitaker Way buildings" from June 9th 2023 until July 18th 2023.

2136. Derrick Campbell is pervasively known to carry heavy favor with mayor and defendant Donald Mobelini of the City of Hazard.

2137. Derrick Campbell interfered with the plaintiffs prospective business advantage when he sought a criminal prosecution primarily on the negatively promoted rhetoric and negatively charged narratives propagated by Kenneth Browning and Mike Haney of the Public Protection Cabinet.

2138. Kenneth Browning and his colleague Mike Haney again sought to interfere with any future or prospective business advantages by continuing to cast the plaintiff in a negative unfavorable light with the general public, promoted by WYMT news, an NBC or CBS affiliate, by the City of Hazard collectively, and by Derrick Campbell, an ally and close companion of Donald Mobelini, the mayor of Hazard from June 9th 2023 until the termination of the plaintiffs remaining 426 main and 67 Whitaker Way building ownership August 7th 2023 as a direct result of said threats, along with actions to carry out said threats by Steve Campbell.

2139. FOA and City of Hazard caused tortious interference with the plaintiffs prospective advantage by contacting TVS cable company, to report the Public Protection Cabinets "stop work order for facility construction" in order to prevent the plaintiffs 426 buildings internet service from being restored after the adjacent 67 Whitaker Way building/facilities 2023 fire loss.

2140. Steve Campbell caused tortious interference with business advantage when he initiated, and completed construction of fourteen foot (14ft) tall concrete wall or walls, which then obstructed a culvert in order to concentrate flood or rain waters directly into the rear corner foundation of the former

299

426 building, placing the plaintiff under extreme duress without correction or effort to correct said conditions or behavior, until the date of termination of the plaintiffs ownership August 7th 2025, at which said conditions were quickly repaired to benefit said 426 buildings new owner Jeff Norman.

2141.  The defendants of the City of Hazard sought and achieved deprivation of the plaintiffs ability to access and achieve any measure of prospective future business advantages or successes with his former 426 and 67 Whitaker Way building facilities by knowingly exploiting the plaintiffs personal resources for improvements to the plaintiffs former 446 Grand Hotel building lot, Newberrys Lot, and all remaining parking, only to then force a sale, under extreme duress and coercion, under abuse of eminent domain "or you'll lose everything and receive no compensation" due to the devaluation of property, and as a direct result of the "eyesore" marketing propagated by the defendants of WYMT to defame and destroy the plaintiff.

2142.  Defendants of WYMT news knew or should have known that the villainous narratives cast on its news network could cause an indefinite discouragement from future business advantageous relationships with the plaintiff, whist they sought to promote such narratives with extreme indifference of their desires to obtain and promote truthful information.

2143.  Gerry Roll under her official capacity as executive director of FOA, knowingly interfered with the plaintiffs prospective business advantage when she made a series of derogatory, negative, defamatory remarks, phone calls and affidavits to the Public Protection Cabinet, in order to impair the plaintiffs abilities to mend or cure impaired relations with said cabinet, in order to restore his abilities to use, enjoy or benefit from his former 426 building.

2144.  Defendants of WYMT news knew or should have known that the villainous narratives cast on its news network would strike fear in the general public by WYMT's promotion of defamatory narratives promoted by Public Protection Cabinet, yet both entities sought such interference with extreme indifference of its the cabinets duties to obtain factual, truthful information to broadcast to the public, thereafter to discourage any advantageous prospective relations with the plaintiff and the general public the plaintiff would prospectively enjoy in the future.

2145.  Defendant Mike Haney interfered with the plaintiffs prospective business advantage by openly refusing honorable performance of his duties to provide assistance to the plaintiff as a representative of the government with the reopening of the plaintiffs 426 building, but would promptly

300

work with or assist the new owner Jeff Norman, of the same facility.

2146. The City of Hazard interfered with the plaintiffs prospective business advantage by making a series of harassing/annoying calls or "complaints" to various state agencies, primarily the Public Protection Cabinet and Division of Air Quality, from around the date currently known as September 1st 2015 until the date of full termination of the plaintiffs remaining ownership of said 426, and 67 Whitaker Way buildings on or about August 7th 2023, often with little to no reason for such complaints, to serve no other purpose but to deprive the plaintiff or anyone that would conduct business with the plaintiff their abilities to use, enjoy or benefit from the ownership of property.

2147. As a DIRECT RESULT in the interference with the plaintiffs prospective business advantages as outlined above, in furtherance of the criminal conspiracy to physically destroy and deprive all manner of rights, usage, benefit and enjoyment of property, in furtherance of said conspiracy, the plaintiff was unable to provide the full and proper essential care of his facilities, unable to deprive any shape or form of benefit to improve said buildings/facilities, forced into liquidating both in and out of state assets, causing permanent irreparable harm to the plaintiff, his buildings, his properties, and deprivation of any and all righteous prosperity the plaintiff would have achieved, and was otherwise entitled, in furtherance of the defendants overall goals of organized, collaborative, criminal conspiracy to deprive the plaintiff of all manner of his rights, to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants

302

collective, highly coordinated efforts,

xiii).  Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXII
### Destruction of Property by Criminal Neglect

(Failure to Render Services KRS 413.245), (Dealing in Obscene Manner 18 U.S. Code § 1961(1)(a)), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Criminal Attempt KRS 506.010)

2148.  KRS 413.245 allows a party to bring suit whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render professional services for others.

2149.  As local police and fire departments are dutiful bound to protect and serve the citizens of the United States, as an honorable duty to provide their professional services by the government, KRS 413.245 applies under the willful intent to neglect said duties to taxpaying constituents.

2150.  KRS 506.010 makes it unlawful for any person or group of persons to participate in criminally neglectful conduct, in order to achieve or aid in destruction of property by conspiring to commit arson, endangerment of lives, to then destroy evidence of said crimes by criminal mischief, even if the crimes or sum of all crimes were not successful.

2151.  As the stated neglect was taken in commission of an egregious act, crime, or series of crimes, involving arson, criminal mischief, concealment of evidence to further an organized criminal conspiracy to destroy property, and deprive others of beneficial usage or enjoyment of property, 18 U.S. Code § 1961(1)(a) defines such conduct as *dealing in an obscene manner*.

2152.  18 U.S. Code § 242 makes it unlawful for local police or fire departments to engage in criminally neglectful conduct under the color of lawful authority.

2153.  18 U.S. Code § 241 makes it unlawful for two or more persons to conspire together in order to deprive a citizen of their rights.

2154. 42 U.S. Codes § 1983 & 1985 allow this court to provide redress for conspiracies to deprive rights, or cause the acts to be done, of one or more persons engaged therein to do, or cause to be done, any act or furtherance of the object of the conspiracy, whereby another is injured in his person or property, under color of lawful authority.

2155. On the day of August 31st 2015, the defendants of the City of Hazard, specifically City of Hazard Police Department, participated in conspiracy to destroy commercial property by criminal neglect by willfully allowing burglars/trespassers or otherwise unwanted individuals, free reign of a vacant apartment in the plaintiffs former 446 Grand Hotel building/facility, upon which a fire within 24 hours later originated from same said apartment unit, claiming "criminals have squatters rights" as justification.

2156. On September 1st 2015, the very next morning, in very early hours, the City of Hazard Fire Department demonstrated extreme indifference of their duties to the preservation of precious life and property by flatly refusing to investigate the 3rd 4th, or 5th floors of the plaintiffs former 446 Grand Hotel Facility at any point in time to ensure that occupants had safely evacuated.

2157. The City of Hazard Fire Department demonstrated extreme indifference of their duties to the preservation of precious life and property by slowly and intentionally allowing said 2015 Grand Hotel building fire to slowly progress over the course of several hours, throughout all extremities of the formerly massive approximately eighty thousand square foot, five story facility, destroying businesses, homes, and ending the life of cherished pets.

2158. The City of Hazard Fire Department demonstrated extreme indifference of their duties to the preservation of precious life and property by refusing to spray any water while briefly inside said 446 facility, on said September 1st 2015 date.

2159. Former fire chief Sam Stacey, of whom has had a notable reputation of providing exceptional performance in extinguishing fires and limiting their spread in the recent past, was conveniently "made unavailable" on the date of September 1st 2015.

2160. The City of Hazard Fire Department demonstrated extreme indifference of their duties to the preservation of precious life and property by moving at a place equivalent to that of sloths, in a flagrantly meandering, or "lolly gagging around" fashion during the initiating hours of September 1st 2015 Grand Hotel building fire.

304

2161. Upon said September 1st 2015 date of the 446 Grand Hotel building, the City of Hazard Fire Department, known to possess an otherwise exceptionally well equipped and well staffed fire department, located within a relatively short distance of said facility.

2162. On the morning hours of the September 1st 2015 Grand Hotel building fire, the City of Hazard Fire Department were witnessed "cutting up, laughing, while meandering around" for countless hours, rather than to demonstrate any sense of urgency during the said 2015 fire.

2163. Following the 446 Grand Hotel building fire and near total destruction of said facility, the City of Hazard Fire Department were alleged to "let it all burn because the owner wouldn't comply with the fire marshal (aka Public Protection Cabinet)" per alleged conversation with LKLP staff.

2164. Following the 446 Grand Hotel building fire and near total destruction of said facility, the City of Hazard Fire Department were alleged to have also slanderously claimed or stated, "we let it all burn because of meth labs in the building" also per the alleged conversation with LKLP staff in #2063(supra) as justification for its conduct, to further slander the title to said facility.

2165. On or about May 4th 2022, the defendants of Foundation of Appalachian Kentucky (FOA), Gerry Roll, initiated a conspiratorial pact with City of Hazard's Tony Eversole, Payton Morton, and Steve Campbell to construct various barriers/blockages/fences, and walls in an attempt to drastically limit/prohibit the remainder of the plaintiffs residential tenants from safe escape from the plaintiffs only remaining 67 Whitaker Way apartment building and 426 residential use areas.

2166. The said blocking of egress and ingress to said remainder of property created grave and intense prohibition of Hazard City Fire Department, EMS and other first responders to access the only remainder portions of the plaintiffs former 67 Whitaker Way building and 426 Residential use areas.

2167. A state circuit court suit was filed with respect to #2165(supra) *Carter Realty vs FOA 22-CI-000166* around the same time frame or date.

2168. An endless campaign of harassing blockades or depriving the remaining residential tenants conducing business with the plaintiff form access to property, or by depriving all other forms or access to property in an endlessly, often without reason at all for doing so, in a harassing, menacing fashion with various forms of barriers in an endlessly annoying fashion after the City of Hazard beginning on or about in June 10th 2021 until August 7th 2023.

2169. The defendants of the City of Hazard initiated said conduct in #2168(supra), conspiring

305

with the named defendants in #2168(supra) exploited the plaintiffs resources, extorted the plaintiff with eminent domain against all said properties "if he didn't take a sell the Grand Hotel property" on or about June 10th 2021.

2170. On the date of June 9th 2023, a fire is set in retaliatory fashion within the former 67 Whitaker Way building, after the residential tenants were known to complain about the new concrete barriers and other walls being erected around their homes of said building #2165 thru #2168(supra).

2171. With regard to #2170(supra), same treatment or behavior as previously given to the 446 Grand Hotel building in September 2015, the local City of Hazard Fire Department, then conspired again, with extreme neglect, or extreme indifference of their duties to serve and protect, in order to aid or contribute significantly, to arson or extreme fire loss against said 67 Whitaker building/property, by willfully, deliberately behaving in the same, or nearly the same meandering, disinterested, or "lolly gagging" fashion or manner as outlined in #2155 thru #2168(surpa).

2172. Admissions from the defendants of FOA and their collaboration with the City of Hazard Fire Department revealed that the defendants, *willfully intended* not to render any form of aid, openly *admitted* to their knowledge of the origins of said fire, and also *admitted* that they carefully coordinated together regarding the intentional fire loss to the plaintiffs former 67 Whitaker Way apartment building to WYMT news, an NBC or CBS affiliate, or related news network, exhibit 57, June 12th 2023 known to promote negative, defamatory rhetoric about the plaintiff or his previously owned properties.

2173. As a DIRECT RESULT of the willful criminal neglect or extreme indifference to serve and protect, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, by conspiring to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main

306

Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting

307

in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXIII
### Felony Libel On Official Documentation
(Fraud and False Statements 18 U.S. Code § 1001), (Major Fraud Against the United States 18 U.S. Code § 1031), (False Information or Hoaxes 18 U.S. Code § 1038), (29 USC 1109 – liability for breach of fiduciary duty), (Dealing in Obscene Manner 18 U.S. Code § 1961(1),(a)), Felonious Application of Lien KRS 434.155), (Perjury in a Lawful Instrument KRS 523.020), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Forgery in the First Degree KRS 516.020)

2174. 18 U.S. Code § 1001 makes it unlawful to use fraud and false statements in commencement of a crime.

2175. 18 U.S. Code § 1031 makes it unlawful to use falsification of government documentation in order commit a major fraud against the United States citizenry.

2176. 18 U.S. Code § 1038 makes it unlawful to engage in hoaxes or trickery in order to deprive a citizen of their rights or abilities to use, enjoy, or benefit from property.

2177. 29 U.S. Code § 1109 allows for redress for government officials breach of fiduciary duties against taxpaying, economically contributing constituents of the United States.

2178. 18 U.S. Code § 1961(1)(a), references the RICO statute which defines that crimes of dealing in obscene manner, among other crimes of arson, extortion, along with other crimes subject to furtherance of the conspiracy shall be unlawful.

2179. KRS 434.155 makes it unlawful for local government officials to defraud the citizens of the Commonwealth by falsification of a lien against a private property, by hoaxes or trickery.

2180. KRS 523.020 makes it unlawful for perjury in a lawful instrument, or fraud in the inducement of a lawful instrument shall constitute a crime within the commonwealth of Kentucky.

2181. KRS 516.020 makes it unlawful when, with intent to defraud, deceive, or injure another falsely makes, or completes or alters a written instrument which is or purports to be , part of an issue of money, securities, or other valuable instruments issued by a government or governmental agency.

2182. 18 U.S. Code § 241 makes it unlawful for two or more persons conspire together in order to deprive a citizen of their rights, or deprive a citizen of abilities to enjoy, or benefit from property.

2183. 18 U.S. Code § 242 makes it unlawful for government officials or representatives to engage in criminal activities to deprive a citizen of their rights, under the color of lawful authority

2184. 42 U.S. Codes § 1983 & 1985 allow this court to provide redress for conspiracies to deprive rights, any act or furtherance of the object of the conspiracy, whereby another is injured in his person or property, under color of lawful authority.

2185. Starting On or about June 2012 until July 18th 2015, Defendant Kenneth Browning of the Public Protection Cabinet also known as Office of the State Fire Marshal, made several material false or generally misleading statements on his official documentation regarding the conditions of the plaintiffs former 426 Treehouse Cafe building/facility, submitted to the heads of said Cabinet, namely Defendant Mike Haney and William Swope, in order to "have the plaintiff shut down."

2186. Consistent with the allegations in #2185(supra), Kenneth Browning of the Public Protection Cabinet fraudulently concealed material fact regarding conditions of the plaintiffs former 426 Treehouse Cafe building/facility, also submitted to the heads of said Cabinet, Defendant Mike Haney and William Swope, in order to "have the plaintiff shut down."

2187. Defendant Kenneth Browning new or should have known that his statements of the 426 buildings condition from said timeline in #2185(supra), were false, yet continued to make false statements to satisfy Browning's personal desires to "have the plaintiff shut down."

2188. Defendant Kenneth Browning knew or should have known that making slanderous, or libelous statements about the conditions of the plaintiffs former 426 building were outside of the limits of his authority discretion, yet chose to do so with extreme indifference of his rightful authority in order to cause permanent harm to the plaintiff.

2189. Starting On or about June 2012 until June of 2015, Defendant Alan Walters of the Public Protection Cabinet also Office of the State Fire Marshal also made material false statements regarding the conditions of the plaintiffs former 426 Treehouse Cafe building/facility, submitted to the heads of said Cabinet, Defendant Mike Haney and William Swope, in order to assist his colleague Kenneth Browning's personal goals of "having Brian Carter shut down."

2190. Starting On or about June 2012 until July 2015, Defendant Alan Walters of the Public Protection Cabinet aka Office of the State Fire Marshal fraudulently concealed material fact regarding conditions of the plaintiffs former 426 Treehouse Cafe building/facility, submitted to the heads of said Cabinet, Defendant Mike Haney and William Swope, in order to "have the plaintiff shut down."

2191. Defendant Alan Walters new or should have known that his statements in #2185 thru #2190(supra), were false, yet continued to make false statements to satisfy his personal desires to "have the plaintiff shut down."

2192. Defendant Alan Walters knew or should have known that making slanderous statements about the conditions of the plaintiffs former 426 building were outside of the limits of his authority discretion, yet chose to do so with extreme indifference of his rightful authority.

2193. Starting On or about June 2015 until July 2015, Defendant Ronald Hacker of the Public Protection Cabinet aka Office of the State Fire Marshal made material false statements regarding the conditions of the plaintiffs former 426 Treehouse Cafe building/facility, submitted to the heads of said Cabinet, Defendant Mike Haney and William Swope, in order to "have the plaintiff shut down."

2194. Starting On or about June 2012 until July 2015, Defendant Ronald Hacker of the Public Protection Cabinet aka Office of the State Fire Marshal, fraudulently concealed material fact regarding conditions of the plaintiffs former 426 Treehouse Cafe building/facility, submitted to the heads of said Cabinet, Defendant Mike Haney and William Swope, in order to "have the plaintiff shut down."

2195. Defendant Ronald Hacker new or should have known that his statements were false, yet continued to make false statements to satisfy his personal desires to "have the plaintiff shut down."

310

2196. Defendant Ronald Hacker knew or should have known that making libelous statements about the conditions of the plaintiffs former 426 building were outside of the limits of his authority discretion, yet chose to do so with extreme indifference of his rightful authority.

2197. Defendant Peter Ervin utilized, or participated in fraud in the inducement based on the libelous allegations of Browning, Walters, and Hacker, or at minimum, demonstrated an extreme indifference of his duties to obtain, convey, or relay truthful, factual information to the court, by refusing to disclose or failing to disclose by fraudulent concealment of material fact in order to abuse the state circuit court process on the date of June 18th 2015.

2198. As per the libelous conspiracies to defraud by falsification of official government documentation as outlined in #2185 thru #2197(supra), the plaintiff was deprived of his abilities to utilize, enjoy, or benefit from property, by the conspiracy to commit a massive fraud upon a tax and economically contributing citizen of the United States.

2199. A short time after the plaintiffs September 1st 2015 fire loss of the 446 Grand Hotel Building, defendant Ronald Hacker made material false statements about the conditions of the plaintiffs former 67 Whitaker Way building/facility on his official government documentation.

2200. A short time after the plaintiffs September 1st 2015 fire loss of the 446 Grand Hotel Building, defendant Ronald Hacker fraudulently concealed material facts about the conditions of the plaintiffs former 67 Whitaker Way building/facility, adjacently located from the former 446 building.

2201. Defendant Ronald Hacker made slanderous statements on his official reporting submitted with regard to #2193 thru #2197(supra), to his superiors of the Public Protection Cabinet to be used as justification shutting electric utilities to the plaintiffs former 67 Whitaker Way building/facility on or about September 4th 2015.

2202. Defendant Ronald Hacker knew, or should have known his statements about the 67 Whitaker Way building were false, intentionally misleading, or concealed material fact.

2203. Defendants Ronald Hacker willfully chose to provide libelous statements so with extreme indifference of any known rightful authority to have the plaintiffs electric utility services removed from the plaintiffs former 67 Whitaker Way building/facility.

2204. Prior to said disconnection from electric service on or about September 4th 2015 of said 67 Whitaker Way apartment building/facility, the said facility was previously approved for electrical

311

services.

2205. Defendant Ronald Hacker knew, or should have known that electric services for any building/facility must be *previously inspected and approved* before Kentucky Power Company will connect any electrical service to its power grid.

2206. Defendants Ronald Hacker, Kenneth Browning, Alan Walters and various members of the City of Hazard Fire Department were observed exchanging random sneers, jeers, smirks and snide remarks directed at the plaintiff, when "evaluating" the plaintiffs former 67 Whitaker Way building/facility shortly after the plaintiffs September 1st 2015 Grand Hotel building/facility fire loss.

2207. Following approximately six (6) calendar months after the September 1st fire loss of the 446 Grand Hotel Building, defendant Paul Collins and Daniel Roll of the City of Hazard proceeded with a "partial demolishing" of the plaintiffs said property on or about February 2nd 2016 without permission or consent of the plaintiff as the facilities owner.

2208. Prior to said event in #2207(supra), Daniel Roll of the City of Hazard conducted said acts to cause significant damage/destruction to said 446 building after directing the plaintiff to "come in and pay for a permit" to officially allow the plaintiff to make repairs of said property.

2209. Daniel Roll would then promptly deny the plaintiff due process with said permit issuance in #2208(supra) so that Daniel Roll, under the guise of "promoting public safety" so Daniel Roll could proceed with his own agenda of damaging the plaintiffs property for the enrichment of others.

2210. Along the same time frame of politely declining Daniel Rolls wife Gerry Roll of FOA a consensual sale of the 426 building, defendants Paul Collins and Daniel Roll, under the color of their lawful authority as representatives of the City of Hazard, placed a lien in the form of forgery of a lawful instrument against said 446 property for the "full taxable value of the property at that time" in the amount of $78,517.00, claiming that the plaintiff "owed the City said amount" for the unauthorized destruction of said building outlined in #2209(supra).

2211. The bid executed and billed to the City of Hazard for said demolition services provided in #2210(supra) by a contractor named C&C Construction against said 446 building was publicly advertised at $44,000.00 for the services of said destruction.

2212. With regard to Daniel Rolls refusal to provide the plaintiff with due process right to the plaintiffs permit prompted a suit on or about January 13th 2016 in *Brian Carter vs City of Hazard 16-*

312

*CI-00020,* of which sought a mandamus order for Daniel to issue a permit as was lawfully required, along with a formal position that the City had no right to demolish the 446 property, this was ignored.

2213. Defendants Daniel Roll and Paul Collins knew or should have known they were not entitled to "the full taxable value" of said 446 building/property.

2214. With the stated February 2nd 2016 contractor demolition awarded to C&C Construction for $44,000.00 and the City of Hazard billing the plaintiff in the form of a "lien" in the amount of "the full taxable value of the building itself" or approximately $78,517.00, on or about June 2nd 2017, without the justification for such an amount, knowing the same, the said lien constitutes making a material false statement in a subscribed written instrument where an oath is required.

2215. The said 2016 lien of said 446 Grand Hotel building applied by Paul Collins, constitutes a forgery in a legal instrument, under color of his lawful authority as a legal representative, or former legal representative, of the City of Hazard.

2216. Daniel Roll conspired with Paul Collins on said matter as outlined in #2215(supra), knowing, or should have knew that said amount could not be justified.

2217. The lien applied by Daniel Roll and Paul Collins against the plaintiffs 446 Grand Hotel building was used as part of a broader conspiracy to exploit the plaintiffs resources for improvements of said property, only to extort said property with said lien as a partial mechanism of dealing in obscene manner by Denise Davidson and Donald Mobelini, that they knew, or should have known could not have been justified, "or else they'd have also taken everything else."

2218. As a DIRECT RESULT of government officials or legal representatives of he government representatives making libelous fraud in the inducement, fraud in the forgery of legal instrument, among other libelous crimes, in order to commit, aid, abet, or contribute to the conspiracy in furtherance of the defendants collective, highly concentrated, coordinated goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all

313

forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

314

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXIV
### Malicious Prosecution
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242)

2219. 18 U.S. Code § 241 states that if two or more persons conspire to injure, oppress, threaten, or intimidate any person in any state, territory, commonwealth, possession or district in the exercise of enjoyment of any right or privilege secured to him by the constitution or laws of the United States.

2220. 18 U.S. Code § 242 makes it unlawful for whosoever subjects any person to a deprivation of protected rights secured by the constitution of the United States, under the color of law or lawful authority.

2221. 42 U.S. Code § 1983 allows this court to grant redress against individuals who, under

315

color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

2222. 42 U.S. Code § 1985 allows parties to seek redress from this court, if one or more

persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy,

whereby another is injured in his person or property, or deprived of having and exercising any right or

privileged of a citizen of the United States, the party so injured or deprived may have an action for the

recovery of damages occasioned by such injury or deprivation, against any one or more of the

conspirators.

2223. Malicious prosecution is a common law tort that occurs when an individual initiates a

legal action against another person without sufficient grounds or probable cause, with malicious

intent to cause harm or harass a person rather than a seeking of justice.

2224. Beginning on the date of June 18th 2015 the Public Protection Cabinet legal

representative Peter Ervin maliciously prosecuted the plaintiff when Ervin obtained an injunction

against the plaintiff to vacate all residential use portions of the plaintiffs former 426 Treehouse Cafe

building/facility, based on participation or conspiracy of fraud in the inducement by said cabinets

primary antagonist Kenneth Browning.

2225. On or about June 10th 2017 The City Of Hazard initiated a malicious prosecution

against the plaintiff for "violation of a trash ordinance" by the City of Hazard Police Department HPD,

in the form of a criminal complaint against the plaintiff.

2226. The stated "violation of trash ordinance" mentioned in #2225(supra) stated to be due to

an alleged spillover of the residential tenant dumpster, normally used to collect trash for the former

tenants of the plaintiffs former 67 Whitaker Way seventeen (17) unit apartment building along the time

frame of said criminal complaint.

2227. The duty of providing or removing trash service from said property referenced in

#2225(supra) was well known to be that of the City of Hazard, by way of its contract with Rumpke

trash removal services to perform for the public, and was not a duty of the plaintiff to perform.

2228. As said duty #2227(supra) was pervasively well known a duty of the City of Hazard via

its Rumpke contract, the said action was performed with malicious intent to annoy or harass, in order to

316

deprive beneficial enjoyment or usage of property.

2229.  On August 31st 2015, the City of Hazard Police department knowingly allowed burglars to trespass or converge upon a previously vacant apartment unit in the plaintiffs former 446 Grand Hotel building, a historic building well known to house families and businesses for over a century, under a well known "city policy" that "criminals have squatters rights."

2230.  The City of Hazard is pervasively known to retaliate against its own citizens, particularly whenever they exercise their free speech, or whenever the plaintiff would contact said police department for assistance with burglars, trespassers, or other random individuals known for having a criminal history, would attempt to coverage upon the plaintiffs properties.

2231.  On or about June 24th 2014, the City of Hazard police department maliciously prosecuted the plaintiff in retaliation against the plaintiff when he called the City of Hazard police department based on the allegations that one of his former residential tenants was "assaulted."

2232.  Upon contacting the City of Hazard Police department regarding said matter #2231(supra), the said police department responded by arresting the plaintiff for "falsification of a police report" on or about June 24th 2014 in *Commonwealth vs Brian Carter 13-M-00866.*

2233.  As the City of Hazard police had at some point concluded or determined that the alleged victim was initially untruthful with them with regard to #2232(supra), the city of Hazard police had knowingly, maliciously prosecuted the plaintiff himself with reference to said case in order to retaliate against the plaintiff for making said complaint for the reporting of crimes, or alleged crimes.

2234.  The case of *Commonwealth vs Brian Carter 13-M-00866* was eventually dismissed, due to the belief that said alleged "victim fled or left the state," thus unable to locate the alleged to testify in any event.

2235.  Defendant Gerry Roll, husband of Daniel Roll, is well known to posses or have possess a coveting desire of the plaintiffs former 426 building on main street in Hazard Kentucky.

2236.  Gerry Roll is well known to be personally aggrieved with extreme personal spite or malice towards the plaintiff, for politely declining to make special consideration to Gerry Roll to sell her the plaintiffs former 426 building at a lesser price than a the bank could accept at the time.

2237.  On or about September 29th 2017 to October 14th 2017, when attempting to meet prospective residential tenants for the adjacently located 67 Whitaker Way building Gerry Roll is

317

known to have stormed out of said 420 building, located next door to the plaintiffs 426 building, to then harass or annoy prospective business customers or clients of the plaintiff screaming "she was calling the fire marshal" over the plaintiff "not having an occupancy certificate." .

2238. In response to #2237(supra), the Public Protection Cabinet moved to prosecute on its previous June 2015 case of *State Fire Marshal vs Brian Carter 15-CI-00259*, without observance or acknowledgment of any of the plaintiffs rebuttals regarding Kenneth Browning's allegations of the 426 building as "extremely dangerous or unsafe to life or limb that imperatively requires action to vacate."

2239. On or about the October 14th 2017 events as outlined in #2238(supra), the Public Protection Cabinet sought malicious prosecution of the plaintiff on an alleged "violation of said injunction order," overwhelmingly promoted by the defendant Gerry Roll of FOA.

2240. Defendants Gerry Roll of Foundation of Appalachian Kentucky FOA, is the wife of Daniel Roll, representative of the City of Hazard.

2241. It is well known that Gerry Roll has profound grievances, hatred, or malice against the plaintiff for her interests in obtaining the plaintiffs former 426 Treehouse Cafe building.

2242. Defendants of the Public Protection Cabinet would not initially first seek objective, substantive facts of the buildings alleged "terrible conditions" backed by evidence, nor hear the plaintiffs rebuttals, before commencing said effort to have the plaintiff prosecuted under the original 2015 injunction order with regard to the October 14th 2017 events outlined in #2235 thru #2241(supra).

2243. After providing exculpatory evidence to the former Public Protection Cabinet's Attorney David Startsman under the Bevin Administration, the Cabinet withdrew its request to prosecute the plaintiff under *State Fire Marshal vs Brian Carter 15-CI-00259* on or about November 7th 2018.

2244. After some time of inactivity, the injunction case *State Fire Marshal vs Brian Carter 15-CI-00259*.was dismissed under rule 77, without prejudice or further attempt to prosecute the matters outlined in #2235 thru #2243(supra), by the Public Protection Cabinet on or about December 21st 2021.

2245. Defendant Mike Haney of the Public Protection Cabinet knew or should have known that the previous information provided by his subordinates Kenneth Browning, Alan Walters, and Ronald Hacker were *extremely subjective* at best, yet sought said previous and forthcoming prosecutions with extreme indifference of Haney's duties as a government official to administer fair, impartial justice in good faith service to the plaintiff.

318

2246. On or about June 9th 2023, following the plaintiffs fire loss of the former 67 Whitaker Way apartment building/facility, by the organized conspiracy to destroy said building by arson against said property, the defendants of the Public Protection Cabinet, namely Kenneth Browning, once again maliciously sought and obtained a criminal complaint through the office of County Attorney Derek Campbell's office, alleging "illegal occupancy" of the plaintiffs former adjacently located 426 building, *Commonwealth vs Brian Carter 23-M-0381* on or about June 27th 2023.

2247. Defendant Kenneth Browning of the Public Protection Cabinet also known as The Office of the State Fire Marshal, maliciously obtained the said criminal complaint #2246(supra) alleging "wanton endangerment by renting out apartments, that were previously deemed unsafe by the fire marshal" as per the cabinets official publicly promoted narratives by WYMT about June 12th 2023.

2248. Defendant Kenneth Browning knew or should have known his previous false, misleading statements made on his official government documentation were not in good faith whist Browning proceeded to seek said malicious prosecution of the plaintiff, with an extreme indifference of his dutiful authority to obtain, relay or convey truthful, accurate information in a fair impartial manner.

2249. Derrick Campbell, county attorney of Perry County, is well known to have very close interpersonal relations with the City of Hazards Mayor Donald Mobelini.

2250. Defendant and Mayor of Hazard Donald Mobelini is well known to be personally aggrieved with the plaintiff for not consensually selling all of the plaintiffs then remaining main street and surrounding properties for a purchase price of $400,000.00 stating "we'll just go back through Denise Davidson then" his attorney, "since we can't make that deal" on or about November 12th 2020.

2251. Denise Davidson is the attorney well known to have deep interconnected relations with all three defendants of the City of Hazard, The Public Protection Cabinet, and Foundation of Appalachian Kentucky FOA, in other cases of representation against the plaintiff.

2252. Defendants of WYMT news knew or should have known that the statements made by the Public Protection Cabinet were based on materially false and misleading statements about the conditions of the plaintiffs formerly owned 426 Treehouse Cafe building, yet sought to publicly promote said negatively charged rhetoric, with extreme indifference of its duties to provide factual, truthful conveying of public information, to defame and cast the plaintiff in an unfavorable light.

2253. Defendants of WYMT news knew or should have known that the villainous narratives

promoted on its news network could cause an indefinite discouragement from future business advantageous relationships with the plaintiff, yet sought to promote such narratives with extreme indifference of their duties to promote truthful information to the public.

2254. The stated criminal complaints of wanton endangerment by the defendant Kenneth Browning and Derrick Campbell decided of their own volition to resurrect the previous 2017 criminal complaint against the plaintiff, by the City of Hazard, once again alleging "violation of trash ordinance" due to the allegation of said trash dumpster spilling over around June 10th 2017.

2255. The duty of providing trash service was that of the City of Hazard per its Contract with Rumpke trash removal services, and was not a duty of the plaintiff to perform regarding #2254(supra).

2256. Defendants of WYMT news ran with the two charges, of "wanton endangerment" and said "violation of trash ordinance" to promote a news headline "Hazard landlord facing multiple charges" to exacerbate, promote, and cast the plaintiff in as much of a negative, unfavorable light as possible with the public, in its coordinated effort with the County attorney Derek Campbell, City of Hazard, and Public Protection Cabinet on or about June 12th 2023, and on other occassions.

2257. After reviewing the events concerning the dismissal of the former 2015 injunction case from the Public Protection Cabinet also known as *Office of the State Fire Marshal vs Brian Carter 15-CI-00259,* County attorney Derrick Campbell became quick to make deferral/dismissal agreements with the plaintiff, without obtaining an admission of guilt on or about February 6th 2024.

2258. The deferral agreement from Derrick Campbell stipulated "Brian Carter will not *benefit* from multi-family housing" for one year, then be dismissed.

2259. As the plaintiffs formerly remaining 67 Whitaker Way building, 446 Grand Hotel's were effectively destroyed, the 426 forcibly liquidated by imminent destruction due to defendant Steve Campbell's actions, achieved personal for profit desires to destroy the plaintiffs former 446 Grand Hotel building, as sought and achieved by the long term goals of the City of Hazard, the stipulation that "Brian Carter *will not benefit* from multi-family housing for one year" was essentially without effect.

2260. The stipulation from Derrick Campbell depriving the plaintiff of "benefit" outlines the defendants collective intent/objectives of "ensuring that Brian Carter *doesn't benefit* from property."

2261. As a DIRECT RESULT of the malicious prosecution, public persecution of the plaintiff, in furtherance of the defendants collective goals to deprive the plaintiff of any and all rights to property,

320

depriving his right to pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a

direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix).  Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x).  Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi).  Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii).  Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii).  Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXV
### Unequal Application of Law or Lawful Authority
(Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Violation of the 14th Amendment)

2262.  The 14th Amendment of the United States Constitution guarantees that its citizens will be treated equally, fairly, with due process of law.

322

2263. 18 U.S. Code § 241 makes it unlawful for two or more persons to engage in conspiracies against any person in the United States in order to injure, oppress, threaten or intimidate said person in the free exercise or enjoyment of any right or privilege secured to him by the Constitution of the United States, or goes on the premises of another, with intent to prevent or hinder his exercise or enjoyment of any right or privilege so secured.

2264. 18 U.S. Code § 242 makes it unlawful for whosoever subjects any person to a deprivation of protected rights secured by the constitution of the United States, under the color of law or lawful authority.

2265. 42 U.S. Code § 1983 allows this court to grant redress against individuals who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

2266. 42 U.S. Code § 1985 allows parties to seek redress from this court, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privileged of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators of said act or acts.

2267. *The Erie Doctrine* requires that federal courts apply state substantive law and federal procedural law, as established by the federal rules of civil procedure, whist *Andrew vs White 145 S. Ct.75 (2025)*, clarifies that reinforcing the principle that state courts must correctly apply federal law as articulated by the Supreme Court.

2268. The City of Hazard is well known as a poverty stricken, county in southeastern Kentucky.

2269. The City of Hazard, is also well known to contain many century old, dilapidated, or otherwise poorly maintained houses and buildings in general.

2270. It is generally well known that communities that are poverty stricken, tends to exacerbate property owners abilities to improve or maintain their properties.

2271. The City of Hazard has a well known policy or practice of treating its citizens unfairly,

323

by "picking its favorites," and punishing those it finds "unfavorable."

2272. The City of Hazard unequally applies its law or lawful authority by providing financial support among other resources for its well connected family members, non profits such as FOA, Gerry Roll's Arts Alliance, EDA, to improve the properties of it's "well connected" whilst arbitrarily destroying or defaming property owners by criminal mischief, without permission from the property owners, at the expense of the taxpayers.

2273. The Public Protection Cabinet unequally applies its law or lawful authority by providing support of some, whilst applying a profoundly unequal standard upon others regarding "permitting requirements" or other treatment regarding a property owners abilities to alter or improve property.

2274. The City of Hazard unequally applies its law or lawful authority by calling in random complaints to state agencies, to annoy and harass some individuals, whilst turning their heads at any improper acts of others, primarily those that are "well connected," or "strongly favored."

2275. The City of Hazard unequally applies its law or lawful authority by putting out fires for some, whilst letting others burn, within 30-50 feet of each other, in order to deprive the abilities of its constituents to equally enjoy or benefit from property.

2276. The City of Hazard and the Public Protection Cabinet unequally applies its law or lawful authority by deciding who's allowed to modify their properties with little or no trouble, whilst causing a lot of trouble for others.

2277. Daniel Roll of the City of Hazard unequally applies his law or lawful authority by providing his wife Gerry Roll of the "non profit" FOA, city building construction permits whilst denying the plaintiff the same, despite receipt of payment from the plaintiff, indifferent of the cities duties to due process for its constituents.

2278. Daniel Roll committed said act 2277(supra) to deny the plaintiffs due process rights to be treated fairly by picking and choosing *when* the rules apply and *when* they do not.

2279. Daniel Roll committed said act 2277(supra) to deny the plaintiffs due process rights to be treated fairly by picking and choosing *who* the rules apply, and to *whom* they do not.

2280. The Public Protection Cabinet unequally applies its law or lawful authority by changing the rules *ex post facto* and then faulting the property owner, whilst allowing others grandfathering clauses it respects on behalf of others.

324

2281. The Public Protection Cabinet unequally applies its law or lawful authority by stating "the rules don't apply to government buildings" in its own Kentucky Building Code.

2282. The Public Protection Cabinet unequally applies its law or lawful authority by issuing occupancy certificates" based on what it or its representatives deems as "substantial compliance" whist deciding that others "will never be in compliance" regardless of how factually "safe or complaint" the conditions of a building or factually actually is.

2283. The Public Protection Cabinet unequally applies its law or lawful authority by falsification of building conditions of property owners, in order to justify vacating otherwise reasonably safe buildings by abuse of emergency authority discretion whist ignoring, disregarding, or "looking the other way" with regard to buildings that are legitimately unsafe, or could be considered extremely unsafe, particularly with regard to "the well connected."

2284. The Public Protection Cabinet unequally applies its law or lawful authority by requiring "proof of safety" of some while not requiring "proof of safety," or "proof of compliance" of others.

2285. The Public Protection Cabinet unequally applies its law or lawful authority by "condemning" the plaintiffs buildings during the plaintiffs term of ownership, but promptly removing said "condemnation statuses" or relative treatment just as soon as the property is sold or as soon as ownership is transferred to a new owner.

2286. The Public Protection Cabinet unequally applies its law or lawful authority by issuing "stop work orders" regardless of obtaining what said cabinet deems as "lawful permits," whilst promptly removing the same "stop work order notices" only upon a change of ownership.

2287. The City of Hazard The Public Protection Cabinet unequally applies its law or lawful authority by taking acts to physically destroy property of the plaintiff, but quickly takes remedial actions on behalf of another owner of the same property, within an extremely short period of time.

2288. The Public Protection Cabinet unequally applies its law or lawful authority by "deeming" a property unsafe by the mere waive of a hand for one owner whist "deeming" the same property "perfectly safe" for another owner of the same property.

2289. The Public Protection Cabinet and the City of Hazard unequally applies its law or lawful authority by conspiring together to shut off utilities and vacating a single building with no fire damage, whist declining to vacate or shut off utilities to another building with very significant fire damage.

325

2290. The Public Protection Cabinet unequally applies its law or lawful authority by requiring "permits to repair" a fire damaged building for one owner, but not requiring it for others with significant or similar damage located very close nearby.

2291. The City of Hazard unequally applies its law or lawful authority by paying for some businesses with various forms of government grants or resources, to start up and operate whilst paying for others to be closed down, destroyed, or otherwise "ran off" as a matter of "city policy."

2292. The City of Hazard unequally applies its law or lawful authority by "declaring or deeming" the plaintiffs former fire damaged facilities, namely 446 Grand Hotel and 67 Whitaker Way buildings, as well as the immediate areas around said facilitates, as "collapse hazard zones."

2293. As a direct result in support of #2292(supra), the City of Hazard, specifically Daniel Roll, would not allow the plaintiff, nor his contractors to perform work in or around said facilities, whist ignoring its own standard regarding "construction based work,"in and around the very same buildings, same conditions, similar timeframes, particularly when sending its own "well connected" contractors to perform said work, such as Steve Campbell.

2294. The stated "collapsible hazard zone" #2293(supra), did not stop Steven Campbell's contractors from reentering said property and completing the erection of the stated fourteen foot tall concrete walls/barriers after the successful fire destruction of the plaintiffs former 67 Whitaker Way building/facility by Campbell's highly coordinated efforts with the City of Hazard, FOA, and Payton Morton, owner or former owner of the 470 Main building in Hazard Kentucky.

2295. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by allowing Gerry Roll of FOA to build all new apartments in the upper floors of her 420 FOA building without requiring any permitting standards or special permitting standards to do so.

2296. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by allowing continued unfettered usage/benefit of said new constructions without similarly declaring such construction as "extremely dangerous to risk of human life or limb."

2297. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by allowing "change of usage" of various buildings throughout town without "special requirements."

2298. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or

326

lawful authority by forcing the plaintiff to gain various permits for work but still not being allowed to use building by allowing others to have change of usage of commercial buildings but not the plaintiffs

2299. The City of Hazard as well as the Division of Air Quality, unequally applies its law or lawful authority by requiring asbestos licensing requirements, decontamination procedures, particularly of the plaintiff whilst allowing others a free pass on the same rules, particularly by hounding, harassing or annoying by constantly "watching the plaintiff" to "in order to catch wrongdoing" but not watching others at all, or not applying the same standard, or set of standards, to City of Hazard's own contractors.

2300. The Public Protection Cabinet unequally applies its law or lawful authority by "prioritizing safety" of others such as, or with regard to the plaintiff, whilst allowing the City of Hazard to openly endanger safety with personal obsessions of its "well connected" to erect walls, barriers and blockades, for the purpose of depriving safety.

2301. The City of Hazard unequally applies its law or lawful authority By paying Steve Campbell to perform various "clean up" or other "improvement based projects" on both public as well as private properties, whist not paying the plaintiff to perform the same services for performing the same, or attempts to perform the same.

2302. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by salting, scraping and maintaining FOA parking lot at city or county resources and expense "to aid public safety." but not performing any similar service for the plaintiffs former apartment complex and shopping center previously located next door, or within very close vicinity of the defendants 420 FOA building and 470 Public Defenders buildings, respectively, during the plaintiffs term of ownership.

2303. The said government entities Behaves in such a manner, to unequally apply its authority, duties, or responsibilities by making special exceptions to provide aid for private property development whist denying aid for others by making exceptions as above, whist expending taxpayer dollars to crush others, physically, mentally, and emotionally, to destroy property rights as well as rights to prosper as tax paying citizens.

2304. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by conspiring to prosecute the plaintiff on flagrantly manufactured crimes of wanton endangerment in order to persecute the plaintiff unfairly, whist turning heads and looking the other way

327

at the intentional endangerment of others by defendants Tony Eversole, Gerry Roll, Payton Morton, Steve Campbell at said "well connected" individuals personal obsessions to entrap, endanger the plaintiffs former tenants, by their collective attempts to annoy or harass with said barriers or obstructions, to ultimately attempt to take their lives by arson, conceal said crimes by obstruction of justice via criminal mischief to destroy evidence, in direct retaliation for complaining about the said barriers being placed in a weaponized form against said residential victims of the conspiracy.

2305. The defendants as aforementioned in #2304(supra), committed said acts in their personal obsessions to "ensure that the owner doesn't benefit" referring to depriving the plaintiffs protected rights to otherwise *benefit* from ownership of property.

2306. The Defendants of the Public Protection Cabinet demonstrated unequal application of law or lawful authority by permitting said construction of fourteen foot (14ft) various concrete walls and barriers around the plaintiffs facility deemed a "collapsible hazard zone."

2307. The City of Hazard as well as the Public Protection Cabinet unequally applies its law or lawful authority by clearing roads for WYMT whist openly disregarding its duties to provide amicable service of equal, fair and impartial treatment of other tax contributing citizens.

2308. The defendants of FOA, HDA, EDA leverage their influence over government organizations such as City of Hazard and Public Protection Cabinet in order to garner support for their own non profit business development endeavors whilst conspiring together utilizing said influence to undermine and destroy others, mentally, physically, personally, by conspiring in a criminally unlawful manner of destroying their victims property or rights to property.

2309. As a DIRECT RESULT of profoundly and unequally applied laws, regulations, ordinances or unlawfully applied standards, in furtherance of the defendants personal collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, criminally unlawful conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of beneficial ownership and enjoyment of property, the plaintiff was:

328

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly

329

deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XXVI
### Unjust Enrichment
(Major Fraud Against the United States 18 U.S. Code § 1031), (Conspiracy Against Rights 18 U.S. Code § 241), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Civil Action For Deprivation of Rights 42 U.S. Code § 1983), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Unjust Enrichment by Bribery in RICO conspiracy 18 U.S. Code § 1961-68)

2310. Unjust Enrichment is a common law tort that arises when one party receives a benefit at the expense of another in a manner that the law considers unjust.

2311. In overall summation of the tort claimed, the defendants of the City of Hazard, Public Protection Cabinet, with its inter-related "non profit organizations" of FOA, HDA, and EDA, have engaged in a highly coordinated, criminally unlawful campaign by organized conspiracy to physically destroy and deprive the plaintiff of all manner of beneficial usage or enjoyment of rights to the plaintiffs once historic and prosperous seven (7) business shopping center and approximately fifty (50) unit apartment complex formerly located at the heart of main street in Hazard Kentucky.

330

2312. 18 U.S. Code 1031 makes it unlawful for organizations to engage in massive fraud and forgery in order to achieve unjust enrichment at the expense and detriment of the United States itself.

2313. 18 U.S. Code § 241 makes it unlawful for the defendants of FOA, HDA, and EDA, as well as the "City of Hazard's well connected" to deprive the property rights of a person by massive arson and fraud in order to enhance the enrichment of their own "non profit real estate development endeavors."

2314. 18 U.S. Code § 242 makes it unlawful for government officials to enrichen "well connected donors" or influences of the defendants of FOA, HDA, EDA, and affiliated, via bribery, extortion, exploitation under the color of their lawful authority as government representatives.

2315. 18 U.S. Code § 1961-68 outlines the RICO statute, which makes it unlawful for the defendants to engage bribery, extortion and dealing in obscene manner in order to enhance their own collective enrichment at the detriment and expense of the plaintiff as a taxpaying constituent.

2316. 42 U.S. Codes § 1983 & 1985 allow this court to provide redress to the conspiring to deprive the plaintiffs rights or abilities to use, enjoy and benefit from property under the color of lawful authority of the City of Hazard, Public Protection Cabinet, and other governing agencies, to achieve or enhance the unjust enrichment of their respective "non profit organizations" or entities.

2317. With regard to #2316(supra), the defendants have unjustly enriched themselves by said destruction, attempts to destroy, also by fraud and forgery, to cause an indefinite deprivation of rights to said commercial properties, to also destroy the growing the plaintiffs interstate commerce between states, in order to summarily, deprive the plaintiff of all of his abilities, involving his rights to use, enjoy and benefit from the ownership of said properties, for the enrichment of said defendants named summarily in #2316(supra).

2318. The defendants sought and achieved unjust enrichment by initiating a campaign of organized criminal conspiracy commencing on or about July 18th 2015 to deprive as well as destroy the plaintiffs abilities to use and enjoy his former commercial buildings located at 446 main street, 67 Whitaker Way, and 426 Main Street in Hazard Kentucky.

2319. The defendants of the City of Hazard and The Public Protection Cabinet, acting in favor of their donor influences of Foundation of Appalachian Kentucky, embarked on a campaign involving a criminal conspiracy to physically destroy and deprive all manner of rights, enjoyment, usage, and

331

"benefit" of the plaintiffs once prosperous fifty (50) unit apartment complex and shopping center as outlined in counts two and three of this complaint therein.

2320. The plaintiffs pervasively known efforts to invest in the older facilities and make drastic improvements to said facilities quickly led to the sinful coveting by the defendants, specifically Paul Collins, Donald Mobelini, and Gerry Roll, to then attempt devaluation of the plaintiffs properties in the public's eye and "get the plaintiffs buildings on the cheap."

2321. The defendants collective, highly coordinated, collaborative efforts to "shut down and get rid of Brian Carter no matter what it takes, no matter the cost" ultimately served no other purpose but to eliminate the plaintiff as a committed, low cost, high quality housing and economic development "competitor" to the defendants own "well capitalized non profit entities" of FOA, HDA, and EDA.

2322. Kentucky Power is well known to "hike" or raise electric rates, particularly within in the Hazard, Perry County area, whilst giving several one hundred thousand dollar to one hundred fifty thousand ($100,000.00 - $150,000.00) plus or minus "donations" to unjustly enrich the defendants of HDA, and affiliates, at the expense, detriment of everyone else in the area.

2323. On or about May 4th 2022, the defendants unjustly enriched themselves by paying themselves to building a one hundred foot (100ft) long white metal wall by Payton Morton, owner of the nearby 470 Main Street building, and Gerry Roll of FOA, owner or former owner of the 420 Main building, in order to create a harassing, distressing, impairment or blockage of major pedestrian and public traffic to and from the plaintiffs nearby 67 Whitaker Way building.

2324. Prior to #2323(supra), defendant Payton Morton is well known to be personally aggrieved with the plaintiff over Morton's personal inconveniences over the City of Hazard's decision to conspire to participate in the crime of arson by allowing the plaintiffs former 446 Grand Hotel building to be willfully burglarized, of which a fire was promptly set by said burglars the early morning hours of September 1st 2015.

2325. The said fire outlined in #2324(supra) was also known to have penetrated into Morton's formerly attached 470 main street building next door to said 446 building, however it was given drastically different treatment by the City of Hazard fire department, by quickly extinguishing said fire in Morton's building, whist letting every square inch of the plaintiffs former 446 building, a much larger building, to be completely destroyed by the arson, or conspiracy to arson said 446 building,

332

minus the majority of brick, steel and concrete of said 446 building that still remained.

2326. Prior to #2323(supra), defendant Gerry Roll of FOA is well known to be personally aggrieved with the plaintiff over not selling the building to Gerry Roll at a price lower than what the plaintiffs lien-holder could accept.

2327. Commencing on or about June 9th 2023 Steve Campbell, a "well connected" contractor representative of the City of Hazard, unjustly enriched himself by building more concrete walls to further obstruct the plaintiffs proper culvert, of which had previously allowed proper drainage out from the former Newberrys lot away from the 426 Treehouse Cafe buildings foundation, exhibit 59.

2328. The said construction outlined in #2327(supra), placed the plaintiff under extreme emotional distress, as said construction of said concrete walls, of which directed or concentrated flood and rain waters directly into said foundation by said activity, is pervasively well known to be unhealthy to a home or a structures foundation.

2329. Defendant Steve Campbell unjustly enriched himself by building or erecting other barriers, or various "fences" to partially entrap, then fully entrap, and block safe sensible egress/ingress to the plaintiff former properties of 67 Whitaker Way, as well as rear facing residential use portions of the plaintiffs 426 building, gravely limiting the former residential tenants of said buildings abilities to escape said property, should an emergency have occurred.

2330. Denise Davidson and Donald Mobelini unjustly enriched Steve Campbell's personal desires to completely destroy the plaintiffs former 446 Grand Hotel building by exploiting the plaintiffs personal resources, by instilling false hope or false pretenses the plaintiff would be allowed to repair and enjoy his 446 Grand Hotel property again.

2331. Defendants Kenneth Browning and Mike Haney unjustly enriched themselves by advancing or securing their respective careers at knowledge of slander of the plaintiffs image with the general public, by libelous production of documentation promoted or "pushed" by Browning.

2332. The defendants of the "non profit organizations" HDA, EDA, FOA, unjustly enriched themselves by providing unjust influences upon the City of Hazard and the Public Protection Cabinet to deprive by libelous fraud, and conspiracy to vacate or destroy, the plaintiffs properties in order to divert community business as well as residential tenant leasing dependency to the defendants own "non profit development ventures."

333

2333. WYMT achieved unjust enrichment on behalf of themselves by casting the plaintiff in an openly slanderous/defamatory light with the general public in order to improve ratings and viewership for its own profitability.

2334. In addition to unjust enrichment, as well as enhancement of profitability of its "well connected" City of Hazard's big donor influences of FOA, HDA, and EDA, respectively, participate in the aforementioned practices as outlined in #2317 thru #2333(supra), among other methods, in order to discourage future business interests with the public and the plaintiff, in order to divert said community business needs to their own interests, at the detriment expense of the plaintiff.

2335. The defendants of HDA, FOA, unjustly enrich themselves at the expense of the plaintiff as a taxpaying constituent, as well as at the extreme expense of the taxpaying constituency of the United States, by building houses, publicly marketed as "housing for flood families" only to then fraudulently sell the said houses to said flood families at full market value.

2336. The defendants of the nonprofits HDA, EDA and FOA secure their enrichment by laundering influences of the profits deprived such as in #2235(supra) to directly or indirectly "bribe' or "creatively convince" political leaders to further their interests for mutual profit or benefit, often under unlawful concealment as "non profit 501 3c entities."

2337. WYMT slandered the image promoted by the Public Protection Cabinet to achieve unjust enrichment for others, by tarnishing the image of the plaintiff in order to divert or lure more residential home lessees or buyers to HDA's "affiliates."

2338. The "non profit organizations" HDA, EDA, FOA unjustly enrich themselves by receiving millions in state and federal funds to "build and sell houses at market value" as unfavorable advantage to the detriment of other property developers, such as the plaintiff.

2339. The Defendants of HDA unjustly enrich themselves off the backs of flood tragedy victims after already receiving millions from grants and "donors," getting paid by the taxpayers, to build the same house they are already paid by the taxpayers to build.

2340. HDA and FOA affiliates unjustly enrich themselves in a major fraud against the United States by receiving thousands upon millions in donations to build, then sell the same house or set of houses at market value.

2341. The Gorman and Roll families are well known to garner tremendous political influence

334

over the City of Hazard, with Steve Campbell being a marital family member of the Gorman family.

2342. The City of Hazard achieved unjust enrichment by leveraging his influence with the City of Hazard to suit his personal long term goals of destroying significant portions of the plaintiffs former 446 Grand Hotel without permission, for the enrichment of others, at the expense of the plaintiff.

2343. The City of Hazard, specifically Donald Mobelini and Denise Davidson unjustly enriched Steve Campbell by extorting the plaintiff in order to obtain the plaintiffs former 446 Grand Hotel property for full demolition by Campbell, after the plaintiff made personal improvements to property by first exploitation of the plaintiffs resources, under false pretenses that the City of Hazard would allow the plaintiff to restore his property June 10th 2021, only to deprive those rights, by a combination of hoaxes, fraud and trickery, as aforementioned.

2344. HDA, EDA, FOA of the Roll family, and Steve Campbell of the Gorman family, achieved unjust enrichment by leveraging their influence with the City of Hazard to achieve destroying the plaintiffs former 446 Grand Hotel building, in order to increase community dependency of housing options to FOA and HDA.

2345. The defendants as referenced in #2344(supra) also achieved unjust enrichment by destroying the said 446 Grand Hotel property in order to increase community dependency of commercial business leasing options to EDA, Donald Mobelini, Betsy Clemons, and City of Hazard's "well connected" property development endeavors.

2346. As a DIRECT RESULT of the defendants achieving unjust enrichment by exploitation, extortion, bribery, massive fraud against the plaintiff and the taxpaying constituents of the United States, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide

335

continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building

336

apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XXVII
### Failure to Provide Just Compensation
(28 U.S. Code § 1491 Damages for Breaches of Contracts With The Government), (Violation of the 5th Amendment), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983), (Conspiracy Against Rights 18 U.S. Code § 241), (Dealing In Obscene Manner 18 U.S. Code § 1961), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985)

2347. 28 U.S. Code § 1491(a)(1) allows the federal courts to permit redress of any claims against the United States, upon any *express or implied* contract with the United States.

2348. As commonwealth state agencies are *implied* as agents serving the constituency of the United States, the federal court has supplemental jurisdiction to provide redress on said matters.

2349. The 5th Amendment to the United States Constitution mandates that a person may not be deprived of property without just compensation.

2350. 42 U.S. Codes § 1983 & 1985 allows the court to provide redress for conspiracy to deprive rights to use, enjoy or benefit from property, under color of lawful authority.

2351. U.S. Code § 241 makes it unlawful for two or more persons to conspire to deprive the

337

rights of a persons ability to use, enjoy, or benefit from property.

2352. 18 U.S. Code § 242 makes it unlawful for government officials to deprive rights to property under color of lawful authority.

2353. 18 U.S. Code § 1961-68 references the RICO statute, which makes it unlawful for persons demonstrating patterns of racketeering behaviors involving extortion, exploitation, bribery, and other means by fraud, felonious behaviors, or other dealings of an obscene manner, in order to deprive the property rights of United States citizens, for the unjust enrichment of "well connected others."

2354. "Just Compensation" encompasses a broader range of compensation factors involving "totality of circumstances" approach, which includes surroundings, improvements to property, or in the case of the plaintiff, a tortious interference with advantageous, or prospective advantageous business relationships the defendants have since deprived the plaintiff, of his beneficial usage of property.

2355. "Just Compensation" also can encompass an "income capitalization approach" among other methods, to compensate for the permanent loss of the advantageous business relationships the plaintiff had enjoyed, or would have enjoyed should he have been allowed to care for property, or overall has lost, as a direct result of the defendants interventions.

2356. Pursuant to the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 or URA § 201, 42 U.S.C. § 4621 (1970) the plaintiff is entitled to compensation for the defendants forcing of the plaintiff to relocate his business interests as a direct result of the City of Hazard's interventions with the plaintiffs advantageous business relations, by the destruction of his property, conversion of all other property, or otherwise general deprivation of his rights to property.

2357. In support of this cause of action, the plaintiff re-asserts the allegations set forth in count ten, deprivation of the plaintiffs rights to property by felony extortion or extortion based practices, to place the plaintiff under extreme duress by said threats or coercion to force a *contract of sale* of the plaintiffs former 446 Grand Hotel property, deprive the plaintiff of his rights to make repairs to said property, without just compensation, by the primary threat of "take what we offer you and trust that we'll let you buy the property back later or else we'll take everything from you and you'll get nothing" referring to the remaining adjacently located, nearby 426 main and 67 Whitaker properties.

2358. As a direct result of the slander of title and defamation based practices asserted in the causes of action counts fourteen-slander of title and fifteen-defamation, the plaintiff would have stood

338

no chance in receiving "just compensation" if the defendants of the City of Hazard, namely Donald Mobelini and Denise Davidson, had carried out said threat by extortion, coercion and extreme duress as outlined in #2357(supra).

2359.    In further support of this cause of action, the plaintiff re-asserts the allegations set forth in count eleven-felony exploitation of personal resources, the defendants co-conspirators as outlined in #2358(supra) Daniel Roll and Paul Collins, placed a felonious lien upon said 446 Grand Hotel property, approximately double of what could be legally accounted for or justified, making any covenant of good faith dealings with the City of Hazard difficult or untrustworthy, due to said conduct or behavior, as well as strong personal desire of the defendants intent to "score a demolition contract for Steve Campbell," well connected contractor of the City of Hazard.

2360.    In a breach of covenant of good faith dealings with the plaintiff, the stipulation in the "contract of sale" referenced in #2357(supra) regarding said "ability to buy back property" only stipulated that "the city would *consider* allowing the plaintiff to buy back property" in an extreme lack of candor in good faith dealings with the plaintiff, by making said stipulation intentionally or flagrantly deceptive and unenforceable.

2361.    The defendants have failed to provide just compensation as a direct result due to said practices of dealing in obscene manner as outlined summarily in #2357 thru #2360(supra).

2362.    Beginning on August 31st 2015, defendants of the City of Hazard, specifically representatives of the City of Hazard Police department, engaged in a criminal conspiracy of intentional failure to act by deliberately allowing burglars to invade a previously vacant apartment in the plaintiffs formerly owned 446 Grand Hotel building/facility, under the claim that "criminals have squatters rights."

2363.    The stated "criminals have squatters rights" is a well known policy practice within the City of Hazard Police Department (HPD).

2364.    Within 24 hours of said declaration from City of Hazard Police Department (HPD), #2362(supra), a fire is well known to originate from the same said apartment where said burglars were intentionally permitted to squat within the plaintiffs former 446 Grand Hotel property vacant unit, into the very early morning hours of September 1st 2015.

2365.    Defendants of the City of Hazard, specifically the City of Hazard Fire Department

339

engaged in criminal complicity of failure to act by intentionally allowing the set fire #2365(supra) to progress over several hours throughout all levels and floors of the previously known 446 Grand Hotel building/structure.

2366. The former 446 Grand Hotel structure was historically well known to be a very massive five (5) story, approximately eighty thousand square feet, (80,0000) highly compartmentalized building/facility.

2367. The said 446 Grand Hotel building/facility is well known to have provided community support of nineteen (19) residential units and commercial leasing for six (6) independently ran businesses that had previously sublet within the building at the time of the September 1st 2015 fire.

2368. It is generally well known that highly compartmentalized buildings/structures take progressively longer for fire to spread into other areas such a building/facility, due its natural tendency of such a construction to create a fire separation between units.

2369. Defendants Daniel Roll and Paul Collins, representatives of the City of Hazard, initiated a conspiracy to invade and destroy serviceable portions of the newly fire damaged 446 Grand Hotel facility on or about September 10th 2015.

2370. Defendants Donald Mobelini, Denise Davidson, and Steve Campbell followed suit by having said facility completely destroyed, with extreme indifference of the plaintiffs property rights or personal goals of benefiting from his ownership of said building/facility, following the said September 1st 2015 building fire loss of said facility, commencing by extortion, exploitation, and collective denial of the plaintiffs rights to due process regarding the plaintiffs desires to repair, maintain and prosper with said building/facility.

2371. Defendants Daniel Roll and Paul Collins knew of the plaintiffs personal goals of facility restoration of the 446 building rather than demolition.

2372. The City of Hazards goals to destroy said 446 Grand Hotel facility reflected its desires primarily the personal desires of Steve Campbell, to score himself a demolition contract against said facility for his own enrichment.

2373. Defendants Daniel Roll and Paul Collins flagrantly ignored or disregarded any subsequent work proposals, including limited demolition proposals from the plaintiff regarding the plaintiffs personal goals with restoring said 446 building/facility.

Defendant Daniel Roll accepted payment for the plaintiffs "wall bracing plan" but then promptly refused his duty to issue said permit after accepting payment from the plaintiff for its issuance.

2374. From the date of initiating mandamus lawsuit against the City of Hazard *Carter Realty vs City of Hazard 16-CI-00020* the respondents sought to exploit the personal resources of improving said 446 property for the long term goals of the defendants, specifically their "well capitalized non profit" activities/ventures, under the guise of its promises to allow the said facility to be restored.

2375. Defendants Daniel Roll and Paul Collins proceeded with their respective demolition plans in March of 2016, awarding said demolition contract against said facility publicly advertised as $44,000.00 or forty four thousand dollars.

2376. Defendants Daniel Roll and Paul Collins opted to place a lien amount of approximately $78,517.00 or seventy eight thousand, five hundred and seventeen dollars against said 446 Grand Hotel property.

2377. The stated lien/levy against said property #2376(supra), in the amount of approximately $78,517.00 or Seventy eight thousand, five hundred seventeen dollars was stated to be "the full taxable value of the grand hotel property at that time."

2378. The stated approximately $78,517.00 or Seventy eight thousand, five hundred seventeen dollars lien/levy was applied consistent around the same time-frame Paul Collins and Gerry Roll expressed an interest in purchasing/acquiring property from the plaintiff.

2379. Defendants Daniel Roll and Paul Collins could not justify the difference in the lien amount of approximately $78,517.00 or Seventy eight thousand, five hundred seventeen dollars vs the contractor awarded demolition bid price of forty four thousand dollars $44,000.00 as was publicly advertised.

2380. The City of Hazard, specifically defendant representatives Donald Mobelini and Tony Eversole made a last minute verbal offer to settle said mandamus lawsuit outlined in *Carter Realty vs City of Hazard 16-CI-00020* on late Friday evening before the date of said trial previously scheduled the following Monday, which was then quickly conveyed to the state circuit court judge Alison Wells by phone call on or about January 10th 2020.

2381. The following written version of said verbal agreement provided from attorney Jonathan Shaw the following Monday January 13th 2020 did not include an obligation requirement of the City

341

of Hazard to issue the plaintiffs permit, of which said entity had already received payment for issuance.

2382. The following written version of said verbal agreement in #2381(supra) provided from attorney Jonathan Shaw the following Monday also did not include a requirement obligation of the City of Hazard to waive the "cease and desist order" previously issued from Daniel Roll, of which had prohibited the plaintiff to perform repair work on said 446 building/structure.

2383. The following written version of said agreement from Jonathan Shaw also included other issues, such as removal of a fence previously ordered to be erected by Daniel Roll, and liability, among other concerns, prompting the plaintiff to decline signing the initial document.

2384. The plaintiff completed his portion of the cleanup of the newberrys vacant lot and commenced erection of a new roofline of the former 446 Grand Hotel building pursuant to the verbal contract to initially "settle" the mandamus lawsuit as a faithful execution of the covenant of good faith from the plaintiff to the City of Hazard on or about June 10th 2020.

2385. Defendant Tony Eversole, then opted to declare "we're going to try to get the property" after the plaintiff had made said improvements pursuant to the verbal agreement to settle the mandamus case in #2384(supra).

2386. The above declaration from defendant Tony Eversole of the City of Hazard that "we're going to try to get the property" prompted the plaintiff to cease construction of the new roofline over the former 446 Grand Hotel building on or about March 13th 2020.

2387. Public Protection Cabinet representative Jamie Potter questioned the plaintiff during a conference call with regard to the 426 building, off subject, about said roofline over the 446 Grand Hotel building/facility, asking about "installing the roofline without a permit" regarding #2386(supra).

2388. In response to #2387(supra), The plaintiff described to representative Jamie Potter on said conference call, that the new roofline over the former fire damaged 446 building was being erected pursuant to an EPA requirement that potentially harmful asbestos was 'needed to be contained' in order for a proper cleanup/abatement of the asbestos hazard conditions known to exist within the 446 building at that time.

2389. Public Protection Cabinet representative Jamie Potter responded to the plaintiffs description of the new roofline stating "oh ok that's permitted then" with regard to #2388(supra).

2390. Defendants Donald Mobelini and Denise Davidson knew of the plaintiffs personal

342

sacrifices regarding said improvements of the 446 Grand Hotel and Newberrys Building lots, had came at extreme personal expense to the plaintiff.

2391. Defendants Donald Mobelini and Denise Davidson forced the plaintiffs hand against the plaintiffs wishes to liquidate said Grand Hotel and Newberrys Building lots for the price of $100,000.00 or one hundred thousand dollars, by extortion "or lose everything."

2392. Defendants Donald Mobelini and Denise Davidson also "waived" the original lien placed by Daniel Roll and Paul Collins in the original amount of $78,517.00 seventy eight thousand, five hundred seventeen dollars.

2393. Defendants Denise Davidson and Donald Mobelini knew or should have known that the lien amount of $78,517.00 seventy eight thousand, five hundred seventeen dollars could not be justified, yet chose complicity with Daniel Roll and Paul Collins "for leverage" as a form of threats or coercion against the plaintiff to force the plaintiff into a contract of sale against the plaintiffs rights.

2394. The former Newberrys vacant lot was previously assessed by Perry County PVA in the amount of fifty thousand dollars $50,000.00.

2395. The total assessment of the former fire damaged 446 Grand Hotel building lot and Newberrys vacant lot was accessed after September 1st 2015 of one hundred twenty eight thousand, five hundred seventeen dollars $128,517.00 at or around the time of the lien placement by Paul Collins.

2396. Defendant Denise Davidson then opted to add approximately seventy percent (70%) of the plaintiffs only remaining parking previously located behind the former 446 Grand Hotel building lot and beside of the 67 Whitaker Way building, to the said "contract of sale" with the City of Hazard, without consent of the plaintiff exhibit 58, June 10th 2021.

2397. Defendant Denise Davidson added the approx 70% of only remaining parking beside the plaintiffs former 67 Whitaker Way building without providing just compensation for the excessive amount of parking, or without a clear need to take said parking, beyond the price of one hundred thousand dollars $100,000.00

2398. It is well known that downtown lots are commonly accessed at fifty thousand dollars for approximately one half acre lot, generally for the land itself.

2399. Defendant Denise Davidson and Donald Mobelini did not provide just compensation for the diminution of value of the neighboring 67 Whitaker Way apartment building, due to the various

343

barriers and other *restrictions to parking.*

2400. Defendant Denise Davidson and Donald Mobelini did not provide just compensation for the diminution of value of the neighboring 67 Whitaker Way apartment building, due to the *restrictions of safe egress/ingress* to the property.

2401. Defendant Denise Davidson and Donald Mobelini did not provide just compensation for the diminution of value of the adjacent 426 building, primarily due to the various barriers and other *restrictions to parking* by defendants Tony Eversole, Gerry Roll, Payton Morton and Steve Campbell of the City of Hazard.

2402. Defendant Denise Davidson and Donald Mobelini did not provide just compensation for the diminution of value of the adjacent 426 building, due to the *restrictions of safe egress/ingress* to the property as a direct result of the actions taken by the co-conspirators of Tony Eversole, Gerry Roll, Payton Morton and Steve Campbell of the City of Hazard.

2403. The City of Hazard did not provide just compensation for depriving the rights to the plaintiffs 67 Whitaker Way building, by diminution of its value to said property, as a direct result of the intentional act of arson or conspiracy to commit arson against said building by the defendants of FOA, Steve Campbell, Tony Eversole, Payton Morton, Gerry Roll's collective coordinated efforts.

2404. As soon as Denise Davidson and Donald Mobelini executed their "contract of sale" against the plaintiff 446 Grand Hotel property on or about June 10th 2021, neither Donald Mobelini or Denise Davidson would take any further phone calls or accept any further communication attempts from the plaintiff.

2405. The City of Hazard and its co-conspirators did not provide just compensation for its tortious interference with the plaintiffs business advantage or prospective business advantages in accordance with "income capitalization approach" with regard to the 446 Grand Hotel building, when it caused the permanent irreparable harm to the plaintiffs beneficial usage of said property. As a direct result of its interference.

2406. The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation for its tortious interference with the plaintiffs business advantage or prospective business advantages in accordance with "income capitalization approach" with regard to the 67 Whitaker Way building, when it caused permanent irreparable harm to the plaintiffs beneficial usage of

344

said property, as a direct result of its interference.

2407.   The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation for its tortious interference with the plaintiffs business advantage or prospective business advantages in accordance with "income capitalization approach" with regard to the 426 Main or Treehouse Cafe building, when it caused permanent irreparable harm to the plaintiffs beneficial usage of said property, as a direct result of its interference.

2408.   The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation for its tortious interference with the plaintiffs business advantage or prospective business advantages in accordance with "income capitalization approach" with regard to the 67 Whitaker Way building, when it caused permanent irreparable harm to the plaintiffs beneficial usage of said property, as a direct result of its deprivation of the plaintiffs abilities to use, enjoy or benefit from said property, as a direct result of its unlawful convergences upon said property.

2409.   The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation of "totality of circumstances" approach which included the plaintiffs costs fro improvements to property, surroundings, or deprivation of the plaintiffs abilities to use, enjoy and benefit from said property and surroundings, as a direct result of interference, convergence upon said 67 Whitaker Way properties, lots, or other interference of destructive, felonious behavior.

2410.   The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation of "totality of circumstances" approach which included the plaintiffs costs fro improvements to property, surroundings, or deprivation of the plaintiffs abilities to use, enjoy and benefit from said property and surroundings, as a direct result of interference, convergence upon said 446 Grand Hotel building, newberries lot, and surrounding properties, or other interference involving destructive, felonious behavior, or dealing in obscene manner.

2411. The City of Hazard, Public Protection Cabinet, and its co-conspirators did not provide just compensation of "totality of circumstances" approach which included the plaintiffs costs fro improvements to property, surroundings, or deprivation of the plaintiffs abilities to use, enjoy and benefit from said property and surroundings, as a direct result of interference, convergence upon said 426 Treehouse Cafe building, newberries lot, and surrounding properties, or other interference involving destructive, felonious behavior, or dealing in obscene manner, in order to deprive all manner

345

of rights or abilities to enjoy or benefit to said property.

2412.   Pursuant to the Uniform Relocation Assistance and Real Property Acquisition Act of 1970 or URA § 201, 42 U.S.C. § 4621 (1970) the plaintiff is entitled to compensation for the defendants forcing of the plaintiff to relocate his business interests as a direct result of the City of Hazard, Public Protection Cabinet, and "non profit" co-conspirator organizations FOA, EDA, and HDA's interventions with the plaintiffs advantageous business relations, by the destruction of his property, conversion of all other property, or otherwise general deprivation of his rights to property.

2413.   As a DIRECT RESULT of the defendants of the City of Hazard, the Public Protection Cabinet, and their related co-conspirators efforts to deprive the plaintiff of all means and rights to benefit and enjoy property by destruction of property, invasion of property by convergence, taking of land without just compensation in order to weaponize land against other properties to deprive their usage or abilities to use, enjoy, or benefit from property, as aforementioned, by the collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two

346

million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

347

xiii).  Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXVIII
### Harassment, Stalking, and Menacing
(Prohibition Against Retaliation and Coercion 42 U.S.C § 12203), (42 U.S.C § 3617 Interference, coercion, or intimidation), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Dealing In Obscene Manner to Deprive Rights by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Harassment KRS 525.070), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

2414.  42 U.S. Code § 12203 allows the court to provide a path of redress when any practice of discrimination of an individual because said individual opposed any act or practice made unlawful because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.

2415.  Commencing in our about mid 2012 until August 7th 2023 the City of Hazard and the Public Protection Cabinet, consistent with said entities well known practices of retaliation, coercion, intimidation or other forms of harassing, annoying, or other similar events of dealing in obscene manner against its own constituents, often for "not donating to their cause," "daring to question the honor of their office" or other threats or intimidation in a policy mimicking gang/mafia style behavior as outlined in count one.

2416.  42 U.S. Code § 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of their rights to housing, this includes actions taken against individuals who have exercised or enjoyed their rights or have aided others in doing so.

2417.  The City of Hazard has a longstanding practice of using threats or intimidation against its citizens to discourage or deprive the citizens rights to use, enjoy and or benefit from property.

2418.  42 U.S. Code § 1985 allows this court to provide redress, as it states that if two or more persons in any State or Territory conspire by going on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the

348

laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, to injure a person or property.

2419. 18 U.S. Code § 242 makes it unlawful for any person to deprive the protected rights of another under the color of lawful authority.

2420. 18 U.S. Code § 1961-1968 references the RICO statute, which makes it unlawful to deal in an obscene manner, by threats, coercion, harassment or intimidation, in furtherance of conspiracy.

2421. KRS 525.070 makes it unlawful when, with intent to intimidate, harass, annoy or engages in the course of conduct, or repeatedly commits acts which alarm or seriously annoy such a person and which serve no legitimate purpose.

2422. 42 U.S. Code § 1983 allows this court to provide redress of any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

2423. Beginning in mid 2012 through end of September 30th 2015, defendants of the Public Protection Cabinet commenced a campaign of harassment, stalking, and menacing by making random series of "visits" to the plaintiffs former 426 building, also known as the Treehouse Cafe building.

2424. It is widely known that the 426 Treehouse Cafe building/facility is well known to host a long list of previous restaurant style businesses, such as Skybox Sports Bar and Grill, among others.

2425. The defendants of the City of Hazard are well known to engage in bullying, harassment, stalking and menacing of its citizens by employing a well known policy of "we can make it real hard for you to get permits" if certain businesses or individuals elect to "not play ball" with the desires of it's local clique/colleagues or affiliate members.

2426. The City of Hazard and the Public Protection Cabinet are well known to enact policies engage in bullying, harassment, stalking and menacing of its citizens by employing a well known policy of of "pay for play" favoritism/treatment for certain businesses above others.

2427. The City of Hazard and Public Protection Cabinet are well known to engage in bullying,

349

harassment, stalking and menacing of its citizens by employing a well known policy of "shaking down" local businesses for "donations" to its "well capitalized non profit organizations."

2428. The predominant "well capitalized non profit organizations" pervasive in the Hazard KY area are the defendants of Foundation of Appalachia Kentucky, (FOA), Housing Development Alliance (HDA), Chamber of Commerce, and Economic Development Alliance, (EDA), among others.

2429. Defendants of the Public Protection Cabinet initiated a campaign of harassment, annoying, or bullying by making libelous statements on their official documentation regarding the conditions of the plaintiffs 426 Treehouse Cafe building, under the guise of promoting public safety.

2430. Defendants of the City of Hazard initiated a campaign of harassment, annoying, or bullying by issuing various citations from its City of Hazard Police Department regarding "trash spillover(s)" of the residential tenant dumpster formerly located off 67 Whitaker Way Hazard Kentucky.

2431. City of Hazard knew that its policies with Rumpke did not permit the plaintiff to perform any trash services at his own discretion, therefore, the harassing communications in #2430(supra) to the plaintiff served no other purpose but to bully, harass, annoy, stalk or cause menacing presence to the plaintiff and his residential tenants.

2432. City of Hazard, specifically Daniel Roll, engaged in a campaign of harassment, bullying, stalking and menacing of the plaintiff by "calling in complaints" to state agencies, specifically that of Division of Air Quality and Kentucky OSHA, "for working on the building without the benefit of wall bracing."

2433. Defendant Daniel Rolls demonstrated an extreme lack of candor with regard to his treatment outlined in #2432(supra), by Daniel Roll's refusal to issue the plaintiff permit for wall bracing of the plaintiffs former 446 Grand Hotel building, after City of Hazard accepted payment for the plaintiffs wall bracing plan of his former 446 Grand Hotel property, despite Daniel Roll's duty to due process as well as Daniel Roll's duty to aid in the prosperity of the citizens of his community.

2434. The plaintiff incurred tremendous expense in having materials delivered and installed to said 446 Grand Hotel property, minus installation of the actual braces themselves, as a direct result of Daniel Rolls refusal to issue said permit to install the actual braces themselves.

2435. As Daniel Roll of the City of Hazard was directly responsible for the failure to install

350

said wall braces, "in order to make the structure safe," as aforementioned, Daniel Rolls subsequent "complaints" made to state agencies such as that of the Division of Air Quality and Kentucky OSHA, were extremely disingenuous in intent or demonstrated an extreme lack of candor, in order to deprive the plaintiff of his due process rights to provide care and contribute economically as a tax contributing citizen of the community of Hazard Kentucky, a town of United States citizens.

2436. As Daniel Roll of the City of Hazard was directly responsible for the failure to install said wall braces, Daniel Rolls complaints made to state agencies of Division of Air Quality and Kentucky OSHA, his "concerns of safety" were not in good faith.

2437. Daniel Roll's complaints to said agencies of DAQ and KY OSHA ultimately served no other purpose but to engage in conduct of stalking, harassing, bullying and menacing against the plaintiff.

2438. Daniel Roll, Tony Eversole, and the City of Hazard are well known to not apply the same "safety standards" upon its own contractors vs that of the plaintiff, in order to harass, annoy, or cause a deprivation of rights or abilities to use, enjoy, or benefit from property.

2439. Tony Eversole is understood to initiated a campaign of harassment, annoying, or bullying by "calling in a complaint" after both parties of the City of Hazard initially agreed to allow the plaintiff to provide cleanup of debris with repairs to the Newberrys building/lot, on or about March 13th 2020 as a condition of releasing the City of Hazard lien of which was previously placed on the 446 Grand Hotel property by Daniel Roll and Paul Collins on or about June 2nd 2017.

2440. City of Hazard, specifically Tony Eversole, is well known thereafter to have "called in a complaint" to the state Division of Air Quality, while the plaintiff was completing said cleanup in good faith, pursuant to said in initial agreement to settle the suit in *Brian Carter vs City of Hazard 16-CI-00020*.

2441. Contrary to the information #2438 thru 2440(supra), the City of Hazard mayor, specifically Donald Mobelini, publicly claimed with extreme lack of candor "the city and the owner worked together to get the cleanup done" at the 434 Newberry's on his newscast March 13th 2020.

2442. Defendants of the Public Protection Cabinet, specifically defendants Kenneth Browning, Alan Walters and Ronald Hacker initiated a campaign of harassment, annoying, or bullying by submitting libelous statements on their official documentation in order to justify having the plaintiffs

351

426 building vacated.

2443. Defendants of the Public Protection Cabinet in coordination with City of Hazard entities, engaged in harassment, stalking and menacing by shutting off power utilities to the plaintiffs former 67 Whitaker Way apartment building.

2444. Defendants of the Public Protection Cabinet in coordination with City of Hazard entities, engaged in harassment, stalking and menacing by evicting said residents from 67 Whitaker facility without issuance of a lawful court order, shortly after the plaintiffs 2015 Grand Hotel fire loss.

2445. Following the 2017 reopening of the plaintiffs former 67 Whitaker Way building, Defendant Mike Haney of the Public Protection Cabinet, and Gerry Roll of Foundation of Appalachian Kentucky (FOA) engaged in a campaign of harassment, stalking, and menacing by coordinating a series of "visits" to the plaintiffs former 426 Treehouse Cafe building on or about October 14th 2017.

2446. The "visits" were an attempt to "catch the plaintiff violating the 2015 injunction order" and prosecute, rather than provide assistance to aid in the plaintiff reopening said facility as required pursuant KRS 227.390, with regard to #2445(supra).

2447. The defendants in #2423 thru #2446(supra) committed said menacing acts to serve no other purpose or little other purpose but to cause harassment, annoying, or bullying, in order to deprive abilities to enjoy or abilities to benefit from property.

2448. Defendant Peter Irvin sought and obtained previous June 18th 2015 injunction order against said 426 building based on an alleged failure of the plaintiff to follow a procedure, rather than establishing said facility as "extremely dangerous, or unsafe and unfit to occupy."

2449. The attempts to "prosecute Brian Carter" on the June 18th 2015 injunction order failed, based on material facts observed by new appointees of the Bevin administration about November 7th 2018 harassing events from Gerry Roll of FOA from September 29th 2017 thru October 14th 2017.

2450. The 2015 injunction case was eventually dismissed under rule 77 for inactivity and a failure of the Public Protection Cabinet to prosecute said case on or about December 21st 2021.

2451. From October 14th 2017 until present, the Public Protection Cabinet and the City of Hazard engaged in harassment, stalking and menacing by later attempting to prosecute the plaintiff, criminally, under the allegation of "wanton endangerment for renting out the 426 apartments" and "violation of city ordinance" due to the allegation of a trash dumpster spillover June 10th 2017.

352

2452. The defendants of the City of hazard initiated a campaign of harassment, annoying, or bullying by coercion and duress, by forcing local businesses to make them feel compelled to "donate" to the defendants non profit housing development ventures, "or we can make it real hard for your business to operate" as a matter of City of Hazard policy/practice.

2453. The City of Hazard initiated a campaign of harassment, annoying, or bullying by coercion and duress, local businesses feel compelled to "donate" to the defendants non profit housing development ventures, "or we can make it real hard for you to get permits" as a matter of City of Hazard policy/practice.

2454. The City of Hazard initiated a campaign of harassment, annoying, or bullying by coercion and duress, local business are encouraged to "stay small and stay alive" as a matter of bullying/harassment policies of the City of Hazard, to keep its citizens downtrodden.

2455. The City of Hazard initiated a campaign of harassment, annoying, or bullying by coercion and duress, local business are encouraged to "keep a low profile" as a matter of bullying/harassment policies of the City of Hazard.

2456. The defendants of the City of Hazard initiated a campaign of harassment, annoying, or bullying are collectively well known for personal hatred of the plaintiff for "seeing the plaintiff benefit" from his former now destroyed properties as a direct result of their combined efforts with FOA and Public Protection Cabinet, summarily.

2457. The above mentioned harassment of local businesses as a matter of policy enacted by the City of Hazard, to promote the interests of its well connected #2423 thru #2456(supra).

2458. The Public Protection Cabinet and City of Hazard are known to collaboratively push the agendas of the defendants of FOA, HDA, and EDA, non profit entities by a campaign of harassment, annoying, or bullying by the harassment as outlined and aforementioned.

2459. Gerry Roll of FOA initiated a campaign of harassment, annoying, or bullying as a direct result of the plaintiff declining her offers to buy his 426 Treehouse Cafe building at a loss.

2460. As a DIRECT RESULT of conspiracy to bully, annoy, harass, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms enjoyment of property, to deprive the plaintiff of living and pursing a peaceful, productive, and meaningful life as a tax and

economically contributing citizen of the United States, to conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the

354

defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

**Count XXIX**
**Flagrant Denial/Deprivation of Due Process**

(Violation of the 14ᵗʰ Amendment), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Deprivation of Rights Dealing In Obscene Manner by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Harassment KRS 525.070), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

2461. The 14ᵗʰ Amendment to the United States Constitution mandates that citizens must be treated equally, equitably, with due process under law.

2462. 42 U.S. Code § 1985 allows this court to provide redress, as it states that if two or more persons in any State or Territory conspire by going on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, to injure a person or property.

2463. 18 U.S. Code § 242 makes it unlawful for a person to deprive rights under color of lawful authority.

2464. 18 U.S. Codes § 1961-68 references the RICO statute, which allows the court to provide redress when demonstrating pattern of racketeering activities such as extortion, bribery, arson, and dealing in obscene manner, such as committing a host of other crimes in order to deprive a person of their rights to be able to use and enjoy property for the enrichment of others.

2465. KRS 525.070 makes it unlawful makes it unlawful when, with intent to intimidate, harass, annoy or engages in the course of conduct, or repeatedly commits acts which alarm or seriously annoy such a person and which serve no legitimate purpose but deprive a persons abilities to use, enjoy or benefit from property.

2466. 42 U.S. Code § 1983 allows this court to provide redress of any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

2467. On September 15th 2015 Daniel Roll of the City of Hazard violated the plaintiffs rights to due process by directing the plaintiff to "come in and pay for a phase one permit to brace the walls and make the building safe" of his former 446 Grand Hotel building, only to deny its issuance immediately thereafter in pursuit of the goals of Steve Campbell to destroy said property indifferent of rights.

2468. Defendant Daniel Roll violated the plaintiffs rights to due process by issuing "cease and desist" order against the plaintiffs 446 Grand Hotel, prohibiting any formal reconstruction or development.

2469. Defendants of the City of Hazard violated the plaintiffs rights to due process by refusing its duty to remove burglars/trespassers/squatters from a previously vacant apartment unit.

2470. A fire is known to have emanated from said vacant apartment #2469(supra), in which squatters were allowed to take occupancy against the permission or consent of the plaintiff by the City of Hazard Police Department.

2471. City of Hazard fire department deprived the plaintiffs due process by not honoring its duties of service and protecting the 446 Grand Hotel property the evening of August 31st 2015, in which a fire was then set within a vacant apartment unit the very early hours next morning September 1st 2015.

2472. City of Hazard fire department refused due process of duty to the plaintiff by engaging in willful criminal neglect and/or failure to act by allowing said fire originating from the said squatters occupancy, to spread throughout all 5 floors of the massive approximately 80,000 square foot Grand Hotel facility, over the course of many hours, with no effort to intervene.

2473. A well equipped and fully staffed City of Hazard fire department is well known to reside within 1,000 feet of said commercial properties previously owned by the plaintiff on and just off of main street in Hazard Kentucky.

2474. Defendant Mike Haney of the Public Protection Cabinet refused to provide due process regarding the closure/vacature of the plaintiffs former 426 Treehouse Cafe building/facility by refusing to investigate the allegations of Kenneth Browning and his colleagues bearing of false witness against the plaintiff.

2475. Defendant Mike Haney of the Public Protection Cabinet refused his duty to provide due process to the plaintiff by refusing to hear his own expert Steve Hammocks recommendation that the former 426 Treehhouse Cafe building should have remained open.

2476. Defendant Mike Haney of the Public Protection Cabinet refused to provide due process regarding the closure/vacature of the plaintiffs former 426 Treehouse Cafe building/facility when he was presented with evidence Ronald Hacker had shown patterns of concealing material fact or intentionally misleading his office.

2477. Kenneth Browning, Alan Walters, and Ronald Hacker denied the plaintiffs due process when they made libelous statements about the 426 main building and 67 Whitaker Way buildings

conditions when they knew or should have known their statements were false, misleading, or fraudulently concealed material fact in order to cause permanent irreparable harm to the plaintiff.

2478. Peter Ervin denied the plaintiffs due process when he obtained an injunction by Ervin's willful participation in fraud in the inducement with Kenneth Browning, intentionally concealed material fact, or demonstrated extreme indifference of his duties to obtain, relay, or convey truthful, reliable information to the state circuit court, in order to cause permanent extreme harm to the plaintiff.

2479. Defendant Mike Haney refused to provide due process regarding the closure/vacature of the plaintiffs former 426 Treehouse Cafe building/facility by willfully failing to work with the plaintiff in good faith to officially permit the plaintiff to reoccupy and/or reuse the plaintiffs former 426 building.

2480. The Public Protection Cabinet denied the plaintiff due process by refusing to exercise its discretion, even if said cabinet was "displeased" with the work the plaintiff was performing at the 426 building, to simply have the work it desired done to its own satisfaction and bill the plaintiff for the cost KRS 227.390, this was not done.

2481. If it were true the City of Hazard was indeed "concerned that the wall braces could have been left there for an indefinite time" as justification for denying the plaintiffs due process rights to repair and resume beneficial enjoyment of the 446 Grand Hotel building, the city had the full discretion to have remedial work done to enable the safe removal of said wall braces and bill the plaintiff for the cost, KRS 227.390, this was not done, in favor of destroying said property for the enrichment of others, then, billing the plaintiff for the cost of deprivation or impairment of the plaintiffs abilities to prosper or benefit with said property.

2482. The City of Hazard demonstrated extreme indifference to due process by refusing to provide aid in good faith to extinguish said fire of 67 Whitaker Way building, instead intentionally allowed the building to burn in order to contribute in a conspiracy to commit arson upon said property.

2483. The City of Hazard demonstrated extreme indifference to due process by blocking all forms of access to property in an attempt to cause harass, annoy and create extremely unsafe conditions, in order to limit escape from property and take lives of residential tenants by fire.

2484. The City of Hazard and FOA by demonstrated extreme indifference to due process conspiring with the City of Hazard to burn the 67 Whitaker Way apartment building.

2485. The City of Hazard and FOA demonstrated extreme indifference to due process by conspiring to destroy the plaintiffs 426 building, with concrete walls, barriers and mounds of dirt to stop proper flow or irrigation that had previously allowed draining away from the plaintiffs 426 building, in order concentrate flood and rain waters directly into said buildings foundation.

2486. The City of Hazard, Public Protection Cabinet demonstrated extreme indifference to due process rights to use, enjoy or benefit from property, by "working together" with the co-conspirators of the "non profit organizations" FOA, EDA, and HDA, in order to shut down, burn down, destroy, and deprive all manner of due process with his right to provide care of the three facilities related to this complaint, namely 67 Whitaker Way, 426 Main, and 446 Main Street buildings, respectively.

2487. The same defendants as outlined in #2486(supra), demonstrated extreme indifference to due process rights to use, enjoy or benefit from property, by denying or unjustly crippling the plaintiffs abilities of providing basic essential care of said facilities, by applying a profoundly extreme set of unequally applied "standards" upon the plaintiff not previously applied to any other owner, for the unjust enrichment of said organizations or their "well connected representatives" as summarily outlined in this complaint, in all other causes of action in this complaint, as outlined therein.

2488. As a DIRECT RESULT of deprivation of the plaintiffs due process, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to also conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, by the collective obsessions to physically destroy, as well as deprive the plaintiff of all manner of the plaintiffs meaningful usage, deprive all manner of his rights to property, enjoyment of property, or provide care of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from

his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to

360

fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXX
### Violation of the 14ᵗʰ Amendment

(Violation of the 14ᵗʰ Amendment), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Deprivation of Rights Dealing In Obscene Manner by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

2489. The 14ᵗʰ Amendment to the United States Constitution mandates that citizens must be treated equally, equitably, with due process under law, it guarantees equal protection of the laws for its tax and economically contributing citizens residing in the Commonwealth and the United States.

2490. 42 U.S. Code § 1985 allows this court to provide redress, as it states that if two or more persons in any State or Territory conspire by going on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, to injure a person or property.

2491. 18 U.S. Code § 242 makes it unlawful for a person to deprive rights under color of lawful authority.

2492. 18 U.S. Codes § 1961-68 references the RICO statute, which allows the court to provide

361

redress when demonstrating pattern of racketeering activities such as extortion, bribery, arson, and dealing in obscene manner, such as committing a host of other crimes in order to deprive a person of their rights to be able to use and enjoy property for the enrichment of others.

2493. 42 U.S. Code § 1983 allows this court to provide redress of any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

2494. The defendants of Public Protection Cabinet denied the plaintiff equal protection of the laws by committing several acts of felony libel on official government documentation to deprive the plaintiff of a prosperous, productive, and meaningful life.

2495. The defendants of Public Protection Cabinet denied the plaintiff equal protection of the laws by committing several acts of felony libel on official government documentation in libelous statements to deprive the plaintiff of all manner of rights to use, enjoy, or benefit from ownership of property.

2496. Defendants of the Public Protection Cabinet denied the plaintiff of his rights to property by using libelous statements as justification to seek an injunction to vacate the plaintiffs former 426 building on or about June 18th 2015.

2497. Defendants of the Public Protection Cabinet denied the plaintiff all manner of righteous beneficial usage of his former 426 building by obtaining an injunction in Perry Circuit Court to vacate the residential use portions of the plaintiffs 426 building in *State Fire Marshal vs Brian Carter 15-CI-0259*.

2498. The said order of injunction against the plaintiffs former 426 building #2497(supra), was executed by defendant Peter Ervin of the Public Protection Cabinet on or about June 18th 2015.

2499. The Public Protection Cabinet KRS 227.330 outlines the powers of the state fire marshal *powers of the state fire marshal* to vacate a building if it has been found "extremely unsafe to occupy" by the Cabinet.

2500. The said order of injunction by Peter Ervin was obtained through an allegation from Ervin on the grounds that the plaintiff had "failed to follow a specific procedure directed by the Public

Protection Cabinet" to perform an "update the (426) buildings fire separation."

2501. The methods employed by defendant Peter Ervin of the Public Protection Cabinet did not legally allow the Cabinet to seek an injunction against the plaintiff merely for failing to follow a direction from said Cabinet.

2502. The requirement to update the 426 buildings fire separation was based on material false statement from defendants Kenneth Browning and Alan Walters that "the building had no fire separation."

2503. The methods employed by Peter Ervin did not establish that the 426 Building was "extremely unsafe to occupy" simply due to an allegation that the plaintiff had failed to follow a direction, instruction or other such procedure set from the Cabinet.

2504. Peter Ervin unjustly deprived the plaintiff of beneficial usage by seeking and obtaining said injunction to vacate the plaintiffs former 426 building outside the limits of Ervin's authority jurisdiction, under the color of lawful authority of the Public Protection Cabinet.

2505. City of Hazard unjustly deprived the plaintiff of all manner of beneficial usage of property by conspiring with the Public Protection Cabinet to shut off all utilities of water and gas to the 426 buildings after Peter Ervin of the Public Protection Cabinet obtained its injunction to vacate the plaintiffs residential use portions of his 426 Treehouse Cafe building June 18th 2015.

2506. The removal of City provided utility services effectively ended the Treehouse Cafe and Bakery Restaurant, which operated on the first two floors of the 426 building.

2507. Immediately following the City of Hazard's removal of City provided utility services from the 426 building, the Public Protection Cabinet responded yet again with "orders to vacate" all remaining commercially use portions of said building, without court order.

2508. The collective/collaborative/conspiratorial actions of the Public Protection Cabinet and the City of Hazard as outlined above, effectively terminated all forms of official future benefit, enjoyment and usage of the plaintiffs former 426 Treehouse Cafe building.

2509. The City of Hazard is well known for several dilapidated, ran down, and generally poor condition houses and buildings all throughout its territorial jurisdiction.

2510. Public Protection Cabinet deprived the plaintiff of all forms of beneficial usage of property by applying a profoundly unfair, unequal standard with the plaintiffs former 426 building

363

2511. The Public Protection Cabinet deprived the plaintiff of all forms of beneficial usage of property by applying a profoundly unfair, unequal standard with the plaintiffs former 67 building.

2512. Public Protection Cabinet deprived the plaintiff of all forms of fair, amicable due process even when obtaining permits through said cabinet, completing work, and still not being allowed any manner of beneficial usage or enjoyment of his former 426 Treehouse Cafe building, regardless of "compliance."

2513. Steve Campbell contractor of the City of Hazard deprived the plaintiff of all forms of meaningful usage benefit and right to enjoy property by encroaching onto plaintiffs property to erect concrete barriers and fencing all around the remaining entirety of the plaintiffs former 67 Whitaker Way and rear facing portions of the plaintiffs former 426 Treehouse Cafe building.

2514. The defendants of the City of Hazard deprived the plaintiff of all forms of meaningful enjoyment, usage, or benefit of ownership of property by erecting a large concrete 14 foot wall effectively blocked proper irrigation and direct flood and rain waters directly into the rear west facing portion of the former 426 Treehouse Cafe building, forcing the plaintiff to liquidate the 426 building in order to avoid its imminent destruction after 4 calendar months of defendants of the City of Hazard leaving the condition intentionally unaltered until sold, exhibits 15, 17, 48 & 59.

2515. The defendants of the City of Hazard deprived the plaintiff of all forms of meaningful enjoyment, usage, or benefit of ownership of property by demonstrating extreme indifference to their duties to protect and preserve precious life and property by allowing the 446 grand hotel to be burglarized, where a fire was later set within said burglarized unit within 24 hours.

2516. The City of Hazard's "exceptionally well equipped and staffed" fire department, located within approximately one thousand feet away demonstrated extreme indifference of its duties to protect and serve the general public by intentionally allowing said fire to progress throughout all areas of the building over the course of many hours, with little to no effort to intervene.

2517. The City of Hazard fire department is well known to boast or brag that "we have immunity we can do what we want" to justify criminally complicit willful failure to act with extreme indifference to duty to protect precious life and property.

2518. The Defendants of the City of Hazard Public Protection Cabinet and FOA, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property, by retaliating

364

against the plaintiffs attempts to address grievances against said entities as outlined summarily in count one for slander, defamation or other egregious acts of dealing in obscene manner.

2519. The Defendants of the City of Hazard Public Protection Cabinet and FOA, HDA, EDA, and affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property, by engaging in a conspiracy to deprive the plaintiffs rights outlined summarily in count two for conspiracy to deprive rights by criminally egregious acts of dealing in obscene manner as outlined summarily in count two.

2520. The Defendants of the City of Hazard Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property, by engaging in an organized criminal conspiracy to destroy the plaintiffs property by arson, fraud, bribery and a host of other felonious activities and behaviors as outlined summarily in count three.

2521. The Defendants of the City of Hazard Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property, by engaging in an organized criminal conspiracy to destroy the plaintiffs property by arson, fraud, bribery and a host of other felonious activities and behaviors as outlined summarily in count three.

2522. The Defendants of the City of Hazard Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by obstructing justice in order to prevent the plaintiffs new evidence of the crimes committed by the defendants summarily in count four.

2523. The Defendants of the City of Hazard Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by depriving the plaintiffs rights, as well as rights to property, under false pretenses among other dealings of obscene manner as summarily outlined in count five.

2524. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by "teaming up" to perform several acts of convergence upon the plaintiffs former properties, in order to deprive all forms of rights or abilities to enjoy, or benefit from property as

summarily outlined in count six.

2525.    The Defendants of the City of Hazard, FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by breaching its own dictated, non negotiable "contract of sale" in order to achieve said entities goals of destroying the plaintiffs properties, depriving all manner of abilities to use and enjoy property, by weaponization of said acquisition against the plaintiffs remaining properties among other dealings of obscene manner as outlined in count seven.

2526.    The Defendants of the City of Hazard, FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by breaching every deal, every negotiation, every covenant of good faith dealings with the plaintiff, to only in turn, perform the most egregious, criminally complicit or as damaging behaviors as much as possible to deprive the plaintiffs abilities to enjoy, use or benefit from property as summarily outlined in count eight.

2527.    The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by engaging in an extremely obscene manner or series of manners by engaging in criminal conspiracy to defraud, burn, destroy, the plaintiffs buildings and property in a manner that directly contradicts their duties as government officials or "charitable non profits" by consistent breaches in fiduciary duties in part, summarily outlined in count nine.

2528.    The Defendants of the City of Hazard, FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by extortion to force by extreme coercion into having the plaintiffs former 446 Grand Hotel property and former vacant Newberrys building lot properties surrendered by forced "contract of sale" from September 1st 2015 until June 10th 2021 under false pretenses that the entities primary antagonists of said acts Donald Mobelini and Denise Davidson would allow the plaintiff to restore said property as summarily outlined in count ten.

2529.    The Defendants of the City of Hazard, FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by exploitation of the plaintiffs personal resources and trickery into having the plaintiff make

366

improvements into the plaintiffs former 446 Grand Hotel property and former vacant Newberrys building lot properties from September 1st 2015 until June 10th 2021 under false pretenses that the entities primary antagonists of said acts Donald Mobelini and Denise Davidson would allow the plaintiff to restore said property as summarily outlined in count eleven.

2530. The defendants of the City of Hazard and the Public Protection Cabinet committed a series of fraud and false statements in order to deprive the plaintiffs rights to property, by commencing several acts of fraud upon the court by fraud in the inducement, fraud and false statements, fraud by concealment of material fact, to deprive rights to property, as outlined in count twelve.

2531. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by causing extreme duress, harassment, intentional endangerment to harass or annoy in order to deprive all manner of abilities to enjoy property or benefit from property by the co-conspirator partnership as outlined in count thirteen.

2532. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by slander of the plaintiff, his title to property, and by libelous fraud as outlined in counts fourteen and fifteen-defamation.

2533. The Defendants of FOA, City of Hazard, and Public Protection Cabinet deprived the plaintiffs due process rights to be treated fairly by abuse of judicial discretion and judicial process by "leveraging" its influence with the state agency and circuit court without disclosing other conflicts, by fraud, and other means of dealing in obscene manner as outlined in counts sixteen and seventeen.

2534. The Defendants of FOA, City of Hazard specifically Daniel Roll and Paul Collins committed the act of felonious application of lien to initiate a scheme involving hoaxes and trickery to unjustly enrichen others above and beyond what could be justified, as outlined in count eighteen.

2535. The defendants of the City of Hazard, Gerry Roll of FOA, and the co-conspirators affiliated as outlined in count nineteen, deprived the plaintiffs rights to be treated fairly with due process when they criminally conspired to entrap the plaintiffs former tenants with walls and barriers in attempt to take their lives by fire by retaliation against complaints of the walls and barriers.

2536. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA,

367

and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, to observe his right to property by unjustly interfering with the plaintiffs advantageous and prospective advantageous business advantages by conspiring criminally to physically destroy and deprive all manner of abilities to use, enjoy or benefit from property as outlined in counts twenty and twenty one.

2537. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to use and enjoy property by destroying the plaintiffs commercial buildings by making several demonstrations of extreme indifference of duties by the conspiracies outlined in counts nineteen and twenty two as detailed.

2538. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property by engaging in libelous statements on official government documentation, in a major fraud against the United States to deprive the plaintiffs rights by organized crime to further the enrichment of the defendants non profit affiliates as outlined in count twenty three.

2539. The Defendants of the City of Hazard, and the Public Protection Cabinet and the co-conspirators affiliated, have denied the plaintiffs rights to due process, when they maliciously prosecuted the plaintiff by the cabinets primary antagonist Kenneth Browning by Browning's fraud in the inducement, as well as a "violation of a trash ordinance" by the City of Hazard, as a criminal complaint to persecute the plaintiff as outlined in count twenty four.

2540. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property by unequally applying the laws or lawful authorities as outlined in count twenty five.

2541. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property in order to unrighteously further or unjustly enhance their own enrichment as outlined in count twenty six.

2542. The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or

to be able to use and enjoy property by conspiring to exploit and defrauding the plaintiff, to then extort the property without providing full proper just compensation as outlined in count twenty seven.

2543.   The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property by engaging in a campaign of harassment, stalking, and menacing as outlined in count twenty eight.

2544.   The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property by conspiring to deprive said rights to property, as outlined in counts twenty nine and thirty.

2545.   The Defendants of the City of Hazard, Public Protection Cabinet and FOA, HDA, EDA, and the co-conspirators affiliated, as well as Kentucky state courts, Kentucky State governments, agencies and the like, have denied the plaintiffs rights to due process, to be treated fairly, or to be able to use and enjoy property by depriving the plaintiff of his abilities to provide redress to his government in violation of his 1st 5th 6th and 14th amendment rights as outlined in count one, count thirty one, and as summarily outlined in all other causes of action of this complaint therein.

2546.  As a DIRECT RESULT of deprivation of the plaintiffs due process, in furtherance of the defendants collective goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to also conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, by the collective obsessions to physically destroy, as well as deprive the plaintiff of all manner of the plaintiffs meaningful usage, deprive all manner of his rights to property, enjoyment of property, or provide care of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

    i).  Unreasonably denied/deprived of all effective manner of financial ability to provide
       continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main
       Street, and 426 Main Street, in Hazard KY,

    ii).  Forced to liquidate all income producing out of state business assets, sacrificing

approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

370

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

### Count XXXI
### Violation of the 6th Amendment
(Violation of the 6th Amendment), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Deprivation of Rights of Dealing In Obscene Manner by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

2547. The 6th Amendment to the United States Constitution guarantees that an individuals right to counsel remains *discretionary,* not the right to have counsel *forced upon them*.

2548. 42 U.S. Code § 1985 allows this court to provide redress, as it states that if two or more persons in any State or Territory conspire by going on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, to injure a person or property.

2549. 18 U.S. Code § 242 makes it unlawful for a person to deprive rights under color of lawful authority.

2550. 18 U.S. Codes § 1961-68 references the RICO statute, which allows the court to provide

371

redress when demonstrating pattern of racketeering activities such as extortion, bribery, arson, and dealing in obscene manner, such as committing a host of other crimes in order to deprive a person of their rights to be able to use and enjoy property for the enrichment of others.

2551. KRS 525.070 makes it unlawful makes it unlawful when, with intent to intimidate, harass, annoy or engages in the course of conduct, or repeatedly commits acts which alarm or seriously annoy such a person and which serve no legitimate purpose but deprive a persons abilities to use, enjoy or benefit from property.

2552. 42 U.S. Code § 1983 allows this court to provide redress of any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

2553. The conspiracy to deprive the plaintiffs 6th amendment protected rights to waive counsel began on or about May 4th 2022, when the plaintiff brought suit against primary antagonist Gerry Roll of the Foundation of Appalachian Kentucky, (FOA) for the erection of an approximately eight foot tall, one hundred foot long white metal wall all along the south facing portions of the plaintiffs former 67 Whitaker Way Apartment building.

2554. The stated wall/barrier #2553(supra), effectively restricted public ingress/egress all along the south facing side of said 67 Whitaker Way facility exhibits 1-6 *et al.*

2555. The commencement of said barrier erection would be later be followed by a new a series of additional walls, fences, blockades, and other barriers to be erected all around the remaining portions of said 67 Whitaker Way building in order to further restrict or periodically restrict at minimum all forms of public ingress/egress to the remainder of the plaintiffs apartment complex formerly consisting of 67 Whitaker Way and 426 Treehouse Cafe buildings/facilities from said May 4th 2022 until the date of final termination of the plaintiffs ownership on or about August 7th 2023

2556. Said acts of #2555(supra) involving termination of the plaintiffs ownership were as a direct result of the harassing, menacing and may of other acts in dealing in egregious, obscene manner by the co-conspirators of the City of Hazard, Public Protection Cabinet, and other "well connected individuals," involving arson, destruction upon property, convergence, and unjust deprivation of rights

372

to property by said conspirators upon remaining buildings of 426 Main and 67 Whitaker Way.

2557. The barriers erected by Gerry Roll of Foundation of Appalachian Kentucky FOA were accompanied by the efforts of defendants Steve Campbell, Payton Morton, and City of Hall managerial representative Tony Eversole throughout August 7th 2023.

2558. The defendants knew or should have known that erection of various barriers would create an extremely distressing situation for the residential tenants of the plaintiffs facilities, as well as inhibit safe access for fire, EMS, police and other first responders in the event of emergency.

2559. Defendants of Foundation of Appalachian Kentucky (FOA) were later discovered to be involved with defendant Denise Davidson, and Alison Wells, Perry Circuit Judge as board of directors members exhibit 49.

2560. Alison Wells is the Kentucky State Circuit Judge presiding over the case involving *Carter Realty vs FOA 22-CI-0166* regarding the erection of said walls, fences, barriers and other obstructions to property.

2561. Denise Davidson is master commissioner, a role known for assisting the state circuit court with the commencement of its duties, the circuit judge in said matters is Alison Wells.

2562. Defendant Denise Davidson represents, and has represented all three primary entities in suit against the plaintiff, namely Foundation of Appalachian Kentucky (FOA), City of Hazard, and Public Protection Cabinet.

2563. Denise has thereafter *denied* her involvement as legal representative for the Public Protection Cabinet also known as *State Fire Marshal vs Brian Carter 15-CI-00259* in her memorandum introduced in *Carter Realty vs FOA 22-CI-0166,* to commence a fraud by deceit upon the state court, April 8th 2025, by denying her involvement with City of Hazard, and "other business" exhibits 49 & 64.

2564. The defendants of Foundation of Appalachian Kentucky (FOA), Housing Development Alliance (HDA), Economic Development Alliance (EDA), Chamber of Commerce, City of Hazard, and Public Protection Cabinet are all deeply inter-related in their coordinated efforts against the plaintiff.

2565. State Circuit Court Judge and colleague board of directors member Alison Wells of FOA deprived the plaintiffs 6th amendment rights to waive counsel, by quickly ruling against the plaintiffs *pro-se* representation in the current state case of *Carter Realty vs FOA 22-CI-0166.*

2566. Alison Wells, known to be involved with Davidson and FOA, made said ruling outlined

in #2565(supra) immediately after the plaintiff had introduced approximately sixty new exhibits into evidence of arson against the plaintiffs former 67 Whitaker Way building and had moved the court to take judicially noticed facts of the new evidence into court record on or about April 11th 2025.

2567.  Alison Wells, made said ruling outlined in #2565 only when the plaintiff had moved the court to accept judicially noticed facts of the plaintiffs new evidence as outlined in #2566(supra).

2568.  Defendants of Foundation of Appalachian Kentucky (FOA), violated the plaintiffs 6th amendment right to self representation by asserting their influence with the state circuit court judge to rule against the plaintiffs *pro se* representation of his company, *mandating* him to hire counsel.

2569.  The conveniently timed ruling effectively prevented the plaintiffs new evidence from being admitted into evidence as judicially noticed facts in *Carter Realty vs FOA 22-CI-0166* on or about April 11th 2025.

2570.  The Perry Circuit Court Judge Alison Wells was duly advised that the plaintiff was unable to secure counsel in the state case on or about said date #2569(supra).

2571.  The Perry Circuit Court Judge Alison Wells would not acknowledge the plaintiffs federally controlling case law regarding his right to counsel as discretionary of his own choosing pursuant to *Faretta vs California 422 U.S. 806 (806)* as well other 6th amendment doctrines cited by the plaintiff as preemptive authority in his memorandums on or about April 11th 2025.

2572.  Wells was given opportunity to reconsider verdict, and declined to do so on or about April 21, 2025.

2573.  The circuit courts ruling against his right to represent himself under his own company effectively put a halt on future proceedings with the case, *unless counsel be recruited(supra)*.

2574.  The plaintiff appealed said ruling to Kentucky Court of Appeals citing a legal error in direct conflict with the federal law on or about May 19, 2025.

2575.  The plaintiffs appeal also cited the state laws passed by state legislative authority of which granted the plaintiffs rights to represent himself as *pro se* litigant in his own controlled entity, KRS 275.335(5), KRS 341.470(3)(a)&(b), respectively, also on or about May 19th 2025.

2576.  Kentucky Court of Appeals, as a "common practice," openly violates the 6th amendment right to self representation by a long standing history of ruling against *pro se* litigants of company representatives based on state observance of a *"well established principle"* that they cannot do so.

374

2577.  Kentucky State governments, agencies, and cabinets and others enact similar policies of violating individuals 6th amendment rights by disallowing *pro se* litigants to represent themselves in their respective companies, when attempting to petition grievances with the government.

2578.  Kentucky State governments, agencies, and cabinets and others enact similar policies of violating individuals 6th amendment rights by disallowing *pro se* litigants to represent themselves to a state unemployment commission, and/or most other government agencies *"unless they hire counsel."*

2579.  Perry state circuit court judge Alison Wells denied the plaintiffs right to *waive counsel* whist demonstrating extreme indifference of her discretionary duties as a neutral arbiter of justice by performing exhaustive heavy ended legal research on behalf of defending her colleague board member defendants of the "non profit organization" FOA, by find state controlling case law decisions against *pro se* for corporations, whist making no observance whatsoever of the plaintiffs preemptive federal authorities, acknowledged that he cited the 6th amendment, but made no observance of its applicability.

2580.  After appealing said matter to the appellate court Kentucky state appellate courts on May 19, 2025,  said appellate courts ultimately dismissed the plaintiffs appeal, his citation of the 6th constitutional amendment, disregarded the state legislative authorities cited, *admitted* they were provided with preemptive authorities, and *admitted* "they had no authority to decide on the matter."

2581.  The state appellate courts, upon making said decision to *dismiss* the plaintiffs appeal as outlined in #2580(supra), gifted with good incentive to not provide the plaintiff with a copy of its dismissal decision until the plaintiff had contacted the court for a copy on or about July 7, 2025.

2582.  Upon notice of receipt of said decision, the plaintiff filed for a discretionary review and enlargement of time filed contemporaneously with the Kentucky State Supreme Court November 5th, 2025 requesting that the highest court in the state review the decision to dismiss the plaintiffs appeal.

2583.  On June 12th 2023 the City of Hazard fire chief sent threatening correspondence to the plaintiff after said department conspired with the defendants of FOA regarding the June 9th 2023 fire loss of the plaintiffs former 67 Whitaker Way building, claiming that "the building will be destroyed unless appealed to the state fire marshal pursuant to KRS 227.390.

2584.  pursuant to KRS 227.330 the office of the state fire marshal has no authority to destroy property, nor decide if it has arbitrary discretion to destroy, or perform any criminal mischief on any private property, nor grant an exception to KRS 381.775 as otherwise required.

375

2585. The City of Hazard has a pervasive policy or practice of randomly destroying property of "people it doesn't like."

2586. The plaintiff requested an "administrative review" with said state fire marshal's office, also known as the Public Protection Cabinet, June 22nd 2023 with regard to the City of Hazard's personal desire to destroy the 67 Whitaker Way property as referenced in #2583(supra).

2587. After terminating, or abrupt resignation of two executive level officials that subsequently presided over said matter in #2583(supra), deputy executive director Clayton Patrick is eventually assigned to "decide" on the matter, at which Clayton Patrick intelligently, knowingly dismissed the plaintiffs appeal to said state fire marshal, based on the plaintiffs inability to recruit counsel, December 19th 2025.

2588. Clayton Patrick was provided with all the proper authorities *Altria Group vs Good 555 U.S. 70 (2008), Faretta vs California(supra), KRS 275.335(5), KRS 341.470(3)(a)&(b), Netrhoice vs Paxton U.S. 707 (2024),* doctrines, and memorandum as well as cease and desist notices, including by service of sheriffs deputy, October 13th 2025, December 5th 2025, December 18th 2025, respectively.

2589. Clayton Patrick's colleague Jennifer Wolsing committed fraud in the inducement with her colleague of legal counsel Linda Keeton or demonstrated extreme indifference in obtaining and conveying factual, truthful information by citing controlling case law *Cabinet for Health and Family Services vs App Hospice Care Inc 2021 -SC0082-DG,* then contradicting what the legal opinion(s) actually stated, with Clayton Patrick promptly *dismissing* the plaintiffs appeal whist disregarding the previous legal preemptive authorities of the plaintiff on December 19th 2025 to deprive his rights.

2590. Should the state case law *CHFS vs App Hospice Care(supra),* have actually stated what Wolsing had claimed, that the plaintiff indeed cannot represent himself *pro se* because he has a company, state case law decisions that are "*contrary to federal law, are without effect*" pursuant to *Alria Group vs Good 555 U.S. 70(2008),* therefore, *Altra* is a preemptive authority to the state case law.

2591. Jennifer Wolsing deprived the plaintiffs *right to waive counsel* by #2589(supra), in order to conspire to deprive the plaintiff of his 6th amendment rights, in order to aid and abet other crimes of the City of Hazard, to conceal by spoliation or destroy evidence by criminal mischief against property of which it has no authority or permission to perform against the will of the interested parties.

2592. On or about February 13th 2026, the plaintiff received notice from the Kentucky Supreme

376

Court, dated and entered February 9th 2026, denying the plaintiffs request for enlargement of time to file motion for discretionary review on said date.

2593.    Depriving the plaintiff of his abilities to challenge unlawful destruction of property that does not belong to the government by *mandating* the plaintiff to counsel of which cannot be obtained runs absolutely afoul of the plaintiffs 6th amendment rights to counsel as an otherwise protected, *discretionary* right to counsel, not the right to have counsel forced upon him.

2594.    Dismissing the plaintiffs appeal to the City of Hazard and the Public Protection Cabinets egregious decisions to destroy property in the aid, contribution, or commencement of other crimes, limit his abilities to challenge, dispute, or address the plaintiffs grievances with his own government absolutely runs afoul of the plaintiffs 1st 6th and 14th amendment rights to fairly treated, suppresses his speech, and deprives his right to waive counsel.

2595.    Depriving the plaintiff of his 6th amendment rights, directly, indirectly, expressedly or impledly contradicts federal preemptive authorities *Altria Group vs Good 555 U.S. 70 (2008), Faretta vs California(supra), KRS 275.335(5), KRS 341.470(3)(a)&(b), Netrhoice vs Paxton U.S. 707 (2024).* therefore, runs absolutely afoul of the plaintiff's protected rights to waive counsel and conduct his own defense, or offense in his right to seek redress against injustice of his government.

2596.    Depriving the plaintiff of his 6th amendment rights to waive counsel runs absolutely afoul of the plaintiffs 1st 6th and 14th amendment rights to present his evidence of wrongdoing by the defendants.

2597.    Deprivation of the plaintiffs 6th amendment right to waive counsel that cannot otherwise be obtained deprives the plaintiff of his right to defend against injustices of conspiracy to destroy by arson, fraud, conceal or destroy evidence by criminal mischief, running afoul of his rights to do so.

2598.    Establishment of a company, LLC, or other business entity does not constitute a voluntarily waiver of individual rights of any litigant.

2599.    Attempting to draw a distinction of the plaintiff from his company of which he owns is achieving directly, what the constitution would otherwise prohibit directly.

2600.    Depriving the plaintiff of his rights to waive counsel and conduct his own defense or offense however needed, openly discriminates the plaintiff under a "status as a non attorney."

2601.    Discrimination of any individual defies the constitutions provisions that individuals be

377

treated fairly, amicably, with due process under law.

2602.  As a DIRECT RESULT of depriving the plaintiff of his 6th amendment *discretionary* right to *waive* counsel and conduct his own defense against the egregious actions involving dealings of obscene manner by the defendants, in furtherance of the defendants collective felonious behaviors to deprive the plaintiff of all manner of abilities to use, enjoy, or benefit from property, in furtherance of the defendants collective, coordinated, conspiratorial goals to deprive the plaintiff of any and all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to conspire by concentrated effort to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, collaborative conspiracy to deprive the plaintiff of all manner of his rights, also to physically destroy, as well as deprive the plaintiff of all manner of his meaningful usage, deprive all manner of his rights to property, enjoyment of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i). Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii). Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii). Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv). Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the

monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts.

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never benefits" thereby, unable to continue to provide basic essential care for his family,

xiv). Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to fight this suit.

## Count XXXII
### Violation of the Kentucky Whistleblower Act

(Violation of the Kentucky Whistleblower Act KRS 61.102), (Conspiracy to Interfere with Civil Rights 42 U.S. Code § 1985), (Deprivation of Rights Under Color of Lawful Authority 18 U.S. Code § 242), (Deprivation of Rights Dealing In Obscene Manner by Organized Criminal Conspiracy 18 U.S. Code § 1961-1968), (Civil Action for Deprivation of Rights 42 U.S. Code § 1983)

2603. The Kentucky Whistleblower Act makes it unlawful for government employers to retaliate against its employees directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the Attorney General, or other agencies.

2604. 42 U.S. Code § 1985 allows this court to provide redress, as it states that if two or more persons in any State or Territory conspire by going on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, to injure a person or property.

2605. 18 U.S. Code § 242 makes it unlawful for a person to deprive rights under color of lawful authority.

2606. 18 U.S. Codes § 1961-68 references the RICO statute, which allows the court to provide redress when demonstrating pattern of racketeering activities such as extortion, bribery, arson, and dealing in obscene manner, such as committing a host of other crimes in order to deprive a person of their rights to be able to use and enjoy property for the enrichment of others.

2607. KRS 525.070 makes it unlawful makes it unlawful when, with intent to intimidate, harass, annoy or engages in the course of conduct, or repeatedly commits acts which alarm or seriously annoy such a person and which serve no legitimate purpose but deprive a persons abilities to use, enjoy or benefit from property.

2608. 42 U.S. Code § 1983 allows this court to provide redress of any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

380

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

2609.  Public Protection Cabinet Zachary Hale, was a former staff member of the Public Protection Cabinet's "open records division" or was responsible for the handling of records.

2610.  On or about July 18th 2022 thru August 19th 2022, Public Protection Cabinet representative Zachary Hale provided the plaintiff records of "construction permits" FOA had applied for regarding various new alterations, construction or other modifications to the FOA building located at 420 Main Street Hazard Kentucky.

2611.  Shortly after providing said information #2610(supra), the plaintiff forwarded the information to the Public Protection Cabinets senior staff.

2612.  It is generally well known practice that whenever an email comes back "undeliverable" from an employer, it usually means someone has been terminated from employment, or resigned.

2613.  The records provided in #2610(supra), the said records provided from Hale revealed that FOA did not obtain construction permits for much of the said work performed at the 420 building.

2614.  Shortly after the plaintiff provided said information in #2610 thru #2612(supra) to the senior staff of Public Protection Cabinet, Zachary Hale was abruptly terminated from employment or was "conveniently resigned" by the evidence outlined in #2613(supra) on or about October 21st 2022.

2615.  The said termination of Zachary Hale occurred when Hale had provided the plaintiff with exculpatory information that the Public Protection Cabinet was not providing equal, fair and impartial treatment vs the treatment in favoritism provided to the defendants of Foundation of Appalachian Kentucky (FOA).

2616.  The said termination of Zachary Hale occurred when Hale had provided said evidence via email, of which the plaintiff forwarded to senior staff of the Public Protection Cabinet, primarily Gary Feck, Mike Haney, and others.

2617.  Zachary Hales email came back "undeliverable" shortly after the exchange, consistent with a pattern of retaliatory based behaviors also demonstrated by the City of Hazard.

2618.  City of Hazard announced "delegatory authority jurisdiction" over any building demolition to the Public Protection Cabinet, regarding the City of Hazards personal desires to

381

physically destroy all remnants of the plaintiffs former 67 Whitaker Way Apartment building.

2619. On June 9th 2023, the defendants of FOA and the City of Hazard conspired together to coordinate a significant destruction by fire as a direct result of their coordinated efforts against the 67 Whitaker Way building shortly after former residents of said building make complaints to the City of Hazard about being entrapped inside the property.

2620. On or about June 12th 2023, shortly after said coordinated efforts as outlined in #2619(supra), the defendants of the City of Hazard and the Public Protection Cabinet are known to have placed several condemnation notices, stop work order notices, on or about the same time frame on the plaintiffs remaining 426 main and 67 Whitaker Way buildings, effectively prohibiting official work from being performed to either building, along with threats of punishment from said cabinet for attempts to provide immediate, urgent care of the former 67 Whitaker Way fire damaged building, as well as threats to "destroy said building unless appealed to the state fire marshal" (P.P. Cabinet).

2621. On June 22nd 2023, the plaintiff appealed said decision to said state fire marshal, alleging that said cabinet had no authority to demolish or destroy property of its own volition.

2622. On or about September 5th 2023, top ranking executive director, Shawn Chapman, of the Public Protection Cabinet, had assigned Chapman as the "administrative hearing officer" after the plaintiff appealed the City of Hazards notice of their intent to destroy said 67 Whitaker Way facility without permission from the plaintiff.

2623. On or about September 5th 2023, top ranking executive director, Shawn Chapman, upon hearing challenges from the plaintiff regarding the cabinets authority to decide over such a matter, Chapman made a determination declaring "to avoid potentially depriving the rights of interested parties, dismissal is inappropriate at this time."

2624. Shorty after Shawn Chapman made his administrative ruling as outlined in #2623(supra), Chapman was known to have been promptly terminated from employment or "abruptly resigned" some relatively short time of making said determination.

2625. Approximately one calendar year of the abrupt termination or dismissal from employment with the Public Protection Cabinet, a new "hearing officer" gets "randomly assigned" to the said matter of destroying property without permission on June 4th 2024.

2626. The new "hearing officer" as outlined in #2625(supra) was identified as Barry Sullivan,

382

under his official title/position or former position as "deputy executive director" of the Public Protection Cabinet.

2627. Barry Sullivan set an administrative hearing over said matter of destroying property on August 22nd 2024, at which Sullivan directed the plaintiff to provide memorandum of "his standing over said matter as a non attorney" whist again *declining* to dismiss the plaintiffs appeal request "in order to avoid cutting off the rights of any party to this action."

2628. Again, within a very short period of time, Barry Sullivan, much like his predecessor, Shawn Chapman, as known to have been promptly terminated from employment or "abruptly resigned" within a relatively short time of making said determination to also not dismiss the plaintiffs appeal based on #2627(supra) "as dismissal is/was inappropriate at this time."

2629. A new replacement "executive director" of the Public Protection Cabinet is reassigned to said matter the City of Hazard's destruction of property desires on our about October 8th 2024 at which point the matter was "shelved" until further notice.

2630. On March 4th 2025, a new "deputy executive director" Clayton Patrick is reassigned to said matter of criminal mischief attempts against the plaintiffs former 67 Whitaker Way building, of which Patrick schedules "prehearing conference" over said matter October 14th 2025.

2631. Despite sending numerous memorandums, cease and desist, and other notices outlining the plaintiffs protected 6th amendment rights to waive counsel, to cease and desist all unlawful activities of holding harassing/annoying hearings on said matter of which said cabinet has no lawful authority, represent and defend his own interests October 13th 2025, October 14th 2025, December 5th 2025, and again on December 18th 2025, Clayton Patrick knowingly and intelligently disregarded all previous notices, ordered that the plaintiffs appeal be dismissed with extreme indifference of the plaintiffs rights to waive counsel, and tendered his order denying that he had ever received any memorandum on the subject, on a December 19th 2025 "prehearing conference" call with said cabinet and City of Hazard.

2632. On said December 19th 2025, Cabinet representative Jennifer Wolsing committed fraud in the inducement with her colleague of legal counsel Linda Keeton or Jennifer Wolsing demonstrated extreme indifference of her duties as legal counsel for the Public Protection Cabinet to deprive the plaintiffs 1st 6th and 14th amendment rights to petition his grievances with said cabinet, to aid and abet the crimes of criminal mischief upon privately owned property of which the plaintiff still holds security

interest, to aid and abet the conspiracy to deprive the plaintiffs rights, as outlined summarily #2631 thru 2632(supra).

2633.   The timing of said terminations, or "abrupt resignation(s)" of a high ranking official(s) with the Public Protection Cabinet, as well as termination or "abrupt resignation" of their own open records staff is consistent with the City of Hazard's well known policies of retaliation against its constituents.

2634.   As a DIRECT RESULT of retaliation against the cabinets own staff, in furtherance of the defendants personally obsessive, collective goals to physically destroy, and deprive, the plaintiff and others serving in the community, of any and all rights to use, enjoy, or provide care of property, deprived of the rights or abilities to protect property, by depriving the plaintiff of all forms a pursing a peaceful, productive, and meaningful life as a tax and economically contributing citizen of the United States, to also conspire to deprive the plaintiff of all forms of beneficial usage, enjoyment, or abilities to enjoy property, by in furtherance of the defendants overall goals of organized, highly coordinated conspiracy to deprive the plaintiff of all manner of his rights, by the collective obsessions to physically destroy, as well as deprive the plaintiff of all manner of the plaintiffs meaningful usage, deprive all manner of his rights to property, enjoyment of property, or provide care of property, and summarily deprive any and all forms of benefit of ownership of property, the plaintiff was:

i).   Unreasonably denied/deprived of all effective manner of financial ability to provide continued care or reap benefit of said properties formerly located at 67 Whitaker Way, 446 Main Street, and 426 Main Street, in Hazard KY,

ii).   Forced to liquidate all income producing out of state business assets, sacrificing approximately forty eight thousand ($48,000.00) dollars in annual earning leasing income from his Florida businesses,

iii).   Permanently deprived of all forms of interstate commerce and prospective commerce business advantages between the plaintiffs Florida businesses as well as the plaintiffs Kentucky state business as a direct result of the forced liquidation of said assets,

iv).   Incurred permanent losses in out of state commercial property values of approximately two million, eight hundred thousand ($2,800,000.00) dollars in Florida state property losses as a direct result of forced liquidation by the defendants actions,

384

v). Forced dissolution of Florida business and commerce, as a direct result of the plaintiff forcibly surrendering assets by the forced liquidations of Kentucky state assets,

vi). Forced by the defendants into credit defaults on said buildings of 446 Main, 67 Whitaker Way, and 426 Main respectively, due to the plaintiff having no way of continually meeting the monthly debt obligations with Hall Properties and People's bank regarding said buildings,

vii). Diminution of property values of said 446 Main and 67 Whitaker Way building losses in the amounts of one million four hundred thousand ($1,400,000.00), as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants combined, highly coordinated, conspiratorial efforts,

viii). Unable to maintain insurance protections on said 446 and 67 Whitaker Way buildings as a direct result of the willfully destructive, criminally negligent, slanderous, libelous actions of the defendants coordinated efforts, resulting in the said facilities total losses without insurance protection/coverage, as a direct result of the coordinated efforts.

ix). Permanent loss of existing annual earning Kentucky commercial business and residential leasing incomes of approximately two hundred forty eight thousand ($248,000.00) in damages to the plaintiffs Kentucky businesses as it were prior to the actions of 2015 onward,

x). Permanent loss of prospective advantageous business relationships of being unjustly deprived of the plaintiffs ability to complete meaningful renovations of the new 426 building apartments since 2015 as a direct result of the defendants interventions or "stoppages" resulting in the permanent losses of prospective income advantage of an additional thirty three thousand ($33,000.00) annually,

xi). Unjust deprivation of the plaintiffs abilities to perform honorable good faith upgrades to fire suppression systems for said buildings, as a deprivation of much needed income for said improvements,

xii). Permanent losses of prospective business advantages and all forms of future growth as a direct result of the tortious interference in all aspects and in all regards from the defendants collective, highly coordinated efforts,

xiii). Serious medical issues as a direct result of emotional distress inflicted upon the plaintiff by the defendants collective, collaborative, combined efforts of "ensuring that the plaintiff never

385

benefits" thereby, unable to continue to provide basic essential care for his family,

xiv).  Permanent deprivation of abilities to resume a peaceful, productive, meaningful life as an honorable tax and economically contributing member of society, as a direct result of having to "pause" the plaintiffs life in order to challenge the defendants actions subject to this suit.

RELIEF SOUGHT:

2635.  WHEREFORE, as a DIRECT RESULT of the defendants collective, organized criminal conspiracy to destroy the plaintiffs commercial apartment complex, business shopping center, and all interstate commerce, deprived the plaintiff of all manner of his rights to petition his grievances with his government over said actions, deprived of all manner of right to live a peaceful, productive, and meaningful life as an honorable tax and economically contributing citizen of the United States, the plaintiff in summation, prays for this honorable court to deliver the following relief;

- A mandamus order of the court, commanding the Commonwealth of Kentucky to obey and conform to both state legislative authorities, as well as federally supreme authority of the federal courts, that they respect and adhere to the *supreme law of the land* regarding *pro se*'s 1st. 6th and 14th amendment rights of the people, to *waive* counsel for petition of grievances against their government, freely, without infringement, in honor of the rights of United States citizens,

- An emergency injunction of the court, restraining order of the court, or however deemed appropriate, to command the City of Hazard to *cease and desist* all criminally mischievous behaviors of destroying private property against its own citizens rights to protect, enjoy, use and benefit from property, in honor of the 5th and 14th amendment rights to do so,

- Full redress of damages pursuant to 18 U.S. Code § 1964 in the amount of $46,620,360 or forty six million, six hundred twenty thousand, three hundred sixty dollars (conservatively estimated) in real calculable damages for the defendants collective, criminal conspiracy to commit massive fraud against the United States, permanent irreparable harm to the plaintiffs interstate commerce by a system of arson, bribery, extortion, exploitation, *et al*, for the defendants collective, concentrated, coordinated efforts to deprive rights and destroy the plaintiffs commercial building complexes, interstate commerce, and other businesses,

- An order for seizure, forfeiture, liquidation, divest of all ill gotten gains, assets, direct or indirect, however deemed appropriate, or necessary to satisfy the judgment of this court,

386

- An order for seizure, forfeiture, liquidation, divest of all personal gains, assets, direct or indirect, however deemed appropriate, or necessary to satisfy the judgment of this court,

- An order for imposement of reasonable restrictions on any future criminal activities or investments of any person, including but not limited to prohibiting any person from engaging in the same type of endeavor the enterprise engaged in, of the activities of which have affected the plaintiffs interstate commerce, by ordering dissolution or reorganization of said enterprise(s), and making provisions to protect the rights and future rights of innocent persons,

- An order for treble damages to recover threefold the damages the plaintiff has sustained, as well as the cost of the suit, including reasonable attorneys compensation 42 U.S. Code § 1988(a), as a direct result of the plaintiffs loss of real world current and future productivity as a direct result of the defendants actions pursuant to 18 U.S. Code § 1964(a), however deemed appropriate,

- An order for full redress to the plaintiff pursuant to 42 U.S. Code § 1983 for state government actors involved in depriving the plaintiffs rights by fraud, fraud in the inducement, fraud on official government documentation, hoaxes and other trickery to exploit and extort the plaintiffs personal resources under false pretenses via felonious application of lien(s) and other crimes,

- An order for full redress consistent with and pursuant to 42 U.S. Code § 1985 for the defendants actions of conspiracy, and organized criminal conspiracy, to deprive the plaintiff of all manner of his rights, his rights to property, and rights to prosper with, and enjoy property,

- An order equivalent to the full amount of the judgment against the defendants both personally and professionally, directly or indirectly, for their intentional infliction of extreme emotional distress upon the plaintiff, his former commercial and residential tenants, and the community as a whole, of which the plaintiff was once honored to serve, however deemed appropriate,

- An order equivalent to the full amount of the judgment for slander of title, defamation, libelous statements on official documentation and other egregious conduct, for the persons directly and indirectly responsible for said acts, however deemed appropriate,

- An order for the full amount of redress of eight hundred eight thousand, six hundred twenty seven dollars ($808,627.00) for the plaintiffs futile and wasted efforts to drastically improve, maintain, and provide proper and full care, only to be deprived of benefit by the defendants slanderous, libelous, and other acts of deprivation of the plaintiffs abilities to use and enjoy

387

property, personally and professionally, directly or indirectly, to satisfy this judgment, however deemed appropriate,

- Any and all other compensation that is actionable as fraud or other dealings of bad faith, unjust enrichment, interference with current and future advantageous business relationships, unlawful convergence, or other methods of dealing in obscene manner, however deemed appropriate,

- An award for exemplary or punitive damages to discourage, avert, or prevent future egregious conduct, dealings in obscene manner, or other criminally illicit behaviors pursuant to KRS 61.990, and 18 U.S. Code 1961-68, or however deemed appropriate,

- An order by Mandamus to the Kentucky Office of the Courts to allow e-filing for citizens of the Commonwealth, so that they may also have equal and fair access to the state judicial system, as is similarity allowed by the federal PACER system,

- All further relief to which the plaintiff may appear entitled by law or equity, including, without limitation, the right to Amend this Complaint, given new discovery, evidence, or relevance and;

- Any and all of other relief the plaintiff may be entitled, and given the circumstances.

Respectfully Submitted,

Brian A. Carter
Plaintiff *pro se*
65 Doctors Row
Chavies, KY 41727
(606)-854-3196
CarterRealty001@gmail.com

## CERTIFICATES

I hereby certify and attest, pursuant to Rule 4(b) of the Federal Rules of Civil Procedure summonses have been provided to the Clerk of this Court for signature, seal and issuance of enclosed for service upon the defendants by Sheriffs deputy or Process Server on this day of March 16 2026 to the following defendants subject to this action:

Daniel B. Roll
341 Woodridge Drive
Hazard KY 41723

Gerry F. Roll
341 Woodridge Drive
Hazard KY 41723

Paul R. Collins
237 Faulkner Ave
Hazard, KY 41701

388

Russell Scott McReynolds
Housing Development Alliance
2871 North Main Street
Hazard KY 41702

Ronald Hacker
3440 Upper Rader Rd
Manchester 40962

Peter F. Ervin
125 Holmes Street
Frankfort, KY 40601

Denise Davidson
151 Woodland Ave
Hazard KY 41701

Betsy Clemons
Economic Development Alliance
444 RockRidge Rd
Hazard, KY 41701

Office of the Attorney General
700 Capitol Ave
Suite 118
Frankfort, KY 40601

Alan Walters
2260 ARD Ridge Rd
Nancy, KY 42544

Kenneth Browning
978 Lotts Creek Rd
Hazard, KY 41701

Donald Mobelini
730 Sun Valley Ter
Hazard, KY 41701

Payton Morton
256 Sunset St
Hazard, KY 41701

Kristin Collins
Foundation of App.
420 Main Street
Hazard, KY 41701

Kentucky Office of the Courts
1001 Bandalay Drive
Frankfort, KY 40601

Mike B. Haney
Public Protection Cabinet
216 Ruffian Court
Frankfort, KY 40601

Tony W. Eversole
10 Pearl Lane
Hazard, KY 41701

Steven E. Campbell
Balis Campbell Construction
100 Saddle Ridge
Hazard, KY 41701

WYMT
199 Black Gold Blvd
Hazard, KY 41701

Kentucky Appellate Courts
669 Chamberlain Ave
Suite B
Frankfort, KY 40601

Kentucky Bar Association
514 West Main Street
Frankfort, KY 40601

Brian A. Carter
Plaintiff *pro se*
65 Doctors Row
Chavies, KY 41727
(606)-854-3196
CarterRealty001@gmail.com

389